IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG<br><br>**Plaintiffs**,<br><br>v.<br><br>NIBCO, INC., an Indiana Corporation,<br><br>**Defendant**. | CIV- F-99-6443 AWI SMS<br><br>ORDER ON PLAINTIFFS'S MOTION TO BIFURCATE BACKPAY |

This is an employment civil rights case brought by 23 former employees of NIBCO who are all women and either of Asian or Hispanic national origin. The employees are limited English proficient and allege disparate impact on the basis of national origin. Plaintiffs allege that they all failed employment tests, which were given in English only, and were "demoted" to "P-Level," a work classification created especially for those who failed the Z-test and which were to be the first let go if a reduction in force became necessary. A reduction in force occurred approximately 1 month after Plaintiffs were assigned to P-Level, and all Plaintiffs were laid off between July and September 1998. The current motion is a motion to bifurcate the issue of backpay filed by Plaintiffs. For the reasons that follow, Plaintiffs's motion will be granted as modified.

## BACKGROUND

Earlier in this case, Magistrate Judge Snyder issued a protective order that prevented Defendant from determining Plaintiffs's place of birth and whether Plaintiffs's immigration status. This order went to the Ninth Circuit, where Defendant made several arguments against the protective order, including the argument that a Supreme Court opinion (*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002)) indicates that backpay is not available for aliens who could not legally work in this country. In 2004, the Ninth Circuit published an opinion that affirmed the protective order. Rivera v. NIBCO, Inc., 364 F.3d 1057 (9th Cir. 2004). Plaintiffs as a group seek backpay, but have agreed that any Plaintiffs who were not legally entitled to work during the relevant period, as evidence through the absence of a social security card/number, will not seek backpay. To determine who is entitled to backpay and who is not, but still honor the protective order, Plaintiffs propose to bifurcate the proceedings and have the court review *in camera* letters from the social security administration. Plaintiffs's proposal was mentioned favorably in the Ninth Circuit's opinion. See Rivera, 364 F.3d at 1062, 1069-70. Defendant opposes the motion, but has suggested an alternative proceeding.

## PLAINTIFF'S MOTION

Plaintiffs argue that Rule of Civil Procedure 42(b) allows a court to order separate trials of any claim in order to further convenience or avoid prejudice. Fed. R. Civ. P. 42(b). Plaintiffs indicate that a liability determination could take 4-6 weeks. Because prejudice would be avoided and convenience furthered, bifurcation is appropriate.

Moreover, Title VII does not require that a jury determine backpay, and, in the event of a defense verdict, backpay will not need to be determined. The determination of backpay would be a straightforward calculation and close to a "purely ministerial function" that requires a relatively simple application of arithmetic.

Plaintiffs also argue that their bifurcation proposal is the only way of complying with the

Ninth Circuit's opinion.  The Ninth Circuit was aware of the chilling affect that disclosure of immigration status would have.  The threat of retaliation would remain if the Plaintiffs's immigration status was shielded during liability, but then revealed at damages.  Through the use of *in camera* proceedings, the threat of retaliation the chilling effects of disclosure are nil.

Under Plaintiffs's initial proposal, the jury would determine entitlement to compensatory and punitive damages, but the Court would determine an award of backpay.  Plaintiffs propose that:

1. The parties would submit their experts's opinions regarding the entitlement of each Plaintiff to backpay under the assumption that each Plaintiff was entitled to work in the United States;

2. Plaintiffs would submit letters from the Social Security Administration ("SSA") verifying that individual plaintiffs were authorized to work at the relevant time periods, but plaintiffs will not submit SSA letter for those plaintiffs, if any, to whom SSA cannot verify authorization;

3. In camera, the Court would review the SSA letters and expert testimony and would determine which plaintiffs are entitled to backpay and what amount of backpay;

4. The Court would then determine a total aggregate amount of backpay owing the plaintiffs as a group, and issue an order directing defendant to transmit that aggregate amount to Plaintiffs's counsel;

5. The Court would then transmit to Plaintiffs's counsel a separate, sealed order specifying the amounts of backpay to which each individual plaintiff is entitled; and

6. Upon receipt of the separate order, Plaintiffs's counsel will disaggregate and distribute the specific amount to each individual plaintiff as ordered by the Court.

See Plaintiffs's Proposed Order on Motion to Bifurcate

*Defendant's Opposition*

Defendant argues that Rule 42(b) should not be used to piecemeal a trial, and bifurcation should not be ordered if a party will be prejudiced or if bifurcation will not be conductive to expedition, convenience, or judicial economy.  Bifurcation should be used if it is fair to the parties and advances judicial efficiency.  Defendant argues that it will be substantially prejudiced if bifurcation is done according to Plaintiffs's proposal.  Defendant argues that it will be

prejudiced by: (1) being denied the right to a jury trial under FEHA; (2) preventing Defendant from introducing relevant evidence against specific Plaintiffs; (3) limiting the evidence to expert reports and letters from the SSA. Also, Plaintiffs seek emotional distress damages and many of the Plaintiffs have linked, at least in part, these damages to a loss of income from failure to find a replacement job.

In discovery responses, Plaintiffs have linked their compensatory damages with backpay and assert that their compensatory damages are at least $50,000 or up to three times the amount of backpay. Based on this claim, backpay claims must be determined before or in connection with compensatory damages. Plaintiffs proposed procedure does not do this. Additionally, the Plaintiffs in their testimony link compensatory damages with the inability to locate a job because they attribute emotional distress from being without a job and being faced with mounting bills. These damages are intertwined and NIBCO will be damaged if bifurcation occurs.

Furthermore, calculation of backpay in this case is not simply a ministerial function or a relatively simple matter of simple and undisputed arithmetic. First, under FEHA, backpay must be determined by a jury. Second, Plaintiffs rely on inapposite cases. For example, reliance on *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1518 (9th Cir. 1989) is misplaced because the trial court heard evidence on mitigation, made reductions due to other sources of income, and heard testimony on availability for work – the backpay award was determined only after the court considered all of the evidence. In this case, backpay claims involve many complex and varied factual issues that are not limited to mere arithmetic. There are 23 plaintiffs and the jury is required to hear and make several decisions concerning the separate backpay claims of each. The Plaintiffs project their backpay claims over a period that exceeds seven years. Among the issues that must be explored are: (1) efforts to mitigate (one plaintiff has admitted to not working at all), (2) retention of subsequent employment (some plaintiffs quit other jobs and others went back to Wade but were later terminated), (3) prolonged period of inactivity in seeking a job, (4) claimed self-employment by some of the Plaintiffs, and (6) the reasonableness of individual efforts to

obtain employment.  See Sangster v. United Air Lines, Inc., 633 F.2d 864, 867-68 (9th Cir. 1980).  These issues show that calculation is not purely ministerial.

Additionally, Plaintiffs's proposal denies NIBCO of the due process right to present all relevant evidence in opposition to the backpay claims.  NIBCO's opposition is not and should not be limited to expert testimony concerning the extent of the entitlement of each individual plaintiff to backpay.  There is also no mechanism to cross examine the expert witnesses, and NIBCO is entitled to cross-examine or test Plaintiffs's expert economist.  Without being allowed to present relevant defensive evidence or being able to cross examine opposing economists, NIBCO is unfairly prejudiced.

In the alternative, and without waiving its arguments, NIBCO proposes different bifurcation system.  NIBCO proposes:

1. The issues concerning liability and damages will be presented to the jury.  The issues concerning punitive damages will be separated into a finding first of entitlement to punitive damages and then the amount, if any.  If a finding of entitlement is first made, based on the Plaintiffs' damage responses, the jury will be instructed during the amount phase that punitive damages are limited to twice the amount of the emotional distress damages or a lower cap based on the then applicable law.  This instruction is consistent both with the Plaintiffs's court ordered discovery [and] should aid in eliminating the possibility that an undocumented Plaintiff who is not entitled to backpay can otherwise seek to inflate a backpay claim based on amounts to which she is not otherwise entitled.

2. After the jury has rendered a verdict on all issues, if a finding of liability is made justifying consideration of the backpay claims, the Court will conduct an *in camera* procedure where it will receive letters issued by the Social Security Administration concerning Plaintiffs's right to work in the United States at all times relevant.  Defendant NIBCO will be given the opportunity to review and approve (or at least submit argument to the Court) concerning the completeness of the form and content of the letters.  This opportunity will include submitting to the Court information that Defendant NIBCO believes must be included in the letters.

3. No letters from the SSA will be submitted for those Plaintiffs who did not have authorization to work at all relevant times.

4. Following review of the pertinent letters, the Court will reduce the aggregate amount of backpay to the amount, which will be awarded to those Plaintiffs who had a legal right to work in the United States during the relevant time period.

//

5

*Plaintiffs Reply*

Plaintiffs argue that Defendant is trying to reargue matters that were already raised in the Ninth Circuit and fails to acknowledge that the Ninth Circuit expressed approval of Plaintiffs's proposal.

Plaintiffs argue that for Rule 42(b) purposes, only one of the criteria – avoidance of prejudice or judicial economy – need be satisfied. The prejudice in this case is clear and was recognized and discussed by the Ninth Circuit. Further, many courts have specifically approved bifurcation where there are concerns about sensitive and prejudicial information. E.g., Mardell v. Harleysville Life Ins. Co., 65 F.3d 1072, 1073 n.2 (3d Cir. 1995); Garrett v. Lanagley Federal Credit Union, 121 F.Supp.2d 887, 906 (E.D. Va. 2000). The decision to bifurcate a trial is made by balancing the equities involved. Corrigan v. Methodist Hospital, 160 F.R.D. 55, 57 (E.D. Pa. 1995). The Ninth Circuit acknowledged that bifurcation might cause some inconvenience to NIBCO, but still concluded that disclosure of immigration status outweighed that potential disadvantage. See Rivera, 364 F.3d at 1070. Also, the cases relied upon by Defendant do not support the proposition that NIBCO is entitled to a jury determination of backpay under FEHA.

Plaintiffs emphasize that they only seek *in camera* proceedings insofar as the proposal seeks to prevent the chilling effect of disclosing immigration status. In light of NIBCO's concerns, Plaintiffs are willing to compromise and accept most of NIBCO's proposals. Plaintiffs propose that all evidence regarding damages – including all evidence relevant to backpay, compensatory, and punitive damages and mitigation, <u>unrelated to immigration status</u>, be presented to the jury at trial for consideration. If the jury finds liability, it will arrive at backpay amounts "for each plaintiff," taking into account all relevant variables that might affect that amount (except immigration status). Plaintiffs's Reply at 6:2. This addresses all of NIBCO's concerns about mitigation, intertwining, and cross-examination. The only issue for the Court to determine post-trial and *in camera* is the simple arithmetic adjustment of any backpay amounts in accordance with the Plaintiffs's voluntary agreement not to seek backpay for any

6

undocumented workers.  In addition to the above, Plaintiffs propose the following:

1. Per the request and authorization of the individual plaintiffs, the Social Security Administration would determine whether each plaintiff had been issued a valid Social Security number during the relevant time periods, which would establish that each such plaintiff was authorized to work in the U.S.  SSA would issue a written certification to that effect for each such plaintiff.

2. The SSA certification letters would then be provided to the Court for its review *in camera*.  The Court would examine those certifications and note which plaintiffs, if any, were not entitled to recover backpay, based on the plaintiffs's voluntary agreement not to seek backpay for plaintiffs who cannot establish that they were authorized to work.

3. From the aggregate backpay award determined by the jury, the court would then simply deduct any amounts corresponding to those plaintiffs for whom certification of status was not obtainable, and enter judgment for the remaining adjusted aggregate amount.

4. Out of the adjusted aggregate amount, plaintiffs's counsel would distribute to each of the plaintiffs with certification the individual backpay amounts to which they were entitled.

Plaintiffs argue that this proposal is reasonable and address all of the concerns of both parties.

With respect to Defendant's alternative proposal, Plaintiffs have two concerns: most California cases find that a more commonly-accepted ratio between compensatory and punitive damages is 1:3, not 1:2, see, e.g., Romo v. Ford Motor Co., 113 Cal.App.4th 738 (2003); Vallbona v. Springer, 43 Cal.App.4th 1525 (1996).  Second, Defendant's proposal that it may "review and approve . . . concerning the completeness of the form and content of the SSA letters."  Plaintiffs argue that it would defeat the purpose of the *in camera* proceedings to allow NIBCO to review the contents of the SSA letters.  However, prior to issuance of the letters by SSA, NIBCO would be given a sample letter for its review, redacted of identifying information, and could submit argument to the Court that additional types of information should be required.  Plaintiffs are not amenable to granting NIBCO access to the actual letters to be reviewed *in camera*.

//

//

**LEGAL STANDARD**

Federal Rule of Civil Procedure 42(b) provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b).

This rule "confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." Zivkovic v. Southern Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002); see also M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1088 (9t h Cir. 2005). As one commentator has noted, "Rule 42(b) provides the district court with discretion to subdivide the case in whatever manner seems dictated by the circumstances." Wright & Miller, 9 Federal Practice and Procedure § 2389 (2d ed. 1995). A ruling that orders bifurcation is appropriate if the "ruling (1) serves the interests of judicial economy or is done to prevent prejudice to a party; (2) does not unfairly prejudice the non-moving party; and (3) does not violate the 7th Amendment." Krocka v. City of Chicago, 203 F.3d 507, 516 (7th Cir. 2000). Courts within the Ninth Circuit have bifurcated liability from damages, and Rule 42(b) gives courts the authority to separate trials into liability and damages phases. See M2 Software, 421 F.3d at 1088; Ortega v. O'Connor, 146 F.3d 1149, 1154 (9th Cir. 1998); Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1119 (9th Cir. 1994); DeAnda v. City of Long Beach, 7 F.3d 1418, 1421 (9th Cir.1993); Arthur Young & Co. v. United States Dist. Ct., 549 F.2d 686, 697 (9t h Cir. 1977). However, "piecemeal trial of separate issues in a single suit is not be the usual course [and] should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule." Hangarter v. Paul Revere Life Ins. Co., 236 F.Supp.2d 1069, 1094 (N.D. Cal. 2002), aff'd, 373 F.3d 998 (9th Cir. 2004); In re Paris Air

Crash, 69 F.R.D. 310, 320 (C.D. Cal. 1974).

## DISCUSSION

As is well known, the Ninth Circuit has issued an opinion in this case and that opinion affirmed the protective order. The Ninth Circuit agreed that the chilling effect on civil rights suits from disclosure of immigration status during discovery is a significant concern. The Ninth Circuit, however, did not order that Plaintiffs's proposed bifurcation be adopted. The Ninth Circuit described the Plaintiffs's initial proposal:

> In response, the plaintiffs proposed a proceeding bifurcated into liability and damages phases. Under the plaintiffs' proposal, the case would proceed to trial on liability first. If the plaintiffs were able to prove NIBCO's liability for the alleged disparate impact violation, the court would then hold an in camera proceeding designed to preserve the plaintiffs' anonymity, protect their statutory rights, and avoid prejudicing the defense. The proceeding would allow each plaintiff to testify regarding her immigration status, provide documents supporting her entitlement to backpay, and provide a formal certification from the Social Security Administration attesting that she was authorized to work throughout the backpay period. The judge would make deductions from the aggregate award backpay for any plaintiff who failed to prove eligibility. Once the aggregate award was thus reduced to encompass only eligible plaintiffs, plaintiffs' counsel would then have the responsibility of giving each eligible plaintiff her share of the total.

Rivera, 364 F.3d at 1062.

After discussing the chilling effects of disclosure and *Hoffman*, the Ninth Circuit stated:

> We need not decide the Hoffman question in this case, however. Regardless whether Hoffman applies in Title VII cases, it is clear that it does not require a district court to allow the discovery sought here. No backpay award has been authorized in this litigation. Indeed, the plaintiffs have proposed several options for ensuring that, whether or not Hoffman applies, no award of backpay is given to any undocumented alien in this proceeding. Thus, the very problem NIBCO has identified may well never arise here.
> . . . . . .
>
> The information that NIBCO seeks is not relevant to determining whether it has violated Title VII. We recognize that discovering the various plaintiffs' eligibility for particular remedies would aid the defendant in making pre-trial estimates of the damage award for which it might be responsible if found liable. The convenience to NIBCO, however, is substantially outweighed by the harm the discovery would cause the plaintiffs.
> . . . . . . . .
>
> The district court has not yet ruled on the plaintiffs' proposed bifurcated proceedings. Although we do not order such proceedings here, it is clear that a separation between liability and damages would be consistent with our prior case

9

   law and would satisfy the concern that causes of action under Title VII not be dismissed, or lost through intimidation, on account of the existence of particular remedies.

Id. at 1069-70 (citations omitted).

  Although the Ninth Circuit has not expressly decided the issue, it looks quite favorably on Plaintiffs's bifurcation proposal. Additionally, Plaintiffs's estimation of the potential length of liability, 4-6 weeks, counsels in favor of bifurcating liability from damages. Given that there are 23 Plaintiffs who would need to testify about their damages, testimony regarding these damages would extend the trial by weeks in addition to the 4-6 weeks to determine liability. To let the jury determine liability and damages simultaneously, instead of in phases, could make the case overly ponderous and unduly time consuming, especially considering that all evidence regarding damages would be entirely irrelevant in the event that no liability is found. Cf. Zivkovic, 302 F.3d at 1088.

  However, the Court believes that NIBCO raises valid concerns about the calculation of backpay, more particularly, Plaintiffs's efforts at mitigation. See Sangster, 633 F.2d at 867-68. There are 23 Plaintiffs who may be entitled to backpay and that calculation is not a simple matter of arithmetic. Nevertheless, the Court believes at this point that Defendant's concerns are adequately addressed in Plaintiffs's revised proposal as found in their reply. Under this compromise proposal, the jury will hear all evidence regarding damages, except evidence relating to immigration status, and would determine a backpay award for each plaintiff. After the jury makes its award, the Plaintiffs will submit social security administration letters and any other information that Defendant may persuade the Court is necessary to determine immigration status. The Court, *in camera*, would then review the letters and determine who is entitled to backpay (in light of Plaintiffs's agreement that improperly documented aliens will not seek backpay). The Court will make reductions and award an aggregate amount, which the Plaintiffs's attorneys will distribute to the Plaintiffs. Although perhaps not meeting every concern of Defendant, such a process does not seem unfair or overly prejudicial to Defendant.

10

Given the danger associated with exploration of immigration status, and given the weeks of testimony regarding damages that would be in addition to liability testimony, the Court finds that bifurcation is appropriate. See Rule 42(b).

Plaintiffs's motion initially asks for bifurcation only on the issue of backpay. However, the Court fails to see the utility of separating only the issue backpay. In Plaintiffs's motion, they state that, "Information concerning plaintiffs's immigration status, let alone the detailed factual minutaie of their post-NIBCO employment and job search efforts, has absolutely nothing to do with the substance of the discrimination issues in this case. . . . the information relating to backpay need not be presented to the jury as part of what is already projected to be a very lengthy trial (4-6 weeks at a minimum) on liability as well as compensatory and punitive damages issues." Plaintiffs's Memorandum In Support of Motion at 4:3-12. The Court agrees with Plaintiffs, but thinks that Plaintiffs statement does not go far enough. If liability is estimated at 4-6 weeks, the Court does not see the utility in presenting any damages evidence to the jury unless and until the jury first decides liability. Accordingly, this case will be bifurcated into a liability phase and a damages phase. See Fed. R. Civ. Pro. 42(b); see also M2 Software, 421 F.3d at 1088; DeAnda, 7 F.3d at 1421; Arthur Young & Co., 549 F.2d at 697; cf. Rivera, 364 F.3d at 1070.

If the jury finds liability during the first phase, the case will proceed into the damages phase. During the damages phase, Plaintiffs may present to the jury evidence concerning all damages, including backpay, and Defendant may present its own evidence to the jury, including mitigation, but not immigration status of the Plaintiffs. See Plaintiffs's Reply Brief at 5:17-6:1. The jury will determine backpay amounts for each Plaintiff, taking into account the entire range of variables presented at trial that might affect that amount, except immigration status. Id. at 6:2-6. With respect to backpay and immigration status, the compromise procedure proposed in Plaintiffs's Reply memorandum will be followed. That is:

1. Per the request and authorization of the individual plaintiffs, the Social Security Administration would determine whether each plaintiff had been issued a valid

11

        Social Security number during the relevant time periods, which would establish that each such plaintiff was authorized to work in the U.S. SSA would issue a written certification to that effect for each such plaintiff.

2.   The SSA certification letters would then be provided to the Court for its review *in camera*. The Court would examine those certifications and note which plaintiffs, if any, were not entitled to recover backpay, based on the plaintiffs's voluntary agreement not to seek backpay for plaintiffs who cannot establish that they were authorized to work.

3.   From the aggregate backpay award determined by the jury, the court would then simply deduct any amounts corresponding to those plaintiffs for whom certification of status was not obtainable, and enter judgment for the remaining adjusted aggregate amount.

4.   Out of the adjusted aggregate amount, plaintiffs's counsel would distribute to each of the plaintiffs with certification the individual backpay amounts to which they were entitled.

Further, as proposed by Plaintiffs, NIBCO will be presented with a sample letter from SSA for its review, redacted of identifying information. NIBCO will have the opportunity to submit argument to the Court that additional types of information should be required.[1]

Accordingly, IT IS HEREBY ORDERED that Plaintiffs's Motion To Bifurcate is GRANTED as modified above.

IT IS SO ORDERED.

**Dated:   March 31, 2006**               **/s/ Anthony W. Ishii**
0m8i78                                          UNITED STATES DISTRICT JUDGE

---

[1] The Court anticipates issuing its order on the parties's outstanding motions for summary judgment shortly. After issuance of the order on the summary judgment motions, the parties may raise any additional concerns with respect to the bifurcation of the trial and the issue of backpay. Additionally, the parties may continue to confer together to try to alleviate additional concerns or "fine tune" the bifurcation procedure. The Court reserves the issues raised by the parties concerning punitive damages for determination at a later time.