EXHIBIT B

U.S. v. Bejar

APPENDIX OF AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DR. GERLAD BARRETT

Not Reported in F.Supp., 1995 WL 548771 (N.D.Ill.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
UNITED STATES of America
v.
Angel BEJAR, Jorge Bejar.
No. 94 CR 103.
Sept. 13, 1995.

MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

*1 This matter is before the court on defendants Angel and Jorge Bejar's Motions to Suppress Statements. For the reasons stated below, the motions are granted in part and denied in part.

*Background*

On February 10, 1994 a team of Drug Enforcement Administration ("DEA") agents arrested defendants Angel Bejar and his brother Jorge Bejar at a used car dealership on the south side of Chicago. The Bejars were subsequently charged with possession with intent to distribute several kilograms of cocaine. Immediately after their arrest, en route to DEA headquarters, and again at DEA offices, Angel and Jorge Bejar made several statements regarding their involvement in the charged crime. The Bejars now move to suppress several of these statements on the grounds that they did not understand the Miranda warnings the agents assertedly gave them at the scene of the arrest, and in Angel Bejar's case, at DEA headquarters. Both Angel and Jorge Bejar immigrated to the United States from Mexico. Neither are fluent in English.

In addition to his Miranda claim, Angel Bejar asserts that his post-arrest statements should be suppressed because they were made involuntarily, the result of illegal coercion. According to Angel Bejar, a combination of physical and mental intimidation on the part of several DEA agents prompted him to discuss his role in the charged crime. Jorge Bejar does not challenge the voluntary nature of his statements, at least not in the sense that the DEA coerced him into making incriminating statements regarding his role in charged crime. He does however, assert that his limited knowledge of English prevented him from maintaining a meaningful conversation with the agents regarding the case. Any incriminating statements he made to the agents enroute to DEA offices, he posits, should therefore be suppressed as unreliable.

*Discussion*

A. *The Facts*

Over several days this Spring, the court held a hearing on the circumstances surrounding Angel and Jorge Bejars' arrest, their questioning by DEA agents, and various incriminating statements they allegedly made to the arresting officers and other government officials. DEA agents Robert Fanter, Mark Hannan, Alan Doescher, and Carlos Vallejo testified at the hearing. Angel Bejar also testified. The hearing closed with the testimony of Dr. Teresa Marie Garreton, a language expert retained by the defendants. Dr. Garreton testified regarding her assessment of the Bejars' proficiency in the English language and her perception of their ability to understand the Miranda warnings allegedly provided to them by the DEA agents.

Robert Fanter, a special agent for the DEA, and one of the arresting officers, testified first. Fanter testified that in his 23 years with the DEA, he has interviewed hundreds of arrestees. (Tr. 7). According to Fanter, he reads all of his arrestees their Miranda rights from memory as a matter of routine. Fanter explained that after slowly reading each right, he pauses and asks the individual if he understood the right before moving on to the next one. (Tr. 8-10). With Spanish-speaking arrestees, Fanter testified that he first ascertains whether they can understand English by engaging them in conversation prior to reading them their rights. (Tr. 10-11). Fanter does not speak Spanish. (Tr. 10).

*2 With respect to the Bejars, Fanter testified that on February 10, 1994, he first spoke to Jorge Bejar shortly after his arrest on the sidewalk in front of the used automobile dealership where the arrest took place. Fanter testified that he read the handcuffed Jorge Bejar his rights immediately prior to placing him in a DEA car to transport him to DEA headquarters. (Tr. 15-16). According to Fanter, he read Jorge Bejar his rights in the same manner he reads rights to other arrestees, and that Jorge Bejar told him that he understood each right as it was given. (Tr. 18-21).

Fanter testified that after he read Jorge Bejar his rights, he drove him downtown to DEA's offices for processing. Fanter stated that en route, he reminded Jorge Bejar that he was in a lot of trouble, and that Jorge Bejar indicated that he knew it. (Tr. 22). Fanter did not take any notes of the conversation. (Tr. 22). According to Fanter, he then asked Jorge Bejar how he wound up working as a middle man in the drug deal. Jorge Bejar allegedly responded that he had been contacted earlier that day by his "friend" Angel, and that Angel asked him to drive over to the auto dealership with him. (Tr. 23-24). Fanter stated that Jorge Bejar told him that he knew that there was a "package" in the rear of the car they were driving, and that Angel had picked up the car from someone named Jose earlier that day. (Tr. 24). Fanter testified that Jorge Bejar said that Jose lived in the western suburbs, either Downers Grove or Oak Brook. (Tr. 26-27). According to Fanter, he had no difficulty understanding Jorge Bejar during the conversation, and that, as far as he could tell, Jorge Bejar did not have any difficulty understanding him. (Tr. 27-28).

With respect to Angel Bejar, Fanter testified that he was present when he was given a copy of his rights in Spanish. Fanter testified that Alan Doescher and Carlos Vallejo were also present. (Tr. 29-30).

Agent Mark Hannan's testimony focused on Angel Bejar. Hannan testified that he first gave Angel Bejar his Miranda warnings at the automobile dealership shortly after his arrest. Hannan stated that he advised Angel Bejar of each of his rights and asked him if he understood them. Hannan testified that Angel Bejar told him that he understood, and in fact, appeared to have understood, his rights. (Tr. 49-50). Hannan then drove Angel Bejar downtown and attempted to elicit information from him en route. According to Hannan, Angel Bejar did not cooperate, informing him that he just happened to be at the car lot, and had nothing to do with the seized cocaine. (Tr. 51).

Hannan testified that once they arrived at the DEA offices, Angel Bejar was stripped searched, photographed, fingerprinted, and processed. (Tr. 51). Hannan stated that Angel Bejar was then taken to a cell to be interviewed. Hannan did not give him his Miranda warnings prior to the interview, but later learned that he had been given his Miranda warnings in Spanish as part of his processing. (Tr. 61-62). According to Hannan, Angel Bejar told him (in English) that Jose Bautista, an old associate from Mexico, had instructed him to drive Bautista's car to the automobile dealership and deliver the cocaine. Hannan stated that Angel Bejar told him that he owed Bautista money, and that he delivered the drugs as a means of clearing up his debt. (Tr. 52). Angel Bejar allegedly told Hannan that he was to collect the money for the cocaine, place it in the back of the car, and then leave the car at a Shell station on the south west side of town.[FN1] According to Hannan, Angel Bejar denied possessing illegal drugs or firearms at his home, and told Hannan that he did not have any problem with DEA agents search his residence. (Tr. 64).

*3 Hannan testified that he and Angel Bejar had little difficulty understanding each other. Hannan noted that although Angel Bejar's English was not grammatically perfect, and although he occasionally had to rephrase his questions, he never felt the need to ask for assistance from a Spanish speaker. (Tr. 54).

Hannan had little direct contact with Jorge Bejar. Hannan testified that in a brief conversation with Jorge Bejar at DEA offices, Jorge Bejar informed him that he was Angel Bejar's brother, and that he just

drove the car to help his brother out. (Tr. 55). Jorge Bejar allegedly confirmed his brother's story that they were to take the car to 26th and Kedzie. (Tr. 55). Hannan testified that he was under the impression that Jorge Bejar had been Mirandized in Spanish prior to their conversation, but acknowledged that he was not present while the warnings were given. (Tr. 57-58).

    DEA Special Agent Alan Doescher, another arresting officer, testified next. Doescher testified extensively regarding both defendants. Turning first to Jorge Bejar, Doescher testified that he personally arrested Jorge Bejar, and after securing the premises (a few minutes later), read Jorge Bejar his rights. (Tr. 67, 79-82). Doescher stated that he first asked Jorge Bejar if he understood English. When Jorge Bejar told him that he did, Doescher allegedly read him rights in English. According to Doescher, Bejar acknowledged that he understood his rights by saying "yes" and nodding yes, after each one was read to him. (Tr. 67-69, 86). Doescher further testified that Jorge Bejar then agreed with Doescher's observation that he was in a lot of trouble, and indicated that he knew he had delivered cocaine. (Tr. 86).

    Doescher stated that once the premises had been secured, the cocaine recovered, and Jorge Bejar's associates arrested (about fifteen minutes in all), he took Jorge Bejar over to Fanter's car and either placed, or assisted Fanter in placing, him in the front passenger seat of the car. (Tr. 90-91). Doescher testified that he told Fanter that he had already advised Jorge of his rights and suggested that he be given his rights again on the way downtown, and then again at DEA offices. (Tr. 91-92). The remainder of Doescher's testimony centered on Angel Bejar. Doescher testified that soon after Angel Bejar had been processed at the DEA offices, he asked Angel Bejar if he understood English and Spanish, and Angel Bejar said that he understood both languages. (Tr. 70-71). Doescher stated that he then read Angel Bejar his rights, first in English, then in Spanish, asking him to acknowledge his understanding of them after each right was read. Doescher stated that he read Angel Bejar's rights in Spanish from a waiver form, which he then gave to Angel Bejar to read for himself.[FN2] (Tr. 71-73). On cross-examination, Doescher stated that he believed that there was a need for him to read Angel Bejar his rights in Spanish in addition to English. (Tr. 100, 110). Angel Bejar reportedly told Doescher that he understood each of his rights, and as far as far as Doescher could tell, did in fact understand them. (Tr. 74). Doescher further testified that Angel Bejar read the Miranda rights waiver form in silence and then signed it. (Tr. 73-74).

    *4 Carlos Vallejo, a native Spanish-speaking DEA agent followed Doescher on the stand. Vallejo testified that he assisted in the processing of both of the Bejars. According to Vallejo, he read both Jorge and Angel Bejar their rights in Spanish from a yellow card he carries with him at all times. (Tr. 122-23, 126-27). Both told him that they understood their rights. ( Id.). According to Vallejo, Angel Bejar told him that he was perturbed, apparently because he had just been read his rights several times before. (Tr. 126).

    Angel Bejar testified next. Angel Bejar testified that he has lived in the United States for eight years, working most recently in the construction business, taping drywall sheets. (Tr. 134, 142). Angel Bejar stated that he came to the United States with only a second-grade education from Mexico, and that he had no formal schooling while in the United States. (Tr. 136). According to Angel Bejar, his life in the United States rarely required him to speak in English; he spoke Spanish at home, shopped at Spanish-speaking stores, and spoke only Spanish at work. (Tr. 134-35). On the rare occasion that he was required to use English, friends of his, more familiar with the English language than he, would assist him. (Tr. 135-36).

    Turning to the day of his arrest, Angel Bejar testified that he did not know whether his rights were read to him either at the automobile dealership or later at DEA headquarters. (Tr. 138, 149). Angel Bejar acknowledged signing a Miranda waiver form but denied having read it or understanding what it meant. (Tr. 139-141). Angel Bejar testified that several DEA agents ridiculed cursed, and yelled at him in an effort to get him to sign the form. (Tr. 139-140, 159). According to Angel Bejar, the DEA agents' threats and taunts prevented him from reading the form before signing it. (Tr. 156). He further testified that one of the agents grabbed him by the neck and pushed him against the wall before he signed the waiver form. (Tr. 140).[FN3]

    With respect to the information he allegedly provided the agents, Angel Bejar acknowledged that he gave them Jose Bautista's name, but specifically denied telling them anything else. (Tr. 151-54). Angel

Bejar also testified that no one ever spoke to him in Spanish about his Miranda rights, adding that he had never seen Agent Vallejo prior to the hearing. (Tr. 155).

Dr. Maria Theresa Garreton, the director of Chicago State University's Bilingual Education Program concluded the hearing on the Miranda waiver issue. In addition to her duties at Chicago State University, Dr. Garreton is a tester and a trainer of testers for the American Council of Teachers of Foreign Language, a national language proficiency testing organization. (Tr. 33-34). After hearing brief testimony on Dr. Garreton's considerable experience in the specific area of testing the English proficiency of native Spanish speakers, the court accepted Dr. Garreton as an expert on language proficiency qualified to testify regarding her assessment of defendants' proficiency with the English language. (Tr. 37).

*5 Dr. Garreton testified that she interviewed Jorge Bejar for 40 minutes. At the conclusion of the interview and a testing sequence in which she probed Jorge Bejar's ability to use and understand the English language in a variety of contexts and levels, Dr. Garreton concluded that Jorge Bejar had a "mid-intermediate" level of proficiency with English. (Tr. 41). According to Dr. Garreton, an individual at this proficiency level "can create with language," "use more language than just what he has memorized," but cannot tell a story with accuracy, nor describe events properly in the past tense. (*Id.*). Dr. Garreton testified that after hearing Agent Fanter read the Miranda warnings in court, it was her expert opinion that Jorge Bejar probably was unable to fully understand the rights as read to him by Fanter on the day of his arrest. "He would probably understand some of the words but not the concept." (Tr. 44).

Dr. Garreton testified that her interview with Angel Bejar also lasted about 40 minutes. The first twenty minutes were spent trying to assess Angel Bejar's ability to understand the Spanish-language Miranda waiver Angel Bejar had signed at DEA offices; the second half of the interview was spent assessing his English language proficiency. (Tr. 170-71). According to Dr. Garreton, with prompting, Angel Bejar could understand most of the waiver form, but had difficulty with particular words and concepts. For example, Dr. Garreton testified that Angel Bejar understood his written right to remain silent as a general admonition to remain calm. (Tr. 171-72). With respect to his proficiency in English, Dr. Garreton testified that Angel Bejar's speaking and listening skills fell into the intermediate-low range. (Tr. 178). Dr. Garreton described Angel Bejar's English speaking and listening skills as follows:

It's somebody who can function on an everyday basis but with difficulty, with lots of errors, with having to have people repeat things and explain them more slowly and more clearly.

* * *

What he was not able to do was to go beyond using simple sentences, was to tell a story that didn't-that happened in the past, for example.

* * *

His listening skills were also at the intermediate low level. And that means that his understanding is very uneven. There are certain topics that he would understand more about, and there are others that he won't. He needs also a of [sic] repetition, rewording, paraphrasing questions, and clear enunciation and pronunciation when asking the questions. There's a possibility of misunderstanding questions, and that tends to happen frequently at this level.

(Tr. 178-79).

Dr. Garreton concluded that given Angel Bejar's limited facility with the English language, it would have been difficult for him to understand Agent Hannan's reading of his rights at the auto dealership. (Tr. 181). She acknowledged, however, that in a calm setting with "a lot of repetition and rephrasing," he might have understood his rights. (*Id.*). Dr. Garreton also testified that she did not believe that Angel Bejar understood Agent Doescher's Spanish rendition of the Miranda warnings. (Tr. 182-83). Dr. Garreton stated that she herself had difficulty following Doescher's Spanish. (Tr. 183).

*6 With respect to Angel Bejar's statement regarding his role in the charged crime, Dr. Garreton took issue with Agent Hannan's recollection of Angel Bejar's responses to his questions. Given Angel Bejar's rudimentary knowledge of English, Dr. Garreton stated that it would have been exceedingly difficult for him to phrase his answers as clearly as Hannan suggested, or to use and understand certain words (such as "seize" and "searching") Hannan described. She did not, however, dispute Angel Bejar's ability to convey the substance of the conversation described by Agent Hannan. (Tr. 226).

B. *The Law*

In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the United States Supreme Court held that the State may not use statements made by a defendant in a "custodial interrogation" unless it can show that the police employed certain, now famous, procedural safeguards. Prior to any questioning, the defendant must be warned that:

he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Id.* Naturally, a defendant may waive these rights. However, the waiver must be voluntary, knowing, and intelligent. "Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden [of demonstrating a voluntary, knowing and intelligent waiver] is rightly on its shoulders." *Id.* at 475. See also Colorado v. Springs, 479 U.S. 564, 572 (1987).

A waiver of Miranda rights, as well as any subsequent statement, is deemed "voluntary" only if the totality of the circumstances surrounding the interrogation reveals that they were "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 421 (1986). The waiver of a defendant's Miranda rights is considered "knowing and intelligent" only where it is made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Whether a defendant has voluntarily, intelligently, and knowingly waived his Miranda rights is a separate question from whether the challenged statement was made voluntarily. Baskin v. Clark, 956 F.2d 142, 145 (7th Cir.1992). A court may find that a defendant made a valid waiver and yet still hold that a subsequent confession was not voluntary. See Miller v. Fenton, 474 U.S. 104 (1985).

C. *The Findings*

After carefully considering the testimony of all the witnesses, the court finds that neither Angel nor Jorge Bejar knowingly and intelligently waived their Miranda rights at the scene of the arrest, but did properly waive their rights when they were processed at DEA offices. After considering the totality of the circumstances, including Angel Bejar's level of education and limited understanding of English, the court further finds that Angel Bejar's post-processing statements were made voluntarily, and were not the result of either physical or mental coercion on the part of any federal agents.

*Jorge Bejar*

*7 With respect to Jorge Bejar, the court first notes that it finds Dr. Garreton's testimony regarding Jorge's level of proficiency with the English language both credible and persuasive. Though aware that Dr. Garreton did not interview any of Jorge Bejar's associates regarding his English language skills, and that her time with Jorge Bejar was limited, the court agrees with her conclusion that Jorge Bejar's limited knowledge of the English language hampered his ability to fully understand the rights Agents Fanter and Doescher read him at the scene of the arrest.

The court finds the testimony of Agents Fanter and Doescher regarding Jorge Bejar generally credible, but notes the tension between them. At one point in the hearing, Doescher testified that he placed Jorge Bejar in Fanter's car. Fanter, in contrast, stated that he himself placed Bejar in the car only after first reading him his rights on the sidewalk.

In closing arguments, the government argued forcefully that Jorge Bejar's ability to maintain a meaningful conversation with Agent Fanter about the crime undermined his claim that he did not understand Fanter's recitation of his Miranda rights. Though clearly probative of his overall facility with the English language, in the court's view, Jorge Bejar and Fanter's brief, relatively simple conversation sheds little light on his specific ability to understand the important, and significantly more complex Constitutional rights read to him by the DEA agents. Defendant Jorge Bejar's Motion to Suppress the statement he allegedly made en route to DEA offices on February 10, 1994 is hereby granted.

*Angel Bejar*

Unlike his brother, Angel Bejar moves to suppress statements he made both before and after arriving at DEA headquarters. This motion is granted with respect to the statements he made before he was processed, but denied with regard to his post-processing statements.

Again, the court finds Dr. Garreton's testimony regarding Angel Bejar both credible and persuasive. Based largely on the strength of Dr. Garreton's evaluation, the court finds that Angel Bejar's facility with the English language at the time of his arrest was even more limited than his brother's. Although the court credits Agent Hannan's testimony that Angel Bejar appeared to have understood his rights at the time of his arrest, the court disagrees with his perception and concludes that Angel Bejar did not understand his rights sufficiently to effectuate the knowing and intelligent waiver the Constitution requires.

However, once he was taken to DEA headquarters, Angel Bejar was provided with several additional renditions of Miranda warnings, three of them in Spanish. As noted above, Agent Vallejo's testified that he read Angel Bejar his rights in Spanish. According to Vallejo, Angel Bejar not only told him that he understood his rights, he said he was annoyed for having to listen to them so many times during processing. The court finds Agent Vallejo's testimony credible and concludes that by deciding to discuss his role in the charged crime after being processed, Angel Bejar knowingly and intelligently waived his Miranda rights.

*8 With regard to the issue of voluntariness, the court finds several aspects of Angel Bejar's testimony suspect. In particular, the court notes that Angel Bejar's testimony regarding the agents' physical violence was not credible. At one point, Angel Bejar testified that only one of the agent's roughed him up; at another point, he suggested that several agents became physical with him. On direct, Angel Bejar testified that he was grabbed by the neck. On cross, he testified at one point that he was grabbed by the neck, and then later, he said he was actually grabbed by the chest. Especially curious is Angel Bejar's omission of any reference to physical violence in the affidavit he submitted in support of his motion.

Finding Angel Bejar's demeanor on the stand occasionally evasive and at other times simply not believable, the court further concludes that Angel Bejar's claim of mental intimidation (cursing, ridicule, and other pressure) to be equally suspect. Even after taking into account Angel Bejar's limited knowledge of English and his lack of formal education, the court concludes that his post-processing statements were made voluntarily and were free from any illegal coercion. Defendant Angel Bejar's motion to suppress is therefore granted in part and denied in part. Any statements made by Angel Bejar prior to his processing at DEA headquarters is suppressed. Any relevant statements made afterward are hereby deemed admissible.

*Conclusion*

For the reasons stated above, Jorge Bejar and Angel Bejar's motions to suppress are granted with respect to any statements they made prior to processing at DEA offices, and denied with respect to any statements made after they were processed.

FN1. Hannan further testified that he and other DEA agents later drove out to the Shell station that Angel Bejar had described and left the car there, hoping to catch Bautista or one of his associates picking up the money. (Tr. 53).

FN2. Doescher explained that although he could only understand a little Spanish, he was able to read Spanish. (Tr. 72).

FN3. On cross, Angel Bejar testified that an agent grabbed him by the chest, not the neck, and pushed him against a wall. (Tr. 159).

N.D.Ill.,1995.
U.S. v. Bejar
Not Reported in F.Supp., 1995 WL 548771 (N.D.Ill.)


Motions, Pleadings and Filings (Back to top)

- 1:94cr00103 (Docket) (Feb. 11, 1994)

END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.