Christopher Ho, SBC No. 129845
Christina N. Chung, SBC No. 194630
Carole Vigne, SBC No. 251829
The LEGAL AID SOCIETY –
    EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone:  (415) 864-8848
Facsimile:  (415) 864-8199

William J. Smith, SBC No. 056116
Shelley G. Bryant, SBC No. 222925
Amanda B. Newell, SBC No. 251160
W.J. SMITH & ASSOCIATES
2350 West Shaw Avenue, Suite 132
Fresno, CA 93711
Telephone:  (559) 432-0986
Facsimile:  (559) 432-4871

Marielena Hincapié, SBC No, 188199
NATIONAL IMMIGRATION LAW
    CENTER
3435 Wilshire Blvd., Suite 1850
Los Angeles, CA 90010
Telephone: (213) 639-3900
Facsimile: (213) 639-3911

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, ROSA CEJA, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG, | No.  CIV F-99-6443 OWW SMS |
| | **PLAINTIFFS' MOTIONS IN LIMINE [NOS. 1-98]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Plaintiffs, | Date:  September 19, 2008<br>Time:  12:00 pm<br>Ctrm:  3 |
| v. | [Hon. Oliver W. Wanger] |
| NIBCO, INC., an Indiana corporation, | Trial Date:  October 7, 2008 |
| Defendant. | |

Plaintiffs Martha Rivera et al. respectfully move this Court in limine, before the jury's selection or the trial's commencement, for: (1) orders instructing (a) Defendant NIBCO, Inc. and its counsel; and (b) through them, each of its witnesses, not to mention, interrogate upon, or otherwise elicit, or suggest or convey to the jury, anything concerning the particular matters discussed below; and (2) orders concerning other evidentiary matters, as also discussed below:

### 1.   **Plaintiffs request the exclusion of witnesses from the courtroom.**

Plaintiffs request the Court bar and exclude witnesses from the courtroom during testimony by other witnesses and order counsel, witnesses, and parties not to discuss or disclose the subject of previous testimony with any witness before he or she testifies. *See* Fed. R. Evid. 615.

### 2.   **Plaintiffs request that the Court allow introduction of duplicates of documents.**

Duplicates of documents are admissible "to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." *See* Fed. R. Evid. 1003.

Numerous documents in this case have been produced throughout the litigation pursuant to Requests for Production, and there is no contention or suggestion that copies proffered are not exact duplicates of the original writings.  Therefore, Plaintiffs request that this Court rule that duplicates of documents produced during this case not be objected to during trial on the grounds that the original documents are not proffered.  Plaintiffs moreover request that all attorneys refrain from any objection to duplicates in lieu of original documents.

### 3.   **NIBCO should be required to produce executed witness statements to Plaintiffs before witnesses testify or are cross-examined.**

To permit NIBCO to not produce executed witness statements before witnesses testify or are cross-examined would result in unfair surprise and undue prejudice of the sort sought to be avoided by the Federal Rules.  *See* Fed. R. Evid. 403.

### 4.   **NIBCO should be precluded from admitting into evidence any documents that were requested by Plaintiffs and not produced.**

To permit NIBCO to introduce any documents into evidence that were requested by Plaintiffs and not produced would result in unfair surprise and undue prejudice of the sort sought to be avoided by

the Federal Rules.  *See* Fed. R. Evid. 403.

**5.**  **NIBCO should be precluded from admitting self-serving writings claimed to have been made during the course of litigation into evidence without proper foundation.**

It is anticipated that NIBCO may attempt to create or has already created documents for use at trial.  Such writings would be hearsay, would not have been produced in the normal course of discovery, and should be excluded pursuant to Federal Rules of Evidence 802 and 403.

**6.**  **NIBCO should be precluded from presenting any pictures, films, or displays to the jury without first having them reviewed by the Court and Plaintiffs' counsel with an opportunity for the latter to object thereto.**

Pursuant to Federal Rules of Evidence 104(b) and 403, any and all documents, including exhibits, videotapes, pictures, photographs, charts, graphs and the like should first be provided to the Court and Plaintiffs' counsel for review in order to avoid having potentially misleading or otherwise prejudicial matters presented to the jury.

**7.**  **NIBCO should be precluded from introducing any document that has not been redacted of any sensitive and irrelevant information, including, but not limited to, birthdates, driver's license numbers, social security numbers, alien registration numbers, etc.**

It is anticipated that Defendant will introduce documents without redacting any sensitive and irrelevant information, including, but not limited to, birthdates, driver's license numbers, social security numbers, alien registration numbers, etc.  Not only is this information completely irrelevant to the issues in this case, *see* Fed. R. Evid. 401 and 402, but such information also violates Plaintiff's constitutionally protected right to privacy. *See* Cal. Const. Art. I, Sec.1.

Furthermore, to the extent that such sensitive information might be construed to have any bearing on either Plaintiffs' immigration status and/or eligibility for employment, Defendant's introduction of such documents would violate the extant protective order prohibiting NIBCO from inquiring into the Plaintiffs' immigration status and eligibility for employment. *Rivera v. NIBCO, Inc.,* 364 F.3d 1057 (9th Cir. 2004) *aff'ing Rivera v. NIBCO, Inc.,* 204 F.R.D. 647 (E.D.Cal. Jun 18, 2001). *See* Plaintiffs' Motion in Limine 24, *infra.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**8.   NIBCO should be precluded from introducing evidence about Plaintiffs' characters.**

Defendant may try to bring in character-related evidence in violation of Federal Rules of Evidence 404 and 608 in order to attack the credibility of, demean, or prejudice the jury against Plaintiffs.  Defendant should not be allowed to offer impermissible character evidence in order to sully or by inference damage Plaintiffs.

Rule 404 provides that evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. Fed. R. Evid. 404. *See* Fed. R. Evid. 404(a), 1972 Advisory Committee Note. ("Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.").  In such cases, a limiting instruction "would not adequately protect the plaintiff." *Janes v. Wal-Mart Stores, Inc.,* 279 F.3d 883, 886 (9th Cir. 2002) (excluding reasons plaintiff was fired from previous job as unduly prejudicial and having little probative value).

Thus, witnesses should be precluded from offering or inferring any vague, ambiguous, or unsupported opinions about Plaintiffs' characters.

**9.   NIBCO and its witnesses should be precluded from making personal conclusions about Plaintiffs' work habits that are not related to job performance.**

NIBCO's witnesses should be precluded from characterizing or otherwise testifying about Plaintiffs' work habits, e.g., that Plaintiffs were "poor" employees or less efficient in comparison to others, without evidence that such habits were related to job performance; such testimony would be both irrelevant and prejudicial to Plaintiffs.  *See* Fed. R. Evid. 402 and 403.  Accordingly, NIBCO should be required to establish a foundation for knowledge and opinion during a hearing outside the presence of the jury, pursuant to Federal Rule of Evidence 104.  To allow such hearsay and unsupported testimony otherwise would violate Federal Rules of Evidence 403 and 802.

**10.  NIBCO should be precluded from presenting evidence that Plaintiff Martha Rivera purportedly encouraged other employees not to take the Z-tests.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to

any matter that is not within their personal knowledge and that is based on speculation. None of the witnesses that NIBCO is expected to call has offered any admissible evidence to support its contention that Plaintiff Martha Rivera purportedly encouraged other employees not to take the Z-test. NIBCO supervisor Randy Cates made such an assertion in his deposition; however, he did not provide any foundation for his statement. *See* Fed. R. Evid. 602. He did not assert that he personally heard Martha Rivera encourage others not to take the Z-test, nor did he say that any other person told him that Ms. Rivera had done so. *Id.* In any event, such testimony would constitute inadmissible hearsay under Federal Rule of Evidence 802.

Moreover, such evidence should be excluded because it is irrelevant under Federal Rule of Evidence 401 and is unduly prejudicial under Federal Rule of Evidence 403.

## 11. <u>NIBCO should be precluded from offering evidence of the good character of any of the managers or supervisors at NIBCO.</u>

It is anticipated that the Defendant will attempt to put on evidence, for example, that its employees were good supervisors and workers or morally upright and benevolent members of the community, in an attempt to sway the jury to believe that they occupied the moral high-ground. Such evidence of good character is precluded by Federal Rule of Evidence 404.

Furthermore, such character evidence would encourage unwarranted sympathy for Defendant, thereby prejudicing the Plaintiffs. It should therefore be excluded pursuant to Rule 403. Fed. R. Evid. 403. *See also U.S. v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991); *McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924 (7th Cir. 1984).

## 12. <u>NIBCO should be precluded from mentioning or eliciting testimony concerning Doug Kieper's service as a United States Marine.</u>

Aside from having no relevance to the issues to be determined at trial, *see* Fed. R. Evid. 401, 402, mention of Mr. Doug Kieper's service as a United States Marine, including, but not limited to his service in the Gulf War and his experience commanding between 40 and 1000 United States Marines, would likely only work to predispose the jury in favor of Mr. Kieper's actions and testimony. Because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, such mention or eliciting of such testimony should be precluded. *See* Fed. R. Evid. 403.

In addition, such testimony would attempt to establish that Mr. Kieper was a "good guy" or boss; was morally upright, righteous, or that he was a benevolent member of the community, and thus attempt to sway the jury to the belief that he occupied the moral high-ground.  This is evidence of good character that is precluded by Federal Rule of Evidence 404.

**13. NIBCO should be precluded from presenting evidence about how its employees felt when they heard languages other than English being spoken at the Fresno facility, including, without limitation, statements that they had no idea what was being said in other languages but felt it was negative.**

Such testimony is not only irrelevant and inadmissible under Federal Rules of Evidence 401 and 402, but any probative value of such testimony is substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403.

**14. NIBCO should be precluded from introducing any evidence of Plaintiffs' prior discipline or alleged misconduct while working at NIBCO because it did not form the basis for termination and would result in undue delay.**

The Court should exclude any evidence of prior discipline and alleged misconduct because it was not relevant to the proffered reasons for Plaintiffs' discharge. *See* Fed. R. Evid. 401, 402   Such evidence has very little probative value because Plaintiffs were assigned to P-level solely on the basis of their Z-test results; they were subsequently terminated because of their P-level status.  Defendant did not disclose any evidence regarding discipline or alleged misconduct specific to Plaintiffs that factored into their discharge. Since such evidence does not tend to make material facts more or less probable, it is not admissible. *Id.*

Even assuming *arguendo* that evidence of prior discipline or alleged misconduct were relevant, the Court should exclude it because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.  The danger of undue prejudice to Plaintiffs that would be created by this evidence is obvious and substantial.   The evidence should also be excluded because its probative value is also substantially outweighed "by considerations of undue delay [and] waste of time." *Id.*  Allowing Defendant to present immaterial evidence would open a can of worms, so to speak, forcing Plaintiffs to cross-examine Defendant's

witnesses and call other witnesses to contradict testimony given on direct-examination.

Finally, in any event, Defendant should not refer to any evidence of prior discipline or alleged misconduct other than or contrary to what was disclosed by Defendant's discovery responses to date. Such an Order is clearly justified by Federal Rules of Civil Procedure 26 and 33. *See* Fed. R. Civ. Pro. 26 and Fed. R. Civ. Pro. 33.  The purpose of discovery would be substantially defeated were Plaintiff to be surprised at trial by belated evidence of prior discipline or alleged misconduct not disclosed in discovery. In particular, Defendant should be precluded from introducing any evidence concerning Plaintiffs' employment that is not contained in their personnel files as maintained and disclosed in this action. California Government Code §12946; *see* Plaintiffs' Motion in Limine No. 15, *infra.*

**15. <u>NIBCO should be precluded from introducing any evidence concerning any Plaintiffs' employment or termination that is not contained in their personnel file as produced in this action</u>.**

Defendant should be precluded from utilizing any document that is critical of Plaintiffs' job performance, that attempts to justify its actions with respect to the Plaintiffs, or that reflects negatively upon them or their job performance, if such documentation was not part of their personnel files as produced in the course of discovery.

Section 12946 of the California Government Code provides in pertinent part:

> It shall be an unlawful practice for employers, labor organizations and employment agencies subject to the provisions of this part to fail to maintain and preserve any and all applications, personnel, membership, or employment referral records and files for a minimum of two years after the records and files are initially created or received, or for employers to fail to retain personnel files of applicants or terminated employees for a period of two years after the date of the employment action taken ....  Upon notice that a verified complaint against it has been filed under this part, any such employer, labor organization, or employment agency shall maintain and preserve any and all records and files until the complaint is fully and finally disposed of and all appeals and related proceedings terminated . . .

Obviously, if NIBCO failed to maintain documents allegedly relevant to this matter, they should not be allowed into evidence.  Moreover, this litigation was initiated on October 1, 1999 by the filing of the complaint in this matter.  Consequently, all records concerning Plaintiffs' employment and the matters at issue herein should have been preserved pursuant to this section of the California Government Code.

**PLAINTIFFS' MOTIONS IN LIMINE [NOS. 1-98];**        **Page 7**
**MPA IN SUPPORT THEREOF**
**Case No. C 99-6443 OWW SMS**

It would defeat the purposes of discovery for the Plaintiffs to now have to confront reasons for non-promotion not stated in their personnel files.  Consequently, NIBCO should be restricted to the documents and stated reason contained in Plaintiffs' personnel files.

**16. NIBCO should be precluded from presenting evidence that former Plaintiff Xhue Yang represented that in connection with his employment with NIBCO, he received a high school diploma in 1984.**

This evidence is irrelevant and, therefore, inadmissible under Federal Rules of Evidence 401 and 402.  Furthermore, even if it were found to be relevant, such evidence should be excluded because its low probative value is substantially outweighed by the high danger of unfair prejudice and the additional considerations of undue delay and waste of time, pursuant to Federal Rule of Evidence 403.

**17.  NIBCO should be precluded from presenting evidence as to whether any of the Plaintiffs were terminated for cause from any subsequent employment.**

NIBCO should be precluded from introducing any evidence as to whether any of the Plaintiffs were terminated for cause from subsequent employment.  Such evidence would be irrelevant to any of the issues in this case and is therefore inadmissible under Federal Rule of Evidence 402.  To the extent such evidence has any conceivable bearing on this case, it would only be to Plaintiffs' damages, which are not at issue in the liability phase of trial.

Evidence that any of the Plaintiffs were terminated for cause from subsequent employment would constitute impermissible character evidence to attack, demean, or prejudice the jury against Plaintiffs in violation of Federal Rules of Evidence 404 and 608.  Defendant should not be allowed to offer impermissible character evidence in order to sully or by inference damage Plaintiffs.

Further, even assuming *arguendo* that such evidence were somehow relevant, its probative value is substantially outweighed by the danger of unfair prejudice, would confuse the issues, and would mislead the jury. *See* Fed. R. Evid. 403.  NIBCO should therefore be barred from presenting such evidence.

**18. The Court should admit evidence that NIBCO deviated from its own layoff policy in laying off Plaintiffs.**

It is anticipated that Defendant will seek to exclude any evidence that Defendant ignored its own layoff policy in deciding whom to layoff in 1998. Such evidence should be admitted as it is clearly relevant. *See* Fed. R. Evid. 401.

Moreover, Defendant is expected to argue that its layoff policy entitled "Procedure for Laying off Associates," Bates No. NIBCO-4439-4440, Declaration of Ann Blankenship ("Blankenship Decl.") ¶ 3, Exh. C, has not been identified as the policy in effect at the time of Plaintiffs' layoffs. However, this policy was in fact identified and authenticated by NIBCO Human Resource Manager Connie Williams-Hitt. Ms. Hitt testified that this policy represented NIBCO's "formal way of doing a layoff." Connie WilliamsHitt Deposition, Blankenship Decl. ¶ 4, Exh. D, 451:19-452:9*see also id.* at 453:2-5 (testifying that she has not seen any other versions of this document and stating, "I think this is the way we did the layoffs"). Moreover, Ms. Hitt testified that she believed she typed the document herself, *see id.* 452:22-453:1; thus, she is a knowledgeable witness who may authenticate the document pursuant to Federal Rule of Evidence 901(b)(1). While Ms. Hitt indicated some uncertainty about the exact time frame the policy was in effect, her testimony is more than sufficient to establish authenticity. To show authenticity, the proponent need not rule out "all possibilities inconsistent with authenticity, or ... prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of *reasonable likelihood*." *United States v. Holmquist*, 36 F3d 154, 168 (1st Cir. 1994) (emphasis added). Thus, the Court should rule that  NIBCO's "Procedure for Laying off Associates" is admissible, and that Plaintiffs may argue that Defendant ignored its own layoff policy in laying off Plaintiffs.

**19. NIBCO should be precluded from introducing the "Industrial Hygiene Audit" by Grauvogel & Associates (Bates # NIBCO-007358 – NIBCO-007501) and the "Letter from Doug Bunting of Zee Service Company to Chavez re. Workplace Safety Evaluation" (Bates # NIBCO-059699 – NIBCO-059707).**

These documents that have been identified by NIBCO as trial exhibits have not been properly authenticated under Federal Rule of Evidence 901 and are inadmissible as hearsay under Rule 802.

Moreover, NIBCO admits that the rates of injuries of workers whose English proficiency was limited were not analyzed vis-à-vis the rate of injury of English-speaking workers. *See* Defendant

NIBCO, Inc.'s Responses to Plaintiffs' Revised Requests for Admission # 65, Blankenship Decl. ¶ 7, Exh. G The Industrial Hygiene Audit, *see* Blankenship Decl. ¶ 1,  Exh. A, and the Workplace Safety Evaluation, *see* Blankenship Decl. ¶ 2,  Exh. B, purport to assess *general* injury rates and safety issues at the Fresno facility and do not specifically evaluate the health and safety of Plaintiffs or other employees who were demoted to P-level, or any impact of limited English proficiency on the safety issues, procedures, or recommendations at the facility.  Thus, they are irrelevant and inadmissible under Rules 401 and 402.  Furthermore, under Rule 403, any probative value is greatly outweighed by the danger of unfair prejudice and the likelihood of jury confusion over documents that would be introduced by NIBCO in order to create the factually unsupported and prejudicial implication that the facility was unsafe due to limited English proficiency.  Any such introduction of documents would also be cumulative of any witness testimony based on personal knowledge that would be necessary to authenticate and lay a foundation for the documents at trial, and, especially in light of the highly prejudicial nature of the documents, such cumulative evidence should not be admitted.

    **20. NIBCO should be precluded  from arguing or insinuating that judgments against employers in cases such as this will create an anti-business climate in the Fresno area.**

    Aside from having no foundation in fact and being legally irrelevant to the jury's charge, *see* Fed. R. Evid. 401 and 402, suggestions of this nature would serve only to prejudice the jury against the Plaintiffs.  *See* Fed. R. Evid. 403.  Accordingly, NIBCO and its witnesses should be barred from so suggesting.

    **21. NIBCO should be precluded from commenting on the fact that Plaintiffs' counsel include legal advocacy organizations (*i.e.*, the Legal Aid Society – Employment Law Center and the National Immigration Law Center).**

    Aside from having no relevance to the issues to be determined at trial, such comment would likely only work to predispose the jury against the Plaintiffs and their counsel.  It should therefore be precluded pursuant to Fed. R. Evid. 401 and 402.

    **22. NIBCO should be precluded from commenting on the fact that some of Plaintiffs' counsel (*i.e.*, the Legal Aid Society – Employment Law Center and the National Immigration Law Center) are based outside the Fresno area.**

Aside from having no relevance to the issues to be determined at trial, *see* Fed. R. Evid. 401, 402, commenting that some of Plaintiffs' counsel are based outside the Fresno area would likely only work to predispose the jury against the Plaintiffs. Such comments should, therefore. be precluded pursuant to Federal Rules of Evidence 403.

### 23. **NIBCO should be precluded from commenting on the fact that Plaintiffs' counsel may be awarded attorneys' fees and costs of suit pursuant to statute should their clients prevail at trial.**

Defendants should be precluded from mentioning and/or arguing before the jury that Plaintiffs may recover attorney's fees and costs after trial. Such references or argument would be prejudicial to Plaintiffs, would interfere with the jury's function as a finder of fact, would not be probative, would be a post-judgment matter, and is a matter of law, not fact, under Federal Rules of Evidence 104(a) and 403. Aside from having no relevance to the issues to be determined at trial, such comment would likely only work to predispose the jury against the Plaintiffs and their counsel. It should, therefore, also be precluded pursuant to Federal Rules of Evidence 401, 402, and 403.

### 24. **NIBCO should be precluded from alluding to, inquiring into, making insinuations, or admitting evidence regarding Plaintiffs' past or present immigration status and/or eligibility for employment.**

Defendants should not be permitted to discuss or allude to Plaintiffs' immigration status and/or eligibility for employment in any way; to do so would violate the extant protective order prohibiting NIBCO from inquiring into the Plaintiffs' immigration status and eligibility for employment. *Rivera v. NIBCO, Inc.,* 364 F.3d 1057 (9th Cir. 2004) *aff'ing Rivera v. NIBCO, Inc.,* 204 F.R.D. 647 (E.D. Cal. 2001).

The protective order falls squarely within "the law of the case" as that doctrine is understood in the Ninth Circuit. In the Ninth Circuit, the law-of-the-case doctrine precludes reconsideration of a previously decided issue unless one of three "exceptional circumstances" exists: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice. *Kimball v. Callahan,* 590 F.2d 768 (9th Cir. 1979). None of those

circumstances exist in the instant case.

Defendant itself acknowledges in the Joint Pre-Trial Conference Statement of August 4, 2008 that  "Plaintiffs successfully moved for a protective order which precluded NIBCO from questioning them about [immigration] matters, among others."  *See* Joint Pre-Trial Conference Statement of August 4, 2008 at 106.

### 25. <u>NIBCO should be precluded from disputing whether Plaintiffs' disparate impact claims, as filed with the EEOC, were timely.</u>

Defendant should be precluded from arguing that Plaintiffs did not file their EEOC complaints in a timely fashion; to do so would be to relitigate an issue that has already been ruled upon in this case – and would be a waste of both time and judicial resources.  On July 12, 2007, Judge Ishii ruled in his Order on Cross Motions for Summary Judgment that it was "undisputed that all of the Plaintiffs filed their administrative charges with the EEOC within 300 days of their layoff. Accordingly, Plaintiffs' disparate impact claims are timely." Order on Cross Motions for Summary Judgment, July 12, 2007, at 25 (*citing Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998); *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 320 (9th Cir. 1991); *Bouman v. Block*, 940 F.2d 1211, 1221 (9th Cir. 1991)).

In the Joint Pre-Trial Conference Statement of August 4, 2008, Defendant suggests that it intends to relitigate this issue, *see* Defendant's Disputed Factual Issues, Nos. 112-115, 119, 207, 209, 249-250, contrary to Judge Ishii's order, but it has failed to comply with the Local Rules requirement to file a timely Motion for Reconsideration.  *See* E.D. Civ. L.R. 78-230(k).  Absent a prior ruling on a timely filed Motion for Reconsideration of Judge Ishii's Order, demonstrating that new or different facts or circumstances exist, *see* E.D. Civ. L.R. 78-230(k)(3), this Court should not permit Defendant to argue that Plaintiffs did not file their administrative charges in a timely fashion.   For that reason, any in limine motions NIBCO may file on this matter should be denied, and any argument by NIBCO that this matter is a disputed fact still open for determination should be rejected.

### 26. <u>NIBCO should be precluded from disputing whether Plaintiffs' disparate impact claims, as  filed with the DFEH,  were timely.</u>

Defendant should be precluded from arguing that Plaintiffs did not file their DFEH

1    complaints in a timely fashion; to do so would be to relitigate an issue that has already been ruled

2    upon in this case – and would be a waste of both time and judicial resources.  On July 12, 2007,

3    Judge Ishii ruled in his Order on Cross Motions for Summary Judgment that "[s]ince it is undisputed

4    that all Plaintiffs filed a DFEH complaint within one year of lay off, Plaintiffs's FEHA complaint is

5    also timely."  Order on Cross Motions for Summary Judgment, July 12, 2007 at 25, n.32.

6         In the Joint Pre-Trial Conference Statement of August 4, 2008, Defendant suggests that they

7    intend to relitigate this issue, *see* Defendant's Disputed Factual Issues, Nos. 116-119, 208-209, 249,

8    251, contrary to Judge Ishii's order, but it has failed to comply with the Local Rules requirement to

9    file a timely Motion for Reconsideration. *See* E.D. Civ. L.R. 78-230(k).  Absent a prior ruling on a

10   timely filed Motion for Reconsideration of Judge Ishii's Order, demonstrating that new or different

11   facts or circumstances exist, *see* E.D. Civ. L.R. 78-230(k)(3), this Court should not permit Defendant

12   to argue that Plaintiffs did not file their administrative charges in a timely fashion.   For that

13   reason, any in limine motions NIBCO may file on this matter should be denied, and any argument by

14   NIBCO that this matter is a disputed fact still open for determination should be rejected.

15        **27. <u>NIBCO should be precluded from arguing that Plaintiffs' educational backgrounds</u>**

16            **<u>were responsible for the disparate impact of the Z-tests</u>**.

17        Defendant should be precluded from making the argument that Plaintiffs' educational

18   background - rather than Plaintiffs' national origin - was responsible for the disparate impact of the Z-

19   tests; to do so would be to relitigate an issue that has already been ruled upon in this case – and would be

20   a waste of both time and judicial resources.  On July 12, 2007, Judge Ishii ruled in his Order on Cross

21   Motions for Summary Judgment that information or evidence pertaining to the Plaintiffs' educational

22   backgrounds was not relevant when assessing whether or not the Z-tests had a "disparate impact on a

23   protected group: Asian/Hispanic national origin employees," and further that "NIBCO has provided no

24   statistics that show the disparity is due to a lack of education."  Order on Cross Motions for Summary

25   Judgment, July 12, 2007 at 45-47; *accord Bouman v. Block*, 940 F.2d 1211, 1228 (9th Cir. 1991);

26   *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship and Training Comm.*, 833 F.2d 1334,

27   1340 (9th Cir. 1987).   Judge Ishii clearly stated that evidence relating to Plaintiffs' educational

28   background is not relevant to the disparate impact claim in this case, and is therefore inadmissible. *See*

Order on Cross Motions for Summary Judgment, July 12, 2007 at 47.

In the Joint Pre-Trial Conference Statement of August 4, 2008, Defendant suggests that it intends to relitigate this issue, *see* Defendant's Disputed Factual Issues, Nos. 146-148, 150, contrary to Judge Ishii's order, but they have failed to comply with the Local Rules requirement to file a timely Motion for Reconsideration. *See* E.D. Civ. L.R. 78-230(k).  Absent a prior ruling on a timely filed Motion for Reconsideration of Judge Ishii's Order, demonstrating that new or different facts or circumstances exist, *see* E.D. Civ. L.R. 78-230(k)(3), this Court should not permit Defendant to argue that Plaintiffs' educational backgrounds, rather than their national origin, were responsible for the disparate impact of the Z-tests.   For that reason, any in limine motions NIBCO may file on this matter should be denied, and any argument by NIBCO that this matter is a disputed fact still open for determination should be rejected.

## 28. **NIBCO should be precluded from advancing theories about Plaintiffs' level of English literacy to argue that Plaintiffs do not have a valid disparate impact claim on national origin grounds.**

Defendant should be precluded from arguing that Plaintiffs do not have a valid disparate impact claim on national origin grounds because of their limited English literacy or proficiency; to do so would be to relitigate an issue that has already been ruled upon in this case– and would be a waste of both time and judicial resources.

In a national origin disparate impact case, the reasons underlying the discriminatory effect of a challenged practice are not relevant.  The only issue that is relevant is whether or not the practice has a discriminatory effect on a protected class.  *See* 42 U.S.C. § 2000e-2(k)(1)(A)(I).  However, Defendant attempted to argue in their Motions for Summary Judgment that Plaintiffs did not have a valid disparate impact claim because their failure to pass the Z-tests could be attributed to their level of English literacy, rather than their national origin.  On July 12, 2007, Judge Ishii ruled in his Order on Cross Motions for Summary Judgment that Defendants' argument was irrelevant because "NIBCO is answering why the challenged practice has a discriminatory effect on Plaintiffs and not whether it has a discriminatory effect . . . this analysis is entirely irrelevant to the issue of adverse impact. It does not matter why the disparate impact exists." Order on Cross Motions for Summary Judgment,

July 12, 2007, at 51 (*citing Eldredge v. Carpenters, 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 833 F.2d 1334, 1340 (9th Cir. 1987); *Association of Mexican-American Educators v. State of Cal.*, 937 F.Supp. 1397, 1410 (N.D.Cal., 1996)).

As Judge Ishii's Order stressed, "it is undisputed that the Plaintiffs each failed the Z-tests, were each assigned to P-level, and were the first terminated during the RIF's because they were in the lowest classification, which was established by the Z-tests. Each of the Plaintiffs are part of the protected group of Asian/Hispanic national origin employees, and each 'has been the victim of [the alleged] discrimination by the general practice which allegedly resulted in a discriminatory impact on a protected group.'" Order on Cross Motions for Summary Judgment, July 12, 2007, at 51 (*citing Coe v. Yellow Freight System, Inc.,* 646 F.2d 444, 451 (10th Cir. 1981). The Order added, "The Plaintiffs suffered the harm of being selected for layoff first on the basis of an arguably discriminatory test and they could not rise to a safer skill level without passing the test." *Id.*

In the Joint Pre-Trial Conference Statement of August 4, 2008, Defendant suggests that it intends to relitigate this issue, *see* Defendant's Disputed Factual Issues, Nos. 149, 151-152, 218, contrary to Judge Ishii's order, but it has failed to comply with the Local Rules requirement to file a timely Motion for Reconsideration. *See* E.D. Civ. L.R. 78-230(k). Absent a prior ruling on a timely filed Motion for Reconsideration of Judge Ishii's Order, demonstrating that new or different facts or circumstances exist, *see* E.D. Civ. L.R. 78-230(k)(3), this Court should not permit Defendant to advance theories about Plaintiffs' level of English literacy to argue that Plaintiffs do not have a valid disparate impact claim on national origin grounds. For that reason, any in limine motions NIBCO may file on this matter should be denied, and any argument by NIBCO that this matter is a disputed fact still open for determination should be rejected.

### 29. **NIBCO should be precluded from arguing there was no discrimination simply because there were Hispanics and Asians that did pass the Z-tests.**

Any suggestion by NIBCO that there was no discrimination because Hispanic and Asian employees passed the Z-tests confuses the legal standard of adverse impact, is likely to mislead the jury, and should, therefore, be precluded at trial. *See* Fed. R. Evid. 403.

To establish a prima facie case of adverse impact under Title VII, Plaintiffs must show that

the challenged employment action had a significantly disproportionate exclusionary impact on members of the protected class. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(i); *see also Dothard v. Rawlinson*, 433 U.S. 321, 328-30 (1977); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975).  In the employment testing context, Plaintiffs may make such a showing through a statistical analysis of pass/fail rates on examinations or selection rates in employment decisions.  *Contreras v. City of Los Angeles*, 656 F.2d 1267, 1275 (9th Cir. 1981) (analyzing pass/fail rates on promotions exam and holding that "[s]tatistical disparities alone may constitute prima facie proof of discrimination.");  *Bouman v. Block*, 940 F.2d 1211, 1224-26 (9th Cir. 1991) (analyzing pass/fail rates and selection rates in promotion decisions).  Importantly, Plaintiffs' burden is only "to prove discrimination by a preponderance of the evidence."  *See Eldredge v. Carpenters, 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 833 F.2d at 1388 (9th Cir. 1987) (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)).

Because Plaintiffs do not have to establish that every single Hispanic and Asian employee failed the Z-tests to prove discrimination, Defendant should not be permitted to argue that there was no discrimination simply because there were Hispanic and Asian employees who passed the Z-tests. Indeed, any such contention would contradict established case law and confuse the legal standard of adverse impact. *See Garcia v. Spun Steak Co.,* 998 F.2d 1480, 1486 (9th Cir. 1993) ("It is beyond dispute that, in this case, if the English-only policy causes any adverse effects, those effects will be suffered disproportionately by those of Hispanic origin . . . It is of no consequence that not all Hispanic employees of Spun Steak speak Spanish; nor is it relevant that some non-Hispanic workers may speak Spanish. If the adverse effects are proved, it is enough under Title VII that Hispanics are disproportionately impacted.").

To avoid such confusion of the legal standard, which will likely mislead the jury, Defendant should be required to adhere to the legal definition and test of adverse impact throughout trial and thus, prohibited from contending that there was no discrimination simply because there were Hispanic and Asian employees who passed the Z-tests. *See* Fed. R. Evid. 403.

Furthermore, such argument interferes with the jury's function as a finder of fact on an ultimate

issue in this case.

**30. NIBCO should be precluded from contending that simply because other employees were eventually laid off, there was no discrimination.**

It is anticipated that Defendant will attempt to argue that there was no discrimination because other employees were eventually laid off.  Any suggestion by NIBCO that there was no discrimination because other employees were eventually laid off is irrelevant, is likely to mislead the jury, and should, therefore, be precluded at trial. *See* Fed. R. Evid. 401, 402, 403.

To establish a prima facie case of adverse impact under Title VII, Plaintiffs must show that the challenged employment action had a significantly disproportionate exclusionary impact on members of the protected class.  *See* 42 U.S.C. §2000e-2(k)(1)(A)(i); *see also Dothard v. Rawlinson*, 433 U.S. 321, 328-30 (1977); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975).  What employment actions occur after the implementation of the challenged employment action is completely irrelevant, and thus, must be excluded.  *See* Fed. R. Evid. 401, 402. Such an argument could only mislead the jury by detracting attention from the challenged employment action, that is the demotions and terminations based on the Z-tests results; accordingly, Defendant must be prohibited from advancing the argument that was no discrimination since other employees were eventually laid off. *See* Fed. R. Evid. 403.

Furthermore, such argument interferes with the jury's function as a finder of fact on an ultimate issue in this case.

**31. NIBCO should be precluded from presenting evidence as to whether Plaintiffs made an attempt to pass the Z-tests, whether any statistically significant disparity would exist if Plaintiffs had made an effort to pass, and/or whether the results of the Z-tests were impacted by failure to study or lack of effort.**

It is anticipated that Defendant will attempt to argue that Plaintiffs' failure to pass the Z-tests can be attributed to their alleged failure to study or lack of effort.  However, evidence as to whether Plaintiffs studied for the Z-tests or made an effort to pass is irrelevant, and should therefore, be excluded.  *See* Fed. R. Evid. 401, 402.

In a national origin disparate impact case, the reasons underlying the discriminatory effect of

a challenged practice are not relevant; the only relevant issue is whether or not the practice has a discriminatory effect on a protected class. 42 U.S.C. § 2000e-2(k)(1)(A)(I). As Judge Ishii stressed in his Order on Cross Motions for Summary Judgment, "it is undisputed that the Plaintiffs each failed the Z-tests, were each assigned to P-level, and were the first terminated during the RIF's because they were in the lowest classification, which was established by the Z-tests. Each of the Plaintiffs are part of the protected group of Asian/Hispanic national origin employees, and each 'has been the victim of [the alleged] discrimination by the general practice which allegedly resulted in a discriminatory impact on a protected group.'" Order on Cross Motions for Summary Judgment, July 12, 2007, at 51 (*citing Coe v. Yellow Freight System, Inc.,* 646 F.2d 444, 451 (10th Cir. 1981)). Thus, Defendant should be precluded from presenting evidence regarding the extent to which Plaintiffs studied or attempted to pass the Z-tests.

Moreover, under Federal Rule of Evidence 403, the probative value of any such evidence is substantially outweighed by the danger of unfair prejudice, would confuse the issues, and would mislead the jury. Therefore, NIBCO should be barred from presenting such evidence.

### 32. NIBCO should be precluded from arguing as a defense to Plaintiffs' adverse impact claim in the liability phase of trial that it had no intent to discriminate against Plaintiffs.

Allowing Defendant to discuss any purported non-discriminatory intent behind its employment practices is not only irrelevant with respect to "adverse impact" claims, but would cause unfair prejudice, confuse the legal issues, and mislead the jury. *See* Fed. R. Evid. 402, 403. Therefore, NIBCO should be barred from doing so under Federal Rules of Evidence 402 and 403.

### 33. NIBCO should be precluded from presenting lay opinion testimony on the inadequacy, inefficacy, or insufficiency of the safety procedures at the Fresno plant.

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call possess any expertise to evaluate workplace health and safety, which is a highly specialized field regulated at both the federal and state level by occupational safety and health agencies. Thus, any opinions, statements, or inferences expressed by

NIBCO's lay witnesses assessing the plant's safety procedures would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 802.

Therefore, NIBCO should be barred from presenting lay opinion on this issue. Under Federal Rule of Evidence 403, any probative value of such testimony, which would confuse the issues and mislead the jury, would be substantially outweighed by the danger of unfair prejudice.

**34. <u>NIBCO should be precluded from contending that the Z-tests was job related without explaining and adhering to the legal definition of "job related."</u>**

It is anticipated that Defendant will allege that the series of employment tests, known as the Z-tests, are job related. Because job related has both legal significance and a common meaning, NIBCO should be required to explain and adhere to the legal definition of job related, if it describes the Z-tests as so.

Pursuant to 42 U.S.C. § 2000e-2(k)(1)(A)(i), if Plaintiffs demonstrate that the Z-tests caused a disparate impact on the basis of national origin, Defendant must then demonstrate that the Z-tests are "job related for the position in question and consistent with business necessity."  The legal standard of job relatedness requires a showing that the practice in question is "necessary to safe and efficient job performance." *Dothard v. Rawlinson,* 433 U.S. 321, 331 n.14 (1977).  In other words, the Defendant must prove that the Z-tests bears "a manifest relationship to the employment in question." *Griggs v. Duke Power Co.,* 401 U.S. 424, 432 (1971).

In the specific context of a scored test, "the burden shifts to Defendants to demonstrate that the [test] was validated properly." *Association of Mexican-American Educators v. State of California,* 231 F.3d 572, 584 (9th Cir. 2000).  This is "primarily a factual question, which depends on underlying factual determinations regarding the content and reliability of the validation studies that a Defendant utilized." *Id*. at 585.  Accordingly, the Defendant must prove that the test is "'job related' - that is, 'that it actually measures skills, knowledge, or ability required for successful performance of the job.'" *Id.* at 585 (quoting *Contreras v. City of Los Angeles*, 626 F.2d 659, 662 (9th Cir. 1980)).

The analysis of job-relatedness, in turn, consists of three sub-parts:  1) the employer must first

specify the particular trait or characteristic which the selection device is being used to identify or measure; 2) the employer must then show that the particular trait or characteristic is an important element of work behavior; and 3) the employer must demonstrate by "professionally acceptable methods" that the test is "predictive of or significantly correlated" with that element of work behavior. *Id.*

Since "job related" is a legal term, having different meanings to lay persons and to lawyers, it is very possible that the jury may be misled by NIBCO's references to the Z-test as job related. *See* Fed. R. Evid. 403. Accordingly, because of this likely danger of confusion created by a term that has both legal significance and a common meaning, Defendant should be required to explain and adhere to the legal definition and test of job relatedness throughout trial.

**35. NIBCO's lay witnesses should be precluded from contending that less discriminatory alternatives to the Z-Test were either too burdensome, did not exist, or did not meet NIBCO's business needs. NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703 .**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence that alternatives to the Z-Test were considered and assessed by NIBCO, but can offer only general, unsupported assertions. NIBCO's lay witnesses also do not possess the expertise to opine on the issue of less discriminatory alternatives to the Z-Test. Any expert opinions that NIBCO may proffer on the subject of less discriminatory alternatives were formulated after this action commenced, and therefore did not inform the opinions, inferences, or business decisions of NIBCO's lay witnesses at the time the alleged discriminatory acts occurred.

Therefore, any opinions, statements or inferences expressed by NIBCO's lay witnesses on the subject of less discriminatory alternatives would lack foundation and personal knowledge and would be based on mere speculation and conjecture. Fed.R.Evid. 602, 701. Under Federal Rule of Evidence 403, any probative value of such testimony, which would confuse the issues and mislead the jury, would be substantially outweighed by the danger of unfair prejudice. Therefore, NIBCO's

lay witnesses should be barred from making such claims.

In addition, any expert witnesses NIBCO may call to support this contention are permitted to offer opinion testimony on this matter only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

**36.** **NIBCO's lay witnesses should be precluded from describing, characterizing, or commenting on the Z-Tests as a "neutral" employment practice, and from using any other description or characterization with similar effect. NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703 .**

Pursuant to Federal Rule of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the witnesses that NIBCO is expected to call possess any expertise to properly evaluate whether the Z-Tests were a "neutral" employment practice. They will thus lack the qualifications necessary to permit them to testify as to their opinion on that issue; any such testimony would lack foundation and personal knowledge and would be based on speculation and conjecture. Fed.R.Evid. 602, 701. Under Federal Rule of Evidence 403, any probative value of such lay testimony, which would only serve to confuse and mislead the jury, is substantially outweighed by the danger of unfair prejudice.

In addition, any expert witnesses NIBCO may call to support its view of the Z-Test are permitted to offer opinion testimony on this matter only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

**37.** **NIBCO's lay witnesses should be precluded from opining on whether the contents of the Z-Tests were "job-related." NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703 .**

Pursuant to Federal Rule of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the witnesses that NIBCO is expected to call possess any expertise to properly evaluate whether the

contents of the Z-Tests were "job-related," a legal standard involving specialized knowledge including professional validation of the Z-Tests.  NIBCO's lay witnesses will thus lack the characteristics necessary to permit them to testify as to their opinion on that issue; any such testimony would lack foundation and personal knowledge and would be based on speculation and conjecture. Fed.R.Evid. 602, 701.  Under Federal Rule of Evidence 403, any probative value of such lay testimony, which would only serve to confuse and mislead the jury, would be substantially outweighed by the danger of unfair prejudice.

In addition, any expert witnesses NIBCO may call to support its view of the Z-Test are permitted to offer opinion testimony on this matter only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field."  *Id.*

### 38. **NIBCO should be precluded from deviating from the burden-shifting scheme of disparate impact and arguing, for example, that Plaintiffs have the burden to show alternatives were just as cost-effective and less discriminatory without making reference to Defendant's prior burden to show that the Z-tests was job related.**

It is anticipated that Defendant will attempt to conflate its own burden to establish the validity of the Z-tests with Plaintiffs' subsequent burden to show less discriminatory alternative practices. Defendant should be required to adhere to the burdens of proof of disparate impact cases set forth in 42 U.S.C. § 2000e-2(k) to avoid confusing legal issues and misleading the jury. *See* Fed. R. Evid. 403.  Accordingly, Defendant should be precluded from arguing that Plaintiffs have the burden to show alternatives were just as cost-effective and less discriminatory without making reference to Defendant's prior burden to show that the Z-tests was job related.

Pursuant to 42 U.S.C. § 2000e-2(k)(1)(A), if Plaintiffs demonstrate that the Z-tests caused a disparate impact on the basis of national origin, Defendant must then demonstrate that the Z-tests is "job related for the position in question and consistent with business necessity."  Assuming that the Defendant can prove that the Z-tests has been properly validated, Plaintiffs will still prevail by showing the existence of "alternative employment practices" that would also serve the employer's asserted legitimate interests, but that are less discriminatory. 42 U.S.C. § 2000e-2(k)(1)(A); *see also*

*Association of Mexican-American Educators v. State of California*, 231 F.3d 572, 584 (9th Cir. 2000).

Because of the well-established burden-shifting scheme of disparate impact cases, any deviation from each party's burdens of proof would both confuse legal issues and mislead the jury. *See* Fed. R. Evid. 403. As such, Defendant should be required to adhere to the legal burdens of proof throughout trial and thus, prohibited from arguing, for example, that Plaintiffs have the burden to show alternatives were just as cost-effective and less discriminatory without making reference to Defendant's prior burden to show that the Z-tests was job related.

**39. NIBCO should be precluded from arguing that the disparate impact of the Z-tests on Plaintiffs was excusable because they were having financial problems.**

It is anticipated that Defendant will attempt to excuse the disparate impact of the Z-tests on Plaintiffs by pointing to its financial problems. However, economic troubles are not a defense to a plaintiff's prima facie case of disparate impact and is, therefore, completely irrelevant and improper. *See* Fed. R. Evid. 401, 403.

Evidence of NIBCO's financial problems could only inflame the jury and invoke sympathy for NIBCO. Such evidence is not probative to the jury's determination of the claims that will be before them. Evidence of NIBCO's losses is irrelevant and therefore inadmissible under Federal Rule of Evidence 402.

Furthermore, Defendant should be required to adhere to the legal defenses available once Plaintiffs have successfully made a prima facie case of disparate impact to avoid confusing legal issues and misleading the jury. *See* Fed. R. Evid. 403. Indeed, Defendant can either dispute Plaintiffs' statistical showing of disparity, show there is no causal link between the Z-tests and the disparity, or justify the Z-tests as "job related and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A). As such, Defendant should be precluded from advancing the argument that financial problems excuse its discriminatory employment practices as it plainly misstates the law and could easily mislead the jury. *See* Fed. R. Evid. 403.

**40. NIBCO may not mention Plaintiffs' receipt of workers' compensation, unemployment insurance, disability, or retirement benefits, or other types of collateral sources of income after their termination.**

Under the collateral source rule, the amount of damages suffered by Plaintiffs cannot be reduced by the amount received by Plaintiffs from any source other than Defendant. *See, e.g., Kauffman v. Sidereal Corp.*, 695 F.2d 343, 346-47 (9th Cir. 1982*); Siverson v. United States*, 710 F.2d 557, 560 (9th Cir. 1983); *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534 (9th Cir, 1962); *see also Maggio, Inc. v. United Farm Workers*, 227 Cal.App.3d 847, 877 (1991); *Anheuser-Busch, Inc. v. Starley*, 28 Cal.2d 347, 349 (1946).

Accordingly, Plaintiffs request that this court bar Defendant from introducing evidence, directly or indirectly, in the form of documents or oral testimony, or from otherwise referring in any way to any workers' compensation, employment, disability or retirement benefit payments Plaintiffs might have received, or any other payments made to Plaintiffs or to third party creditors on Plaintiffs' behalf by any collateral source.  As such mention could only tend to predispose the jurors against Plaintiffs' back pay or other monetary claims, the Court should exclude this evidence because is it prejudicial and confusing. *See* Fed. R. Evid. 403.  In any event, the jury will be instructed on these issues prior to its deliberations.

## 41. <u>NIBCO should be precluded from arguing that no back pay is warranted since Plaintiffs would have eventually been laid off anyway.</u>

It is anticipated that Defendant will attempt to argue that Plaintiffs would have eventually been laid off and so no back pay is warranted.  NIBCO should be precluded from making such an argument as it is entirely irrelevant during the liability phase of trial, *see* Fed. R. Evid. 401, 402, and confuses the legal standard applicable to back pay awards.  *See* Fed. R. Evid. 403.

The award of back pay, including all monetary awards based on earnings and other fiscal benefits that the Plaintiffs would have received but for the unlawful employment practice, has a sound statutory basis.  *See* 42 U.S.C. § 2000e-5(g); *see also* Cal. Gov't. Code § 12900 *et seq.*  In *Albemarle Paper Co. v. Moody*, the Court confirmed that there is, in effect, a presumption favoring the award of back pay in Title VII cases where liability has been found.  422 U.S. 405, 420 (1975).  Should the Plaintiffs prevail, therefore, an award of back pay is presumptively appropriate.

Any argument that the Defendant may advance that Plaintiffs would have been eventually laid off and are thus not entitled to back pay is entirely irrelevant and confuses the legal standard regarding

the awarding of back pay. As such, Defendant should be precluded from advancing such an argument. *See* Fed. R. Evid. 401, 402, 403.

**42. NIBCO should be precluded from suggesting that losing a job is a fact of life, not deserving of emotional distress.**

It is anticipated that Defendant will advance the argument that Plaintiffs are not deserving of emotional distress damages as job loss is a fact of life. Defendant should be precluded from making such an argument as it is contradictory to established law, confuses the legal standard of awarding emotional distress damages, and will likely mislead the jury. *See* Fed. R. Evid. 403.

The California Supreme Court has ruled that: "in a civil action under the FEHA, all relief generally available in noncontractual actions, including punitive damages, may be obtained." *Commodore Home Systems, Inc. v. Superior Court,* 32 Cal. 3d 211, 221 (1982). Further, the model verdict form in CACI for a FEHA disparate impact case provides for awarding past and future non-economic damages, including mental suffering. CACI § VF-2502 at ¶ 6, § VF-2503 at ¶ 10 (April 2007).

As such, it is well established that employment discrimination can cause emotional distress and that such distress is compensable. Any argument to the contrary would be in direct opposition to the law, would confuse the legal standard regarding emotional distress damages, and would, therefore, likely mislead the jury. *See* Fed. R. Evid. 403. For these reasons, Defendant should be precluded from arguing that losing a job is not deserving of emotional distress damages.

**43. NIBCO may not inquire into or introduce evidence purporting to concern Plaintiffs' sources of emotional distress to the extent that doing so would violate their right to privacy under Article I, Section 1 of the California Constitution.**

The California Constitution recognizes a right to privacy in one's medical history. *See, e.g., Pettus v. Cole*, 49 Cal.App.4th 402, 440 (1996) ('the 'zones of privacy' created by article I, section 1 extend to the details of one's medical history"). Accordingly, the courts have drawn strict limits on the extent to which a person's medical history may be explored in the litigation context. *See, e.g., Vinson v. Superior Court*, 43 Cal.3d 833, 841 (1987) (plaintiff's initiation of a sexual harassment suit, even where she claimed to have suffered "rather extreme mental and emotional damage," did not lead to a waiver all

privacy interests or subject her to "unfettered mental probing"); *Britt v. Superior Court*, 20 Cal.3d 844, 864 (1978) ("Plaintiffs are 'not obligated to sacrifice all privacy to seek redress for a specific [physical,] mental or emotional injury"); *Tylo v. Superior Court*, 55 Cal.App..4[th] 1379, 1388 (1997) (in discrimination and wrongful termination action, where plaintiff asserted emotional injuries, discovery was limited to those injuries resulting from the alleged wrongs, and she could only be questioned regarding her marital relationship only to the extent that it related to those claims).

Similarly, apart from reliance on the California constitutional right to privacy, federal courts have found that applicable privileges are not waived simply because a litigant has alleged "garden variety" emotional distress in the context of a wrongful termination case. *See, e.g., Fritsch v. City of Chula Vista,* 187 F.R.D. 614, 633 (S.D. Cal. 1999) (holding that plaintiff's psychotherapist-patient privilege was not waived, even for the Defendant employer's stated "purpose of showing that [her] emotional distress was caused at least in part by events and circumstances that were not [related to the circumstances of her termination].").

Accordingly, absent a clear nexus between the evidence or questioning sought to be used by NIBCO and the emotional injuries alleged by each individual Plaintiff in the remedies phase of this trial, this Court should disallow any attempt to delve into each Plaintiffs' medical and emotional history. Moreover, NIBCO should be barred from engaging in any lines of questioning into alleged "alternate" sources of emotional distress that are entirely speculative insofar as they are not supported by a basis in competent evidence.

### 44. **NIBCO should be precluded from contending that it should not be punished because it already lost so much money.**

The jury can consider a Defendant's financial condition in determining an appropriate punitive damages award. *See White v. Ford Motor Co.,* 500 F.3d 963, 977 (9th Cir. 2007). However, NIBCO should be precluded from introducing any evidence of financial losses during the liability phase of trial. Evidence of NIBCO's losses could only inflame the jury and invoke sympathy for NIBCO. Such evidence is not probative to the jury's determination of the claims that will be before them. Evidence of NIBCO's losses is irrelevant and therefore inadmissible under Federal Rule of Evidence 402.

Furthermore, under Federal Rule of Evidence 403, the probative value of such testimony would be substantially outweighed by the danger of unfair prejudice, would confuse the issues, and would confuse and mislead the jury.  Thus, NIBCO should be barred from making this claim.

**45. NIBCO's lay witnesses may not contend that it was expensive or too costly to translate job-related materials into languages other than English at the Fresno facility because NIBCO has not offered any admissible evidence to support this claim.  NIBCO's  expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703 .**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  None of the lay witnesses that NIBCO is expected to call possess any expertise as to the cost of translation of job-related materials, nor has NIBCO offered any admissible evidence that any lay opinions or inferences are based on any examination of such costs or empirical data.  Any expert opinions that NIBCO may proffer to support this contention were formulated after this action commenced, and therefore did not inform the opinions, inferences, or business decisions of NIBCO's lay witnesses at the time the alleged discriminatory acts occurred.

Moreover, NIBCO's Facility Manager Douglas Kieper admitted that to the best of his knowledge, NIBCO never formally assessed the effectiveness, availability, or cost of offering safety quizzes (Bates # NIBCO 004067-004080) in languages other than English.  *See* Defendant NIBCO, Inc.'s Responses to Plaintiffs' Request for Admission #88, Blankenship Decl. ¶ 5  , Exh. E .

Thus, any opinions, statements or inferences expressed by NIBCO's lay witnesses as to the expense involved in translating job-related materials would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 802. Under Federal Rule of Evidence 403, the probative value of such testimony, which would confuse the issues and mislead the jury, would be substantially outweighed by the danger of unfair prejudice.  Therefore, NIBCO's lay witnesses should be barred from making this claim.

In addition, any expert witnesses NIBCO may call to support this contention are permitted to offer opinion testimony on this matter only to the extent that such opinion testimony meets the

requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

**46. NIBCO's lay witnesses may not contend that it was expensive or too costly to acquire material safety data sheets in Spanish on in other languages other than English for the Fresno facilitybecause NIBCO has not offered any admissible evidence to support this claim. NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the witnesses that NIBCO is expected to call has offered any admissible evidence that it actually ever determined the cost of acquiring material safety data sheets in Spanish or in other languages other than English, nor has NIBCO offered any admissible evidence that any lay opinions or inferences are based on any examination of such costs or empirical data. Any expert opinions that NIBCO may proffer to support this contention were formulated after this action commenced, and therefore did not inform the opinions, inferences, or business decisions of NIBCO's lay witnesses at the time the alleged discriminatory acts occurred.

Thus, any opinions, statements or inferences expressed by NIBCO's lay witnesses as to the expense involved in acquiring material safety data sheets in Spanish or other non-English languages would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 802. Under Federal Rule of Evidence 403, the probative value of such testimony, which would confuse the issues and mislead the jury, would be substantially outweighed by the danger of unfair prejudice. Therefore, NIBCO's lay witnesses should be barred from making this claim.

In addition, any expert witnesses NIBCO may call to support this contention are permitted to offer opinion testimony on this matter only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

**47. NIBCO's lay witnesses may not contend that it was expensive or too costly to provide**

**job training in languages other than English at the Fresno facility because NIBCO has not offered any admissible evidence to support this claim.  NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  None of the lay witnesses that NIBCO is expected to call possess any expertise as to the cost of providing job training  in languages other than English, nor has NIBCO offered any admissible evidence that any lay opinions or inferences are based on any examination of such costs and empirical data..  Any expert opinions that NIBCO may proffer to support this contention were formulated after this action commenced, and therefore did not inform the opinions, inferences, or business decisions of NIBCO's lay witnesses at the time the alleged discriminatory acts occurred.

Thus, any opinions, statements or inferences expressed by NIBCO's lay witnesses as to the expense involved in providing job training  in languages other than English would lack foundation and personal knowledge and are based on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 802.  Under Federal Rule of Evidence 403, the probative value of such testimony, which would confuse and issues and mislead the jury, would be substantially outweighed by the danger of unfair prejudice.  Therefore, NIBCO's lay witnesses should be barred from making this claim.

In addition, any expert witnesses NIBCO may call to support this contention are permitted to offer opinion testimony on this matter only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field."  *Id.*

**48. NIBCO may not contend that Plaintiffs could not be effectively trained in their job duties through hands-on demonstration or bilingual co-worker interpretation, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs

or the efficacy of job training at the Fresno facility through hands-on demonstration or bilingual co-worker interpretation, but offer only general, unsupported assertions.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs.  Thus, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge but on speculation and conjecture or inadmissible hearsay.  Fed. R. Evid. 602, 701, 702, 703, 802.

**49.  NIBCO's lay witnesses may not contend that it was inefficient for co-workers to interpret for each other at the Fresno facility because NIBCO has not offered any admissible evidence to support this claim.  NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  None of the lay witnesses that NIBCO is expected to call possess any expertise as to the inefficiency, or efficiency, of specific interpretation methods.  Any expert opinions that NIBCO may proffer to support this contention were formulated after this action commenced, and therefore did not inform the opinions, inferences, or business decisions of NIBCO's lay witnesses at the time the alleged discriminatory acts occurred.

Moreover, NIBCO admits that it never calculated or otherwise definitively ascertained the amount of time its bilingual employees interpreted at the Fresno facility during NIBCO's ownership. *See* Defendant NIBCO, Inc.'s Supplemental Response to Plaintiffs' Request for Admission #97, Blankenship Decl., ¶ 6, Exh F...

Therefore, any opinions, statements or inferences expressed by NIBCO's lay witnesses as to any purported inefficiency of co-worker interpretation would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 802.  Under Federal Rule of Evidence 403, the probative value of such testimony, which would confuse the issues and mislead the jury, is substantially outweighed by the danger of unfair prejudice.   Therefore, NIBCO's lay witnesses should be barred from making this claim.

In addition, any expert witnesses NIBCO may call to support this contention are permitted to

offer opinion testimony on this matter only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

**50. NIBCO's lay witnesses may not contend that it was expensive or too costly for NIBCO to use outside interpreters at the Fresno facility because NIBCO has not offered any admissible evidence to support this claim. NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge. None of the lay witnesses that NIBCO is expected to call possess any expertise as to the cost of specific interpretation methods, nor has NIBCO offered any admissible evidence that any lay opinions or inferences are based on any examination of such costs or empirical data. Any expert opinions that NIBCO may proffer to support this contention were formulated after this action commenced, and therefore did not inform the opinions, inferences, or business decisions of NIBCO's lay witnesses at the time the alleged discriminatory acts occurred.

Thus, any opinions, statements or inferences expressed by NIBCO's lay witnesses as to the expense involved in utilizing outside interpreters would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 802. Under Federal Rule of Evidence 403, the probative value of such testimony, which would confuse the issues and mislead the jury, would be substantially outweighed by the danger of unfair prejudice. Therefore, NIBCO's lay witnesses should be barred from making this claim.

In addition, any expert witnesses NIBCO may call to support this contention are permitted to offer opinion testimony on this matter only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

**51. NIBCO may not contend that co-workers at the Fresno facility were not able to accurately interpret for each other or for Plaintiffs, or that there were problems understanding co-worker interpretation because NIBCO has not offered any admissible**

**evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  None of the lay witnesses that NIBCO is expected to call possess any personal knowledge or expertise as to the accuracy, or inaccuracy, of co-worker interpretation at the Fresno facility.  Therefore, any opinions, statements or inferences expressed by NIBCO as to any purported inaccuracies of interpretation provided by co-workers would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 802.  Under Federal Rule of Evidence 403, the probative value of such testimony, which would confuse and mislead the jury, would be substantially outweighed by the danger of unfair prejudice.

In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs.  Moreover, any expert opinions that NIBCO may proffer to support this contention were formulated after this action commenced and are not based on sufficient facts to meet the requirements of admissible testimony under Federal Rule of Evidence 702.

Thus, NIBCO should be barred from making this claim.

**52. NIBCO may not contend that at the Fresno facility, co-workers were used "extensively" to interpret for each other or for Plaintiffs because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.   None of the witnesses that NIBCO is expected to call has offered admissible evidence on this contention *specific* to Plaintiffs.  In fact, NIBCO admits that it never calculated or otherwise definitively ascertained the precise amount of time its bilingual employees interpreted at the Fresno facility during NIBCO's ownership. *See* Defendant NIBCO, Inc.'s Supplemental Response to Plaintiffs' Request for Admission #97, Blankenship Decl., ¶ 6, Exh. F..

Therefore, any assertions made by NIBCO's witnesses as to the purported "extensive" use of co-worker interpretation would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 802.  Under Federal Rule of

Evidence 403, the probative value of such testimony is substantially outweighed by the danger of unfair prejudice.  facility

In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs.  Moreover, any expert opinions that NIBCO may proffer to support this contention were formulated after this action commenced and are not based on sufficient facts to meet the requirements of admissible testimony under Federal Rule of Evidence 702.

Therefore, NIBCO should be barred from characterizing the use of bilingual interpreters at the Fresno facility as "extensive" (or any characterization with similar effect).

**53.  NIBCO may not contend that Plaintiffs had difficulty communicating with quality control personnel at the Fresno facility because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs.  Thus, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge but on speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

**54.  NIBCO may not contend that Plaintiffs' job duties typically required them to engage in constant, frequent, or extensive verbal communication at the Fresno facility because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  NIBCO should be barred from making this claim because it lacks foundation and is not based on personal knowledge.

**55.  NIBCO's lay witnesses may not contend that Vietnamese was in fact spoken at the Fresno facility because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as

to any matter that is not within their personal knowledge and that is based on speculation. None of the witnesses that NIBCO is expected to call has offered any admissible evidence that Vietnamese was in fact spoken by employees at the Fresno facility, but offer only general, unsupported assertions. Therefore, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge but on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 802.

56. **NIBCO may not contend that dialectical differences between the White and Green dialects of Hmong facilitymeant that employees at the Fresno facility who spoke one Hmong dialect could not communicate with those who spoke the other, or that interpreters for both dialects were required for effective communication at the facility. NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the witnesses that NIBCO is expected to call has offered any admissible evidence to support this contention, but offer only general, unsupported assertions; in fact, none of those witnesses even alludes to or appears to be aware of any such dialectical distinctions. In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject. Therefore, NIBCO should be barred from making this claim, as it lacks foundation and would be based not on personal knowledge but on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 702, 802. Moreover, under Federal Rule of Evidence 403, such testimony should not be permitted because it would be unfairly prejudicial and would only serve to confuse and mislead the jury.

57. **NIBCO may not contend that job-related documents and forms were not properly filled out by Plaintiffs or other employees who were demoted to P-level, or were incorrectly filled out due to their limited English proficiency, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs

or other employees who were demoted to P-level, nor specific to their limited English proficiency, but only general, unsupported assertions relating to the workforce at large in the Fresno facility.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore, NIBCO should be barred from making this claim, because it would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

### 58. **NIBCO may not contend that the forms Plaintiffs filled out as part of their job duties were not simple in nature, involving the entry of simple numeric information, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  Among other things, none of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs and the forms they filled out as part of their job duties.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs. Therefore, NIBCO should be barred from making this claim with respect to Plaintiffs, as it lacks foundation and would not be based on personal knowledge but on speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

### 59. **NIBCO may not contend that vis-à-vis other employees at the Fresno facility, Plaintiffs or other employees demoted to P-level had a higher rate of errors in filling our their time cards, or had a higher rate of such errors due to their limited English proficiency, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or other employees demoted to P-level, nor as to the time cards they filled out, the cause of any errors, or any empirical data in this regard.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore, NIBCO should be barred from making this claim, as it lacks

foundation and would not be based on personal knowledge but on speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 702, 802.

**60. NIBCO may not contend that Plaintiffs or other employees who were demoted to P-level could not follow work orders or assembly instructions, or could not follow work orders or assembly instructions due to their limited English proficiency, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or other employees who were demoted to P-level, nor specific to their limited English proficiency, but offer only general, unsupported assertions relating to the workforce at large in the Fresno facility. In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees. Therefore, NIBCO should be barred from making this claim, because it would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 702, 802.

**61. NIBCO may not contend that Plaintiffs or other employees who were demoted to P-level could not perform their jobs duties, or could not perform their jobs due to their limited English proficiency, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence to support this contention *specific* to Plaintiffs or other employees who were demoted to P-level, nor specific to their limited English proficiency, but offer only general, unsupported assertions.. In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees. Therefore, NIBCO should be barred from making this claim, because it would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 702, 802.

**62. NIBCO may not contend that English proficiency was necessary in order for Plaintiffs or other employees who were demoted to P-level to perform their job duties because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or other employees who were demoted to P-level.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.   Therefore, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge but on speculation and conjecture. Fed.R.Evid. 602, 701, 702.

**63. NIBCO may not contend that Plaintiffs or other employees who were demoted to P-level were not able to perform job duties as "utility players" or "floaters" who could function in different departments in the Fresno facility as needed.  NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or other employees who were demoted to P-level.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge but on general speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

**64. NIBCO's lay witnesses may not argue that English proficiency was necessary in order to operate as "utility players" or "floaters" who could function in different departments in the Fresno facility as needed.  NIBCO has not offered any admissible evidence to support this claim.  NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to English proficiency as it related to functioning as a "utility player" or "floater," but offer only general, unsupported assertions. Therefore, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge but on speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 802.

In addition, any expert witnesses NIBCO may call to support this contention are permitted to offer opinion testimony on this matter only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

**65. NIBCO may not contend that the job duties of Plaintiffs at the Fresno facility actually or typically involved reading or writing in English with any frequency because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs and their particular job duties. In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs. Therefore, NIBCO should be barred from making this claim, as it lacks foundation and personal knowledge and would be based on speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 702, 802.

**66. NIBCO may not contend that Plaintiffs had to read a "Product Quality Plan" in order to perform their jobs, or could not perform their jobs if they did not read a "Product Quality Plan," because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs

or the performance of their jobs in relation to the "Product Quality Plan." In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs. Thus, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge but on speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 702, 802.

**67. NIBCO may not contend that Plaintiffs were not capable of understanding or using a "Product Quality Plan" due to their limited English proficiency because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs. In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs. Thus, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge but on speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 702, 802.

**68. NIBCO may not contend that vis-à-vis other employees at the Fresno facility, Plaintiffs or other employees who were demoted to P-level were less productive or efficient in their jobs due to their limited English proficiency because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs, other employees who were demoted to P-level, or their limited English proficiency, nor any empirical data, but offer only general, unsupported assertions. In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees. Therefore, NIBCO should be barred from making this claim, because it lacks foundation and would not be based on personal knowledge but on mere speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 702, 802.

**69. NIBCO's lay witnesses may not contend that compared to other employees, Plaintiffs or other employees who were demoted to P-level were involved in more accidents or injuries at the Fresno facility, or were involved in more accidents or injuries due to their limited English proficiency, because NIBCO has not offered any admissible evidence to support this claim.  NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to the rates of injuries or accidents of Plaintiffs or other employees who were demoted to P-level, nor specific to their limited English proficiency, but only general, unsupported assertions relating to the workforce at large and the general occurrence of accidents or injuries in the Fresno facility.  Moreover, NIBCO admits that the rates of injuries of workers whose English proficiency was limited were not analyzed vis-à-vis the rate of injury of English-speaking workers. *See* Defendant NIBCO, Inc.'s Responses to Plaintiffs' Revised Requests for Admission # 65, Blankenship Decl., ¶ 7, Exh.G.  Any statements by NIBCO implicating Plaintiffs or other employees who were demoted to P-level, or their English language proficiency as it related to the occurrence of accidents or injuries,  would lack foundation and personal knowledge and would be based on speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 802.

Furthermore, none of the lay witnesses that NIBCO is expected to call possess any expertise to evaluate  workplace health and safety, which is a highly specialized field regulated at both the federal and state level by occupational safety and health agencies.  Thus, any opinions or inferences expressed by NIBCO's lay witnesses as to the cause of any accidents or injuries at the Fresno facility and linking the rate of accidents and injuries to limited English proficiency would lack foundation and personal knowledge and would be based on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 802.

Therefore, NIBCO should be barred from making this claim.

facilityNIBCO should also be precluded from making statements about the rate of accidents in

general at the Fresno facility, as irrelevant and inadmissible under Federal Rules of Evidence 401 and 402 or unfairly prejudicial under Federal Rule of Evidence 403.

Finally, if NIBCO's expert witnesses are permitted to offer opinion testimony on this matter, such experts may do so only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

70. **NIBCO's lay witnesses may not contend that in 1996, the Fresno facility had the second highest injury rate out of 14 facilitys and the seventh highest injury severity rate because NIBCO has not offered any admissible evidence to support this claim. NIBCO's expert witnesses may only proffer opinions on this matter that meet the requirements of Rules 702 and 703.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation. NIBCO may not make the above contention without the proper foundation.

None of the lay witnesses that NIBCO is expected to call possess any expertise as to workplace health and safety, which is a highly specialized field regulated at both the federal and state level by occupational safety and health agencies. Thus, any statements by NIBCO's lay witnesses as to the injury rates at the Fresno facility compared to those at other facilitys would lack foundation and personal knowledge and would be based on speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 802.

NIBCO admits that the rates of injuries of workers whose English proficiency was limited were not analyzed vis-à-vis the rate of injury of English-speaking workers. *See* Defendant NIBCO, Inc.'s Responses to Plaintiffs' Revised Requests for Admission # 65, Blankenship Decl., ¶ 7, Exh.G.. Thus, generalized statements about the purported injury rates at the Fresno facility which are not specific to Plaintiffs, other employees who were demoted to P-level, or limited English proficiency, are irrelevant and inadmissible under Federal Rules of Evidence 401 and 402. Moreover, under Federal Rule of Evidence 403, any probative value of such testimony is substantially outweighed by the danger of unfair prejudice. Such testimony would confuse the issues and mislead the jury through the prejudicial

implication that the injury rates at the Fresno facility were high due to Plaintiffs.   Therefore, NIBCO should be barred from making this claim.

In addition, if NIBCO's expert witnesses are permitted to offer opinion testimony on this matter, such experts may do so only to the extent that such opinion testimony meets the requirements of Federal Rules of Evidence 702 and 703 and is supported by facts or data "reasonably relied on by experts in the particular field." *Id.*

71. **NIBCO may not contend that Plaintiffs or other employees who were demoted to P-level committed more production errors, or committed more production errors due to their limited English proficiency, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence, such as empirical data that rates of error were quantified or compared, *specific* to Plaintiffs, other employees who were demoted to P-level, or limited English proficiency.  Instead, NIBCO's witnesses have offered only general, unsupported assertions relating to the workforce at large and the general occurrence of production errors in the Fresno facility.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore, NIBCO should be barred from making this claim, as it lacks foundation and personal knowledge and would be based on speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

72. **NIBCO may not contend that Plaintiffs or employees who could not read written work instructions and product specifications in English were more likely to make a product that was incorrect or out of specification because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence specific to Plaintiffs,

or empirical data that rates or causes of production error were assessed, quantified or compared.   In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore, NIBCO should be barred from making this claim, as it lacks foundation and personal knowledge and would be based on speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

**73. NIBCO's lay witnesses may not contend that "rather than read the work order, associates with limited English skills would think they remembered the part, their memories would be wrong, and they would pull the incorrect part from the shelf" because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or their limited English proficiency, nor any empirical data to support this contention.  Any such general assertion by NIBCO's witnesses lacks foundation and personal knowledge and is based on speculation and conjecture about what employees with limited English proficiency may or may not have *thought* or remembered, and that the cause of pulling incorrect parts was an employee's limited English proficiency.  Fed.R.Evid. 602, 701.  Under Federal Rule of Evidence 403, any probative value of such testimony is outweighed by the danger of unfair prejudice.  Therefore, NIBCO should be barred from making this claim.

**74. NIBCO may not contend that inaccurate interpretation by co-workers at the Fresno facility caused product parts to be assembled incorrectly by Plaintiffs because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  None of the lay witnesses that NIBCO is expected to call possess any personal knowledge or expertise as to the accuracy, or inaccuracy, of co-worker interpretation.  Therefore, any opinions, statements or inferences expressed by NIBCO that any purported inaccuracies of co-worker interpretation caused products to be assembled incorrectly would lack foundation and personal knowledge and would be based on mere speculation and conjecture or

inadmissible hearsay.  Fed.R.Evid. 602, 701, 802.  Under Federal Rule of Evidence 403, any probative value of such testimony, which would confuse and mislead the jury, is substantially outweighed by the danger of unfair prejudice.

In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs.  Moreover, any expert opinions that NIBCO may proffer to support this contention were formulated after this action commenced and are not based on sufficient facts to meet the requirements of admissible testimony under Federal Rule of Evidence 702.

Thus, NIBCO should be barred from making this claim.

75. **NIBCO's lay witnesses may not contend that "associates who were not proficient in the English language could not always identify the materials or follow molding instructions, and as a result product was molded incorrectly because the wrong material was used or instructions were not followed" because NIBCO has not offered any admissible evidence to support this claim**.

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or their limited English proficiency, nor any empirical data to support this contention.  Any such general assertion by NIBCO's witnesses lacks foundation and personal knowledge and is based on speculation and conjecture or inadmissible hearsay that the cause of incorrectly molded product was an employee's limited English proficiency.  Fed.R.Evid. 602, 701, 802.  Under Federal Rule of Evidence 403, any probative value of such testimony, which would confuse and mislead the jury, is substantially outweighed by the danger of unfair prejudice.  Therefore, NIBCO should be barred from making this claim.

76. **NIBCO may not contend that it was more expensive to fix production errors at the Fresno facility if Plaintiffs could not communicate in English with maintenance personnel because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as

to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs, nor as to any assessment of costs or empirical data in this regard.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs.  Therefore, NIBCO should be barred from making this claim, as it lacks foundation and personal knowledge and would be based on speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.  Under Federal Rule of Evidence 403, any probative value of such testimony, which would confuse and mislead the jury, is substantially outweighed by the danger of unfair prejudice.

**77. NIBCO's lay witnesses may not contend that the employees remaining at the Fresno facility after Plaintiffs were laid off could read work orders because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  NIBCO should be barred from making this general assertion because it lacks foundation and is not based on personal knowledge but on speculation and conjecture or inadmissible hearsay as to whether work orders could be read by certain employees.  Fed.R.Evid. 602, 701, 802.  It is also unfairly prejudicial under Federal Rule of Evidence 403.

**78. NIBCO may not contend that customer complaints regarding product quality or timeliness of delivery were attributable to Plaintiffs, other employees who were demoted to P-level, or limited English proficiency because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs, other employees who were demoted to P-level, or limited English proficiency, nor any empirical data as to the source of customer complaints, but offer only general, unsupported assertions relating to customer complaints.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore,

NIBCO should be barred from making this claim, as it lacks foundation and would be based not on personal knowledge but on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

**79. NIBCO may not contend that any product returns or financial losses that the company suffered were attributable to Plaintiffs, other employees demoted to P-level, or limited English proficiency because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs, other employees who were demoted to P-level, or limited English proficiency, but offer only general, unsupported assertions regarding customer complaints or financial losses.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore, NIBCO should be barred from making this claim, as it lacks foundation and would be based not on personal knowledge but on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

**80. NIBCO may not contend that its machines or equipment at the Fresno facility were damaged by Plaintiffs or other employees who were demoted to P-level, or were damaged due to their limited English proficiency, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or other employees who were demoted to P-level, nor specific to their limited English proficiency, but only general, unsupported assertions.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore, NIBCO should be barred from making this claim, as it lacks foundation and would be based not on personal knowledge but on mere speculation and

conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

Absent specific evidence linking any purported  damage to Plaintiffs or other employees who were demoted to P-level, NIBCO should also be barred from making statements about machine or equipment damage in general, as irrelevant and inadmissible under Federal Rules of Evidence 401 and 402 or unduly prejudicial under Rule 403.

81. **NIBCO's lay witnesses may not contend that it planned to utilize high-tech equipment and machines at the Fresno facility because NIBCO has not offered any admissible evidence that the implementation of any such plan affected Plaintiffs' job duties before Plaintiffs were terminated from employment by NIBCO.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs  but only general, unsupported assertions about future business plans that were never fully implemented. Such statements about future business plans are based on impermissible speculation and conjecture. Fed.R.Evid. 602, 701.  They also lack probative value and are irrelevant and inadmissible under Federal Rules of Evidence 401 and 402.

82. **NIBCO may not argue that Plaintiffs or other employees who were demoted to P-level were not able to operate new machinery and equipment that NIBCO wanted to utilize in the Fresno facility because NIBCO has not offered any admissible evidence to support this claim.  Similarly, NIBCO may also not argue that the company needed employees proficient in English to operate new machinery and equipment that NIBCO wanted to utilize at the Fresno facility because NIBCO has not offered any admissible evidence that Plaintiffs or other employees who were demoted to P-level were not in fact able to operate such machinery and equipment.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence to support the contention that Plaintiffs or other employees who were demoted to P-level were not in fact able to

operate new machinery and equipment at the Fresno facilityfacility, but offer only general, unsupported assertions. In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs or other limited English proficient employees.  Therefore, NIBCO should be barred from making this claim, as it as it lacks foundation and would not be based on personal knowledge but on mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

**83. NIBCO may not contend that Plaintiffs were not capable of using or could not be trained on the "IQ" computer system because some English words may have appeared on some of its screens.  NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge and that is based on speculation.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or their limited English proficiency, but offer only general, unsupported assertions regarding the "IQ" system.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs.  Therefore, NIBCO should be barred from making this claim with respect to Plaintiffs, as it lacks foundation and is not based on personal knowledge but mere speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 702, 802.

**84. NIBCO's lay witnesses may not contend that the "IQ" computer system was ever fully operational in any department when Plaintiffs were laid off by NIBCO because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  None of the witnesses that NIBCO is expected to call has offered any admissible evidence that the "IQ" system was in fact fully operational during the relevant time period of Plaintiffs' employment with NIBCO, a fact which has not been controverted by NIBCO.  Therefore, NIBCO should be barred from making this claim because it lacks foundation and is not based on personal knowledge.  Fed.R.Evid. 602, 701.

**85. NIBCO may not contend that information entered into the "IQ" system was not simple**

**in nature or the same or similar to information that Plaintiffs were already entering manually onto forms, because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  None of the lay witnesses that NIBCO is expected to call has offered any admissible evidence *specific* to Plaintiffs or the information Plaintiffs entered manually onto forms compared to the information entered into the "IQ" system.  In addition, in none of their disclosures or testimony have NIBCO's experts proffered an opinion on this subject *specific* to Plaintiffs.  Therefore, NIBCO should be barred from making this claim, as it lacks foundation and would not be based on personal knowledge.  Fed.R.Evid. 602, 701, 702.

**86. NIBCO may not contend that "different philosophies, procedures, and requirements" for employees existed between NIBCO and Wadefacility.  NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  NIBCO should be barred from making this claim because it lacks foundation and is not based on personal knowledge but on speculation and conjecture or inadmissible hearsay.  Fed.R.Evid. 602, 701, 802.

**87. NIBCO may not contend that it was not in a financial position to hire additional supervisors at the Fresno facility because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge.  NIBCO should be barred from making this unsupported claim because it lacks foundation and is not based on personal knowledge but on speculation and conjecture.  It is also irrelevant and therefore inadmissible under Federal Rules of Evidence 401 and 402.

**88. NIBCO may not argue that it encountered "substantial difficulty hiring technically skilled employees for the Fresno facility" because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge. NIBCO should be barred from making this unsupported claim because it lacks foundation and is not based on personal knowledge but on speculation and conjecture. In addition, under Federal Rule of Evidence 403, the probative value of such testimony, which would only serve to confuse and mislead the jury, is substantially outweighed by the danger of unfair prejudice.

### 89. **NIBCO may not present evidence of Wade's financial condition after NIBCO sold the facility back to Wade because NIBCO has not offered any admissible evidence to support this claim.**

Pursuant to Federal Rules of Evidence 602 and 701, lay witnesses are barred from testifying as to any matter that is not within their personal knowledge. NIBCO should be barred from making this unsupported claim because it lacks foundation and is not based on personal knowledge but on speculation and conjecture or inadmissible hearsay. Fed.R.Evid. 602, 701, 802. In addition, under Federal Rule of Evidence 403, the probative value of such testimony, which would only serve to confuse and mislead the jury, is substantially outweighed by the danger of unfair prejudice.

### 90. **All NIBCO experts who fail to comply with the requirements of Federal Rules of Evidence 702, 703, and 705 should not be allowed to give expert testimony at trial.**

It would be improper to allow testimony from designated experts who are not qualified and reliable, lack personal knowledge, and/or fail to disclose the basis of their opinion. *See* Fed. R. Evid. 702, 703, 705.

The Court should exclude all evidence, testimony, and argument from Defendant's expert witnesses that does not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993). "Expert testimony is often deemed non-helpful and therefore inadmissible, when offered to explain an issue of fact that the average person can understand by use of common knowledge or common sense." *See* 4 Jack B. Weinstein and Margaret A. Bert, Weinstein's Federal Evidence §702.03[3] (Matthew Bender 2d ed. 2000). Drawing inferences from the evidence and determining credibility are both functions reserve exclusively for the jury. *See Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

Moreover, such testimony must be relevant and reliable. *Mukhar v. California State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (*citing Daubert,* 509 U.S. at 589).  This court must act as a "gatekeeper" to exclude "junk science" that does not meet the reliability standards of Rule 702 by making a preliminary determination as to whether the expert's testimony is reliable. *Id., (citing Kumho Tire,* 526 U.S. at 147-48; *GE v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 589-90, 592-93). As the Ninth Circuit recently emphasized, "Maintaining Daubert's standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhar*, 299 F.3d at 1063-64.

## 91. **NIBCO expert Rick Sarkisian should be precluded from testifying since he has never met, tested, examined or interviewed Plaintiffs.**

Since Dr. Sarkisian, Defendant's vocational rehabilitation specialist, has not met, tested, examined, or interviewed Plaintiffs, he should not be allowed to testify without a hearing, pursuant to Federal Rule of Evidence 104, to determine the basis of his opinions, outstanding hearsay issues, *see* Fed. R. Evid. 801, 802, and relevancy issues. *See* Fed. R. Evid. 401, 402, 403.

## 92. **NIBCO experts should be precluded from offering any opinion on the ultimate issues in this case.**

Defendant has designated experts Gerald Barrett, Malcolm Cohen, Jay Finkelman, David Smith, Ruben Burnias, and Ricky Sarkisian.  Notwithstanding Plaintiffs' objection to such testimony and the scope thereof, Defendant, it is anticipated, will attempt to call them to testify concerning a variety of subject matters.  The experts, however, should not be allowed to testify as to any ultimate issue in this case, the law of this case, or express any opinions involving the ultimate issue in this case.  They should not be allowed to render such opinions or any other opinions on matters about which they do not have expertise.  *See* Fed. R. Evid. 704(a).  A hearing, pursuant to Federal Rule of Evidence 104, may be necessary to protect the record.

## 93. **NIBCO should be precluded from arguing that Plaintiffs' experts' use of data in their statistical analyses that falls outside the limitations period is inappropriate.**

Defendant should be precluded from arguing that Plaintiffs' experts inappropriately use time-

barred data in their statistical analyses; to do so would be to relitigate an issue that has already been ruled upon in this case– and would be a waste of both time and judicial resources.  On July 12, 2007, Judge Ishii ruled in his Order on Cross Motions for Summary Judgment that "[t]o the extent that data falls outside the limitations period, use of that data by [Plaintiff's expert Dr.] Lepowsky was still appropriate as background data." Order on Cross Motions for Summary Judgment, July 12, 2007 at 37; *accord AMTRAK v. Morgan*, 536 U.S. 101, 109, 115 (2002).

In the Joint Pre-Trial Conference Statement of August 4, 2008, Defendant suggests that it intends to relitigate this issue, contrary to Judge Ishii's order, but it has failed to comply with the Local Rules requirement to file a timely Motion for Reconsideration. *See* E.D. Civ. L.R. 78-230(k).  Absent a prior ruling on a timely filed Motion for Reconsideration of Judge Ishii's Order, demonstrating that new or different facts or circumstances exist, *see* E.D. Civ. L.R. 78-230(k)(3), this Court should not permit Defendant to argue that Plaintiffs' experts inappropriately use time-barred data in their statistical analyses.  For that reason, any in limine motions NIBCO may file on this matter should be denied, and any argument by NIBCO that this matter is a disputed fact still open for determination should be rejected.

### 94. NIBCO should be precluded from arguing that Plaintiffs' experts inappropriately aggregated data.

Defendant should be precluded from arguing that Plaintiffs' experts used inappropriately aggregated data in their statistical analyses; to do so would be to relitigate an issue that has already been ruled upon in this case – and would be a waste of both time and judicial resources.  On July 12, 2007, Judge Ishii ruled in his Order on Cross Motions for Summary Judgment that "Plaintiffs may aggregate data because aggregation generally reflects the facts of this case: NIBCO essentially gave its employees two opportunities to pass the Z-tests. The Court is not persuaded that Lepowsky's aggregation of the first two test results was inappropriate or that his conclusions are unreliable." Order on Cross Motions for Summary Judgment, July 12, 2007 at 36, *citing Paige v. California*, 291 F.3d 1141, 1148-49 (9th Cir. 2002); *Bouman v. Block*, 940 F.2d 1211, 1226 (9th Cir. 1991); *Eldredge v. Carpenters, 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 833 F.2d at 1339 n.7 (9th Cir. 1987).

In the Joint Pre-Trial Conference Statement of August 4, 2008, Defendant suggests that it intends to relitigate this issue, contrary to Judge Ishii's order, but it has failed to comply with the Local Rules requirement to file a timely Motion for Reconsideration. *See* E.D. Civ. L.R. 78-230(k).  Absent a prior ruling on a timely filed Motion for Reconsideration of Judge Ishii's Order, demonstrating that new or different facts or circumstances exist, *see* E.D. Civ. L.R. 78-230(k)(3), this Court should not permit Defendant to argue that Plaintiffs' experts used inappropriately aggregated data in their statistical analyses.   For that reason, any in limine motions NIBCO may file on this matter should be denied, and any argument by NIBCO that this matter is a disputed fact still open for determination should be rejected.

**95. <u>NIBCO should be precluded from arguing that Plaintiffs' experts' statistical analysis is invalid due to the small sample sizes involved.</u>**

Defendant should be precluded from arguing that Plaintiffs' experts' use of small samples to prepare statistical analyses rendered those statistical analyses invalid; to do so would be to relitigate an issue that has already been ruled upon in this case – and would be a waste of both time and judicial resources.  On July 12, 2007, Judge Ishii ruled in his Order on Cross Motions for Summary Judgment that the small sample size used by Plaintiff's experts did not invalidate their statistical findings because "[b]y necessity, courts sometimes must rely on statistics derived from small sample groups." Order on Cross Motions for Summary Judgment, July 12, 2007 at 41 n.39 (*citing Sengupta v. Morrison-Knudsen Co.,* 804 F.2d 1072, 1076 (9th Cir. 1986)).

In the Joint Pre-Trial Conference Statement of August 4, 2008, Defendant suggests that it intends to relitigate this issue, contrary to Judge Ishii's order, but it has failed to comply with the Local Rules requirement to file a timely Motion for Reconsideration. *See* E.D. Civ. L.R. 78-230(k).  Absent a prior ruling on a timely filed Motion for Reconsideration of Judge Ishii's Order, demonstrating that new or different facts or circumstances exist, *see* E.D. Civ. L.R. 78-230(k)(3), this Court should not permit Defendant to argue that Plaintiffs' experts used inappropriately aggregated data in their statistical analyses.   For that reason, any in limine motions NIBCO may file on this matter should be denied, and any argument by NIBCO that this matter is a disputed fact still open for determination should be rejected.

**96. Legal issues not subject to jury consideration should be removed so as not to confuse the jury.**

The following defenses were raised by Defendants in this matter:

1)   Plaintiffs failed to state facts sufficient to constitute a cause or action or claim for relief against Defendant;

2)   Any award of punitive damages sought by Plaintiffs violate the due process and excessive fine clauses of the Fifth, Eight, and Fourteenth Amendments to the United States Constitution;

3)   Plaintiffs failed to mitigate damages;

4)   Plaintiffs failed to exhaust appropriate administrative remedies;

5)   Plaintiffs failed to comply with the appropriate statutes of limitation;

6)   Plaintiffs action cannot be maintained as a class action;

7)   Plaintiffs' claims for punitive damages are barred by California Civil Code § 3294 (a);

8)   Plaintiffs' damages were directly and proximately caused by them and were contributed to by the negligence or intentional conduct of other persons;

9)   Plaintiffs' damages were the result of the actions or inactions of persons or entities other than Defendant;

10)   Plaintiffs' negligence bars and/or diminishes Plaintiffs' recovery against Defendant

These issues are not subject to jury consideration. Plaintiff requests that these issues be ruled on by the Court before trial and out of the presence of the jury so that they do not remain to confuse the jury in its deliberations. *See* Fed. R. Evid. 402, 403.

**97. NIBCO should be precluded from making reference to Plaintiffs or claims that are no longer part of this litigation.**

During the course of this litigation, two Plaintiffs voluntarily dismissed themselves for reasons unrelated to the merits of their claims; likewise, early in the case, which was initially filed as a class action, Plaintiffs voluntarily dismissed its class aspects. In addition, in deciding the parties' cross-motions for summary judgment, the Court ruled that Plaintiffs were not entitled to seek punitive damages under Title VII specifically (a claim that Plaintiffs never intended to make). NIBCO should be

precluded from referencing these and like matters inasmuch as they are no longer part of this case, are not relevant to the matters the jury will consider, and would only serve to distract if not prejudice the jury.  *See* Fed. R. Evid. 401, 402, 403.

     **98. <u>NIBCO should be precluded from asserting or otherwise alluding to unplead defenses</u>.** To permit Defendant to assert or allude to unplead defenses would result in unfair surprise and undue prejudice of the sort sought to be avoided by the Federal Rules. *See* Fed. R. Evid. 403.

1

## <u>CONCLUSION</u>

2

For the foregoing reasons, Plaintiffs request that this Court grant their motions to disallow

3

Defendant NIBCO and its counsel, and through them, each of its witnesses, to mention, interrogate

4

upon, or otherwise elicit, or suggest or convey to the jury, evidence pertaining to the above matters.

5

6

Dated:  August 15, 2007                           Respectfully submitted,

7

                                                  Christopher Ho

8

                                                  Christina N. Chung
                                                  Carole Vigne

9

                                                  The LEGAL AID SOCIETY –
                                                    EMPLOYMENT LAW CENTER

10

                                                  William J. Smith

11

                                                  Shelley G. Bryant
                                                  Amanda B. Newell

12

                                                  W.J. SMITH & ASSOCIATES

13

                                                  Marielena Hincapié

14

                                                  NATIONAL IMMIGRATION LAW CENTER

15

16

17

                        By:   _____

18

                                          CHRISTOPHER HO

19

                              Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28