Christopher Ho, SBC No. 129845
Christina N. Chung, SBC No. 194630
Carole Vigne, SBC No. 251829
The LEGAL AID SOCIETY --
    EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, California 94107
Telephone: (415) 864-8848
Facsimile: (415) 864-8199

William J. Smith, SBC No. 056116
Shelley G. Bryant, SBC No. 222925
W.J. SMITH & ASSOCIATES
2350 West Shaw Avenue, Suite 132
Fresno, California 93711
Telephone: (559) 432-0986
Facsimile: (559) 432-4871

Marielena Hincapié, SBC No. 188199
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 1850
Los Angeles, California 90010
Telephone: (213) 639-3900
Facsimile: (213) 639-3911

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG, <br><br> Plaintiffs, <br><br> v. <br><br> NIBCO, INC., an Indiana corporation, <br><br> Defendant. | No. CIV F-99-6443 OWW SMS <br><br> **APPENDIX OF AUTHORITIES IN PLAINTIFFS' OBJECTIONS TO DEFENDANT'S BILL OF COSTS** <br><br> [Hon. Oliver W. Wanger] <br><br> Trial Date: October 7, 2008 |

Pursuant to Local Rule 5-133(i), Plaintiffs submit copies of the following authorities:

1.      2008 Adjusted Home Income Limits: State of California, U.S. Dept. of Housing and Urban Development, available at http://www.hud.gov/offices/cpd/affordablehousing/programs/home/limits/income/2008/ca.pdf, a copy of which is attached hereto as Exhibit A.

2.      *Comm. Concerning Cmty. Improvement v. City of Modesto*, NO. CV-F-04-6121 LJO DLB, 2007 U.S. Dist. LEXIS 94328, *12-13 (E.D. Cal. Dec. 11, 2007), a copy of which is attached hereto as Exhibit B.

3.      *Alaniz v. Robert M. Peppercorn, M.D., Inc.*, No. 2:05-cv-02576-MCE-DAD, 2008 U.S. Dist. LEXIS 71107 (E.D. Cal. Aug. 8, 2008), a copy of which is attached hereto as Exhibit C.

4.      *Ferreira v. M/V CCNI Antofagasta*, No. 2:04-cv-1916-MCE-DAD, 2007 U.S. Dist. LEXIS 76767, *4-7 (E.D. Cal. Oct. 15, 2007), a copy of which is attached hereto as Exhibit D.

5.      *Sunrich Food Group, Inc. v. Pacific Food of Oregon, Inc.*, No. 05-35152, No. 05-36171, 207 Fed.Appx.745, 752 (9th Cir. Oct. 12, 2006), a copy of which is attached hereto as Exhibit E.

6.      *Terry v. Allstate Ins. Co.*, No. Civ. S-05-2261 RRB DAD, 2007 U.S. Dist. LEXIS 81051 (E.D. Cal. Oct. 31, 2007), a copy of which is attached hereto as Exhibit F.

7.      Per Diem Rates, California FY-09, U.S. General Services Administration, *available at,* http://www.gsa.gov/Portal/gsa/ep/contentView.do?queryYear=2009&contentType=GSA_BASIC&contentId=17943&queryState=California&noc=T, a copy of which is attached hereto as Exhibit G.

Dated:  December 22, 2008

Christopher Ho
Christina N. Chung
Carole Vigne
The LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER

William J. Smith
Shelley G. Bryant
W.J. SMITH & ASSOCIATES

Marielena Hincapié
NATIONAL IMMIGRATION LAW CENTER


By:   //s//Christopher Ho_____
                 CHRISTOPHER HO

Attorneys for Plaintiffs

**APPENDIX OF AUTHORITIES IN PLAINTIFFS' OBJECTIONS
TO DEFENDANT'S BILL OF COSTS**

# EXHIBIT A

U.S. DEPARTMENT OF HUD 02/2008
STATE:CALIFORNIA

2008 ADJUSTED HOME INCOME LIMITS

| PROGRAM | 1 PERSON | 2 PERSON | 3 PERSON | 4 PERSON | 5 PERSON | 6 PERSON | 7 PERSON | 8 PERSON |
|---|---|---|---|---|---|---|---|---|
| **Bakersfield, CA MSA** | | | | | | | | |
| 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| **Chico, CA MSA** | | | | | | | | |
| 30% LIMITS | 11450 | 13100 | 14700 | 16350 | 17650 | 18950 | 20250 | 21600 |
| VERY LOW INCOME | 19100 | 21800 | 24550 | 27250 | 29450 | 31600 | 33800 | 35950 |
| 60% LIMITS | 22920 | 26160 | 29460 | 32700 | 35340 | 37920 | 40560 | 43140 |
| LOW INCOME | 30500 | 34900 | 39250 | 43600 | 47100 | 50600 | 54050 | 57550 |
| **El Centro, CA MSA** | | | | | | | | |
| 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| **Fresno, CA MSA** | | | | | | | | |
| 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| **Hanford-Corcoran, CA MSA** | | | | | | | | |
| 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| **Los Angeles-Long Beach, CA HUD Metro FMR Area** | | | | | | | | |
| 30% LIMITS | 15950 | 18200 | 20500 | 22750 | 24550 | 26400 | 28200 | 30050 |
| VERY LOW INCOME | 26550 | 30300 | 34100 | 37900 | 40950 | 43350 | 47000 | 50050 |
| 60% LIMITS | 31860 | 36360 | 40920 | 45480 | 49140 | 52740 | 56400 | 60060 |
| LOW INCOME | 42450 | 48500 | 54600 | 60650 | 65500 | 70350 | 75200 | 80050 |
| **Orange County, CA HUD Metro FMR Area** | | | | | | | | |
| 30% LIMITS | 19550 | 22300 | 25100 | 27900 | 30150 | 32350 | 34600 | 36850 |
| VERY LOW INCOME | 32550 | 37200 | 41850 | 46500 | 50200 | 53950 | 57650 | 61400 |
| 60% LIMITS | 39060 | 44640 | 50220 | 55800 | 60240 | 64740 | 69180 | 73680 |
| LOW INCOME | 52100 | 59500 | 66950 | 74400 | 80350 | 86300 | 92250 | 98100 |
| **Madera, CA MSA** | | | | | | | | |
| 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |

U.S. DEPARTMENT OF HUD 02/2008
STATE:CALIFORNIA

2008 ADJUSTED HOME INCOME LIMITS

| | PROGRAM | 1 PERSON | 2 PERSON | 3 PERSON | 4 PERSON | 5 PERSON | 6 PERSON | 7 PERSON | 8 PERSON |
|---|---|---|---|---|---|---|---|---|---|
| Merced, CA MSA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Modesto, CA MSA | 30% LIMITS | 11850 | 13550 | 15250 | 16950 | 18300 | 19650 | 21000 | 22350 |
| | VERY LOW INCOME | 19800 | 22600 | 25450 | 28250 | 30500 | 32750 | 35050 | 37300 |
| | 60% LIMITS | 23760 | 27120 | 30540 | 33900 | 36600 | 39300 | 42060 | 44760 |
| | LOW INCOME | 31650 | 36150 | 40700 | 45200 | 48800 | 52450 | 56050 | 59650 |
| Napa, CA MSA | 30% LIMITS | 16750 | 19100 | 21500 | 23900 | 25800 | 27700 | 29650 | 31550 |
| | VERY LOW INCOME | 27850 | 31850 | 35800 | 39800 | 43000 | 46200 | 49350 | 52550 |
| | 60% LIMITS | 33420 | 38220 | 42960 | 47760 | 51600 | 55380 | 59280 | 63060 |
| | LOW INCOME | 43050 | 49200 | 55350 | 61500 | 66400 | 71350 | 76250 | 81200 |
| Oxnard-Thousand Oaks-Ventura, CA MSA | 30% LIMITS | 18000 | 20550 | 23150 | 25700 | 27750 | 29800 | 31850 | 33900 |
| | VERY LOW INCOME | 30000 | 34300 | 38550 | 42850 | 46300 | 49700 | 53150 | 56550 |
| | 60% LIMITS | 36000 | 41160 | 46260 | 51420 | 55560 | 59640 | 63780 | 67860 |
| | LOW INCOME | 48000 | 54850 | 61700 | 68550 | 74050 | 79500 | 85000 | 90500 |
| Redding, CA MSA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Riverside-San Bernardino-Ontario, CA MSA | 30% LIMITS | 14000 | 16000 | 18000 | 20000 | 21600 | 23200 | 24800 | 26400 |
| | VERY LOW INCOME | 23300 | 26650 | 29950 | 33300 | 35950 | 38650 | 41300 | 43950 |
| | 60% LIMITS | 27960 | 31980 | 35940 | 39960 | 43140 | 46380 | 49560 | 52740 |
| | LOW INCOME | 37300 | 42650 | 47950 | 53300 | 57550 | 61850 | 66100 | 70350 |
| Sacramento--Arden-Arcade--Roseville, CA HUD Metro FMR Area | 30% LIMITS | 14900 | 17050 | 19150 | 21300 | 23000 | 24700 | 26400 | 28100 |
| | VERY LOW INCOME | 24850 | 28400 | 31950 | 35500 | 38350 | 41200 | 44000 | 46850 |
| | 60% LIMITS | 29820 | 34080 | 38340 | 42600 | 46020 | 49440 | 52800 | 56220 |
| | LOW INCOME | 39750 | 45450 | 51100 | 56800 | 61350 | 65900 | 70450 | 75000 |
| Yolo, CA HUD Metro FMR Area | 30% LIMITS | 14900 | 17050 | 19150 | 21300 | 23000 | 24700 | 26400 | 28100 |
| | VERY LOW INCOME | 24850 | 28400 | 31950 | 35500 | 38350 | 41200 | 44000 | 46850 |
| | 60% LIMITS | 29820 | 34080 | 38340 | 42600 | 46020 | 49440 | 52800 | 56220 |
| | LOW INCOME | 39750 | 45450 | 51100 | 56800 | 61350 | 65900 | 70450 | 75000 |

U.S. DEPARTMENT OF HUD 02/2008
STATE:CALIFORNIA

2008 ADJUSTED HOME INCOME LIMITS

| PROGRAM | 1 PERSON | 2 PERSON | 3 PERSON | 4 PERSON | 5 PERSON | 6 PERSON | 7 PERSON | 8 PERSON |
|---|---|---|---|---|---|---|---|---|
| **Salinas, CA MSA** | | | | | | | | |
| 30% LIMITS | 13600 | 15550 | 17500 | 19450 | 21000 | 22550 | 24100 | 25650 |
| VERY LOW INCOME | 22700 | 25900 | 29150 | 32400 | 35000 | 37600 | 40200 | 42750 |
| 60% LIMITS | 27240 | 31080 | 34980 | 38880 | 42000 | 45120 | 48240 | 51300 |
| LOW INCOME | 36300 | 41500 | 46650 | 51850 | 56000 | 60150 | 64300 | 68450 |
| **San Diego-Carlsbad-San Marcos, CA MSA** | | | | | | | | |
| 30% LIMITS | 16600 | 18950 | 21350 | 23700 | 25600 | 27500 | 29400 | 31300 |
| VERY LOW INCOME | 27650 | 31600 | 35550 | 39500 | 42650 | 45800 | 48950 | 52150 |
| 60% LIMITS | 33180 | 37920 | 42660 | 47400 | 51180 | 54960 | 58800 | 62580 |
| LOW INCOME | 44250 | 50550 | 56900 | 63200 | 68250 | 73300 | 78350 | 83400 |
| **Oakland-Fremont, CA HUD Metro FMR Area** | | | | | | | | |
| 30% LIMITS | 18100 | 20700 | 23250 | 25850 | 27900 | 30000 | 32050 | 34100 |
| VERY LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| 60% LIMITS | 36180 | 41340 | 46500 | 51660 | 55800 | 59940 | 64080 | 68220 |
| LOW INCOME | 46350 | 53000 | 59600 | 66250 | 71550 | 76850 | 82150 | 87450 |
| **San Francisco, CA HUD Metro FMR Area** | | | | | | | | |
| 30% LIMITS | 23750 | 27150 | 30550 | 33950 | 36650 | 39400 | 42100 | 44800 |
| VERY LOW INCOME | 39600 | 45250 | 50900 | 56550 | 61050 | 65600 | 70100 | 74650 |
| 60% LIMITS | 47520 | 54300 | 61080 | 67860 | 73260 | 78720 | 84120 | 89580 |
| LOW INCOME | 63350 | 72400 | 81450 | 90500 | 97700 | 104950 | 112220 | 119450 |
| **San Jose-Sunnyvale-Santa Clara, CA HUD Metro FMR Area** | | | | | | | | |
| 30% LIMITS | 22300 | 25500 | 28650 | 31850 | 34400 | 36950 | 39500 | 42050 |
| VERY LOW INCOME | 37150 | 42450 | 47750 | 53050 | 57300 | 61550 | 65800 | 70050 |
| 60% LIMITS | 44580 | 50940 | 57300 | 63660 | 68760 | 73860 | 78960 | 84060 |
| LOW INCOME | 59400 | 67900 | 76400 | 84900 | 91650 | 98450 | 105250 | 112050 |
| **San Benito County, CA HUD Metro FMR Area** | | | | | | | | |
| 30% LIMITS | 16400 | 18700 | 21050 | 23400 | 25250 | 27150 | 29000 | 30900 |
| VERY LOW INCOME | 27300 | 31200 | 35100 | 39000 | 42100 | 45250 | 48350 | 51500 |
| 60% LIMITS | 32760 | 37440 | 42120 | 46800 | 50520 | 54300 | 58020 | 61800 |
| LOW INCOME | 43050 | 49200 | 55350 | 61500 | 66400 | 71350 | 76250 | 81200 |
| **San Luis Obispo-Paso Robles, CA MSA** | | | | | | | | |
| 30% LIMITS | 14050 | 16100 | 18100 | 20100 | 21700 | 23300 | 24900 | 26550 |
| VERY LOW INCOME | 23450 | 26800 | 30150 | 33500 | 36200 | 38850 | 41550 | 44200 |
| 60% LIMITS | 28140 | 32160 | 36180 | 40200 | 43440 | 46620 | 49860 | 53040 |
| LOW INCOME | 37500 | 42900 | 48250 | 53600 | 57900 | 62200 | 66450 | 70750 |
| **Santa Barbara-Santa Maria-Goleta, CA MSA** | | | | | | | | |
| 30% LIMITS | 16350 | 18700 | 21000 | 23350 | 25200 | 27100 | 28950 | 30800 |
| VERY LOW INCOME | 27250 | 31100 | 35000 | 38900 | 42000 | 45100 | 48250 | 51350 |
| 60% LIMITS | 32700 | 37320 | 42000 | 46680 | 50400 | 54120 | 57900 | 61620 |
| LOW INCOME | 43600 | 49800 | 56050 | 62250 | 67250 | 72200 | 77200 | 82150 |

U.S. DEPARTMENT OF HUD 02/2008
STATE: CALIFORNIA

2008 ADJUSTED HOME INCOME LIMITS

| | PROGRAM | 1 PERSON | 2 PERSON | 3 PERSON | 4 PERSON | 5 PERSON | 6 PERSON | 7 PERSON | 8 PERSON |
|---|---|---|---|---|---|---|---|---|---|
| Santa Cruz-Watsonville, CA MSA | 30% LIMITS | 18250 | 20900 | 23500 | 26100 | 28200 | 30300 | 32350 | 34450 |
| | VERY LOW INCOME | 30450 | 34800 | 39150 | 43500 | 47000 | 50450 | 53950 | 57400 |
| | 60% LIMITS | 36540 | 41760 | 46980 | 52200 | 56640 | 60540 | 64740 | 68880 |
| | LOW INCOME | 48700 | 55700 | 62650 | 69600 | 75150 | 80750 | 86300 | 91850 |
| Santa Rosa-Petaluma, CA MSA | 30% LIMITS | 16350 | 18700 | 21000 | 23350 | 25200 | 27100 | 28950 | 30800 |
| | VERY LOW INCOME | 27250 | 31100 | 35000 | 38900 | 42000 | 45100 | 48250 | 51350 |
| | 60% LIMITS | 32700 | 37320 | 42000 | 46680 | 50400 | 54120 | 57900 | 61620 |
| | LOW INCOME | 43050 | 49200 | 55350 | 61500 | 66400 | 71350 | 76250 | 81200 |
| Stockton, CA MSA | 30% LIMITS | 12900 | 14700 | 16550 | 18400 | 19850 | 21350 | 22800 | 24300 |
| | VERY LOW INCOME | 21450 | 24500 | 27600 | 30650 | 33100 | 35550 | 38000 | 40450 |
| | 60% LIMITS | 25740 | 29400 | 33120 | 36780 | 39720 | 42660 | 45600 | 48540 |
| | LOW INCOME | 34350 | 39250 | 44150 | 49050 | 52950 | 56900 | 60800 | 64750 |
| Vallejo-Fairfield, CA MSA | 30% LIMITS | 15800 | 18100 | 20350 | 22600 | 24400 | 26200 | 28000 | 29950 |
| | VERY LOW INCOME | 26400 | 30150 | 33950 | 37700 | 40700 | 43750 | 46750 | 49750 |
| | 60% LIMITS | 31680 | 36180 | 40740 | 45240 | 48840 | 52500 | 56100 | 59700 |
| | LOW INCOME | 42200 | 48250 | 54250 | 60300 | 65100 | 69950 | 74750 | 79600 |
| Visalia-Porterville, CA MSA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21100 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Yuba City, CA MSA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 25800 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Alpine County, CA | 30% LIMITS | 14550 | 16650 | 18700 | 20800 | 22450 | 24150 | 25800 | 27450 |
| | VERY LOW INCOME | 24300 | 27750 | 31250 | 34700 | 37500 | 40250 | 43050 | 45800 |
| | 60% LIMITS | 29160 | 33300 | 37500 | 41640 | 44950 | 48300 | 51660 | 54960 |
| | LOW INCOME | 38850 | 44400 | 49950 | 55000 | 59950 | 64400 | 68800 | 73250 |
| Amador County, CA | 30% LIMITS | 14000 | 16000 | 18000 | 20000 | 21600 | 23200 | 24800 | 26400 |
| | VERY LOW INCOME | 23350 | 26700 | 30000 | 33350 | 36000 | 38700 | 41350 | 44000 |
| | 60% LIMITS | 28020 | 32040 | 36000 | 40020 | 43200 | 46440 | 49620 | 52800 |
| | LOW INCOME | 37350 | 42700 | 48000 | 53350 | 57600 | 61900 | 66150 | 70400 |

U.S. DEPARTMENT OF HUD 02/2008
STATE:CALIFORNIA

## 2008 ADJUSTED HOME INCOME LIMITS

| COUNTY | PROGRAM | 1 PERSON | 2 PERSON | 3 PERSON | 4 PERSON | 5 PERSON | 6 PERSON | 7 PERSON | 8 PERSON |
|---|---|---|---|---|---|---|---|---|---|
| Calaveras County, CA | 30% LIMITS | 12900 | 14700 | 16550 | 18400 | 19850 | 21350 | 22800 | 24300 |
| | VERY LOW INCOME | 21500 | 24550 | 27650 | 30700 | 33150 | 35600 | 38050 | 40500 |
| | 60% LIMITS | 25800 | 29460 | 33180 | 36840 | 39780 | 42720 | 45660 | 48600 |
| | LOW INCOME | 34350 | 39300 | 44200 | 49100 | 53050 | 56950 | 60900 | 64800 |
| Colusa County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Del Norte County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Glenn County, CA | 30% LIMITS | 11000 | 12500 | 14150 | 15700 | 16950 | 18200 | 19450 | 20700 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Humboldt County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Inyo County, CA | 30% LIMITS | 12100 | 13800 | 15550 | 17250 | 18650 | 20000 | 21400 | 22750 |
| | VERY LOW INCOME | 20150 | 23000 | 25900 | 28750 | 31050 | 33350 | 35650 | 37950 |
| | 60% LIMITS | 24180 | 27600 | 31080 | 34500 | 37260 | 40020 | 42780 | 45540 |
| | LOW INCOME | 32200 | 36800 | 41400 | 46000 | 49700 | 53350 | 57050 | 60700 |
| Lake County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Lassen County, CA | 30% LIMITS | 11700 | 13350 | 15050 | 16700 | 18050 | 19350 | 20700 | 22050 |
| | VERY LOW INCOME | 19450 | 22250 | 25000 | 27800 | 30000 | 32250 | 34450 | 36700 |
| | 60% LIMITS | 23340 | 26700 | 30000 | 33360 | 36000 | 38700 | 41340 | 44040 |
| | LOW INCOME | 31150 | 35600 | 40050 | 44500 | 48050 | 51600 | 55200 | 58750 |

U.S. DEPARTMENT OF HUD 02/2008
STATE:CALIFORNIA

2008 ADJUSTED HOME INCOME LIMITS

| | PROGRAM | 1 PERSON | 2 PERSON | 3 PERSON | 4 PERSON | 5 PERSON | 6 PERSON | 7 PERSON | 8 PERSON |
|---|---|---|---|---|---|---|---|---|---|
| Mariposa County, CA | 30% LIMITS | 11350 | 12950 | 14600 | 16200 | 17500 | 18800 | 20100 | 21400 |
| | VERY LOW INCOME | 18900 | 21600 | 24300 | 27000 | 29150 | 31300 | 33500 | 35650 |
| | 60% LIMITS | 22680 | 25920 | 29160 | 32400 | 34980 | 37560 | 40200 | 42780 |
| | LOW INCOME | 30250 | 34550 | 38900 | 43200 | 46650 | 50100 | 53550 | 57000 |
| Mendocino County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Modoc County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Mono County, CA | 30% LIMITS | 13850 | 15800 | 17800 | 19750 | 21350 | 22900 | 24500 | 26050 |
| | VERY LOW INCOME | 23100 | 26400 | 29700 | 32950 | 35600 | 38200 | 40850 | 43500 |
| | 60% LIMITS | 27720 | 31680 | 35640 | 39540 | 42720 | 45840 | 49020 | 52200 |
| | LOW INCOME | 36900 | 42150 | 47450 | 52700 | 56900 | 61150 | 65350 | 69550 |
| Nevada County, CA | 30% LIMITS | 13700 | 15650 | 17600 | 19550 | 21100 | 22700 | 24250 | 25800 |
| | VERY LOW INCOME | 22800 | 26050 | 29300 | 32550 | 35150 | 37750 | 40350 | 42950 |
| | 60% LIMITS | 27360 | 31260 | 35160 | 39060 | 42180 | 45300 | 48420 | 51540 |
| | LOW INCOME | 36450 | 41700 | 46900 | 52100 | 56250 | 60450 | 64600 | 68750 |
| Plumas County, CA | 30% LIMITS | 12450 | 14200 | 16000 | 17750 | 19150 | 20600 | 22000 | 23450 |
| | VERY LOW INCOME | 20700 | 23650 | 26600 | 29550 | 31900 | 34300 | 36650 | 39000 |
| | 60% LIMITS | 24840 | 28380 | 31920 | 35460 | 38280 | 41160 | 43980 | 46800 |
| | LOW INCOME | 33100 | 37850 | 42550 | 47300 | 51100 | 54850 | 58650 | 62450 |
| Sierra County, CA | 30% LIMITS | 11850 | 13500 | 15200 | 16900 | 18250 | 19600 | 20950 | 22300 |
| | VERY LOW INCOME | 19750 | 22550 | 25400 | 28200 | 30450 | 32700 | 34950 | 37200 |
| | 60% LIMITS | 23700 | 27060 | 30480 | 33840 | 36540 | 39240 | 41940 | 44640 |
| | LOW INCOME | 31550 | 36100 | 40600 | 45100 | 48700 | 52300 | 55900 | 59500 |
| Siskiyou County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |

U.S. DEPARTMENT OF HUD 02/2008
STATE:CALIFORNIA

2008 ADJUSTED HOME INCOME LIMITS

| | PROGRAM | 1 PERSON | 2 PERSON | 3 PERSON | 4 PERSON | 5 PERSON | 6 PERSON | 7 PERSON | 8 PERSON |
|---|---|---|---|---|---|---|---|---|---|
| Tehama County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Trinity County, CA | 30% LIMITS | 11300 | 12900 | 14550 | 16150 | 17450 | 18750 | 20050 | 21300 |
| | VERY LOW INCOME | 18850 | 21500 | 24200 | 26900 | 29050 | 31200 | 33350 | 35500 |
| | 60% LIMITS | 22620 | 25800 | 29040 | 32280 | 34860 | 37440 | 40020 | 42600 |
| | LOW INCOME | 30150 | 34450 | 38750 | 43050 | 46500 | 49950 | 53400 | 56850 |
| Tuolumne County, CA | 30% LIMITS | 12100 | 13800 | 15550 | 17250 | 18650 | 20000 | 21400 | 22750 |
| | VERY LOW INCOME | 20150 | 23000 | 25900 | 28750 | 31050 | 33350 | 35650 | 37950 |
| | 60% LIMITS | 24180 | 27600 | 31080 | 34500 | 37260 | 40020 | 42780 | 45540 |
| | LOW INCOME | 32200 | 36800 | 41400 | 46000 | 49700 | 53350 | 57050 | 60700 |

# APPENDIX OF AUTHORITIES IN PLAINTIFFS' OBJECTIONS
## TO DEFENDANT'S BILL OF COSTS

# EXHIBIT B

LEXSEE 2007 U.S. DIST. LEXIS 94328

**THE COMMITTEE CONCERNING COMMUNITY IMPROVEMENT, et al, Plaintiffs, vs. CITY OF MODESTO, et al, Defendants.**

**CASE NO. CV-F-04-6121 LJO DLB**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 94328*

**December 11, 2007, Decided**
**December 11, 2007, Filed**

**PRIOR HISTORY:** *Comm. Concerning Cmty. Improvement v. City of Modesto, 2007 U.S. Dist. LEXIS 61195 (E.D. Cal., Aug. 20, 2007)*

**COUNSEL:** [*1] For The Committee Concerning Community Improvement, Plaintiff: Brian P. Brosnahan, LEAD ATTORNEY, Nathaniel R. Spencer-Mark, Heller Ehrman LLP, San Francisco, CA; Donald Wesley Brown, LEAD ATTORNEY, Covington and Burling, San Francisco, CA; Robert Rubin, LEAD ATTORNEY, Lawyers Committee For Civil Rights, San Francisco, CA.

For South United Neighbors, Plaintiff: Brian P. Brosnahan, LEAD ATTORNEY, Heller Ehrman LLP, San Francisco, CA; Donald Wesley Brown, LEAD ATTORNEY, Covington and Burling, San Francisco, CA; Robert Rubin, LEAD ATTORNEY, Lawyers Committee For Civil Rights, San Francisco, CA.

For David Caro, Manuel Espino, Hortencia Franco, Lupe Huesca, Ena Lopez, Blanca Martinez, Griselda Martinez, Salvador Gutierrez Martinez, Jazmin Mercado, Juan Mercado, Magdalena Mercado, Juan - Perez, Gloria Pimentel, Alfonso Rivera, Darren Schaeffer, Elvira Villalobos, Plaintiffs: Brian P. Brosnahan, LEAD ATTORNEY, Heller Ehrman LLP, San Francisco, CA; Cynthia L. Rice, LEAD ATTORNEY, California Rural Legal Assitance, Inc., San Francisco, CA; Donald Wesley Brown, LEAD ATTORNEY, Covington and Burling, San Francisco, CA; Robert Rubin, LEAD ATTORNEY, Lawyers Committee For Civil Rights, San Francisco, [*2] CA.

For Florinda Laureano, Plaintiff: Brian P. Brosnahan, LEAD ATTORNEY, Heller Ehrman LLP, San Fran-cisco, CA; Cynthia L. Rice, LEAD ATTORNEY, California Rural Legal Assitance, Inc., San Francisco, CA.

For City of Modesto, Defendant: John E. McDermott, LEAD ATTORNEY, Howrey LLP, Los Angeles, CA.

For County of Stanislaus, Les Weidman, Paul - Caruso, Jeff Grover, Tom Mayfield, Pat Paul, Ray Simon, Defendants: Terence John Cassidy, LEAD ATTORNEY, Porter Scott, APC, Sacramento, CA.

For - Stanislaus County Sheriff, Defendant: Kristina Marcia Hall, LEAD ATTORNEY, Porter Scott, Sacramento, CA; Terence John Cassidy, LEAD ATTORNEY, Porter Scott, APC, Sacramento, CA.

For Stanislaus Regional 911, Defendant: Thomas David Zeff, LEAD ATTORNEY, Crabtree, Schmidt, Zeff & Jacobs, Modesto, CA.

**JUDGES:** Lawrence J. O'Neill, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Lawrence J. O'Neill

**OPINION**

**ORDER ON MOTIONS TO REVIEW CLERK'S BILL OF COSTS**

Pursuant to Notice filed on October 23, 2007, Defendant County of Stanislaus and the Stanislaus County Sheriff ("County") seek the Court's review of the Clerk's Bill of Costs. Also on October 23, 2007, Plaintiffs filed a motion for the Court's to review the Clerk's Bill of Costs. On November 12, 2007, [*3] Defendant City of Modesto ("City") filed an opposition to plaintiff's motion to review costs. (Doc. 450.) On November 13, 2007, the

2007 U.S. Dist. LEXIS 94328, *

County filed an opposition to plaintiff's motion. (452.) Plaintiff filed an opposition to defendant County's motion on November 13, 2007. (Doc. 454.) Plaintiff filed a reply to their motion on November 20, 2007. (Doc. 455.) Defendant County filed a reply to its motion on November 21, 2007. (Doc. 458.) Pursuant to Local Rule 78-230(h), this matter was submitted on the pleadings without oral argument and the hearing vacated. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

## FACTUAL AND PROCEDURAL OVERVIEW

This action involved declaratory and injunctive relief by plaintiffs The Committee Concerning Community Improvement, South United Neighbors and individuals living in certain unincorporated areas in the County of Stanislaus against the County and the City. The individual plaintiffs reside in unincorporated County islands within the City of Modesto's sphere of influence. The unincorporated islands are primarily inhabited by Latinos. Plaintiffs allege that these Latino neighborhoods [*4] receive fewer and poorer public services than other neighborhoods in Modesto with predominantly white populations in violation of the *Equal Protection clause of the United States Constitution.* The public services include lack of sidewalks and street lights, lack of effective law enforcement, lack of bilingual services, inadequate storm drainage and sewage disposal, use of the Latino neighborhoods as dumping grounds. Among the harms alleged is that the lack of adequate law enforcement protection and adequate street lighting, the few open spaces that exist in some of these Latino Neighborhoods have become magnets for prostitution and drug use, creating, among other things, a dangerous environment for children.

In a series of dispositive motions, this Court granted summary judgment on the federal claims for each of the challenged public services. The Court then dismissed the remaining state law claims for resolution is a state court forum.

### A. County's Cost Bill

On August 31, 2007, County filed its cost bill seeking a total of $ 106,351.78 in costs. (Doc. 434.) Initially, County sought costs as follows:

| | |
|---|---|
| Fees for Service of summons and subpoena | $ 942.04 |
| Fees for court reporter | $ 18,484.20 |
| Fees for exemplification | $ 86,041.04 |
| Compensation of interpreters | $ 884.50 |
| Total costs | 106,351.78 |

On [*5] October 16, 2007, the clerk taxed costs in favor of the City as follows (Doc. 443):

| | |
|---|---|
| Fees for Service of summons and subpoena | $ 707.04 |
| Fees for court reporter | $ 16,215.91 |
| Fees for exemplification | $ 4,094.55 |
| Compensation of interpreters | $ 884.50. |
| Total Costs Taxed in County's favor | 21,902.00 |

2007 U.S. Dist. LEXIS 94328, *

On August 30, 2007, the City filed its cost bill:

**B. City's Bill of Costs**

| | |
|---|---|
| Fees for court reporter | $ 9,798.15 |
| Fees for exemplification | $ 582.80 |
| Total | 10,380.95 |

On October 16, 2007, the clerk taxed costs in favor of the County as follows (Doc. 444):

| | |
|---|---|
| Fees for court reporter | $ 9,525.35 |
| Fees for exemplification | $ 582.80 |
| Total | 10,108.15 |

## ANALYSIS

*Fed.R.Civ.P 54(d)(1)* states:

"Except when express provision therefore is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."

The types of costs that may be awarded under *Rule 54(d)* are limited to those enumerated in *28 U.S.C. §1920*. In pertinent part, *28 U.S.C. §1920* states:

A judge or clerk of any  [*6] court of the United states may tax as costs the following:

(1) Fees of the clerk or marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

. . .

District courts have broad discretion in determining whether and to what extent prevailing parties may be awarded costs. *See, e.g., Barber v. Ruth, 7 F.3d 636, 644 (7th Cir.1993).*

### A. Plaintiffs' Motion to Deny Costs

Here, plaintiffs argue that both the City of Modesto's and the County of Stanislaus' costs should be denied based upon public policy reasons. Plaintiffs argue that the Court should exercise its discretion and deny all costs based upon the plaintiffs' limited financial resources, the chilling effect of imposing costs on future civil rights litigants and the public importance of the issues raised. Plaintiffs note that the issues in the case were close and difficult, that the filing of the lawsuit had some beneficial effect in that additional services were provided, and that the state law claims remain to be tried in  [*7] the state court. (Doc. 449, Plaintiffs' Motion p.2.)

Costs are recoverable by the prevailing party "unless the court otherwise directs." *Fed.R.Civ. 54(d); Association of Mexican-American Educators v. State of Calif., 231 F.3d 572, 591 (9th Cir. 2000)* (en banc). Al-

2007 U.S. Dist. LEXIS 94328, *

though prevailing defendants are normally entitled to their costs in civil rights actions, a court's discretion to deny a costs award against an unsuccessful plaintiff has been upheld where the issues were of the "gravest public importance" and the costs "extraordinarily high." Mandating an award to defendant in such cases "might have the regrettable effect of discouraging potential plaintiffs from bringing such cases at all." *Stanley v. University of So. Calif., 178 F.3d 1069, 1079 (9th Cir. 1999), cert. denied, 528 U.S. 1022, 120 S. Ct. 533, 145 L. Ed. 2d 413 (1999); Association of Mexican-American Educators v. State of Calif., 231 F.3d at 593.*

*Rule 54(d)* creates a strong presumption in favor of awarding costs to the prevailing party. *Majeske v. City of Chicago, 218 F.3d 816, 818 (7 Cir. 2000), cert. denied, 531 U.S. 1079, 121 S. Ct. 779, 148 L. Ed. 2d 676 (2001).* th District court can reduce or deny prevailing party costs were the losing party is indigent. *Association of Mexican-American Educators, 231 F.3d at 592.* [*8] There are no hard and fast rules for assessing a losing party's indigence or inability to pay.

Here, plaintiffs acknowledge that they are not indigent. (Doc. 449, p. 3.) Therefore, plaintiffs' limited financial resources is a socialistic argument rather than a legal one. Thus, on the basis of indigence, the Court denies the request.

Plaintiffs' second argument is that costs will have a chilling effect upon people willing to bring important civil rights litigation.

In *Arakaki v. Lingle, 477 F.3d 1048, 1069 (9th Cir. 2007),* the Court affirmed an order awarding $ 5300 in costs against civil rights plaintiffs. Citizens of Hawaii had brought a civil rights action challenging state programs which gave preferential treatment to persons of Hawaiian ancestry in violation of equal protection principles. After dismissing the entire case, the trial court awarded costs against plaintiffs. On appeal, plaintiffs argued, as do plaintiffs here, that imposing such costs would have a "chilling effect" on civil rights litigation. The court disagreed, "Plaintiffs have not demonstrated that the award of such modest costs, divided among multiple plaintiffs, constitutes an abuse of discretion." *Id. In Arakaki,* [*9] the court did not find that an award of costs should be based on the "chilling effect."

The chilling effect argument works both ways. If the Court were to deny the costs because the filing of the law suit improved conditions for all, then cities and counties would be punished for pursuing remedial measures while a law suit is pending. This result would have a chilling effect on cities and counties taking action for the good of the public while suits are pending. In addition, if the effect of making someone pay for filing a spurious law suit and costing public coffers huge sums of money to defend them is that fewer such suits will be attempted, this is precisely the purpose of the costs being allowed and awarded. While the issues of segregation and discrimination are indeed important issues, there must still be a legal basis for filing a suit based on the facts that exist. In the instant case, the Court granted summary judgment on all federal claims. Therefore, the Court found that no factual basis for the law suit existed.

In addition, in *Arakaki,* the Court noted that there were multiple plaintiffs among which the costs could be divided. Likewise, here, there are multiple plaintiffs [*10] in the action. While the costs in this case are greater than in *Arakaki,* the costs reflect the broad extent of the allegations and the vigorous defense. For these reasons, the Court will exercise its discretion to award costs. Plaintiffs' motion to deny costs will be denied.

## B. County's Motion for Review of Taxation of Costs

County requests the Court review the fees disallowed for "exemplification" and fees related to exemplification of paper documents.

### 1. Fees for the Services of Applied Discovery

First, County asks for an additional $ 13,445.00 for costs incurred for the services of Applied Discovery, which includes costs arising out of the upload, translation and refinement of e-mail which defendant produced in discovery to plaintiffs. The County no longer asks for the full $ 86,041 for exemplification costs, but asks that the amount awarded by increased by $ 13,445. County argues that Applied Discovery was used to synthesize and upload over a million e-mails requested by plaintiffs which were housed on the County's four server systems. (Doc. 447, County's Moving papers p. 4-6.) County also argues that Applied Discovery's electronic scanning and imaging is "exemplification" because [*11] electronic data are "documents." (See 1970 Advisory Comm. Notes of *Fed.Rule. of Civl.Proc. 34.*) County argues that it only seeks the costs of retrieving and producing e-mails pursuant to plaintiffs' discovery requests. County seeks further exemplification costs as follows:

| | |
|---|---|
| Upload fee for electronic data | $ 6,480.00 |
| | |

2007 U.S. Dist. LEXIS 94328, *

| | |
|---|---|
| Upload fee for electronic data | $ 1,440.00 |
| Image Export set up fee | $ 275.00 |
| Project Set up fee | $ 250.00 |
| Groupwise PO set up | $ 1,000.00 |
| Technical time by Applied Discovery staff | $ 4,000.00 |
| TOTAL | 13,445.00 |

From the Court's review of the invoices for which defendant seeks as costs (Doc. 448, Cassidy Decl. Exh B and C), there is little explanation of the costs. For instance, the invoice states that $ 6,480.00 and $ 1,440.00 were incurred for "Upload Fee Per Gig." (Doc. 448, Cassidy Decl. Exh B and C). Mr. Cassidy states that these invoices are for services rendered in conjunction with production of County e-mails. The invoices contain other descriptions of services provided which are clearly not "exemplification," such as "Online review," "Technical Time."

The definition of exemplification is not broad. Unless otherwise authorized by statute or contract, the types of costs that may be awarded [*12] under *Rule 54(d)* are limited to those enumerated in *28 USC § 1920*. *Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-442, 107 S.Ct. 2494, 2497-2498, 96 L. Ed. 2d 385 (1987)*. The district court has no discretion to award costs not authorized by statute or contract. *Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. at 445*. There is authority that electronic data and scanned date are considered "exemplification." See *El Dorado Irrigation Dist. v. Traylor Bros., 2007 U.S. Dist. LEXIS 14440, 2007 WL 512428, *10 (E.D.Cal. 2007)* (scanning is akin to photocopying. The purposes of the two methods are largely the same, to reproduce a document so that it may also be utilized by multiple parties and individuals.); *BDT Prods. v. Lexmark Int'l, Inc., 405 F.3d 415, 420 (6th Cir. 2005)* (electronic scanning and imaging could be interpreted as "exemplification and copies of papers.")

While there is authority "exemplification" includes electronic data and scanning, the Court has not been provided with any competent explanation of the invoice. It is defendant burden of proof on costs. *English v. Colo. Dep't of Corrections, 248 F.3d 1002, 1013 (10th Cir. 2001)*. Certainly, set up fees and technical time do not involve exemplification. [*13] For other item on the invoice, such as "image export set up fee," no explanation is provided. The Court exercises its discretion to deny this cost.

In further support of their position, plaintiffs cite *Zuill v. Shanahan, 80 F.3d 1366, 1371 (9th Cir. 1996), cert. denied, 519 U.S. 1090, 117 S. Ct. 763, 136 L. Ed. 2d 710 (1997)* for the proposition that the intellectual effort involved in the production is not a proper cost. In *Zuill*, defendant paid $ 3,661 to another law firm to get certified copies to prove copyright registration. The Ninth Circuit denied recovery for the full amount: "Fees for exemplification and copying are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production." *Id. at 1371*. The Court permitted recovery for "Copyright Office fees and expenses of photocopying the documents and shipping them to defense counsel," but denied the payment to the other attorneys fees and related "intellectual effort involved in their production." Thus, the cost of conducting the research and analysis eventually reflected in the exhibit is not recoverable cost, but the cost of actually preparing the exhibit itself is recoverable.

The Court agrees that [*14] some of the items on the Applied Discovery invoices appear to be intellectual efforts and are not exemplification.

Defendant argues that fairness dictates that having sorted through one million e-mails originally uploaded from the County's e-mail system, defendant has born an "undue hardship" in responding to plaintiffs' discovery requests. Defendant argues that it had "no choice but to accommodate [plaintiffs'] demands." (Doc. 447, County's Moving Papers, p. 7.)

The remedy, however, was during discovery. The remedy was for defendants to move the Court for a protective order or object on the basis of undue hardship. *Fed.R.Civ.P. 26(b)(2)*; *26(c)*. The remedy does not include remaining silent through hardship and attempting to shift a cost which County voluntarily incurred. The Federal Rules of Civil Procedure do not require that a party respond to discovery and produce at any cost. *Fed.R.Civ.P. 26(b)(2)(B)* ( A party "need not provide discovery" of electronically-stored information from sources that the party identifies as "not reasonably acces-

sible because of undue burden or cost.") Accordingly, the clerk properly taxed the costs.

**2. Exemplification Costs for Paper Documents**

County also [*15] argues that costs incurred for the copying of paper documents for production to plaintiffs should be added. Specifically, County asks for most of the costs for copying 35,307 pages of documents that resulted from plaintiff's discovery. (Doc. 447, County Memorandum p.9.) County argues that costs improperly denied include:

(A) Defendants production of documents in response to request for production of documents, Set One;

(B) Defendant's first supplement response to request for production of documents, Set one;

(C) Defendants' production of documents in response to request for production of documents, set three;

(D) Defendants' production of documents in response to request for production of documents, set five.

County asks that the Court award an additional $ 4,420.43 for exemplification of paper documents. Defendant presents evidence that this cost arose out of copying over 35,000 pages of documents in response to plaintiffs' document requests.

As a general rule, expenses of copying pleadings, correspondence, exhibits and other documents filed with the court and tendered to the opposing party are taxable as costs, provided the copies are "necessarily obtained for use in the case." *28 U.S.C. § 1920(4)*; [*16] *M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1410 (7th Cir. 1991)*. Courts allow recovery of photocopying costs even if the underlying document was never used at trial. *Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d 587, 588 (9th Cir. 1990)* (rejecting argument that copied documents must be introduced into the record to be an allowable cost). *Section 1920(4)* enables a court to award copying costs for any document "necessarily obtained for use in the case" and does not specifically require that the copied document be introduced into the record to be an allowable cost. *Id.* "Exemplification," includes exhibits and other illustrative materials. *Maxwell v. Hapag-Lloyd Aktiengesellschaft, Hamburg, 862 F.2d 767, 770 (9th Cir. 1988)*. Accord *Disc Golf Ass'n, Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1010 (9th Cir. 1998)*.

Here, defendant County submitted invoices which demonstrate the costs are associated with copying charges for the production of 35,000 pages during discovery. (Doc.448, Dec. Cassidy, Exh. E, G, I, K.) Defendant presents evidence that each invoice corresponds to the production of documents to plaintiffs during discov-

ery. Each invoice denotes that [*17] the copying charges relate to "Litigation Copies." (*Id.*) Plaintiffs do not argue against the additional costs for litigation copies. Plaintiffs do not dispute whether or not the 35,000 copies were necessary for the use in the case. Accordingly, the Court finds that these copies were made in the necessary use of the case to respond to discovery. The amount of $ 4,420.43 will be allowed.

**C. Plaintiffs' Request to Disallow Certain Deposition Costs**

Plaintiffs request the Court limit the taxable deposition costs to those "necessarily obtained for use in the case." Plaintiffs argue the cost award should be reduced by $ 4,388.71 for the County and reduced by $ 2,277.40 for the City. Plaintiffs argue that the cost should not include depositions taken for the purpose of discovery and should be limited to those depositions actually used in the summary judgment proceedings. (Doc. 449, P.4.) Plaintiff argues that only those depositions transcripts used in the summary judgment proceedings should be allowed.

Deposition transcripts are taxable as costs under *28 U.S.C. § 1920(2)*; *Evanow v. M/V Neptune, 163 F.3d 1108, 1118 (9th Cir. 1998)* (Trial court did not abuse its discretion in awarding costs for [*18] trial exhibits, photocopies, court reporter fees, and deposition transcripts.) Plaintiffs cite *Washington State Dep't of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995)* for the proposition that limiting the award of costs to only those depositions used at trial is not an abuse of discretion.

*Washington State Dept. of Transp. v. Washington Natural Gas Co., Pacificorp* merely stands for the proposition that the district court acts within its discretion by awarding deposition transcript costs to those used at trial. It does not preclude the Court from awarding other deposition costs.

In this case, defendants City and defendant County, moved the court, either jointly or separately, in five summary judgment motions. Each motion covered a broad spectrum of publicly provided services, and provided historical, financial, geographic and situational evidence and data for this Court to consider and rule upon. Plaintiffs challenged County's and City's policies regarding funding and construction of public infrastructure (sewers, storm drains, curbs and gutters, and sidewalks). Plaintiffs challenged the Master Tax Sharing Agreement and Annexation policies. Plaintiffs [*19] challenged the policies and practices of provision of sewer services. Plaintiffs challenged that the County and Sheriff deprived them of equal law enforcement protective services and bilingual services. Plaintiffs challenged

2007 U.S. Dist. LEXIS 94328, *

the County's provision of parks and use of state government funding. Based upon the scope and extent of the motions the Court ruled upon, the Court finds that it would be an abuse of discretion NOT to permit the deposition costs. Accordingly, the Court will not reduce the amount awarded by the Clerk.

**Conclusion**

For the foregoing reasons, the Court orders as follows:

1. Plaintiffs' motion for the Court to exercise discretion and deny costs is DENIED.

2. For the fees for the Services of Applied Discovery, the County asked for $ 13,445.00 additional costs, the Court awards $ 0.00 additional costs.

3. For the Exemplification Costs for Paper Documents, the County asked for $ 4,420.43 additional costs, the Court awards $ 4,420.43 additional costs.

4. Plaintiffs' Request to disallow certain deposition costs is DENIED.

5. In all other respects, the clerk's Bill of Costs shall remain in force and effect.

IT IS SO ORDERED.

**Dated: December 11, 2007**

    /s/ **Lawrence J. O'Neill**

    UNITED STATES [*20] DISTRICT JUDGE

**APPENDIX OF AUTHORITIES IN PLAINTIFFS' OBJECTIONS
TO DEFENDANT'S BILL OF COSTS**

# EXHIBIT C

LEXSEE 2008 U.S. DIST. LEXIS 71107

**ERMA J. ALANIZ, Plaintiff, v. ROBERT M. PEPPERCORN, M.D., INC. and ROBERT M. PEPPERCORN, Defendants.**

**No. 2:05-cv-02576-MCE-DAD**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

*2008 U.S. Dist. LEXIS 71107*

**August 8, 2008, Decided
August 8, 2008, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *Alaniz v. Peppercorn, 2008 U.S. Dist. LEXIS 96045 (E.D. Cal., Nov. 14, 2008)*

**PRIOR HISTORY:** *Alaniz v. Robert M. Peppercorn, M.D., Inc., 2007 U.S. Dist. LEXIS 32694 (E.D. Cal., May 2, 2007)*

**COUNSEL:** [*1] For Erma J. Alaniz, Plaintiff: Alan Adelman, LEAD ATTORNEY, Law Offices of Alan Adelman, San Francisco, CA; Elizabeth Sharon Mancl, Law Offices of Elizabeth S. Mancl, Yuba City, CA.

For Robert M. Peppercorn, M.D., Robert M. Peppercorn, M.D., Inc., A California corporation, Defendants: Dennis R Murphy, LEAD ATTORNEY, Murphy Austin Adams Schoenfeld, Sacramento, CA.

**JUDGES:** MORRISON C. ENGLAND, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MORRISON C. ENGLAND, JR.

**OPINION**

*MEMORANDUM AND ORDER*

Plaintiff Erma Alaniz ("Alaniz") submitted a Bill of Costs in the above-referenced matter, pursuant to *28 U.S.C. § 1920*, following a jury verdict in favor of Alaniz reached on June 26, 2008. [1] While Defendants do not dispute the Alaniz's entitlement to costs as the prevailing party in this litigation, they do take issue with certain categories of costs claimed by Alaniz, arguing that those items are unreasonable and/or unnecessary and should consequently not be allowed.

1 The Bill lists $ 12,792.91 in total costs.

The Court has reviewed Alaniz's Bill of Costs, along with the documentation submitted in support thereof, and has further reviewed Defendants' objections. Costs are awarded to Alaniz as set forth below.

**STANDARD**

Under *Federal Rule of Civil Procedure 54(d),* [*2] the prevailing party in a lawsuit may recover its costs "unless the court otherwise directs". As this language suggests, the ultimate decision on whether to award costs is a matter within the court's discretion. *Association of Mexican-American Educators v. State of Calif., 231 F.3d 572, 591-92 (9th Cir. 2000)*. If the Court declines to award costs as requested by the prevailing party, however, it should specify its reasons for doing so. *Berkla v. Corel Corp., 302 F.3d 909, 921 (9th Cir. 2002)*. Claims for cost items not properly documented will generally not be allowed. *English v. Colorado Dept. Of Corrections, 248 F.3d 1002, 1013 (10th Cir. 2001)*.

**ANALYSIS**

Defendants first object to hotel expenses of $ 997.92 incurred by Plaintiff's counsel. Although *Rule 54(d)* allows broad discretion to courts to award costs, the court may not tax costs beyond those authorized by *28 U.S.C. § 1920. Crawford Fitting Co. v. J.T. Gibbons, 482 U.S. 437, 441, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987)*. It is well established that an attorney's expenses in attending both court proceedings are not recoverable as costs. *Wahl v. Carrier Mfg.. Co., Inc., 511 F.2d 209, 217 (7th Cir. 1975)*. Accordingly, Plaintiff may not recover $ 997.92 of hotel expenses [*3] included in the Bill of Costs. [2]

2 Defendant also objects to $ 15 in parking fees incurred by Plaintiff's Counsel during the trial.

2008 U.S. Dist. LEXIS 71107, *

This cost is associated with expenses in attending court proceedings and may not be taxed.

Next, Defendants object to Counsel's online research fees of $ 9.95. Those costs will not be taxed because the expense of computerized legal research are properly deemed as a component of the attorney's fee rather than a reimbursable cost under the purview of *28 U.S.C. § 1920*. *See Invessys Inc. v. McGraw-Hill Cos., Ltd., 369 F.3d 16, 22-23 (1st Cir. 2004)*. Additionally, conference call costs in the amount of $ 47.96 will not be taxed because they do not fall under the provisions listed in *§ 1920*.

Finally, Defendants contest $ 750 in charges associated with the re-service of subpoenas on witnesses to appear at trial. *Section 1920* allows costs associated with service of subpoenas to be taxed, and Defendants do not offer argument as to why re-service is unreasonable. The Court will allow the costs associated with the service of these subpoenas to remain in Plaintiff's Bill of Costs.

## CONCLUSION

Given the foregoing, costs are taxed in favor of Alaniz in the sum of $ 11,722.08.

IT [*4] IS SO ORDERED.

Dated: August 8, 2008

/s/ Morrison C. England, Jr.

MORRISON C. ENGLAND, JR.

UNITED STATES DISTRICT JUDGE

# APPENDIX OF AUTHORITIES IN PLAINTIFFS' OBJECTIONS
## TO DEFENDANT'S BILL OF COSTS

# EXHIBIT D

LEXSEE 2007 U.S. DIST. LEXIS 76767

**LESTER A. FERREIRA, SR. and EVA JEAN FERREIRA., Plaintiffs, v. M/V CCNI ANTOFAGASTA, her engines, tackle, apparel, furniture, etc., IN REM, COMPANIA CHILENA de NAVEGACION INTEROCEANIA S.A., PORT OF STOCKTON, and SECHSTE REEDEREI ALSTERUFER 26 GmbH & CIE. KG,, Defendant.**

**No. 2:04-cv-1916-MCE-DAD**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 76767*

**October 15, 2007, Decided**
**October 16, 2007, Filed**

**COUNSEL:** [*1] For Lester A Ferreira, Sr, Plaintiff: Edward Myron Bull, III, Kurt Leonard Micklow, LEAD ATTORNEYS, Banning Micklow & Bull LLP, San Francisco, CA; Eugene A Brodsky, LEAD ATTORNEYS, Banning Micklow & Bull Lopez, San Francisco, CA.

For M/V CCNI Antofagasta, her engines, tackle, apparel, furniture, etc., Defendant: John David Giffin, LEAD ATTORNEY, Keesal Young and Logan, San Francisco, CA.

For Port of Stockton, Defendant: Clifford Wade Stevens, LEAD ATTORNEY, Lisa Blanco Jimenez, Neumiller and Beardslee, Stockton, CA; Richard C Wootton, LEAD ATTORNEY, Cox, Wootton, Griffin, Hansen & Poulos, LLP, San Francisco, CA.

For Sophie Rickmers Schiffahrtsgesellschaft mbH & CIE KG, Defendant: John David Giffin, LEAD ATTORNEY, John Collier Cox, Keesal Young and Logan, San Francisco, CA.

**JUDGES:** MORRISON C. ENGLAND, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MORRISON C. ENGLAND, JR.

**OPINION**

**MEMORANDUM AND ORDER**

This matter comes before the Court on the September 26, 2006 Bill of Costs submitted by Plaintiff Lester A. Ferreira Sr. (hereinafter "Plaintiff") pursuant to *28 U.S.C. § 1920*, following a jury verdict in favor of Plaintiff reached on September 12, 2006.

On August 17, 2007 the Court issued a Minute Order indicating that [*2] Plaintiff had failed to state with specificity the need for photocopies, trial exhibits and other exemplifications for which reimbursement is requested. In addition, the Court further observed that Plaintiff, in his Bill of Costs, had failed to demonstrate any extraordinary circumstances justifying the award of travel costs associated with depositions in this case. Although the Court's Minute Order permitted Plaintiff to provide further supporting documentation as to these items within twenty (20) days and allowed Plaintiff to provide further support for these costs.

Plaintiff made no response to the Court's Minute Order. Consequently, the Court will now determine the costs Plaintiff is entitled to based upon Plaintiff's original motion. Defendant Sophie Rickmers Schiffahrtsgesellschaft mbH & CIE KG submitted opposition to Plaintiff's motion, claiming Plaintiff is not entitled to recovery of costs, but urging the Court to award not more than $ 2,880.78 should it conclude otherwise.

The Court has now reviewed Plaintiff's Bill of Costs, along with the documentation submitted in support thereof, and has further reviewed Defendant's objections. Costs are awarded to Plaintiff as set forth [*3] below.

**STANDARD**

Under *Federal Rule of Civil Procedure 54(d)*, the prevailing party in a lawsuit may recover its costs "unless the court otherwise directs."

2007 U.S. Dist. LEXIS 76767, *

As this language suggests, the ultimate decision on whether to award costs is a matter within the court's discretion. *Association of Mexican-American Educators v. State of Calif., 231 F.3d 572, 591-92 (9th Cir. 2000)*. If the Court declines to award costs as requested by the prevailing party, however, it should specify its reasons for doing so. *Berkla v. Corel Corp., 302 F.3d 909, 921 (9th Cir. 2002)*. Claims for cost items not properly documented will generally not be allowed. *English v. Colo. Dep't of Corrections, 248 F.3d 1002, 1013 (10th Cir. 2001)*.

## ANALYSIS

Turning to the specific items of costs claimed by Plaintiff, private process servers' fees are recoverable as costs. *Alflex Corp. v. Underwriters Lab., 914 F.2d 175 (9th Cir. 1990)*. Section 1920(1) allows "fees of the clerk and marshal" to be taxed as costs, and a private process servers' fees are now treated like those of marshals for cost taxing purposes. *Id.* Accordingly, Plaintiff's unopposed request for process servers' fees in the amount of $ 168.02 is GRANTED.

Defendants [*4] take issue with the costs incurred by Plaintiff in obtaining the transcripts of depositions taken in this case. Plaintiff argues the majority of these depositions were not for use at trial, and that daily copies of trial transcripts were unnecessary. The cost of depositions is taxable pursuant to *Section 1920(2). Alflex Corp., 914 F.2d at 177*.

The Ninth Circuit has instructed that "deposition costs are taxable if they are reasonably necessary for trial." *Evanow v. M/V Neptune, 163 F.3d 1108, 1118 (9th Cir. 1998)*; see also *Washington State Dep't of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995)* ("disallowance for expenses of depositions not used at trial is within the district court's discretion.") The cost of daily copies of trial transcripts is recoverable if a daily transcript is indispensable due to the length and complexity of trial. *A.B.C. Packard, Inc. v. General Motors Corp., 275 F.2d 63, 75 (9th Cir. 1960)*.

Plaintiff has requested $ 5,806.93 for the court reporter's fees and other fees involved with obtaining depositions. The Court finds this amount is inappropriate as the cost associated with obtaining copies of the trial transcript ($ 142.76) [*5] was not indispensable. Plaintiff failed to provide justification for this expense as allowed by this Court's Minute Order. Accordingly, the Court finds Plaintiff is entitled to only $ 5,664.17 for deposition transcripts and associated costs.

Witness fees are taxable under *Rule 54(d)* and *Sections 1920* and *1821*, all of which govern the allowance of witness fees. Witness fees are limited to $ 40.00 per

day, as set forth in *Section 1821*. The travel expenses of witnesses are also taxable under *Section 1821*.

Defendant objects to the amount Plaintiff seeks for attorney travel costs for depositions. *Section 1920* does not provide for attorney travel expenses and cases have held such expenses are not taxable as costs.

See *City Bank of Honolulu v. Rivera Davila, 438 F.2d 1367, 1371 (1st Cir. 1971)* (travel expenses for attending depositions were not taxable as costs); *Walters v. President and Fellows of Harvard College, 692 F. Supp. 1440, 1442 (D. Mass. 1988)* ("*Section 1920* makes no provision for the recovery of traveling, parking or miscellaneous expenses incurred by the prevailing party's attorneys."); 10 Wright et al., Federal Practice and Procedure § 2677 at 370-71; *Willis Corroon Corp. v. United Capitol Ins. Co., 1998 U.S. Dist. LEXIS 5394 (N.D. Cal. 1998)*. [*6] Defendant's objections are well taken and appropriate. Plaintiff cannot recover the $ 8,982.50 sought for the travel expenses of Plaintiff's attorney. The Court will therefore reduce the total amount of witness fees sought by Plaintiff to the allowable amount of $ 1,764.82.

The final area of disagreement pertaining to awardable costs pertains to fees for exemplification and copies of papers necessarily obtained for use in this case. While such fees are unquestionably proper under *28 U.S.C. § 1920(4)*, Defendant argues Plaintiff has not stated with specificity the necessity of his exemplification and copying expenses. *28 U.S.C. § 1920(4)* enables a court to award copying costs for any document "necessarily obtained for use in the case" and does not specifically require that the copied document be introduced into the record to be an allowable cost. *Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d 587 (9th Cir. 1990)*. The mere recitation of the phrase "necessarily incurred", as Plaintiff has done in his Bill of Costs, is not sufficient to meet the requirements of *Section 1920* and the supporting authorities. *El Dorado Irrigation Dist. v. Traylor Bros., 2007 U.S. Dist. LEXIS 14440 (E.D. Cal. 2007)*.

Plaintiff [*7] has failed to provide the Court with any specific basis justifying the copying and exemplification costs he now seeks. In its Minute Order, the Court allowed Plaintiff another opportunity to make the necessary showing required for recovering expenses for exemplifications and copies. Plaintiff neglected to respond to the Minute Order. The Court finds that Plaintiff is not entitled to the requested $ 6,997.61 in costs for exemplifications and copies.

## CONCLUSION

2007 U.S. Dist. LEXIS 76767, *

Based on the foregoing, Plaintiff is entitled to recover $ 7,597.01 in allowable costs. The judgment in this matter shall be amended accordingly.

IT IS SO ORDERED.

Dated: October 15, 2007

MORRISON C. ENGLAND, JR.

UNITED STATES DISTRICT JUDGE

APPENDIX OF AUTHORITIES IN PLAINTIFFS' OBJECTIONS
TO DEFENDANT'S BILL OF COSTS

# EXHIBIT E

1 of 8 DOCUMENTS

**SUNRICH FOOD GROUP, INC., Plaintiff-Appellee v. PACIFIC FOOD OF OREGON, INC., Defendant-Appellant**

No. 05-35152, No. 05-36171

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

*207 Fed. Appx. 745; 2006 U.S. App. LEXIS 25449*

September 13, 2006, Argued and Submitted, Portland, Oregon
October 12, 2006, Filed

**NOTICE:** [**1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** On remand at, Costs and fees proceeding at, Motion granted by, in part, Motion denied by, in part *Sunrich Food Group, Inc. v. Pac. Foods of Or., Inc., 2007 U.S. Dist. LEXIS 35175 (D. Or., May 10, 2007)*

**PRIOR HISTORY:**    Appeals from the United States District Court for the District of Oregon. D.C. No. CV-01-01108-HA. Ancer L. Haggerty, District Judge, Presiding.
*Sunrich, Inc. v. Pac. Foods of Or., Inc., 2004 U.S. Dist. LEXIS 10967 (D. Or., June 8, 2004)*

**DISPOSITION:**    AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > General Overview*
*Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule*
[HN1] A denial of summary judgment is not a final order and is not appealable, unless it is coupled with a grant of summary judgment to the other party.

*Trade Secrets Law > Factors > Ready Availability*
[HN2] For the purposes of a trade secrets inquiry, reasonable efforts to maintain secrecy include limiting access to information on a "need to know basis."

*Trade Secrets Law > Factors > Definitions*
*Trade Secrets Law > Factors > Ready Availability*
[HN3] Pursuant to *Or. Rev. Stat. § 646.461(4)(a)*, information that is readily obtainable from public sources is not a trade secret.

*Civil Procedure > Trials > Jury Trials > Jury Instructions > Requests for Instructions*
*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN4] The mere submission of alternative jury instructions prior to a trial is ordinarily not sufficient to preserve an objection to the district court's instructions. However, if counsel introduces an instruction and presents arguments to the district court concerning the merits of that instruction, so that the disputed issue is clearly brought to the attention of the district court, the U.S. Court of Appeals for the Ninth Circuit will occasionally find compliance with *Fed. R. Civ. P. 51.*

*Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest*
[HN5] Under Oregon law, prejudgment interest is available from the date a party's damages become "ascertainable" even if there remain factual disputes for the jury and even if there is no easily computable formula for such damages.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > General Overview*
[HN6] Under Oregon law, when a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, a district court must apportion the fees incurred for each

207 Fed. Appx. 745, *; 2006 U.S. App. LEXIS 25449, **

claim. However, if a petitioning party demonstrates that it would have incurred fees regardless of whether the non-fee claims were included in the case, then the district court need not apportion the fees. In addition, apportionment between claims is not required if the fee and non-fee claims involve common legal or factual issues, the theory being that the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > General Overview*
[HN7] The U.S. Court of Appeals for the Ninth Circuit has remanded cases for further explanation where the basis for a reduction of claimed attorneys' fees was not clearly articulated.

*Civil Procedure > Judicial Officers > Judges > Discretion*
*Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview*
*Civil Procedure > Remedies > Costs & Attorney Fees > Costs > Depositions & Transcripts*
[HN8] The U.S. Court of Appeals for the Ninth Circuit requires a district court to specify reasons for a refusal to award costs, so that the court of appeals can determine whether the reasons are appropriate and whether, considering those reasons, the district court abused its discretion by denying costs. The disallowance for expenses of depositions that are not used at trial is within the district court's discretion.

**COUNSEL:** For UNRICH FOOD GROUP, INC., Plaintiff-Appellee: Eric A. Bartsch, Esq., LINDQUIST & VENNUM, Minneapolis, MN; Peter E. Heuser, Esq., KOLISCH, HARTWELL, DICKINSON, McCORMACK & HEUSER, Portland, OR; Sarah Stroebel, LINDQUIST AND VENNUM, P.L.L.P., Minneapolis, MN.

For PACIFIC FOOD OF OREGON, INC., Defendant-Appellant: James N. Westwood, Esq, STOEL RIVES, LLP, Portland, OR; Bryan P. Coluccio, Esq., CABLE LANGENBACK KINERK & BAUER, Seattle, WA.

For SUNRICH FOOD GROUP, INC., Plaintiff-Appellant: Eric A. Bartsch, Esq., LINDQUIST & VENNUM, Minneapolis, MN; Peter E. Heuser, Esq., KOLISCH, HARTWELL, DICKINSON, MCCORMACK & HEUSER, Portland, OR; Sarah Stroebel, LINDQUIST AND VENNUM, P.L.L.P., Minneapolis, MN.

For PACIFIC FOOD OF OREGON, INC., Defendant-Appellee: James N. Westwood, Esq, STOEL RIVES, LLP, Portland, [**2] OR; Bryan P. Coluccio, Esq., CABLE LANGENBACK KINERK & BAUER, Seattle, WA.

**JUDGES:** Before: HAWKINS, SILVERMAN, and GOULD, Circuit Judges.

**OPINION**

[*746] MEMORANDUM *

   * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by *Ninth Circuit Rule 36-3.*

Pacific Foods of Oregon, Inc. ("Pacific") appeals from a judgment following a jury [*747] trial in favor of Sunrich Food Group, Inc. ("Sunrich") on Sunrich's claims of misappropriation of trade secrets and breach of contract. Sunrich cross-appeals the district court's award of attorneys' fees, which was substantially lower than the amount requested by Sunrich. In each appeal, we affirm in part, reverse in part, and remand.

**Appeal No. 05-35152:**

**I. Misappropriation of Trade Secrets**

**A. Denial of Pacific's Motion for Summary Judgment**

Although Pacific argues that the district court erred by denying its motion for summary judgment on Sunrich's misappropriation of trade secrets claim, [HN1] a denial [**3] of summary judgment is not a final order and is not appealable, unless coupled with a grant of summary judgment to the other party. *United States v. Alameda Gateway, Ltd., 213 F.3d 1161, 1164 (9th Cir. 2000); Lum v. Honolulu, 963 F.2d 1167, 1170 (9th Cir. 1992).*

**B. Pacific's Motion for Judgment as a Matter of Law**

Pacific concedes that Sunrich's pricing and margin information (i.e., Pacific's price to Sunrich for manufacturing and packing its Soy-Um and Rice-Um products and Sunrich's price to Trader Joe's for these products) "is the sort of cost data' that can be a trade secret under *O.R.S. § 646.461(4).*" There was also sufficient evidence for a rational jury to conclude that Sunrich's predecessor, First Light Foods ("FLF"), took reasonable efforts to protect this information. The jury heard testimony from Mr. Jenkins that the only information FLF initially provided to potential suitors was "top line" financial information, and that FLF did not reveal their confidential

207 Fed. Appx. 745, *; 2006 U.S. App. LEXIS 25449, **

pricing information; Jenkins also testified that FLF did not reveal any detailed pricing information to Sunrich until the parties were deep into the [**4] merger process and after consulting an attorney. Mr. Routh of Sunrich acknowledged receiving general financial statements, margin information and sales volumes during the merger negotiations. Routh testified that he did not recall receiving margin information on any individual products, but only gross margin information on all of FLF's sales.

Drawing all inferences in favor of upholding the verdict, the jury could have concluded either that FLF did not reveal any individual product pricing information to Sunrich (only overall margin information), or that its disclosure of this information at a late stage of the merger was "reasonable" under the circumstances. See *Buffets, Inc. v. Klinke, 73 F.3d 965, 969 (9th Cir. 1996)*([HN2] reasonable efforts to maintain secrecy includes limiting access to information on a "need to know basis").

Pacific also argues that Sunrich failed to establish its actual losses resulting from the pricing misappropriation. However, Sunrich introduced testimony and documents proving that Pacific began communicating directly with Trader Joe's new buyer in 2001 to undercut Sunrich's price to Trader Joe's on the existing soy and rice beverages. Sunrich's [**5] expert reviewed the company's past sales history, calculated what Sunrich's reasonably certain future sales would have been, and compared them to Sunrich's actual sales to Trader Joe's in 2001 and 2002. Viewing the evidence in the light most favorable to Sunrich, the jury could have concluded that Sunrich lost market share at Trader Joe's because Pacific used confidential price margin information to undercut Sunrich's existing prices.

Pacific also contends that Sunrich did not establish that the "half-gallon opportunity" constitutes a "trade secret." We agree. Trader Joe's was already purchasing half-gallons from another soy producer, [*748] and Trader Joe's interest in a half-gallon size product was "generally known to the public" and not a "trade secret" under the Oregon Trade Secret Act ("OTSA"). See [HN3] *O.R.S. § 646.461(4)(a); Ikon Office Solutions, Inc. v. American Office Products, Inc., 178 F. Supp. 2d 1154, 1169-70 (D. Org. 2001)*(information readily obtainable from public sources not a trade secret). Trader Joe's also disclosed its dissatisfaction with its current half-gallon vendor in front of Pacific, who was not restricted from competing [**6] with FLF under the terms of the Packing Agreement. The district court should have granted Sunrich's motion for judgment as a matter of law on this issue.

**C. Motion in Limine Regarding Expert Testimony**

The district court did not abuse its discretion by permitting Sunrich's damages expert to amend an earlier report. Sunrich's claims for misappropriation of trade secrets overlapped with several of its other common law claims, including unfair competition. It is thus unsurprising that someone not trained in the law would use a broader description like "unfair dealing" to describe all these similar causes of action. The crux of the expert's report, including the methodology and the ultimate calculation of lost profits, remained unchanged from one report to the next. Pacific does not claim that it was surprised by the expert's testimony or given an inadequate time to prepare for rebuttal. Nor does Pacific explain how it was prejudiced in any way by admission of the testimony (i.e., inability to offer counter-evidence). The district court did not abuse its discretion in denying Pacific's motion in limine.

**D. Exclusion of Exhibit 704**

We find it difficult to review Pacific's [**7] claim of error regarding the exclusion of Exhibit 704 because the record lacks any offer of proof regarding the foundation for admitting the documents. See *Heyne v. Caruso, 69 F.3d 1475, 1481 (9th Cir. 1995)*. The documents were only relevant if disclosed to Sunrich; however, it is not readily apparent from the purported "cover letter" that these pricing documents were the "financial" documents enclosed with the letter. On this record, we cannot say the district court abused its discretion by excluding the documents. [1]

> 1 We are also unpersuaded that the district court completely denied Pacific the opportunity to offer the documents at trial; although the court generally excluded most merger documents as irrelevant, it recognized that some of them could be relevant to Pacific's disclosure of trade secrets argument, and indicated that it would give Pacific "leave to reoffer three documents that they believe is the best evidence of this waiver of trade secret material." Pacific does not cite to any portion of the record where it attempted to introduce these documents at trial.

**[**8] II. Breach of Contract**

**A. Pacific's Motion for Judgment as a Matter of Law**

The district court did not err by denying Pacific's motion for judgment as a matter of law with respect to the strawberry, coffee and fat-free breach of contract claims. Pacific argues that the orders it processed for strawberry, coffee or fat-free Soy-Um or Rice-Um were not "requirements" because the orders were addressed to Pacific, while the Packing Agreement describes "re-

207 Fed. Appx. 745, *; 2006 U.S. App. LEXIS 25449, **

quirements" as "Trader Joe's orders to FLF." However, Trader Joe's buyer testified that he sent all of the purchase orders for the product to *both* FLF as the vendor and to Pacific, who produced the product for FLF under the Packing Agreement. Furthermore, the Packing Agreement itself contemplates that Pacific [*749] would receive and process Trader Joe's orders for the Product on behalf of FLF, formalizing the existing practice of the parties at the time of the agreement: "Administration of the production, orders, sales and invoicing of the Product will be handled by Pacific."

Pacific also contends that because Exhibit B to the agreement did not list the strawberry, coffee or fat-free varieties, they did not constitute a [**9] "Product." Although Exhibit B set forth the pricing agreement at the time the parties executed the Packing Agreement, the definition of "Product" is not limited to the items described in Exhibit B, but covers "*any* soy base or rice base beverages manufactured and packaged for retail sale using the Trademark . . . or any other soy base or rice base beverages to be sold, distributed, marketed, or developed by FLF (1) to or for Trader Joe's. . . ." (emphasis added).

Finally, Pacific argues that there was no breach of the Packing Agreement with respect to the half-gallon product. We agree. While the Packing Agreement was in place, Trader Joe's did not actually place an "order" for a half-gallon Soy-Um or Rice-Um product to FLF *or* Pacific, as that term is used in its customary sense in the Packing Agreement. Although not defined in the Packing Agreement, "order" is used as shorthand for "purchase order," that is, a request for a specific amount of product, and not a general desire to purchase a not yet existent product. ["Administration of the production, orders, sales and invoicing of the Product will be handled by Pacific"; "The payment for each order of Product shall be net [**10] fifteen (15) days from the date of Pacific's invoice."]. At best, Trader Joe's expressed an interest in placing an order for such a product from FLF during the meeting with FLF and Pacific in November 1998, and indicated that it would order such a product from FLF in the future if it became available. We therefore reverse the denial of judgment as a matter of law on this issue.

**B. Exclusion of Exhibit 719**

Although the district court appears to have excluded Exhibit 719 as irrelevant, we agree that this proffered exhibit was possibly relevant to Pacific's untimeliness defense. [2] However, any error in excluding the document did not taint the jury's verdict. *McEuin v. Crown Equip. Corp., 328 F.3d 1028, 1032 (9th Cir. 2003).* Pacific thoroughly questioned Sunrich's principal, Alan Routh, about the termination of the Packing Agreement. Moreover, the evidence at trial also demonstrated that the par-

ties remained in ongoing negotiations throughout the spring of 2001 -- long after the January letter -- in an attempt to resolve the pricing dispute and continue the relationship under the Packing Agreement. Thus, even if the jury had known that this letter had been sent [**11] during the merger discussions, it could have still found that it was reasonable for Sunrich to wait to terminate the Packing Agreement until it was apparent the negotiations were at an impasse.

> 2    However, before the jury could hold the statements in the letter against Sunrich, Pacific needed to establish that the counsel's letter represented the company's official position with respect to Pacific's breach, see *Fed. R. Evid. 801(d)(2)(C),* which would have been difficult to do since Sunrich did not at the time own FLF.

**C. Jury Instructions**

The district court did not abuse its discretion by rejecting Pacific's proposed jury instructions on the breach of contract claim. Pacific's proposed instructions differed from those given by the court only with respect to Pacific's contention that the products had to be listed on Exhibit B [*750] before they could constitute "products" under the Packing Agreement. [3] The district court did not err by rejecting Pacific's proposal because [**12] the definition of "Product" under the Packing Agreement contains no reference whatsoever to Exhibit B. As discussed above, Exhibit B is only referenced in the Packing Agreement with respect to pricing in Paragraph 5 to illustrate current prices for the existing products; the same paragraph contemplates that the parties will periodically review and adjust these prices. Nothing in Paragraph 5 suggests that "Products" is limited to the items set forth in Exhibit B, as opposed to the extensive and broad definition of "Product" set forth in Paragraph 1. Thus, the district court did not commit a legal error by refusing to instruct the jury as Pacific requested.

> 3    [HN4] The mere submission of alternative instructions prior to trial is ordinarily not sufficient to preserve an objection to the court's instructions. See *Grosvenor Prop. Ltd. v. Southmark Corp., 896 F.2d 1149, 1152 (9th Cir. 1990).* However, if counsel introduces an instruction and presents arguments to the district court concerning the merits of that instruction, so that the disputed issue is clearly brought to the attention of the district court, we will occasionally find compliance with *Rule 51.* See *Brown v. Avemco Inv. Corp., 603 F.2d 1367, 1373 (9th Cir. 1979).*

[**13] **III. Dismissal of Pacific's Lost Volume Seller Claim**

207 Fed. Appx. 745, *; 2006 U.S. App. LEXIS 25449, **

We decline to address this claim because Pacific utterly failed to comply with *Circuit Rule 30-1* by failing to include in the excerpts the order from which it appeals, its sealed response to Sunrich's first motion in limine, and numerous other documents that are cited in support of this argument in its opening brief. See *In re O'Brien, 312 F.3d 1135, 1136-37 (9th Cir. 2002)*. Alternatively, we note even if the district court erred by dismissing the claim, any such error was harmless because the jury rejected Pacific's affirmative defense that Sunrich had itself materially breached the Packing Agreement, and instead found that Pacific was the party who breached. See *Wasserburger v. American Scientific Chemical, 267 Ore. 77, 514 P.2d 1097, 1099 (Or. 1973)*.

## IV. Prejudgment Interest

The district court did not err in awarding prejudgment interest to Sunrich. [HN5] Under Oregon law, prejudgment interest is available from the date a party's damages become "ascertainable" even if there remain factual disputes for the jury and even if there is no easily computable formula for such damages. See *Banister Continental Corp. v. Northwest Pipeline Corp., 76 Ore. App. 282, 709 P. 2d 1103, 1110-11 (Or. Ct. App. 1985)* [**14] (en banc), vacated on other grounds, *301 Ore. 763, 724 P.2d 822 (Or. 1996)*; see also *Strader v. Grange Mutual Ins. Co., 179 Ore. App. 329, 39 P.3d 903, 908-09 (Or. Ct. App. 2002)*(following Banister and characterizing it as abandoning line of cases that rejected prejudgment interest in the absence of an easily ascertainable computation). The amount of prejudgment interest, however, will need to be adjusted on remand in accordance with our decision today regarding the half-gallon trade secret and breach of contract claim.

### Appeal No. 05-36171:I. Reduction of Claimed Attorneys' Fees

[HN6] Under Oregon law, "when a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the court must apportion the fees incurred for each claim." *Bennett v. Baugh, 164 Ore. App. 243, 990 P.2d 917, 921 (Or. Ct. App. 1999)*. However, if a petitioning party demonstrates [*751] that it would have incurred fees regardless of whether the non-fee claims were included in the case, then the court need not apportion the fees. *Smith v. Ware, 307 Ore. 478, 769 P.2d 773, 775 (Or. 1989)*. In addition, apportionment between claims is not [**15] required if the fee and non-fee claims involve common legal or factual issues, the theory being that "the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims." *Bennett, 990 P.2d at 921*; see also *C.A.M. Concepts, Inc. v. Gwyn, 206 Ore. App. 122, 136 P.3d 60, 63 (Or. Ct. App. 2006)*(reversing a trial court's decision

to apportion fees, noting that the non-fee claim involved the same factual and legal issues as the fee claims, and that there was thus no basis for reducing the award for time spent on the non-fee claim).

In the district court's first order, the court indicated that Sunrich was entitled to attorneys' fees only on its OTSA claim. In its amended request, Sunrich provided an entry-by-entry explanation of how much time it believed was related to the trade secrets claim, as well as a short explanation of why it believed the time fell into a permissible category -- i.e., directly related to trade secrets, "generic" litigation time that would have been spent regardless of whether the non-fee claim was included, or work on claims involving common legal or factual issues. However, in the second order, [**16] the court complained that the "amended fee request does not appear limited to the trade secrets claim," agreed with Pacific's assertion that "this action was a breach of contract case primarily" and concluded that its fee award had to "represent a fair allocation of the time spent litigating the trade secrets claim." The district court apparently believed it could only award fees pertaining *exclusively* to the OTSA claim, which is incorrect under Oregon law.

We therefore must remand for a new determination of attorneys' fees applying the correct legal standard. This is not to say that, on remand, the district court is required to accept Sunrich's characterization of any individual entry as being related to or overlapping with the trade secret claim. The district court may, of course, evaluate the entries and find that some of them do not fit within the claimed apportionment exceptions.

We also recognize that the court identified a number of other bases for its reduced award, including Pacific's objections to generalized time entries, multiple attorney conferences, clerical or paralegal work performed by attorneys and duplication of effort. However, we cannot ascertain how much [**17] of the reduction was related to these objections, as opposed to Sunrich's "failure" to limit its request to the trade secret claims. Moreover, the order does not explain the reasoning behind its decision to sustain many of Pacific's objections, nor does it appear to calibrate these deductions to the actual fees requested. See, e.g., *Webb v. Ada County, 285 F.3d 829, 839 (9th Cir. 2002)*([HN7] remanding for further explanation where basis for reduction was not clearly articulated); *Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 (9th Cir. 2001)*(remanding where district court simply announced a bottom-line number of compensable hours, without attempt to calibrate the award to the objection it sustained for inefficiency); *Gates v. Deukmejian, 987 F.2d 1392, 1399-1400 (9th Cir. 1993)*("hour-by-hour" analysis is not required, but cursory statement did not afford explanation as to how court arrived at ten percent

across-the-board reduction and did not allow for mean-ingful review).

The court's findings may be completely correct, but it is difficult for us to ascertain how the final award correlates to the individual objections, and it is also [**18] difficult to [*752] ascertain the court's reasoning underlying the individual objections. Because it is necessary to remand for recalculation of attorneys' fees to correct the legal error, we do not rule on the propriety of any of these additional rulings at this time, but the district court should clarify this portion of its ruling on remand.

## II. Reduction in Costs

[HN8] We require a district court to specify reasons for a refusal to award costs, so that we can determine whether the reasons are appropriate and whether, considering those reasons, the district court abused its discretion by denying costs. *Champion Produce, Inc. v. Ruby Robinson Co., Inc. 342 F.3d 1016, 1022 (9th Cir. 2003)*; see also *Fed. R. Civ. P. 54(d)*("Costs other than attorneys' fees shall be allowed as a matter of course to the prevailing party unless the court otherwise directs."). In this case, the district court awarded only $ 5,000 in costs, although Sunrich requested more than $ 36,000.

The district court clearly sustained Pacific's renewed objection to costs associated with discovery depositions,

which accounts for a little over $ 18,000 of the [**19] requested costs. The disallowance for expenses of depositions not used at trial is within the district court's discretion, *Washington State Dep't of Transportation v. Washington Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995)*, and we affirm this portion of the court's ruling.

Unfortunately, the district court's order does not clearly explain the reasons underlying its decision for additionally reducing the cost award. Although Pacific's brief offers a number of rationales to support the court's reduced award -- including a lack of sufficient itemization, failure to justify the number of copies, excessive photocopying rates, and claims for improper items -- none of these reasons were actually offered by the court. Because the basis for the court's reduction (at least beyond the discovery depositions) is unclear, it is impossible to tell whether the legal error regarding apportionment discussed above carried over into the cost arena. We therefore remand the cost award for redetermination and for a more specific statement of reasons.

**Appeal No. 05-35152 is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

**Appeal No. 05-36171 is AFFIRMED IN PART, REVERSED [**20] IN PART, and REMANDED.**

**Each party to bear its own costs on appeal.**

**APPENDIX OF AUTHORITIES IN PLAINTIFFS' OBJECTIONS
TO DEFENDANT'S BILL OF COSTS**

# EXHIBIT F

LEXSEE 2007 U.S. DIST. LEXIS 81051

**KATHLEEN LEE TERRY, Plaintiff, v. ALLSTATE INSURANCE CO., et al., Defendants.**

**No. Civ. S-05-2261 RRB DAD**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 81051*

**October 31, 2007, Decided**
**November 1, 2007, Filed**

**PRIOR HISTORY:** *Terry v. Allstate Ins. Co., 2007 U.S. Dist. LEXIS 58706 (E.D. Cal., July 30, 2007)*

**COUNSEL:** [*1] For Kathleen Lee Terry, Plaintiff: Jon S Allin, LEAD ATTORNEY, Schwarzkopf & Allin, Sacramento, CA.

For Allstate Insurance Company, Defendant: Kimberly Erin De Hope, LEAD ATTORNEY, David R Simonton, Sonnenschein Nath & Rosenthal LLP, San Francisco, CA.

**JUDGES:** RALPH R. BEISTLINE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RALPH R. BEISTLINE

**OPINION**

*Memorandum of Opinion and Order*

Before the court is Kathleen Terry's ("Plaintiff") motion to review the taxation of Allstate Insurance Company's ("Allstate") bill of costs filed on August 13, 2007. Allstate, the prevailing party, submitted a bill of costs totaling $ 14,915.71, reflecting (1) fees of the clerk ($ 360.00); (2) fees for service of summons and subpoena ($ 2,410.00); (3) fees of the court reporter ($ 6,839.20); (4) fees for witnesses ($ 340.00); (5) fees for exemplification and copies of papers necessarily obtained for the use in the case ($ 1,352.64); (6) docket fees ($ 20.00); and (7) other costs ($ 3,593.87). The clerk taxed costs in the amount claimed by Allstate. Plaintiff has timely objected to portions of these costs. For the reasons stated below, Allstate is entitled to recover $ 3,837.18 in costs.

**I.**

**A. Legal Standard**

*Rule 54* allows a prevailing party to [*2] recover costs, other than attorney's fees, unless the court otherwise directs. *Fed.R.Civ.P. 54(d).* [1] This rule creates a presumption in favor of awarding costs to the prevailing party, which can only be overcome when the court exercises its discretion to disallow costs for specific reasons, which may include punishing misconduct by the prevailing party or non-punitive but compelling equitable justifications such as a party's limited financial resources. *Ass'n of Mexican-Am. Educators v. Cal., 231 F.3d 572, 591-93 (9th Cir. 2000); Champion Produce, Inc. v. Ruby Robinson Co., Inc., 342 F.3d 1016, 1022 (9th Cir. 2003).* The losing party bears the burden of establishing why costs should not be awarded. *Save Our Valley v. Sound Transit, 335 F.3d 932, 944-45 (9th Cir. 2003).* In an "ordinary case," costs will be awarded, and if the losing party meets its burden, the court must specify reasons for its refusal not to award costs in spite of the presumption. *Save Our Valley, 335 F.3d at 945; see Trans Container Services (BASEL) A.G. v. Security Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985)* (observing that trial courts must state reasons for the denial of costs so that the appellate court [*3] will be able to determine whether or not the trial court abused its discretion).

> 1 *Rule 54(d)* states that: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ."

Under *Rule 54(d)*, trial courts do not have discretion to tax whatever costs seem appropriate; rather, courts may tax only costs defined in *28 U.S.C. § 1920. Alflex Corp. v. Underwriters Laboratories, Inc., 914 F.2d 175,*

*176 (9th Cir. 1990)* (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987)).* " '*Section 1920* enumerates expenses that a federal court may tax as a cost under the discretionary authority found in *Rule 54(d).*' " *Alflex,* 914 F.2d at 176. [2] Courts are free to interpret the meaning and scope of the items enumerated as taxable costs under *§ 1920. Id. at 177.* Once an item is determined to fall within *§ 1920,* the power to tax such costs is qualified only by the requirement that they be necessarily obtained for use in the case. *Id.* The prevailing party bears the burden of stating its costs with the requisite specificity, [*4] and the prevailing party necessarily assumes the risks inherent in a failure to meet that burden. *See Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1208 (10th Cir. 1986).*

 2   *Section 1920* provides: "A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under *section 1923* of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under *section 1828* of this title."

**B. *Section 1920***

**1. Fees of the Clerk**

Allstate seeks to bill $ 360.00 as taxable costs to Plaintiff for fees of the clerk. Of that amount, $ 250.00 represents the cost incurred in removing this matter from state court, $ 55.00 represents the cost incurred in filing an answer in state court, and $ 55.00 represents the cost incurred in filing a notice of removal in state court. Plaintiff [*5] objects to each of these cost items on the ground that she lacks the financial means to pay for such costs. [3] Additionally, Plaintiff objects to the costs incurred by Allstate in filing an answer and a notice of removal in state court on the ground that such costs are unrecoverable under *§ 1920.*

 3   Plaintiff seeks to set aside Allstate's bill of costs based on her limited financial resources. The court will discuss this issue below. *See Stanley v. University of Southern California, 178 F.3d 1069, 1079 (9th Cir. 1999)* (directing courts to consider the financial resources of the plaintiff in awarding costs against a plaintiff).

Because the cost of filing a copy of a notice of removal from state court is a taxable cost under *§ 1920(1),* the court concludes that Allstate is entitled to recover $ 250.00 for removing this matter from state court. *See McGuigan v. CAE Link Corp., 155 F.R.D. 31, 37 (N.D.N.Y. 1994)* (cost of filing a copy of the notice of removal from state court is a taxable cost under *§ 1920(1)*). However, because *§ 1920* does not authorize the taxing of state court filing fees, the court concludes that Allstate is not entitled to recover its costs incurred in filing an answer and [*6] a notice of removal in state court. *See Pershern v. Fiatallis North America, Inc., 834 F.2d 136, 140 (8th Cir. 1987); Lawrence v. Chancery Court of Tennessee, 188 F.3d 687, 693 (6th Cir. 1999).*

Accordingly, Allstate is entitled to recover $ 250.00 as fees of the clerk.

**2. Fees for Service of Summons and Subpoena**

Allstate seeks to bill $ 2,410.00 as taxable costs to Plaintiff for costs incurred for service of summonses and subpoenas. Of that amount, $ 55.00 represents the cost incurred for service of Leroy Bolex (underlying defendant). The remainder of the costs ($ 2,365.00) represents the costs incurred for service of summonses and subpoenas on physicians and other healthcare related individuals. Plaintiff objects to the cost incurred by Allstate for service of Mr. Bolex on the ground that this cost exceeds the amount set by *28 C.F.R. § 0.114(a)(3).* Plaintiff objects to the remaining costs on the ground that such costs were not necessarily obtained for use in this case.

Because the cost incurred for service of a summons and subpoena is recoverable under *§ 1920(1),* and because the cost incurred for service of Mr. Bolex was reasonable under *28 C.F.R. § 0.114(a)(3),* [4] the court concludes [*7] that Allstate is entitled to recover $ 55.00 incurred in serving Mr. Bolex. [5] With respect to Allstate's costs incurred in serving physicians and other healthcare related individuals, the court concludes that Allstate is not entitled to recover such costs because these costs were not necessarily obtained for use in this case. This is because Plaintiff's medical condition was not an issue before the court since the underlying judgment was the result of an uncontested bench trial that proceeded in the nature of a prove-up hearing. *See Garamendi v. Golden Eagle Ins. Co., 116 Cal.App.4th 694, 711, 10 Cal. Rptr. 3d 724 (2004)* (holding that a final judgment entered into against an insured, including all material findings of fact essential to the judgment of liability and damages of the insured, is binding on the insurer where the judgment is the result of a default hearing following a settlement or an uncontested trial where the insured settled with the claimant and thereafter presented no defense).

2007 U.S. Dist. LEXIS 81051, *

4    *28 C.F.R. § 0.114(a)(3)* states that: "The United States Marshals Service shall routinely collect fees according to the following schedule: . . . For process served or executed personally--$ 45 per hour (or portion [*8] thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses."

5    While *§ 0.114(a)(3)* provides that personal service of process by the U.S. Marshals Service is to cost $ 45.00 per hour, it also allows for travel costs and other-out-of-pocket expenses. Therefore, because the documentation submitted by Allstate demonstrates that $ 10.00 was added for service of Mr. Bolex due to distant travel, the court concludes that a $ 55.00 charge in this regard is reasonable.

Accordingly, Allstate is entitled to recover $ 55.00 for service of process costs.

### 3. Fees of the Court Reporter

Allstate seeks to bill $ 6,839.20 as taxable costs to Plaintiff for fees of the court reporter. In this regard, Allstate seeks to recover for the cost incurred in obtaining a transcript of the underlying bench trial and for the costs incurred in videotaping and obtaining stenographic transcripts of depositions. Plaintiff objects to the cost incurred by Allstate in obtaining the underlying bench trial transcript on the ground that this cost was not necessarily obtained for use in this case. Additionally, Plaintiff objects to the costs incurred [*9] by Allstate in videotaping and obtaining stenographic transcripts of depositions insofar as Allstate seeks to recover for both videotaping a deposition and obtaining a stenographic copy of that deposition. Finally, Plaintiff objects to the costs incurred by Allstate in deposing physician witnesses on the ground that such costs were not necessarily obtained for use in this case.

*Section 1920(2)* authorizes the taxation of costs for the "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case," which includes the costs of deposition transcripts, *EEOC v. W & O, Inc., 213 F.3d 600, 624 (11th Cir. 2000)*, and the cost of transcripts from other court proceedings. *Majeske v. City of Chicago, 218 F.3d 816, 825 (7th Cir. 2000); see Alflex, 914 F.2d at 176 n.3* (italics omitted) (observing that "there is much support for the proposition that *section 1920(2)* covers the cost of deposition transcripts, as well as trial transcripts."). Costs for depositions transcripts and transcripts from other court proceedings are taxable only if they were "necessarily obtained" for use in the case. *See EEOC, 213 F.3d at 624; Majeske, 218 F.3d at 825;* [*10] *see also Evanow v. M/V Neptune, 163 F.3d 1108, 1118 (9th Cir. 1998)*

(deposition costs are taxable if they are reasonably necessary for trial). "[W]here the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *EEOC, 213 F.3d at 624; see Majeske, 218 F.3d at 825* (courts may not tax the costs of transcripts provided merely for the convenience of the requesting attorney).

Based on the foregoing, the court concludes that Allstate is entitled to recover the cost it incurred in obtaining the underlying bench trial transcript because it was obtained for use in this case. With respect to deposition costs, the court concludes that Allstate is not entitled to recover the costs it incurred for both videotaping a deposition and obtaining a stenographic transcript of that deposition. While several courts have awarded costs under *§ 1920* for both transcribing and videotaping a deposition, *see Nederhiser v. Foxworth, 2007 U.S. Dist. LEXIS 34196, 2007 WL 1378602, * 2 (D. Or. 2007)* (citing cases), Allstate is not entitled to recover for both costs because it failed to provide a rationale justifying why both were necessary for [*11] the litigation. *See id.* (observing that an award of costs for both transcribing and videotaping a deposition turns on whether both are reasonably necessary, which requires a showing beyond convenience or duplication to ensure alternative methods of presenting materials at trial); *see also Cherry v. Champion Intern Corp., 186 F.3d 442, 449 (4th Cir. 1999)* (absent a showing that both transcribing and videotaping a deposition were "necessarily obtained for use in the case," only the transcription costs are recoverable).

Accordingly, Allstate is not entitled to recover the costs it incurred for both videotaping a deposition and obtaining a stenographic transcript of that deposition. Allstate is only entitled to recover the costs it incurred in obtaining stenographic transcripts of such depositions. Additionally, the court concludes that Allstate is not entitled to recover the costs it incurred in obtaining the deposition transcripts of physicians because these depositions were not necessarily obtained for use in this case as Plaintiff's medical condition was not an issue before the court. *See Garamendi, 116 Cal.App.4th at 711.*

Accordingly, Allstate is entitled to recover $ 3,258.99 in court [*12] reporter costs.

### 4. Fees for Witnesses

Allstate seeks to bill $ 340.00 as taxable costs to Plaintiff for witness fees. Plaintiff objects to these costs on the ground that such fees are unrecoverable as physician witness depositions were not necessarily obtained for use in this case. The court agrees. The attendance of physicians at depositions was not necessary in this case

2007 U.S. Dist. LEXIS 81051, *

because Plaintiff's medical condition was not an issue before the court. *See Garamendi, 116 Cal.App.4th at 711.*

Accordingly, Allstate is not entitled to recover witness fees costs.

### 5. Fees for Exemplification and Copies of Papers

Allstate seeks to bill $ 1,352.64 as taxable costs to Plaintiff for exemplification and copies of papers. Plaintiff objects to these costs on the ground that Allstate seeks unrecoverable and unspecified fees exceeding what is fair and reasonable.

Photocopying is a taxable cost pursuant to *§ 1920(4). See EEOC, 213 F.3d at 622 (§ 1920(4)* permits taxation of "[f]ees for exemplification and copies of papers necessarily obtained for use in the case"); *Allison v. Bank One-Denver, 289 F.3d 1223, 1249 (10th Cir. 2002)* (copying and exemplification costs are allowed only when necessary to a party's case). [*13] "[I]n evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *EEOC, 213 F.3d at 623.* After reviewing the documentation submitted in this regard, the court concludes that Allstate is entitled to recover its photocopying costs, except for its costs incurred in copying medical files as Allstate could not have reasonably believed it was necessary to copy these papers in light of the holding in *Garamendi, 116 Cal.App.4th 694, 10 Cal. Rptr. 3d 724.*

Accordingly, Allstate is entitled to recover $ 253.19 in copying costs.

### 6. Other Costs: Deposition Travel Expenses, Expert Witness Fees & Docket Fees

Allstate seeks to bill $ 918.87 as taxable costs to Plaintiff for attorney travel expenses (e.g., mileage, meals, parking and bridge toll costs), $ 2,675.00 for expert witness fees and $ 20.00 in docket fees. Plaintiff objects to each of these cost items on the ground that such costs are unrecoverable.

With respect to travel expenses incurred by Allstate's attorneys, the court concludes that Allstate is not entitled to recover such costs under *§ 1920. See U.S. ex rel. Stierli v. Shasta Services Inc., 2007 U.S. Dist. LEXIS 40590, 2007 WL 1516934, * 1 (E.D. Cal. 2007);* [*14] *Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc., 952 F.Supp. 415, 418 (N.D. Tex. 1997); Yasui v. Maui Elec. Co., Ltd., 78 F.Supp.2d 1124, 1130 (D. Hawaii 1999).* With respect to expert witness fees incurred by Allstate (i.e., the deposition appearance fees of three physicians), the court concludes that Allstate is not entitled to recover such costs under *§*

*1920. See Sorbo v. United Parcel Service, 432 F.3d 1169, 1179 (10th Cir. 2005)* (fees and expenses incurred in connection with expert witnesses (in excess of the standard witness fee listed in *§ 1920(3)* and fixed by *28 U.S.C. § 1821*) are not within the scope of *§ 1920* and therefore are not recoverable as costs). [6] Finally, with respect to the docket fees incurred by Allstate, the court concludes that Allstate is entitled to recover such costs under *§ 1920(5).*

> 6 Alternatively, because Plaintiff's medical condition was not an issue before the court, the attendance of physicians at depositions was not necessary for this case. *See Garamendi, 116 Cal.App.4th at 711.* Therefore, the fees and expenses incurred by Allstate in this regard are unrecoverable on this independent ground.

Accordingly, Allstate is entitled to recover [*15] $ 20.00 in other costs. Allstate is therefore entitled to a total cost award of $ 3,837.18. Next, the court will determine whether Plaintiff's financial condition warrants a reduction in Allstate's cost award.

### C. Plaintiff's Inability to Pay Costs

Plaintiff seeks to set aside Allstate's bill of costs on the basis of her limited financial resources. To prove her inability to pay for Allstate's costs Plaintiff has submitted a declaration attesting that both she and her husband are both unemployed and suffer from serious medical conditions. Decl. of Kathleen Terry ("Terry") P 2. Plaintiff further attests that her household monthly income is $ 760.00 in Social Security Disability Benefits and that she has a monthly mortgage payment of $ 1,195, credit card debt of approximately $ 18,000, and owes $ 6,443 in litigation costs. Id. PP 2, 4-6. Finally, Plaintiff attests that she has no financial assets, except for a bank account containing approximately $ 1,300 and a 1979 pick-up truck. Id. PP 3, 7. Plaintiff asserts that if she is required to pay Allstate's costs she will be unable to afford the common necessaries of life. Id. P 8. In response, Allstate argues that Plaintiff is not without the [*16] means to satisfy Allstate's bill of costs because she is the co-owner of real property valued at $ 265,938.

Trial courts may consider a variety of factors in deciding whether to award costs, including whether the losing party has limited financial resources. *See Ass'n of Mexican-American Educators, 231 F.3d at 592; Stanley, 178 F.3d at 1079* (stating that indigency is a factor district courts may properly consider when deciding whether to award costs); *Rivera v. City of Chicago, 469 F.3d 631, 634-35 (7th Cir. 2006)* (citing cases) (it is within the discretion of the district court to consider a plaintiff's indigency in denying costs). [7] In considering whether to hold an indigent party liable for costs, the

2007 U.S. Dist. LEXIS 81051, *

district court must conduct a two-step analysis: (1) the court must make a threshold factual finding that the losing party is incapable of paying the court-imposed costs at this time or in the future; and (2) the court should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by the case. *Rivera, 469 F.3d at 635.* When using its discretion to deny or award costs, the court should provide an explanation of its reasons. [*17] *Id. at 635-36.*

> 7    The Ninth Circuit has approved refusing to award costs to a prevailing party when the losing party has limited financial resources. *See National Org. for Women v. Bank of Cal., 680 F.2d 1291, 1294 (9th Cir. 1982); see also Wrighten v. Metropolitan Hosps., Inc., 726 F.2d 1346, 1358 (9th Cir. 1984); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 486 (9th Cir. 1983).* "[T]he losing party bears the burden of making the showing that an award is inequitable under the circumstances." *In re Paoli R.R. Yard PCB Litigation, 221 F.3d 449, 462-63 (3d Cir. 2000).*

Although the court is not unsympathetic to Plaintiff's limited financial resources, it does not find that Plaintiff's argument advanced in this regard is sufficiently persuasive to overcome the presumption that a prevailing party is entitled to its costs under *Rule 54(d)*. Plaintiff did not prove that Allstate engaged in misconduct or that this case involved complex issues presenting difficult or close legal questions. Nor did Plaintiff sufficiently demonstrate that she is incapable of paying Allstate's costs in the future. While the court acknowledges that requiring

Plaintiff's to pay even a portion of Allstate's costs [*18] will cause her to suffer hardship, it does not find that this case is "the rare occasion where severe injustice will result from an award of costs (such as the injustice that would result from an indigent plaintiff's being forced to pay tens of thousands of dollars of her alleged oppressor's legal costs)." *See Save Our Valley, 335 F.3d at 945.*

Accordingly, because a sum of $ 3,837.18 is not an exorbitant cost given the nature of the underlying litigation, and because Plaintiff has not presented any specific evidence of misconduct on the part of Allstate that would justify setting aside the bill of costs, Allstate is entitled to recover costs in the amount of $ 3,837.18. However, because Plaintiff cannot pay the costs in full, the court will impose a plan that assures payment of costs without placing a punitive burden on her. On or before the 15th day of each month, beginning in December, 2007, Plaintiff Kathleen Terry will pay the sum of $ 50.00 per month for seventy-six consecutive months and the sum of $ 37.18 on the seventy-seventh month.

**II.**

For the reasons stated above, Allstate is entitled to recover $ 3,837.18 in costs.

**IT IS SO ORDERED.**

ENTERED this 31<st> day of October, 2007.

s/ [*19] RALPH R. BEISTLINE

UNITED STATES DISTRICT JUDGE

**APPENDIX OF AUTHORITIES IN PLAINTIFFS' OBJECTIONS
TO DEFENDANT'S BILL OF COSTS**

# EXHIBIT G

Back to Original

 **GSA** U.S. General Services Administration

# Domestic Perdiem Rates

# California - FY 09

(October 1, 2008 through September 30, 2009)

**Cities not appearing below may be located within a county for which rates are listed. To determine what county a city is located in, visit the National Association of Counties (NACO) website (a non-federal website).**

NOTE: If neither the city nor the county is listed, the location is a standard CONUS destination with a rate of $70.00 for lodging and $39.00 for meals and incidental expenses (M&IE).

State Tax Rates & Exemption Forms

Properties at Per Diem (FedRooms)

| Primary Destination (1) | County (2, 3) | Max Lodging (exc. taxes) | + M&IE Rate | = Max Per Diem Rate (4) | First & Last Day (75% of M&IE) |
|---|---|---|---|---|---|
| Antioch / Brentwood / Concord / Lafayette / Martinez / Pleasant Hill / Richmond / San Ramon / Walnut Creek | Contra Costa | 113 | 49 | 162 | 36.75 |
| Bakersfield / Delano (Naval Weapons Center and Ordnance Test Station, China Lake) | Kern | 78 | 44 | 122 | 33.0 |
| Barstow / Ontario / Victorville | San Bernardino | 97 | 59 | 156 | 44.25 |
| Benicia / Dixon / Fairfield / Vacaville / Vallejo | Solano | 93 | 44 | 137 | 33.0 |
| Brawley / Calexico / El Centro / Imperial | Imperial | 76 | 39 | 115 | 29.25 |
| Death Valley | Inyo | 81 | 49 | 130 | 36.75 |
| Eureka / Arcata / McKinleyville | Humboldt | 89 | 54 | 143 | 40.5 |
| Fresno | Fresno | 95 | 54 | 149 | 40.5 |
| Los Angeles | Los Angeles, Orange, Ventura, and Edwards AFB | 128 | 64 | 192 | 48.0 |

| | | | | | |
|---|---|---|---|---|---|
| Mammoth Lakes (October 1 - November 30) | Mono | 113 | 54 | 167 | 40.5 |
| Mammoth Lakes (December 1 - January 31) | Mono | 142 | 54 | 196 | 40.5 |
| Mammoth Lakes (February 1 - September 30) | Mono | 113 | 54 | 167 | 40.5 |
| Mill Valley / San Rafael / Novato / Corte Madera / Sausalito / Tiburon / Larkspur | Marin | 122 | 54 | 176 | 40.5 |
| Modesto | Stanislaus | 89 | 49 | 138 | 36.75 |
| Monterey | Monterey | 133 | 64 | 197 | 48.0 |
| Napa | Napa | 146 | 64 | 210 | 48.0 |
| Oakhurst (October 1 - April 30) | Madera | 75 | 39 | 114 | 29.25 |
| Oakhurst (May 1 - August 31) | Madera | 90 | 39 | 129 | 29.25 |
| Oakhurst (September 1 - September 30) | Madera | 75 | 39 | 114 | 29.25 |
| Oakland | Alameda | 106 | 59 | 165 | 44.25 |
| Palm Springs (October 1 - December 31) | Riverside | 114 | 59 | 173 | 44.25 |
| Palm Springs (January 1 - April 30) | Riverside | 139 | 59 | 198 | 44.25 |
| Palm Springs (May 1 - August 31) | Riverside | 97 | 59 | 156 | 44.25 |
| Palm Springs (September 1 - September 30) | Riverside | 114 | 59 | 173 | 44.25 |
| Point Arena / Gualala | Mendocino | 81 | 54 | 135 | 40.5 |
| Redding | Shasta | 86 | 44 | 130 | 33.0 |
| Sacramento | Sacramento | 114 | 59 | 173 | 44.25 |
| San Diego (October 1 - December 31) | San Diego | 137 | 64 | 201 | 48.0 |
| San Diego (January 1 - August 31) | San Diego | 147 | 64 | 211 | 48.0 |
| San Diego (September 1 - September 30) | San Diego | 137 | 64 | 201 | 48.0 |
| San Francisco (October 1 - October 31) | San Francisco | 185 | 64 | 249 | 48.0 |
| San Francisco (November 1 - August 31) | San Francisco | 164 | 64 | 228 | 48.0 |
| San Francisco (September 1 - September 30) | San Francisco | 185 | 64 | 249 | 48.0 |
| San Luis Obispo (October 1 - June 30) | San Luis Obispo | 109 | 54 | 163 | 40.5 |
| San Luis Obispo (July 1 - August 31) | San Luis Obispo | 131 | 54 | 185 | 40.5 |
| San Luis Obispo (September 1 - September 30) | San Luis Obispo | 109 | 54 | 163 | 40.5 |
| San Mateo / Foster City / Belmont | San Mateo | 123 | 54 | 177 | 40.5 |

| | | | | | |
|---|---|---|---|---|---|
| Santa Barbara (October 1 - June 30) | Santa Barbara | 149 | 59 | 208 | 44.25 |
| Santa Barbara (July 1 - August 31) | Santa Barbara | 194 | 59 | 253 | 44.25 |
| Santa Barbara (September 1 - September 30) | Santa Barbara | 149 | 59 | 208 | 44.25 |
| Santa Cruz | Santa Cruz | 102 | 54 | 156 | 40.5 |
| Santa Monica | City limits of Santa Monica | 212 | 64 | 276 | 48.0 |
| Santa Rosa | Sonoma | 118 | 64 | 182 | 48.0 |
| South Lake Tahoe (October 1 - November 30) | El Dorado | 132 | 54 | 186 | 40.5 |
| South Lake Tahoe (December 1 - March 31) | El Dorado | 153 | 54 | 207 | 40.5 |
| South Lake Tahoe (April 1 - June 30) | El Dorado | 118 | 54 | 172 | 40.5 |
| South Lake Tahoe (July 1 - September 30) | El Dorado | 132 | 54 | 186 | 40.5 |
| Stockton | San Joaquin | 83 | 44 | 127 | 33.0 |
| Sunnyvale / Palo Alto / San Jose | Santa Clara | 132 | 59 | 191 | 44.25 |
| Tahoe City | Placer | 105 | 59 | 164 | 44.25 |
| Truckee (October 1 - November 30) | Nevada | 94 | 59 | 153 | 44.25 |
| Truckee (December 1 - March 31) | Nevada | 109 | 59 | 168 | 44.25 |
| Truckee (April 1 - September 30) | Nevada | 94 | 59 | 153 | 44.25 |
| Visalia / Lemoore | Tulare and Kings | 83 | 49 | 132 | 36.75 |
| West Sacramento | Yolo | 100 | 44 | 144 | 33.0 |
| Yosemite National Park (October 1 - December 31) | Mariposa | 126 | 64 | 190 | 48.0 |
| Yosemite National Park (January 1 - July 31) | Mariposa | 133 | 64 | 197 | 48.0 |
| Yosemite National Park (August 1 - September 30) | Mariposa | 126 | 64 | 190 | 48.0 |