# EXHIBIT T
## Declaration of Carole Vigne

Christopher Ho, SBC No. 129845
Christina N. Chung, SBC No. 194630
Carole Vigne, SBC No. 251829
The LEGAL AID SOCIETY -
    EMPLOYMENT LAW CENTER
600 Harrison St., Suite 120
San Francisco, CA 94107-1387
Telephone:  (415) 864-8848
Facsimile:  (415) 864-8199

William J. Smith, SBC No. 056116
Shelley G. Bryant, SBC No. 222925
W.J. SMITH & ASSOCIATES
2350 West Shaw Avenue, Suite 132
Fresno, California 93711
Telephone:  (559) 432-0986
Facsimile:  (559) 432-4871

Marielena Hincapié, SBC No. 188199
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 2850
Los Angeles, California 90010
Telephone:  (213) 639-3900
Facsimile:  (213) 639-3911

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG | No.  CIV F-99-6443 OWW SMS **PLAINTIFF MARIA RUIZ'S FURTHER SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147** |
|         Plaintiffs, | |
|         v. | |
| NIBCO, INC., an Indiana corporation | |
|         Defendant. | |

**PROPOUNDING PARTY:**     Defendant NIBCO, INC.

**RESPONDING PARTY:**     Plaintiff MARIA RUIZ

## GENERAL OBJECTIONS

1.    Plaintiff objects to the extent that these interrogatories or the "preliminary statement" thereto seek to impose any requirements beyond those authorized by Rules 26 and 33 of the Federal Rules of Civil Procedure.

2.    Each specific response set forth below is subject to all objections, including but not limited to competence, relevance, materiality, or admissibility, that would require exclusion of any of the responses provided here from evidence at trial. Such objections are hereby expressly reserved and may be interposed at trial or at other appropriate times in this action. The fact that plaintiff responds to any interrogatory in whole or part is not an admission that the information provided thereby constitutes admissible evidence and is not to be construed as a waiver of any proper ground for objection which may be raised to any interrogatory or to the subject matter thereof, or to the use or admissibility of any answer thereto, at trial or at any time in this action.

3.    Plaintiff further objects to the extent that defendant's interrogatories seek information protected by the attorney-client privilege, the attorney work product doctrine, or federal or state rights to privacy.

4.    Plaintiff further objects to the extent that the interrogatories seek information which is already in the possession of defendant or is equally or readily available to defendant.

5.    Plaintiff reserves the right to introduce into evidence in any proceeding before this Court, or at the trial of this action, any information that is not currently provided herein but has been provided to defendant previously, is information within defendant's possession, custody, or control, or was unknown to plaintiff at the time of this supplemental response, and which supports plaintiff's claims.

1

## **INDIVIDUAL RESPONSES AND OBJECTIONS**

2      Subject to the above general objections, and without waiving any of them, plaintiff further

3  responds and objects as follows:

4      **Interrogatory No. 122:  Please set forth the name of each employer, its address and**

5  **telephone number that YOU have been employed with since YOU were terminated by NIBCO.**

6      **Further Supplemental Response to Interrogatory No. 122:**  Plaintiff incorporates by

7  reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

8  extensively questioned in her deposition concerning the information sought by this interrogatory,

9  and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

10  within this interrogatory were also addressed in the reports of plaintiffs' expert witnesses, which

11  have been disclosed.

12      Subject to the foregoing, and aside from those matters that have already been produced by

13  plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

14  follows: *See* Further Supplemental Response to Interrogatory No. 147.

15

16      **Interrogatory No. 123:  Please set forth in as much detail as YOU are able, each and**

17  **every fact which shows YOUR efforts to find employment since YOU were terminated by**

18  **NIBCO.**

19      **Further Supplemental Response to Interrogatory No. 123:**  Plaintiff incorporates by

20  reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

21  extensively questioned in her deposition concerning the information sought by this interrogatory,

22  and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

23  within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have

24  been disclosed.

25      Subject to the foregoing, and aside from those matters that have already been produced by

26  plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

27  follows: *See* Further Supplemental Response to Interrogatory No. 147.

28  **PLAINTIFF MARIA RUIZ'S**                                                    **PAGE 3**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

**Interrogatory No. 147:  Please IDENTIFY with precision every effort YOU have made to mitigate the harm YOU allege to have incurred giving rise to this action, including but not limited to YOUR attempts to secure employment and the employment YOU have secured since working for NIBCO, as well as YOUR earnings and benefits derived therefrom.**

Further **Supplemental Response to Interrogatory No. 147:**  Plaintiff incorporates by reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was extensively questioned in her deposition concerning the information sought by this interrogatory, and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have been disclosed.

Subject to the foregoing, and aside from those matters that have already been produced by plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as follows: With respect to her job search efforts after being terminated by NIBCO, plaintiff spent a significant amount of time looking for work after she was terminated by NIBCO.  Among other things, she asked friends for job leads, regularly checked newspaper advertisements, regularly checked job listings at the Employment Development Department, and visited many potential employers to submit employment applications.  Among the places she applied were Mission Laundry and other laundries, Zacky Farms, Pacific Choice, house-cleaning and janitorial companies, and other potential employers whose names she cannot currently recall.  She has been employed with several companies since 2001 and currently remains employed with Jet Plastica Industries.  However, plaintiff did experience brief periods of unemployment during that time frame.  During these periods of unemployment, plaintiff actively sought work, following the various methods

**PLAINTIFF MARIA RUIZ'S**                                                                                    **PAGE 4**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

described above. During a period of unemployment in 2007, plaintiff actively sought work. She

visited and applied to a number of potential employers in person, including a newspaper company, a

laundromat, a nursing home, a janitorial company, a fruit packing company and various temporary

agencies until she ultimately found her current place of employment. With respect to her earnings

from employment subsequent to being terminated by NIBCO, plaintiff states as follows: *See*

documents produced by plaintiff in response to defendant's Production Request No. 42. Plaintiff

reserves the right to supplement any such response at trial, as appropriate. In addition, plaintiff refers

defendant to the chart appended hereto as Supplemental Revised Exhibit A, which lists plaintiff's

employment subsequent to her termination from NIBCO and which contains plaintiff's best current

calculations of her post-termination income, as of the date of this response.

   Plaintiff reserves the right to further supplement her responses hereto as appropriate, until

such time as the merits of this case are decided.


Dated:    October 2, 2008                     Christopher Ho
                                              Christina N. Chung
                                              Carole Vigne
                                              The LEGAL AID SOCIETY –
                                                 EMPLOYMENT LAW CENTER

                                              William J. Smith
                                              Shelley G. Bryant
                                              W.J. SMITH & ASSOCIATES

                                              Marielena Hincapié
                                              NATIONAL IMMIGRATION LAW CENTER


                          By:    _____
                                 CHRISTOPHER HO
                                 Attorney for Plaintiffs


**PLAINTIFF MARIA RUIZ'S**                                          **PAGE 5**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

## <u>VERIFICATION</u>

I have had defendant's Interrogatories Nos. 122, 123, and 147, as well as the above responses thereto and this statement, explained to and/or translated for me in Spanish and I am aware of the contents thereof.  I affirm that those responses are true and correct to the best of my knowledge, except as to any responses provided on the basis of information and belief, and as to those responses I affirm that I am informed and believe that they are true and correct to the best of my knowledge, and that this verification was executed in Fresno, California on October  6  , 2008.

*Maria C Ruiz*
MARIA RUIZ

**PLAINTIFF MARIA RUIZ'S**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

**PAGE 6**

# EXHIBIT U
Declaration of Carole Vigne

Christopher Ho, SBC No. 129845
Christina N. Chung, SBC No. 194630
Carole Vigne, SBC No. 251829
The LEGAL AID SOCIETY -
    EMPLOYMENT LAW CENTER
600 Harrison St., Suite 120
San Francisco, CA 94107-1387
Telephone:  (415) 864-8848
Facsimile:  (415) 864-8199

William J. Smith, SBC No. 056116
Shelley G. Bryant, SBC No. 222925
W.J. SMITH & ASSOCIATES
2350 West Shaw Avenue, Suite 132
Fresno, California 93711
Telephone:  (559) 432-0986
Facsimile:  (559) 432-4871

Marielena Hincapié, SBC No. 188199
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 2850
Los Angeles, California 90010
Telephone:  (213) 639-3900
Facsimile:  (213) 639-3911

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG | No.  CIV F-99-6443 OWW SMS |
|  | **PLAINTIFF MARIA VALDIVIA'S FURTHER SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147** |
| Plaintiffs, |  |
| v. |  |
| NIBCO, INC., an Indiana corporation |  |
| Defendant. |  |

**PROPOUNDING PARTY:**      Defendant NIBCO, INC.

**RESPONDING PARTY:**       Plaintiff MARIA VALDIVIA

### GENERAL OBJECTIONS

1.     Plaintiff objects to the extent that these interrogatories or the "preliminary statement" thereto seek to impose any requirements beyond those authorized by Rules 26 and 33 of the Federal Rules of Civil Procedure.

2.     Each specific response set forth below is subject to all objections, including but not limited to competence, relevance, materiality, or admissibility, that would require exclusion of any of the responses provided here from evidence at trial. Such objections are hereby expressly reserved and may be interposed at trial or at other appropriate times in this action. The fact that plaintiff responds to any interrogatory in whole or part is not an admission that the information provided thereby constitutes admissible evidence and is not to be construed as a waiver of any proper ground for objection which may be raised to any interrogatory or to the subject matter thereof, or to the use or admissibility of any answer thereto, at trial or at any time in this action.

3.     Plaintiff further objects to the extent that defendant's interrogatories seek information protected by the attorney-client privilege, the attorney work product doctrine, or federal or state rights to privacy.

4.     Plaintiff further objects to the extent that the interrogatories seek information which is already in the possession of defendant or is equally or readily available to defendant.

5.     Plaintiff reserves the right to introduce into evidence in any proceeding before this Court, or at the trial of this action, any information that is not currently provided herein but has been provided to defendant previously, is information within defendant's possession, custody, or control, or was unknown to plaintiff at the time of this supplemental response, and which supports plaintiff's claims.

1

## **INDIVIDUAL RESPONSES AND OBJECTIONS**

2     Subject to the above general objections, and without waiving any of them, plaintiff further

3     responds and objects as follows:

4     **Interrogatory No. 122:  Please set forth the name of each employer, its address and**

5     **telephone number that YOU have been employed with since YOU were terminated by NIBCO.**

6     **Further Supplemental Response to Interrogatory No. 122:**  Plaintiff incorporates by

7     reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

8     extensively questioned in her deposition concerning the information sought by this interrogatory,

9     and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

10    within this interrogatory were also addressed in the reports of plaintiffs' expert witnesses, which

11    have been disclosed.

12    Subject to the foregoing, and aside from those matters that have already been produced by

13    plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

14    follows: *See* Further Supplemental Response to Interrogatory No. 147.

15

16    **Interrogatory No. 123:  Please set forth in as much detail as YOU are able, each and**

17    **every fact which shows YOUR efforts to find employment since YOU were terminated by**

18    **NIBCO.**

19    **Further Supplemental Response to Interrogatory No. 123:**  Plaintiff incorporates by

20    reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

21    extensively questioned in her deposition concerning the information sought by this interrogatory,

22    and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

23    within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have

24    been disclosed.

25    Subject to the foregoing, and aside from those matters that have already been produced by

26    plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

27    follows: *See* Further Supplemental Response to Interrogatory No. 147.

28    **PLAINTIFF MARIA VALDIVIA'S**                                    **PAGE** 3
      **FURTHER SUPPLEMENTAL RESPONSES**
      **TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

1

2      **Interrogatory No. 147:  Please IDENTIFY with precision every effort YOU have made**

3  **to mitigate the harm YOU allege to have incurred giving rise to this action, including but not**

4  **limited to YOUR attempts to secure employment and the employment YOU have secured since**

5  **working for NIBCO, as well as YOUR earnings and benefits derived therefrom.**

6      **Further Supplemental Response to Interrogatory No. 147:**  Plaintiff incorporates by

7  reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

8  extensively questioned in her deposition concerning the information sought by this interrogatory,

9  and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

10  within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have

11  been disclosed.

12      Subject to the foregoing, and aside from those matters that have already been produced by

13  plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

14  follows: After plaintiff's termination from NIBCO, she received pregnancy disability for a period of

15  time.  When she was able, she resumed her job search, submitting applications with potential

16  employers of whom she became aware through word of mouth.  Plaintiff looked in newspapers and

17  went to local grocery stores to look at job advertisements.  She applied for a position at a fruit

18  packing house, but they offered her a position only after she started working for Wade in August

19  1999. Since 2005 Ms. Valdivia has been an in-home caretaker to her disabled husband. With respect

20  to her earnings from employment subsequent to being terminated by NIBCO, plaintiff states as

21  follows:  *See* documents produced by plaintiff in response to defendant's Production Request No.

22  42.  Plaintiff reserves the right to supplement any such response at trial, as appropriate.  In addition,

23  plaintiff refers defendant to the chart appended hereto as Supplemental Revised Exhibit A, which

28  **PLAINTIFF MARIA VALDIVIA'S**                                              **PAGE** 4
   **FURTHER SUPPLEMENTAL RESPONSES**
   **TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

1    lists plaintiff's employment subsequent to her termination from NIBCO and which contains

2    plaintiff's best current calculations of her post-termination income, as of the date of this response.

3        Plaintiff reserves the right to further supplement her responses hereto as appropriate, until

4    such time as the merits of this case are decided.

5

6

7    Dated:    October 2, 2008                 Christopher Ho
                                               Christina N. Chung
8                                              Carole Vigne
                                               The LEGAL AID SOCIETY –
9                                                  EMPLOYMENT LAW CENTER

10                                             William J. Smith
                                               Shelley G. Bryant
11                                             W.J. SMITH & ASSOCIATES

12                                             Marielena Hincapié
13                                             NATIONAL IMMIGRATION LAW CENTER

14

15                              By:    _Christopher Ho/pr_
16                                             CHRISTOPHER HO
                                               Attorney for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28   **PLAINTIFF MARIA VALDIVIA'S**                                        **PAGE 5**
     **FURTHER SUPPLEMENTAL RESPONSES**
     **TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

## **VERIFICATION**

I have had defendant's Interrogatories Nos. 122, 123, and 147, as well as the above responses thereto and this statement, explained to and/or translated for me in Spanish and I am aware of the contents thereof.  I affirm that those responses are true and correct to the best of my knowledge, except as to any responses provided on the basis of information and belief, and as to those responses I affirm that I am informed and believe that they are true and correct to the best of my knowledge, and that this verification was executed in Fresno, California on October____6____, 2008.

_Maria  Valdivia_____
MARIA VALDIVIA

**PLAINTIFF MARIA VALDIVIA'S**                          **PAGE 6**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

# EXHIBIT V
Declaration of Carole Vigne

Christopher Ho, SBC No. 129845
Christina N. Chung, SBC No. 194630
Carole Vigne, SBC No. 251829
The LEGAL AID SOCIETY -
    EMPLOYMENT LAW CENTER
600 Harrison St., Suite 120
San Francisco, CA 94107-1387
Telephone:  (415) 864-8848
Facsimile:  (415) 864-8199

William J. Smith, SBC No. 056116
Shelley G. Bryant, SBC No. 222925
W.J. SMITH & ASSOCIATES
2350 West Shaw Avenue, Suite 132
Fresno, California 93711
Telephone:  (559) 432-0986
Facsimile:  (559) 432-4871

Marielena Hincapié, SBC No. 188199
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 2850
Los Angeles, California 90010
Telephone:  (213) 639-3900
Facsimile:  (213) 639-3911

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG | No.  CIV F-99-6443 OWW SMS **PLAINTIFF SY VANG'S FURTHER SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147** |
| Plaintiffs, | |
| v. | |
| NIBCO, INC., an Indiana corporation | |
| Defendant. | |

**PROPOUNDING PARTY:**        Defendant NIBCO, INC.

**RESPONDING PARTY:**        Plaintiff SY VANG

## GENERAL OBJECTIONS

1.        Plaintiff objects to the extent that these interrogatories or the "preliminary statement" thereto seek to impose any requirements beyond those authorized by Rules 26 and 33 of the Federal Rules of Civil Procedure.

2.        Each specific response set forth below is subject to all objections, including but not limited to competence, relevance, materiality, or admissibility, that would require exclusion of any of the responses provided here from evidence at trial.  Such objections are hereby expressly reserved and may be interposed at trial or at other appropriate times in this action.  The fact that plaintiff responds to any interrogatory in whole or part is not an admission that the information provided thereby constitutes admissible evidence and is not to be construed as a waiver of any proper ground for objection which may be raised to any interrogatory or to the subject matter thereof, or to the use or admissibility of any answer thereto, at trial or at any time in this action.

3.        Plaintiff further objects to the extent that defendant's interrogatories seek information protected by the attorney-client privilege, the attorney work product doctrine, or federal or state rights to privacy.

4.        Plaintiff further objects to the extent that the interrogatories seek information which is already in the possession of defendant or is equally or readily available to defendant.

5.        Plaintiff  reserves the right to introduce into evidence in any proceeding before this Court, or at the trial of this action, any information that is not currently provided herein but has been provided to defendant previously, is information within defendant's possession, custody, or control, or was unknown to plaintiff at the time of this supplemental response, and which supports plaintiff's claims.

1

### INDIVIDUAL RESPONSES AND OBJECTIONS

2          Subject to the above general objections, and without waiving any of them, plaintiff further

3   responds and objects as follows:

4          **Interrogatory No. 122:  Please set forth the name of each employer, its address and**

5   **telephone number that YOU have been employed with since YOU were terminated by NIBCO.**

6          **Further Supplemental Response to Interrogatory No. 122:**  Plaintiff incorporates by

7   reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

8   extensively questioned in her deposition concerning the information sought by this interrogatory,

9   and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

10  within this interrogatory were also addressed in the reports of plaintiffs' expert witnesses, which

11  have been disclosed.

12         Subject to the foregoing, and aside from those matters that have already been produced by

13  plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

14  follows: *See* Further Supplemental Response to Interrogatory No. 147.

15

16         **Interrogatory No. 123:  Please set forth in as much detail as YOU are able, each and**

17  **every fact which shows YOUR efforts to find employment since YOU were terminated by**

18  **NIBCO.**

19         **Further Supplemental Response to Interrogatory No. 123:**  Plaintiff incorporates by

20  reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

21  extensively questioned in her deposition concerning the information sought by this interrogatory,

22  and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

23  within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have

24  been disclosed.

25         Subject to the foregoing, and aside from those matters that have already been produced by

26  plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

27  follows: *See* Further Supplemental Response to Interrogatory No. 147.

28  **PLAINTIFF SY VANG'S                                               PAGE 3**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

**Interrogatory No. 147:  Please IDENTIFY with precision every effort YOU have made to mitigate the harm YOU allege to have incurred giving rise to this action, including but not limited to YOUR attempts to secure employment and the employment YOU have secured since working for NIBCO, as well as YOUR earnings and benefits derived therefrom.**

**Further Supplemental Response to Interrogatory No. 147:**  Plaintiff incorporates by reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was extensively questioned in her deposition concerning the information sought by this interrogatory, and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have been disclosed.

Subject to the foregoing, and aside from those matters that have already been produced by plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as follows: With respect to her job search efforts after being terminated by NIBCO, plaintiff spent a significant amount of time looking for work after she was terminated by NIBCO.  Among other things, she would use "word of mouth" contacts and personal inquiries at businesses to identify potential employers.  After plaintiff's layoffs in 2001, 2002, 2003, 2004, she applied for positions through temporary employment agencies such as Select Personnel Services and Workforce Connection.  She did not receive a position through these agencies and applied for job at Janitorial, Inc.  In February 2004, plaintiff went to a Hmong community agency in order to try to network for a job.  In May 2004, plaintiff attended Fresno Adult School for janitorial training classes.  Plaintiff also sought employment through Workforce Connection. Since 2005, during short periods of unemployment, plaintiff sought employment through "word of mouth;" she also looked in

**PLAINTIFF SY VANG'S**                                                                 **PAGE 4**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

newspapers and searched through employment agencies. With respect to her earnings from

employment subsequent to being terminated by NIBCO, plaintiff states as follows: *See* documents

produced by plaintiff in response to defendant's Production Request No. 42. Plaintiff reserves the

right to supplement any such response at trial, as appropriate. In addition, plaintiff refers defendant

to the chart appended hereto as Supplemental Revised Exhibit A, which lists plaintiff's employment

subsequent to her termination from NIBCO and which contains plaintiff's best current calculations

of her post-termination income, as of the date of this response.

Plaintiff reserves the right to further supplement her responses hereto as appropriate, until

such time as the merits of this case are decided.


Dated:    October 2, 2008                    Christopher Ho
                                             Christina N. Chung
                                             Carole Vigne
                                             The LEGAL AID SOCIETY –
                                                 EMPLOYMENT LAW CENTER

                                             William J. Smith
                                             Shelley G. Bryant
                                             W.J. SMITH & ASSOCIATES

                                             Marielena Hincapié
                                             NATIONAL IMMIGRATION LAW CENTER


                        By:    _Christopher Ho / pr_____
                                             CHRISTOPHER HO
                                             Attorney for Plaintiffs


**PLAINTIFF SY VANG'S**                                        **PAGE 5**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

## <u>VERIFICATION</u>

I have had defendant's Interrogatories Nos. 122, 123, and 147, as well as the above responses thereto and this statement, explained to and/or translated for me in Hmong and I am aware of the contents thereof. I affirm that those responses are true and correct to the best of my knowledge, except as to any responses provided on the basis of information and belief, and as to those responses I affirm that I am informed and believe that they are true and correct to the best of my knowledge, and that this verification was executed in Fresno, California on October_____, 2008.


_____
SY VANG

**PLAINTIFF SY VANG'S**                                                    **PAGE 6**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

# EXHIBIT W
## Declaration of Carole Vigne

Christopher Ho, SBC No. 129845
Christina N. Chung, SBC No. 194630
Carole Vigne, SBC No. 251829
The LEGAL AID SOCIETY -
    EMPLOYMENT LAW CENTER
600 Harrison St., Suite 120
San Francisco, CA 94107-1387
Telephone:  (415) 864-8848
Facsimile:  (415) 864-8199

William J. Smith, SBC No. 056116
Shelley G. Bryant, SBC No. 222925
W.J. SMITH & ASSOCIATES
2350 West Shaw Avenue, Suite 132
Fresno, California 93711
Telephone:  (559) 432-0986
Facsimile:  (559) 432-4871

Marielena Hincapié, SBC No. 188199
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 2850
Los Angeles, California 90010
Telephone:  (213) 639-3900
Facsimile:  (213) 639-3911

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG <br><br> Plaintiffs, <br><br> v. <br><br> NIBCO, INC., an Indiana corporation <br><br> Defendant. | No.  CIV F-99-6443 OWW SMS <br><br> **PLAINTIFF MAI YOUA XIONG'S FURTHER SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147** |

**PROPOUNDING PARTY:**        Defendant NIBCO, INC.

**RESPONDING PARTY:**        Plaintiff MAI YOUA XIONG

## GENERAL OBJECTIONS

1.      Plaintiff objects to the extent that these interrogatories or the "preliminary statement" thereto seek to impose any requirements beyond those authorized by Rules 26 and 33 of the Federal Rules of Civil Procedure.

2.      Each specific response set forth below is subject to all objections, including but not limited to competence, relevance, materiality, or admissibility, that would require exclusion of any of the responses provided here from evidence at trial.  Such objections are hereby expressly reserved and may be interposed at trial or at other appropriate times in this action.  The fact that plaintiff responds to any interrogatory in whole or part is not an admission that the information provided thereby constitutes admissible evidence and is not to be construed as a waiver of any proper ground for objection which may be raised to any interrogatory or to the subject matter thereof, or to the use or admissibility of any answer thereto, at trial or at any time in this action.

3.      Plaintiff further objects to the extent that defendant's interrogatories seek information protected by the attorney-client privilege, the attorney work product doctrine, or federal or state rights to privacy.

4.      Plaintiff further objects to the extent that the interrogatories seek information which is already in the possession of defendant or is equally or readily available to defendant.

5.      Plaintiff reserves the right to introduce into evidence in any proceeding before this Court, or at the trial of this action, any information that is not currently provided herein but has been provided to defendant previously, is information within defendant's possession, custody, or control, or was unknown to plaintiff at the time of this supplemental response, and which supports plaintiff's claims.

**INDIVIDUAL RESPONSES AND OBJECTIONS**

Subject to the above general objections, and without waiving any of them, plaintiff further responds and objects as follows:

**Interrogatory No. 122:  Please set forth the name of each employer, its address and telephone number that YOU have been employed with since YOU were terminated by NIBCO.**

**Further Supplemental Response to Interrogatory No. 122:**  Plaintiff incorporates by reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was extensively questioned in her deposition concerning the information sought by this interrogatory, and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised within this interrogatory were also addressed in the reports of plaintiffs' expert witnesses, which have been disclosed.

Subject to the foregoing, and aside from those matters that have already been produced by plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as follows: *See* Further Supplemental Response to Interrogatory No. 147.

**Interrogatory No. 123:  Please set forth in as much detail as YOU are able, each and every fact which shows YOUR efforts to find employment since YOU were terminated by NIBCO.**

**Further Supplemental Response to Interrogatory No. 123:**  Plaintiff incorporates by reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was extensively questioned in her deposition concerning the information sought by this interrogatory, and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have been disclosed.

Subject to the foregoing, and aside from those matters that have already been produced by plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as follows: *See* Further Supplemental Response to Interrogatory No. 147.

**PLAINTIFF MAI YOUA XIONG'S                                              PAGE 3**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

**Interrogatory No. 147:  Please IDENTIFY with precision every effort YOU have made to mitigate the harm YOU allege to have incurred giving rise to this action, including but not limited to YOUR attempts to secure employment and the employment YOU have secured since working for NIBCO, as well as YOUR earnings and benefits derived therefrom.**

**Further Supplemental Response to Interrogatory No. 147:**  Plaintiff incorporates by reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was extensively questioned in her deposition concerning the information sought by this interrogatory, and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have been disclosed.

Subject to the foregoing, and aside from those matters that have already been produced by plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as follows: With respect to her job search efforts after being terminated by NIBCO, plaintiff spent a significant amount of time looking for work after she was terminated by NIBCO. Plaintiff sought and found work through a temporary employment agency shortly after being terminated.  Plaintiff applied for a job at a slaughterhouse in Selma, CA where she was interviewed but not hired. Plaintiff has at other times sought employment through temporary agencies and investigated training programs at Clovis and Fresno Adult Schools. Plaintiff most recently has been employed by a temporary employment agency. With respect to her earnings from employment subsequent to being terminated by NIBCO, plaintiff states as follows:  *See* documents produced by plaintiff in response to defendant's Production Request No. 42.  Plaintiff reserves the right to supplement any such response at trial, as appropriate.  In addition, plaintiff refers defendant to the chart appended hereto

1   as Supplemental Revised Exhibit A, which lists plaintiff's employment subsequent to her

2   termination from NIBCO and which contains plaintiff's best current calculations of her post-

3   termination income, as of the date of this response.

4         Plaintiff reserves the right to further supplement her responses hereto as appropriate, until

5   such time as the merits of this case are decided.

Dated:    October 2, 2008

Christopher Ho
Christina N. Chung
Carole Vigne
The LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER

William J. Smith
Shelley G. Bryant
W.J. SMITH & ASSOCIATES

Marielena Hincapié
NATIONAL IMMIGRATION LAW CENTER

By:

CHRISTOPHER HO
Attorney for Plaintiffs

## <u>VERIFICATION</u>

I have had defendant's Interrogatories Nos. 122, 123, and 147, as well as the above responses thereto and this statement, explained to and/or translated for me in Hmong and I am aware of the contents thereof. I affirm that those responses are true and correct to the best of my knowledge, except as to any responses provided on the basis of information and belief, and as to those responses I affirm that I am informed and believe that they are true and correct to the best of my knowledge, and that this verification was executed in Fresno, California on October_____ , 2008.


_Mai Youa Xiong_
**MAI YOUA XIONG**

**PLAINTIFF MAI YOUA XIONG'S**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

**PAGE 6**

# EXHIBIT X
## Declaration of Carole Vigne

Christopher Ho, SBC No. 129845
Christina N. Chung, SBC No. 194630
Carole Vigne, SBC No. 251829
The LEGAL AID SOCIETY -
  EMPLOYMENT LAW CENTER
600 Harrison St., Suite 120
San Francisco, CA 94107-1387
Telephone:  (415) 864-8848
Facsimile:  (415) 864-8199

William J. Smith, SBC No. 056116
Shelley G. Bryant, SBC No. 222925
W.J. SMITH & ASSOCIATES
2350 West Shaw Avenue, Suite 132
Fresno, California 93711
Telephone:  (559) 432-0986
Facsimile:  (559) 432-4871

Marielena Hincapié, SBC No. 188199
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 2850
Los Angeles, California 90010
Telephone:  (213) 639-3900
Facsimile:  (213) 639-3911

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG <br><br>        Plaintiffs, <br><br>    v. <br><br> NIBCO, INC., an Indiana corporation <br><br>        Defendant. | No.  CIV F-99-6443 OWW SMS <br><br> **PLAINTIFF SEE YANG'S FURTHER SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147** |

**PROPOUNDING PARTY:**     Defendant NIBCO, INC.

**RESPONDING PARTY:**     Plaintiff SEE YANG

## GENERAL OBJECTIONS

1.     Plaintiff objects to the extent that these interrogatories or the "preliminary statement" thereto seek to impose any requirements beyond those authorized by Rules 26 and 33 of the Federal Rules of Civil Procedure.

2.     Each specific response set forth below is subject to all objections, including but not limited to competence, relevance, materiality, or admissibility, that would require exclusion of any of the responses provided here from evidence at trial.  Such objections are hereby expressly reserved and may be interposed at trial or at other appropriate times in this action.  The fact that plaintiff responds to any interrogatory in whole or part is not an admission that the information provided thereby constitutes admissible evidence and is not to be construed as a waiver of any proper ground for objection which may be raised to any interrogatory or to the subject matter thereof, or to the use or admissibility of any answer thereto, at trial or at any time in this action.

3.     Plaintiff further objects to the extent that defendant's interrogatories seek information protected by the attorney-client privilege, the attorney work product doctrine, or federal or state rights to privacy.

4.     Plaintiff further objects to the extent that the interrogatories seek information which is already in the possession of defendant or is equally or readily available to defendant.

5.     Plaintiff  reserves the right to introduce into evidence in any proceeding before this Court, or at the trial of this action, any information that is not currently provided herein but has been provided to defendant previously, is information within defendant's possession, custody, or control, or was unknown to plaintiff at the time of this supplemental response, and which supports plaintiff's claims.

1

## INDIVIDUAL RESPONSES AND OBJECTIONS

2          Subject to the above general objections, and without waiving any of them, plaintiff further

3    responds and objects as follows:

4          **Interrogatory No. 122:  Please set forth the name of each employer, its address and**

5    **telephone number that YOU have been employed with since YOU were terminated by NIBCO.**

6          **Further <u>Supplemental Response to Interrogatory No. 122</u>:**  Plaintiff incorporates by

7    reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

8    extensively questioned in her deposition concerning the information sought by this interrogatory,

9    and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

10   within this interrogatory were also addressed in the reports of plaintiffs' expert witnesses, which

11   have been disclosed.

12         Subject to the foregoing, and aside from those matters that have already been produced by

13   plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

14   follows: *See* Further Supplemental Response to Interrogatory No. 147.

15

16         **Interrogatory No. 123:  Please set forth in as much detail as YOU are able, each and**

17   **every fact which shows YOUR efforts to find employment since YOU were terminated by**

18   **NIBCO.**

19         **Further <u>Supplemental Response to Interrogatory No. 123</u>:**  Plaintiff incorporates by

20   reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was

21   extensively questioned in her deposition concerning the information sought by this interrogatory,

22   and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised

23   within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have

24   been disclosed.

25         Subject to the foregoing, and aside from those matters that have already been produced by

26   plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as

27   follows: *See* Further Supplemental Response to Interrogatory No. 147.

28   **PLAINTIFF SEE YANG'S**                                         **PAGE 3**
     **FURTHER SUPPLEMENTAL RESPONSES**
     **TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

**Interrogatory No. 147:  Please IDENTIFY with precision every effort YOU have made to mitigate the harm YOU allege to have incurred giving rise to this action, including but not limited to YOUR attempts to secure employment and the employment YOU have secured since working for NIBCO, as well as YOUR earnings and benefits derived therefrom.**

Further <u>Supplemental Response to Interrogatory No. 147:</u>  Plaintiff incorporates by reference the previous objections and responses to this interrogatory.  Moreover, plaintiff was extensively questioned in her deposition concerning the information sought by this interrogatory, and defendant is accordingly referred thereto.  In addition, plaintiff responds that matters comprised within this interrogatory were addressed in the reports of plaintiffs' expert witnesses, which have been disclosed.

Subject to the foregoing, and aside from those matters that have already been produced by plaintiff or have been set out in the reports of plaintiffs' expert witnesses, plaintiff responds as follows: With respect to her job search efforts after being terminated by NIBCO, plaintiff spent a significant amount of time looking for work after she was terminated by NIBCO.  Among other things, she would use "word of mouth" contacts and personal inquiries at businesses to identify potential employers.  In January 2003, plaintiff sought employment at Aramark/Alamo Cleaners, her former employer.   However, there was no position available at the time.  Plaintiff attended a nine-session, unpaid, foster parent training course, beginning in February 2003 and concluding in May 2003.  She received her foster care license on June 1, 2003.  With respect to her earnings from employment subsequent to being terminated by NIBCO, plaintiff states as follows:  *See* documents produced by plaintiff in response to defendant's Production Request No. 42.  Plaintiff reserves the right to supplement any such response at trial, as appropriate.  In addition, plaintiff refers defendant

1    to the chart appended hereto as Supplemental Revised Exhibit A, which lists plaintiff's employment

2    subsequent to her termination from NIBCO and which contains plaintiff's best current calculations

3    of her post-termination income, as of the date of this response.

4         Plaintiff reserves the right to further supplement her responses hereto as appropriate, until

5    such time as the merits of this case are decided.

6

7

8    Dated:    October 2, 2008                Christopher Ho
                                             Christina N. Chung
9                                            Carole Vigne
                                             The LEGAL AID SOCIETY –
10                                              EMPLOYMENT LAW CENTER

11                                           William J. Smith
                                             Shelley G. Bryant
12                                           W.J. SMITH & ASSOCIATES

13                                           Marielena Hincapié
14                                           NATIONAL IMMIGRATION LAW CENTER

15

16                          By:    _Christopher Ho / p____
                                             CHRISTOPHER HO
17                                           Attorney for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28   **PLAINTIFF SEE YANG'S**                                    **PAGE 5**
     **FURTHER SUPPLEMENTAL RESPONSES**
     **TO DEFENDANT'S INTERROGATORIES, NOS. 122, 123 & 147**

## VERIFICATION

I have had defendant's Interrogatories Nos. 122, 123, and 147, as well as the above responses thereto and this statement, explained to and/or translated for me in Hmong and I am aware of the contents thereof. I affirm that those responses are true and correct to the best of my knowledge, except as to any responses provided on the basis of information and belief, and as to those responses I affirm that I am informed and believe that they are true and correct to the best of my knowledge, and that this verification was executed in Fresno, California on October_____, 2008.


_See Yang_____
**SEE YANG**

**PLAINTIFF SEE YANG'S**                                                            **PAGE 6**
**FURTHER SUPPLEMENTAL RESPONSES**
**TO DEFENDANT'S INTERROGATORIES. NOS. 122. 123 & 147**

# EXHIBIT Y
## Declaration of Carole Vigne

Worldwide Choice in Flow Control®

# 1999
# Annual Report

Nibco  60345

60345



Worldwide Choice in Flow Control®

Nibco  60346

60346

# Vision

Worldwide Choice in Flow Control™

# Values

Safety
Integrity
Teamwork
Continuous Improvement

# Mission

To be the dominant, **customer-driven** provider of flow-control solutions
to the global construction and irrigation markets while providing superior,
long-term prosperity for our stakeholders.

# Locations

## Manufacturing Sites

Blytheville, Arkansas
Greensboro, Georgia
Charlestown, Indiana
Elkhart, Indiana
Goshen, Indiana
Reynosa, Mexico
South Glens Falls, New York
Lodz, Poland
Denmark, South Carolina
McAllen, Texas
Nacogdoches, Texas
Stuarts Draft, Virginia

## Distribution Centers

Los Angeles, California
Atlanta, Georgia
Columbus, Ohio
Dallas, Texas

## International Marketing
## and Distribution Centers

Hong Kong
Mexico City, Mexico
Lodz, Poland

# Five Year Review

*(Dollars in thousands except per share amounts)*

| | Years ended December 31, | | | | |
|---|---|---|---|---|---|
| | 1999 | 1998 | 1997 | 1996 | 1995 |
| Net sales | $419,185 | $417,227 | $454,410 | $461,250 | $434,409 |
| Cost of goods sold | 332,459 | 334,516 | 374,162 | 366,830 | 333,114 |
| Interest expense | 3,847 | 3,649 | 2,400 | 2,344 | 2,561 |
| Income taxes | 12,032 | 8,716 | 4,848 | 10,699 | 13,636 |
| Net income | 22,734 | 18,120 | 8,016 | 18,076 | 24,017 |
| Additions to plant and equipment | 17,294 | 11,078 | 25,699 | 38,803 | 26,789 |
| Depreciation | 18,323 | 18,361 | 18,310 | 17,170 | 16,344 |
| Working capital | 40,323 | 120,132 | 87,652 | 94,478 | 104,156 |
| Shareholders' equity | 116,052 | 185,918 | 178,114 | 178,763 | 166,262 |
| Total assets | 266,747 | 299,297 | 278,394 | 289,573 | 278,459 |
| Long-term debt | 35,580 | 47,008 | 33,437 | 35,026 | 36,455 |
| Number of employees | 3,292 | 3,494 | 3,453 | 3,518 | 3,257 |
| **Class B common stock per share amounts:** | | | | | |
| Basic earnings | $19.28 | $14.73 | $6.22 | $13.80 | $18.13 |
| Diluted earnings | 19.04 | 14.50 | 6.13 | 13.54 | 17.76 |
| Cash dividends declared | 1.68 | 1.68 | 1.64 | 1.52 | 1.42 |
| Book value | 132.07 | 153.58 | 141.19 | 137.62 | 126.24 |
| Appraised value | 243.00 | N/A | N/A | N/A | N/A |

Notes:

(A) Class A per share amounts are twenty times Class B per share amounts shown above.

(B) The weighted average number of shares outstanding during the years, which is the basis of the computation of basic earnings per share, were 1999 – 1,179,154 shares, 1998 – 1,229,710 shares, 1997 – 1,289,077 shares, 1996 – 1,310,104 shares and 1995 – 1,324,496 shares.

(C) The weighted average number of shares outstanding plus the dilutive effect of outstanding stock options during the years, which is the basis of the computation of diluted earnings per share, were 1999 – 1,194,047 shares, 1998 – 1,249,240 shares, 1997 – 1,307,264 shares, 1996 – 1,334,813 shares and 1995 – 1,352,355 shares.

(D) See Note 8 to the consolidated financial statements for a description of the book value and appraised value per share of Class B common stock.

Nibco 60349

4

# Financial Highlights

| Operations | 1999 | 1998 ($ - Millions) | 1997 |
|---|---|---|---|
| Net Sales | $ 419.2 | $ 417.2 | $ 454.4 |
| Growth % | .5% | -8% | -2% |
| Operating Income | $ 35.1 | $ 29.4 | $ 15.5 |
| Growth % | 19% | 90% | -53% |
| Net Income | $ 22.7 | $ 18.1 | $ 8.0 |
| Growth % | 25% | 126% | -56% |
| **Performance Ratios** | **1999** | **1998** | **1997** |
| Gross Margin % | 21% | 20% | 18% |
| Selling, General and Administrative | 12% | 13% | 14% |
| Return on Working Capital | 56% | 15% | 9% |
| Return on Assets | 9% | 6% | 3% |
| Earnings Per Class B Share | $ 19.28 | $ 14.73 | $ 6.22 |
| **Financial Condition** | **1999** | **1998** ($ - Millions) | **1997** |
| Cash | $ 18.2 | $ 35.4 | $ 1.8 |
| Working Capital | 40.3 | 120.1 | 87.7 |
| Net Properties | 115.8 | 120.3 | 130.3 |
| Assets | 266.7 | 299.3 | 278.4 |
| Capital Expenditures | 17.3 | 11.1 | 25.7 |
| Long-Term Debt | 35.6 | 47.0 | 33.4 |
| Shareholders' Equity | 116.1 | 185.9 | 178.1 |
| **Financial Ratios** | **1999** | **1998** | **1997** |
| Return on Equity | 15% | 10% | 5% |
| Debt to Equity | 130% | 61% | 56% |
| Interest Coverage (Times) | 10.0 | 8.4 | 6.4 |
| Book Value Per Class B Share | $132.07 | $153.58 | $141.19 |
| Growth % | -14% | 9% | 3% |
| Appraised Value Per Class B Share | $243.00 | N/A | N/A |

# Directors

**Reed Coleman,** Chairman, Madison-Kipp Corporation

**William M. Jordan,** Former President and C.O.O., Flowserve Corporation

**Lee Martin,** Vice Chairman, NIBCO INC.

**Rex Martin,** Chairman, President and C.E.O., NIBCO INC.

**Frank K. Reilly,** Bernard J. Hank Professor of Business Administration, University of Notre Dame

**Peter Stalker II,** Retired Partner, Clark Hill, Attorneys

# Officers

**Rex Martin,** Chairman, President and C.E.O.

**Lee Martin,** Vice Chairman

**James F. Drexinger,** Vice President - Sales and Marketing

**Thomas L. Eisele,** Vice President - General Counsel and Secretary

**Joseph J. Gross,** Vice President - Administration

**David S. Hill,** Vice President - Supply Chain

**Robert L. Krok,** Vice President - Business Development

**Steven E. Malm,** Vice President - International

**Dennis J. Parker,** Vice President - Finance and Treasurer

Nibco 60351

**NIBCO INC.**
**1999 Annual Report**
60351

# To Our Shareholders

NIBCO achieved financial success in 1999. Sales increased marginally to $419 million, while net income rose 25% to $22.7 million. This represents the third best net income in the Company's history.

We divested the micro-irrigation business and the refrigeration ball valve product lines during the year. Neither business fit our financial objectives. Despite the divestitures, sales still increased, demonstrating the strength of our core businesses.

Cost control during 1999 was evident across the organization. The one percentage point increase in gross margin was a result of continued aggressive cost reduction in the supply chain organization. The reduction of selling, general and administrative costs from 13 percent of sales to 12 percent of sales also demonstrated good expense control.

NIBCO continued to invest in information technology. Early in 1999, SAP 4.0B was installed in a seamless fashion. This follows our strategy of upgrading software every 18 to 24 months, in order to maintain our technological advantage. Also during the year, two e-commerce initiatives were developed, piloted and prepared for market introduction.

"The Perfect Order," which is NIBCO's measurement of total customer satisfaction, increased to a run-rate of slightly above 80% by year-end. This is an improvement of almost 15% over 1998. To qualify as "The Perfect Order," errors cannot be made in any step of our sales, manufacturing and distribution processes. We are proud of the fact that four out of five times, "Perfect Orders" are a reality for our valued customers. This again demonstrates our core values of continuous improvement and teamwork. Naturally, we have an even higher goal for "The Perfect Order" for fiscal 2000.

The year 1999 was historic for NIBCO. A significant event was NIBCO's repurchase of all outstanding Class A voting shares other than those owned by me. My interests lie in positioning NIBCO for the long term. We will continue to invest in high quality people who provide high quality products and service to our customers.

I believe this transaction provides security for our shareholders, our hard-working associates and our loyal customers. Our Company remains a private company imbued with the same high ethical values that my father, my grandfather and my great-grandfather have always championed. Those values are:

|  |  |
|---|---|
| **Safety** | Our safety and health policy is designed to protect our Company's most valuable resource — our people. All associates play key roles in developing and maintaining a safe work environment that is free of unsafe acts and conditions. |
| **Integrity** | All decisions will be made with the understanding of the right thing to do. We will be fair and honest in the conduct of our business. We will demonstrate respect for individuals inside and outside the NIBCO organization. |
| **Teamwork** | We will have a participative environment where each associate can contribute to the maximum. We will maintain an atmosphere that attracts, retains and develops excellent people who are committed to sharing in the success of NIBCO. We will create a teamwork approach to ensure maximum commitment to our goals. |
| **Continuous Improvement** | We will maintain the highest standards in all elements of our business. We will set goals that foster continuous improvement in our people, products and service to our customers. |

Significantly, NIBCO's Class B shares will be valued by an outside appraiser twice per year to establish a market value, with the new stock price effective each March 1 and September 1. This valuation will be the basis for stock redemptions. Class B shares were valued at $243 per share for the December 1, 1999 redemption transaction, an increase of 57% over the prior redemption price

Nibco 60352

# To Our Shareholders
*(concluded)*

I am pleased that our Class B shareholders, many of whom are also our current and former associates, should benefit under this arrangement. NIBCO's associates have made this Company great and they should be rewarded for their investment in NIBCO.

As we look ahead to 2000, we embrace our heritage, while forging a solid future as the "Worldwide Choice in Flow Control®."

Sincerely,

*Rex Martin*

Rex Martin
Chairman, President
and Chief Executive Officer

Nibco  60353

**NIBCO INC.**
**1999 Annual Report**
60353

# Management's Discussion and Analysis

Sales of fittings and valves, the two principal classes of products, and other products during the last five years have been:

| ($ millions) | 1999 | 1998 | 1997 | 1996 | 1995 |
|---|---|---|---|---|---|
| Fittings | $257 | $255 | $274 | $274 | $259 |
| Valves | 152 | 144 | 145 | 155 | 150 |
| Other | 10 | 18 | 35 | 32 | 25 |

The transition from 1998 to 1999 is explained below.

## Results of Operations

Overall consolidated sales volume increased by $2 million over 1998 sales.

Consolidated fittings sales were $257 million compared to $255 million in 1998. The increase occurred both in metal and plastic fittings, and was due to increased penetration of the markets we serve. Consolidated valve sales were $152 million compared to $144 million in 1998. The increase occurred in metal valves and was the result of increased market penetration.

Sales volume of other products decreased by $8 million in 1999. This was primarily the result of the divestiture of the micro-irrigation product line. Micro-irrigation products consisted of plastic pipe and fittings sold to the commercial, agricultural and landscaping markets. The business was purchased in 1995 and experienced declining sales and profitability since its acquisition. The decision to exit the business was made at the beginning of 1999 and the divestiture occurred in August.

Cost of goods sold totaled $332.5 million and was down $2 million from 1998. The decrease is primarily attributable to lower prices of primary materials used in the manufacture of fittings and valves. The Company's gross profit margin was 20.7% in 1999 compared to 19.8% in 1998. The increase is primarily attributable to lower material costs and reduced spending in the manufacture and distribution of product.

Selling, general and administrative expenses were $52 million in 1999. This represents a decrease in spending of $2 million from 1998. Reduced general and administrative expenditures were the result of improved administrative processes that have resulted in the reduction of workforce. The workforce reductions occurred through natural attrition.

Net interest expense decreased from $2.4 million in 1998 to $1.2 million in 1999. The decrease was a result of increased income on short-term investments.

Income before income taxes for 1999 was $35 million, which represented an increase of $8 million over 1998. The Company provided $12 million for income taxes in 1999. This represents an increase of $3 million over the prior year. The 1999 effective rate is 34.6% compared to an effective rate of 32.5% for 1998. The effective tax rate rose due to the higher level of taxable income. The effective rate increase represented $.6 million of the increase. The remainder of the increase was attributable to higher pre-tax income.

Capital investments for 1999 were $17.3 million compared to $11.1 million in 1998. Capital investments in 1999 were made mainly in older metal fittings and valve manufacturing facilities, to improve yields and balance capacity to demand.

# Management's Discussion and Analysis

*(concluded)*

### Financial Position - Liquidity and Capital Resources

The Company's cash and cash equivalents decreased by $17 million to $18 million in 1999. Major components of the change included $62.6 million cash provided by operations, $12.2 million cash used for investing activities and $67.5 million cash used for financing activities.

The Company repurchased $93 million of outstanding common stock in 1999. The majority of the common shares repurchased in 1999 resulted from the complete redemption of three major shareholders. The redemption was executed during December of 1999 and resulted in the repurchase of approximately $80 million of the total. The remaining $13 million of common stock was repurchased under the put and call provisions that were amended in December 1999.

The ratio of current assets to current liabilities decreased to 1.4:1 at December 31,1999 from 3.4:1 in 1998. Current assets decreased by $31.5 million, mainly as the result of the decreases in cash and cash equivalents and inventory. Current liabilities increased by $48 million principally due to increases in short-term borrowings and current maturities of long-term debt.

The number of days of sales in accounts receivable increased by 4.3 days to 50.9 at year-end 1999. Days sales outstanding reflected strong demand that increased sales and the corresponding days sales outstanding in the final month of the year.

Inventory turns in 1999 of 5.1 represented an increase of .7 turns. The average 1999 inventory level decreased to $65 million from $76 million in 1998. The decrease is attributable to changes made to inventory management and manufacturing strategies.

The 1999 liability to equity ratio was 1.30:1 compared to the 1998 liability to equity ratio of .61:1. The ratio increased due to increased short-term borrowings of $25 million under a credit agreement with BANK ONE, INDIANA, N.A., (formerly NBD Bank N.A.) and two other banks, and the repurchase of $93 million of outstanding common stock in 1999. The related debt agreement contains covenants that require compliance with certain financial ratios. All compliance requirements were met during 1999. Although the debt to equity ratio has increased, the Company believes the risk assumed with the new debt is within the Company's ability to manage considering current performance forecasts.

The Company has unused credit lines of $53.0 million available to meet seasonal working capital needs. Considering the current forecast, funds generated from operations and funds available from unused credit lines will be sufficient to provide for the Company's operating and capital needs for 2000.

### Inflation

The impact of inflation on the Company's results for 1999, 1998 and 1997 was not material.

NIBCO INC.
1999 Annual Report
60355

# 1999

# Financial Statements

# Consolidated Statements of Income

*(In thousands except per share amounts)*

| | Years ended December 31, | | |
| --- | --- | --- | --- |
| | **1999** | **1998** | **1997** |
| NET SALES | $419,185 | $417,227 | $454,410 |
| Cost of goods sold | 332,459 | 334,516 | 374,162 |
| Selling, general and administrative expenses | 51,628 | 53,321 | 64,746 |
| | 384,087 | 387,837 | 438,908 |
| Operating income | 35,098 | 29,390 | 15,502 |
| Interest income | 2,642 | 1,287 | 1,329 |
| Interest expense | (3,847) | (3,649) | (2,400) |
| Other income (expense) net | 873 | (192) | (1,567) |
| Income before income taxes | 34,766 | 26,836 | 12,864 |
| Income taxes | 12,032 | 8,716 | 4,848 |
| NET INCOME | $ 22,734 | $ 18,120 | $ 8,016 |
| Basic earnings per Class B share | $19.28 | $14.73 | $ 6.22 |
| Diluted earnings per Class B share | $19.04 | $14.50 | $ 6.13 |
| Cash dividends per Class B share (Class A = 20 X Class B amount) | $1.68 | $1.68 | $1.64 |

*(See accompanying notes to consolidated financial statements)*

Nibco 60357

# Consolidated Balance Sheets

*(In thousands except per share amounts)*

| | December 31, | |
| --- | ---: | ---: |
| | 1999 | 1998 |
| **CURRENT ASSETS:** | | |
| Cash and cash equivalents | $ 18.170 | $ 35,374 |
| Accounts receivable | 58.456 | 53,259 |
| Inventories: | | |
| Raw material | 3,146 | 3,959 |
| Work in process | 13,829 | 16,423 |
| Finished goods | 39,264 | 53,109 |
| Total inventories | 56,239 | 73,491 |
| Deferred income taxes | 4,855 | 7,049 |
| Other current assets | 1.575 | 1,640 |
| Total current assets | 139,295 | 170,813 |
| **OTHER ASSETS** | 11,615 | 8,167 |
| **PROPERTIES AND EQUIPMENT**, at cost: | | |
| Land | 2.531 | 1,636 |
| Buildings | 43.773 | 45,057 |
| Machinery and equipment | 287,636 | 281,499 |
| | 333,940 | 328,192 |
| Less — Accumulated depreciation | 218,103 | 207,875 |
| | 115,837 | 120,317 |
| Total assets | $266,747 | $299,297 |
| **CURRENT LIABILITIES:** | | |
| Short-term borrowings | $ 25.000 | $    177 |
| Current maturities of long-term debt | 13.000 | 1,429 |
| Accounts payable | 13,812 | 13,006 |
| Accrued wages and benefits | 22.576 | 15,426 |
| Other accrued expenses | 21,240 | 18,619 |
| Income and other taxes | 3,344 | 2,024 |
| Total current liabilities | 98,972 | 50,681 |
| **LONG-TERM DEBT** | 35,580 | 47,008 |
| **DEFERRED INCOME TAXES** | 16,143 | 15,690 |
| **COMMITMENTS AND CONTINGENCIES (Note 9)** | | |
| **SHAREHOLDERS' EQUITY:** | | |
| Class A common stock (voting) — $20 par value; 200 shares authorized, 25 shares issued | 500 | 500 |
| Class B common stock (non-voting) — $1 par value; 4,000 shares authorized, 1,337 shares issued | 1,337 | 1,337 |
| Additional paid-in capital | 8.801 | 8,342 |
| Accumulated translation adjustment | (533) | (254) |
| Retained earnings | 253,483 | 232,634 |
| | 263,588 | 242,559 |
| Less — Cost of treasury shares | 147,536 | 56,641 |
| Total shareholders' equity | 116,052 | 185,918 |
| Total liabilities and shareholders' equity | $266,747 | $299,297 |
| **BOOK VALUE PER CLASS B SHARE** | | |
| (Class A = 20 X Class B value) | $ 132.07 | $ 153.58 |
| **EQUIVALENT TOTAL SHARES OUTSTANDING** | 879 | 1,211 |

*(See accompanying notes to consolidated financial statements)*

Nibco 60358

# Consolidated Statements of Shareholders' Equity

*(Dollars in thousands except per share amounts)*

| | Class A Common Stock | Class B Common Stock | Additional Paid-in Capital | Accumulated Translation Adjustment | Retained Earnings | Treasury Stock Shares | Treasury Stock Amount | Total Shareholders' Equity |
|---|---|---|---|---|---|---|---|---|
| **Balance at January 1, 1997** | $500 | $1,337 | $6,930 | ($65) | $210,659 | 537,852 | ($40,598) | $178,763 |
| Net income | | | | | 8,016 | | | 8,016 |
| Change in accumulated translation adjustment | | | | (108) | | | | (108) |
| Total comprehensive income | | | | | | | | 7,908 |
| Cash dividends ($1.64 per share) | | | | | (2,106) | | | (2,106) |
| Puts and purchases of treasury stock | | | 338 | | | 65,728 | (9,519) | (9,181) |
| Stock options exercised | | | (25) | | | (28,079) | 2,161 | 2,136 |
| Tax benefit from exercise of stock options | | | 594 | | | | | 594 |
| **Balance at December 31, 1997** | 500 | 1,337 | 7,837 | (173) | 216,569 | 575,501 | (47,956) | 178,114 |
| Net income | | | | | 18,120 | | | 18,120 |
| Change in accumulated translation adjustment | | | | (81) | | | | (81) |
| Total comprehensive income | | | | | | | | 18,039 |
| Cash dividends ($1.68 per share) | | | | | (2,055) | | | (2,055) |
| Puts and purchases of treasury stock | | | 11 | | | 75,548 | (10,790) | (10,779) |
| Stock options exercised | | | (10) | | | (24,620) | 2,105 | 2,095 |
| Tax benefit from exercise of stock options | | | 504 | | | | | 504 |
| **Balance at December 31, 1998** | 500 | 1,337 | 8,342 | (254) | 232,634 | 626,429 | (56,641) | 185,918 |
| Net income | | | | | 22,734 | | | 22,734 |
| Change in accumulated translation adjustment | | | | (279) | | | | (279) |
| Total comprehensive income | | | | | | | | 22,455 |
| Cash dividends ($1.68 per share) | | | | | (1,885) | | | (1,885) |
| Puts and purchases of treasury stock | | | | | | 355,314 | (93,080) | (93,080) |
| Stock options exercised | | | (42) | | | (23,430) | 2,185 | 2,143 |
| Tax benefit from exercise of stock options | | | 501 | | | | | 501 |
| **Balance at December 31, 1999** | $500 | $1,337 | $8,801 | ($533) | $253,483 | 958,313 | ($147,536) | $116,052 |

*(See accompanying notes to consolidated financial statements)*

14

# Consolidated Statements of Cash Flows

*(In thousands)*

| | Years ended December 31, | | |
| --- | --- | --- | --- |
| | 1999 | 1998 | 1997 |
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | | | |
| Net income | $22,734 | $18,120 | $ 8,016 |
| Adjustments to reconcile net income to net cash from operating activities: | | | |
| Depreciation | 18,324 | 18,361 | 18,310 |
| Amortization and write-off of intangibles | 134 | 92 | 2,226 |
| Loss on write-down of equipment | — | 1,957 | — |
| Gain on sale of properties and equipment | (12) | (476) | (138) |
| Gain on sale of businesses | (1,666) | — | (2,316) |
| Deferred income taxes | 2,647 | 3,596 | 1,523 |
| Increase in other assets | (2,603) | (937) | (1,518) |
| Change in current assets and liabilities, net of effects of acquisitions and dispositions: | | | |
| Accounts receivable | (5,513) | (2,240) | 2,698 |
| Refundable income taxes | — | 2,291 | (2,291) |
| Inventories | 17,021 | 4,146 | (9,223) |
| Other current assets | 65 | (862) | 641 |
| Accounts payable | 590 | 2,259 | (7,581) |
| Accrued liabilities | 10,890 | (5,720) | (933) |
| Net cash from operating activities | 62,611 | 40,587 | 9,414 |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** | | | |
| Proceeds from sale of properties and equipment | 2,091 | 1,258 | 1,784 |
| Capital expenditures | (17,294) | (11,078) | (25,699) |
| Proceeds from sale of businesses | 2,986 | — | 4,843 |
| Acquisitions of businesses | — | (439) | (984) |
| Net cash (used in) investing activities | (12,217) | (10,259) | (20,056) |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | | | |
| Proceeds from advances under lines of credit | 25,000 | 53,532 | 63,934 |
| Payments of advances under lines of credit | (177) | (53,355) | (63,934) |
| Decrease in other short-term borrowings, net | — | — | (852) |
| Proceeds from issuance of long-term debt | 1,572 | 15,000 | — |
| Payments of long-term debt | (1,429) | (1,589) | (1,489) |
| Acquisitions of treasury shares, net | (93,080) | (10,779) | (9,181) |
| Proceeds from exercise of Class B stock options | 2,143 | 2,095 | 2,136 |
| Tax benefit from exercise of stock options | 501 | 504 | 594 |
| Cash dividends paid | (2,025) | (2,076) | (2,072) |
| Net cash from (used in) financing activities | (67,495) | 3,332 | (10,864) |
| Effect of exchange rate changes on cash | (103) | (52) | (36) |
| Increase (decrease) in cash and cash equivalents | (17,204) | 33,608 | (21,542) |
| Cash and cash equivalents, beginning of year | 35,374 | 1,766 | 23,308 |
| Cash and cash equivalents, end of year | $18,170 | $35,374 | $1,766 |

*(See accompanying notes to consolidated financial statements)*

# Notes to Consolidated Financial Statements

## NOTE 1 — ACCOUNTING POLICIES:

**Basis of consolidation** — The consolidated financial statements include the accounts of NIBCO INC. and its majority-owned subsidiaries (the "Company").

**Cash equivalents** — For purposes of the consolidated statements of cash flows, cash and cash equivalents include a tax-free money market account, commercial paper and other highly liquid investments with original maturities of three months or less.

**Inventory valuation** — Inventories are stated at the lower of cost or market, with cost determined principally by the LIFO method. The excess of replacement cost of inventories over LIFO cost was approximately $26.9 million and $29.5 million at December 31, 1999 and 1998, respectively.

**Depreciation** — Depreciation is calculated on the cost of assets over their estimated useful lives. For financial reporting purposes, depreciation is generally provided by the straight-line method, while accelerated methods are used for income tax purposes.

**Research and development** — Research and development costs are charged to expense as incurred and amounted to approximately $3.2 million, $3.9 million and $2.8 million in 1999, 1998 and 1997, respectively.

**Fair value of financial instruments** — The following methods and assumptions were used by the Company in estimating fair value of the following financial instruments as of December 31, 1999 and 1998:

▨ Cash and cash equivalents, accounts receivable, accounts payable — The carrying amounts reported in the consolidated balance sheets approximate their fair values because of the short-term maturities of those instruments.

▨ Short-term borrowings — The carrying amounts of short-term borrowings approximate their fair values because of their variable rates, which approximate current market rates.

▨ Long-term debt — The carrying amounts of long-term debt approximate their fair values based on the Company's estimated incremental borrowing rates for similar types of borrowing arrangements.

**Use of estimates in the preparation of the financial statements** — The preparation of financial statements in conformity with accounting principles generally accepted in the United States requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

**Supplemental cash flow information** — Supplemental disclosures of cash flow information for the years ended December 31, 1999, 1998 and 1997 are as follows (in thousands):

| Cash paid during the year for: | 1999 | 1998 | 1997 |
|---|---|---|---|
| Interest | $3,856 | $3,307 | $2,303 |
| Income taxes | 7,847 | 3,661 | 5,300 |
| Noncash investing activity: | | | |
| Notes received in connection with sale of businesses | $1,113 | $ — | $ — |

## NOTE 2 — EMPLOYEE BENEFITS:

The Company has profit sharing plans covering substantially all employees. Costs under these plans were $4.5 million in 1999, $3.2 million in 1998 and $2.3 million in 1997. Under the provisions of the profit sharing plans, the Company has no liability beyond amounts contributed to trusts and has no right to or interest in trust assets.

One of the plans also includes a 401(k) feature which covers substantially all employees. Employees participating in the plan may contribute up to 15% of their annual compensation, subject to statutory limitations. The Company matches a percentage of participant contributions (45% of each percentage contributed up to four percent, 100% of the fifth percentage and 50% of the sixth percentage) which is fully vested. Company matching contributions amounted to $1.9 million, $2.1 million and $2.2 million for the years 1999, 1998 and 1997, respectively.

16

# Notes to Consolidated Financial Statements *(continued)*

### NOTE 3 — NATURE OF OPERATIONS AND CONCENTRATION OF CREDIT RISK:

The Company manufactures and distributes a full line of flow-control products and systems, including metal and plastic pipe fittings, valves and related products for applications in the residential, commercial, industrial and irrigation markets. Operations are comprised of 12 manufacturing facilities, four distribution centers and three sales and marketing offices located worldwide.

Concentration of credit risk is limited due to the large number of customers and their dispersion among many different industries and geographic regions. The Company's largest customer accounted for approximately 13% of net sales in 1999 and 12% in 1998. The Company performs an ongoing credit evaluation of its customers' financial condition, and credit is extended to customers on an unsecured basis. Future credit losses are provided for currently through the allowance for doubtful accounts and actual credit losses are charged to the allowance when incurred. The allowance for doubtful accounts at December 31, 1999 and 1998 aggregated $ .2 million and $ .9 million, respectively.

U.S. export sales were 7% of consolidated net sales in 1999 (7% in 1998 and 8% in 1997).

### NOTE 4 — INCOME TAXES:

Deferred income taxes are provided for differences between the tax bases of assets and liabilities and their financial reporting amounts using the liability method. The components of the income tax provisions are as follows:

|  | 1999 | 1998 | 1997 |
|---|---|---|---|
|  |  | (In thousands) |  |
| Current: |  |  |  |
| Federal | $ 8,367 | $4,529 | $2,398 |
| State | 694 | 149 | 452 |
| Foreign | 324 | 442 | 475 |
|  | 9,385 | 5,120 | 3,325 |
| Deferred: |  |  |  |
| Federal | 2,402 | 3,566 | 1,359 |
| State | 245 | 30 | 164 |
|  | 2,647 | 3,596 | 1,523 |
| Total | $12,032 | $8,716 | $4,848 |

Research and foreign tax credits are reflected as a reduction of the current income tax provision in the year in which the credits are allowed for tax purposes. Income before income taxes attributable to non-U.S. sources, in thousands, was $1,154, $552 and $336 for 1999, 1998 and 1997, respectively.

The following is a reconciliation of the statutory federal income tax provision based on the statutory rate of 35% to the actual income tax provision:

|  | 1999 | 1998 | 1997 |
|---|---|---|---|
|  |  | (In thousands) |  |
| Income tax provision at the U.S. statutory rate | $12,168 | $9,393 | $4,502 |
| State income taxes, net of federal benefit | 610 | 116 | 400 |
| Other, net | (746) | (793) | (54) |
| Actual income tax provision | $12,032 | $8,716 | $4,848 |

# Notes to Consolidated Financial Statements *(continued)*

### NOTE 4 — INCOME TAXES: (concluded)

The components of the net deferred tax asset and the net deferred tax liability as of December 31, 1999 and 1998 were as follows:

|  | 1999 | 1998 |
|---|---|---|
|  | (In thousands) | |
| Current deferred tax asset (liability): | | |
| Accounts receivable | ($  575) | $   123 |
| Inventories | 1,179 | 1,841 |
| Accrued liabilities | 4,074 | 4,918 |
| Other | 177 | 167 |
| Deferred tax asset | $ 4,855 | $ 7,049 |
| Long-term deferred tax liability: | | |
| Depreciation | $14,304 | $14,107 |
| Other | 1,839 | 1,583 |
| Deferred tax liability | $16,143 | $15,690 |

During 1997, the Company changed its method of accounting for the valuation of accounts receivable for income tax purposes, amending income tax returns for the 1997, 1996 and 1995 taxable years and recording refunds approximating $1.6 million, which reduced the 1997 current provision for federal and state income taxes and increased the 1997 provision for deferred income taxes. In 1998, due to a change in the tax regulations associated with the valuation of accounts receivable for income tax purposes, the Company was required to reverse this method of accounting which will result in the recapture of prior year income tax refunds associated with this change over a period of four years commencing in 1998.

### NOTE 5 — ACQUISITIONS AND DISPOSITIONS:

On October 6, 1999, the Company sold its refrigeration ball valve business to ALCO Controls for cash and a note receivable totalling approximately $1.4 million, which approximated carrying value.

On August 13, 1999, the Company sold its Fresno, California manufacturing facility to R.M. Wade & Co. for approximately $2.1 million, consisting of cash and a note receivable. The Company realized a gain of $1.6 million on the sale.

On January 8, 1999, the Company sold its Louisville, Kentucky property for a total sales price of $600 thousand, consisting of cash and a note receivable. The Company realized a gain of $111 thousand on the sale.

On July 8, 1998, the Company acquired its remaining 25% interest in NIBCO Pacific, Hong Kong from its minority shareholder for cash of $439 thousand. The excess of the purchase price over the fair value of the net assets acquired, which aggregated $306 thousand, is being amortized on the straight-line basis over 15 years.

On December 8, 1997, the Company sold its Guardian business to Sekisui America Corporation for cash of $799 thousand, which approximated carrying value.

On July 11, 1997, the Company sold its specialized copper and steel fittings business to Small Tube Manufacturing Corp. for approximately $4 million in cash. The Company realized a gain of $2.3 million on the sale.

On June 2, 1997, the Company acquired the 40% minority interest in NIBCO Marketing Sp.z.o.o., Lodz, Poland, for cash totalling $984 thousand. The excess of the purchase price over the fair value of the net assets acquired, which aggregated $946 thousand, is being amortized on a straight-line basis over 20 years.

# Notes to Consolidated Financial Statements *(continued)*

**NOTE 6 — SHORT-TERM BORROWINGS:**

At December 31, 1999, the Company has a revolving credit facility with BANK ONE, INDIANA, N.A. and two other banks expiring January 28, 2003. The revolving credit facility provides for aggregate unsecured borrowings of $75 million including available letters of credit up to $15 million and a cash management line of credit of $5 million. The credit agreement requires minimum advances under both the revolving credit facility and the cash management line of credit plus a commitment fee ranging from 12.5 to 20 basis points on the unused available credit. Interest on outstanding advances is payable monthly at, depending on the pricing option selected by the Company, either the "alternate base rate" (greater of BANK ONE's prime rate or the federal funds effective rate plus 50 basis points) or the adjusted LIBOR rate plus 35 to 75 basis points dependent upon the Company's ratio of debt to tangible capitalization. At December 31, 1999, the Company has outstanding borrowings of $25 million under this credit facility (no outstanding borrowings at December 31, 1998). The credit agreement contains, among other provisions, certain restrictive covenants including limits on disposals of assets, operating leases, mergers and consolidations, transfer of ownership, maintenance of a minimum level of adjusted net worth and compliance with certain prescribed financial ratios.

At December 31, 1999, the Company also has an unsecured line of credit of $3 million ($2 million at December 31, 1998) with The First National Bank of Chicago-Hong Kong, which has an expiration date of September 30, 2000. Interest on outstanding advances under this line of credit is payable monthly at a rate based on the denomination and amount of the advance. (US$ denominated borrowings and HK$ denominated borrowings in excess of HK$800 thousand accrue interest at a rate of .75% above the Hong Kong Interbank Offer Rate and HK$ denominated borrowings of less than HK$800 thousand accrue interest at the Hong Kong Prime Rate.) At December 31, 1999, there were no outstanding borrowings under this line of credit ($177 thousand outstanding at December 31, 1998).

At December 31, 1998, the Company had an unused unsecured line of credit of $10 million with The Bank of Tokyo-Mitsubishi, Ltd. which expired March 1, 1999 and was not renewed. There were no borrowings under this line of credit at December 31, 1998.

**NOTE 7 — LONG-TERM DEBT:**

| | December 31, | |
|---|---|---|
| (In thousands) | **1999** | **1998** |
| 5.82% term note, interest payable quarterly with outstanding principal due at maturity on November 24, 2000 | $10,000 | $10,000 |
| 7.02% Series B senior notes, payable $1,429 annually through 2002 | 4,286 | 5,714 |
| 7.33% Series C senior notes, payable $3,200 annually commencing in 2003 and continuing through 2007 | 16,000 | 16,000 |
| 6.43% Series D senior notes, payable $2,143 annually commencing in 2002 and continuing through 2008 | 15,000 | 15,000 |
| Subordinated debentures, fixed and variable rates indexed to average yields on U.S. Treasury notes and bonds, with maturities in varying amounts through 2002 | 1,723 | 1,723 |
| Promissory note, interest payable at the Warsaw Interbank Offer Rate plus 1.5%, matures March 2000 | 846 | — |
| Promissory note, interest payable at the Warsaw Interbank Offer Rate plus 0.6%, matures November 2000 | 725 | — |
| | 48,580 | 48,437 |
| Less — Current maturities | 13,000 | 1,429 |
| Long-term debt | $35,580 | $47,008 |

The approximate aggregate annual maturities of long-term debt for each of the next five years are as follows: (In thousands) 2000-$13,000, 2001-$2,777, 2002-$3,945, 2003-$5,343 and 2004-$5,343.

# Notes to Consolidated Financial Statements *(continued)*

### NOTE 8 — EQUITY MATTERS:

### Earnings Per Share

Basic earnings per share is computed by dividing net income by the weighted average number of shares of common stock outstanding which were as follows (in thousands): 1999 - 1,179, 1998 - 1,230 and 1997 -1,289. Diluted earnings per share is computed by dividing net income by the weighted average number of shares of common stock outstanding plus the dilutive effect of outstanding stock options. The weighted average number of common shares, increased for the dilutive effect of stock options, used in the computation of diluted earnings per share were as follows (in thousands): 1999 - 1,194, 1998 - 1,249 and 1997 - 1,308.

### Stock Options

The Company's stock option plan provides for the granting to eligible key employees of options to purchase up to a total of 360,000 shares of Class B common shares. Options granted under the plan in 1999 are exercisable by the grantee within a period of ten years from the date such options are granted. Options granted under the plan prior to 1999 are exercisable by the grantee within a period of five years from the date such options were granted. No options may be exercised during the first year following grant and are exercisable thereafter at a cumulative rate of 20% per year through the fourth year following the date of grant with the remaining unexercised options exercisable during the fifth year following grant. The option price is an amount per share of not less than "appraised price" (See Other Equity Matters) per share on the date of grant for options granted in 1999 and not less than "book price" per share on the date of grant for those options granted prior to 1999.

The following is a summary of the activity with respect to the Company's stock option plan for the years ended December 31, 1997, 1998 and 1999:

|  | Number of Shares | Weighted- Average Exercise Price |
|---|---|---|
| Outstanding, January 1, 1997 | 141,319 | $96.87 |
| Granted | 43,000 | 134.18 |
| Canceled | (12,000) | 114.79 |
| Exercised | (28,079) | 76.07 |
| Outstanding, December 31, 1997 (49,780 shares exercisable) | 144,240 | 110.73 |
| Granted | 38,600 | 141.19 |
| Canceled | (7,960) | 122.90 |
| Exercised | (24,620) | 85.05 |
| Outstanding, December 31, 1998 (54,530 shares exercisable) | 150,260 | 122.05 |
| Granted | 44,650 | 243.00 |
| Canceled | (1,280) | 133.73 |
| Exercised | (23,430) | 91.49 |
| Outstanding, December 31, 1999 (62,620 shares exercisable) | 170,200 | 157.90 |

20

# Notes to Consolidated Financial Statements *(continued)*

**NOTE 8 — EQUITY MATTERS: (continued)**

The following table summarizes information about stock options outstanding at December 31, 1999:

| Range of Exercise Prices | Number Outstanding at 12/31/99 | Weighted-Average Remaining Contractual Life (Years) | Weighted-Average Exercise Price | Number Exercisable at 12/31/99 | Weighted-Average Exercise Price |
|---|---|---|---|---|---|
| | Options Outstanding | | | Options Exercisable | |
| $ 104.22 to $121.44 | 52,560 | 0.749 | $113.61 | 41,020 | $111.41 |
| 121.45 to 137.62 | 36,020 | 2.090 | 134.18 | 14,270 | 134.18 |
| 137.63 to 141.19 | 36,970 | 3.330 | 141.19 | 7,330 | 141.19 |
| 141.20 to 243.00 | 44,650 | 9.830 | 243.00 | — | — |

Pro forma net income and earnings per Class B share, reported as if compensation expense had been recognized under the fair value provisions of *Statement of Financial Accounting Standards No. 123,* "Accounting for Stock-Based Compensation," for the Company's stock option plans, were as follows for the years ended December 31:

| | 1999 | 1998 | 1997 |
|---|---|---|---|
| | (In thousands, except per share amounts) | | |
| Pro forma net income | $ 22,207 | $ 17,811 | $ 7,792 |
| Pro forma earnings per Class B share: | | | |
| Basic | $ 18.83 | $ 14.48 | $ 6.05 |
| Diluted | $ 18.60 | $ 14.26 | $ 5.96 |

The significant assumptions used in the calculation of the minimum value of the Company's stock options were as follows:

| | | | |
|---|---|---|---|
| Risk-free interest rate | 5.64-6.54% | Expected forfeiture rate | 15-20% |
| Expected life | 4 years | Expected dividend rate | 1.2% |

**Treasury Stock**

In December 1999, the Company redeemed 10,775 shares of Class A common stock (215,500 equivalent Class B shares) and an aggregate of 75,778 shares of Class B common stock from certain members of the Martin family for a cash purchase price totaling $79.6 million.

Treasury shares consisted of 21,308 Class A shares (426,160 equivalent Class B shares) and 532,153 Class B shares as of December 31, 1999.

Treasury shares consisted of 10,353 Class A shares (207,060 equivalent Class B shares) and 419,369 Class B shares as of December 31, 1998.

# Notes to Consolidated Financial Statements *(concluded)*

## NOTE 8 — EQUITY MATTERS (concluded):

### Other Equity Matters

On December 1, 1999, the Company's shareholders adopted an amendment to the Company's Articles of Incorporation related to the method of determining the price at which the Company is obligated to purchase shares of its Class B common stock. The amendment replaced the previous "book price" with an "appraised price" for purchase of the Company's Class B common stock. Appraised price is equal to the fair market value of a share of Class B common stock as determined by independent appraisal every six months commencing March 2000 (effective every March 1 and September 1 thereafter). For the period December 3, 1999 through February 2000, based on an independent appraisal, the appraised price per share of NIBCO Class B common stock is $243.00. Prior to December 1999, purchases of the Company's Class B common stock were made at "book price" which was equal to the book value per share of Class B common stock as of the end of the second preceding quarterly accounting period.

The amendment also modified certain provisions with respect to the Company's obligation to purchase Class B common stock from its shareholders under a ten percent (10%) annual limitation on the number of Class B common shares the Company is obligated to purchase during the period beginning March 1 and ending February 28 or 29 of the year thereafter ("Tender Year"). The amendment provides an orderly method for the purchase of Class B common stock by the Company which includes two "determination periods" each Tender Year in which shareholders can tender their shares to the Company and the Company will purchase all or a portion of those shares subject to the ten percent (10%) annual limitation.

## NOTE 9 — COMMITMENTS AND CONTINGENCIES:

Leases for certain real property and office and delivery equipment are accounted for as operating leases and have future minimum annual rental commitments aggregating $21.5 million as of December 31, 1999 which are payable as follows (in millions): 2000-$6.8, 2001-$5.2, 2002-$3.5, 2003-$3.3, 2004-$2.4 and thereafter $.3

Rental expense was $8.5 million in 1999, $8.1 million in 1998 and $8.0 million in 1997.

The Company's current operating environment subjects its manufacturing operations to various environmental laws and regulations for which noncompliance may require the Company to pay various fines and penalties or incur the costs of remedial actions. Based on currently available information, management believes they have made adequate provisions in the consolidated financial statements for costs of compliance with environmental laws and regulations.

In the event agreements with certain distributors are terminated, or the distributors default on certain bank loans, the Company has agreed to repurchase inventories of NIBCO products at distributor cost.

At December 31, 1999, the Company had various capital expenditure commitments of approximately $4.4 million.

# Report of Independent Accountants

To the Board of Directors and Shareholders of NIBCO INC.:

In our opinion, the accompanying consolidated balance sheets and the related consolidated statements of income, of shareholders' equity and of cash flows present fairly, in all material respects, the financial position of NIBCO INC. and its subsidiaries at December 31, 1999 and 1998, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 1999, in conformity with accounting principles generally accepted in the United States. These financial statements are the responsibility of the Company's management; our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States, which require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for the opinion expressed above.

*PricewaterhouseCoopers LLP*

South Bend, Indiana
February 11, 2000

# Stock Price and Dividends

There is no active market in NIBCO common stock and the Company has no information with respect to the prices at which its stock may have been sold during the last two years other than in connection with purchases made at either "book price" or "appraised price" by the NIBCO INC. Profit Sharing and 401(k) Plan and by the Company pursuant to the put/call provision of Class B common stock. "Book price" is equal to the book value of a share of Class B common stock as of the end of the second preceding quarterly accounting period. "Appraised price" is equal to the fair market value of a share of Class B common stock as determined by independent appraisal. Effective December 1, 1999, "appraised price" replaces historical "book price" as a means of valuing NIBCO Class B common stock.

Stock prices and dividends declared per Class B common share for each quarter during 1999 and 1998 were as follows:

| Quarter ended — | Price per Share | | Dividends per share | |
| --- | --- | --- | --- | --- |
| | 1999 | 1998 | 1999 | 1998 |
| March | $147.63 | $143.61 | $ .42 | $ .42 |
| June | 153.58 | 141.19 | .42 | .42 |
| September | 154.87 | 140.24 | .42 | .42 |
| December | 243.00* | 144.91 | .42 | .42 |

*Represents appraised price in effect until February 29, 2000. Appraised price for the period March 1, 2000 through August 31, 2000 will be $263.48 per share.

As of December 31, 1999, there was one Class A shareholder and there were 235 Class B shareholders.

# EXHIBIT Z
Declaration of Carole Vigne

**Plaintiffs' Objections to Defendant's Exhibit "A"**
**(Depositions of Witness Testifying at Trial)**

| Court Reporter | Invoice # | Date | Deponent | Disallowed Expenses | Amount |
|---|---|---|---|---|---|
| Central Valley Court Reporters | 2275 | 5/14/2001 | Martha Rivera | Hndlg. Orig(s) Per Code | 6.00 |
| | | | | UPS | 3.50 |
| Cindy Lucas Reporting | | 11/13/2001 | Randy Cates | All Expenses for Deposition | 304.25 |
| Audrey Hill & Associates | 80253 | 1/24/2002 | Maria Medina | Exhibit Binder(s) | 20.00 |
| Audrey Hill & Associates | 80428 | 2/13/2002 | Vath Rattanatay | Disk(s) | 10.00 |
| | | | | Reporter's Video Fee | 156.25 |
| Audrey Hill & Associates | 80395 | 2/05/2002 | Martha Rivera | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80517 | 2/25/2002 | Sara Rivera | Audio Tape Reproduction | 87.50 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80512 | 2/22/2002 | Maria Ruiz | Audio Tape Reproduction | 52.50 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80510 | 2/22/2002 | Maria Navarro | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80501 | 2/21/2002 | Isidra Murillo | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80491 | 2/21/2002 | Vath Rattanatay | Reporter's Video Fee | 100.00 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80472 | 2/21/2002 | Ofelia Rivera | Reporter's Video Fee | 181.25 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80400 | 2/19/2002 | Margarita Mendoza | Disk(s) | 10.00 |
| | | | | Audio Tape Reproduction | 70.00 |
| Bamford Reporting Service, Inc. | 3298 | 3/20/2002 | Liduvina Robledo | Fed Express, COD | 35.00 |
| Audrey Hill & Associates | 80618 | 3/06/2002 | Sy Vang | Disk(s) | 10.00 |
| | | | | Reporter's Video Fee | 256.25 |
| White & Associates | LW02-024 | 4/1/2002 | Vina Robledo | Binding and Delivery | 30.00 |
| | | | | Condensed Transcript | 20.00 |
| Audrey Hill & Associates | 80671 | 3/11/2002 | Maria Medina | Audio Tape Reproduction | 17.50 |
| | | | | Disk(s) | 10.00 |
| | | | Ofelia Rivera | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80575 | 3/19/2002 | Mao Her | Disk(s) | 10.00 |

1

**Plaintiffs' Objections to Defendant's Exhibit "A"**
**(Depositions of Witness Testifying at Trial)**

| | | | | | |
|---|---|---|---|---|---|
| Audrey Hill & Associates | 80705 | 3/19/2002 | Alicia Alverez | Audio Tape Reproduction | 70.00 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80577 | 3/13/2002 | Maria Rodriguez | Audio Tape Reproduction | 70.00 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80830 | 3/27/2002 | Maria Valdivia | Audio Tape Reproduction | 70.00 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80716 | 4/03/2002 | See Yang | Audio Tape Reproduction | 70.00 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80832 | 4/05/2002 | Chhom Chan | Audio Tape Reproduction | 70.00 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80835 | 4/03/2002 | Bao Nhia Moua | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80707 | 3/29/2002 | Eva Arriola | Audio Tape Reproduction | 70.00 |
| | | | | Disk(s) | 10.00 |
| Audrey Hill & Associates | 80994 | 4/22/2002 | Youa Xiong | Disk(s) | 10.00 |
| Audrey Hill & Associates | 81107 | 5/06/2002 | Peuang Bounnhong | Disk(s) | 10.00 |
| | | | | Reporter's Video Fee | 193.75 |
| Audrey Hill & Associates | 81083 | 5/06/2002 | Paula Martinez | Disk(s) | 10.00 |
| Audrey Hill & Associates | 81401 | 5/31/2002 | Mai Mee Moua | Disk(s) | 10.00 |
| Audrey Hill & Associates | 81396 | 6/04/2002 | Bee Lee | Disk(s) | 10.00 |
| Audrey Hill & Associates | 81617 | 7/03/2002 | Mao Her | Disk(s) | 10.00 |
| | | | Isidra Murillo | Disk(s) | 10.00 |
| Wilson Reporting | 2110-221 | 4/12/2004 | William Lepowsky | Condensed/Index/Ascii | 15.00 |
| Audrey Hill & Associates | 81153 | 5/07/2002 | Regina Bezold | Disk(s) | 10.00 |
| Midwest Reporting, Inc. | 20698-1 | 6/03/2002 | Dennis Parker | Federal Express COD | 14.50 |
| Midwest Reporting, Inc. | 20903-1 | 7/31/2002 | Dennis Parker | Federal Express COD | 19.75 |
| Wilson Reporting | 2123-221 | 5/28/2004 | Jay Finkelman | Condensed/Index/Ascii | 15.00 |
| Cindy Lucas Reporting | 43111 | 11/17/2003 | Ruben Burnias | Laser Reproduction | 12.00 |
| Esquire Deposition Services | 87605EMI | 3/26/2004 | Malcomb Cohen | Word Index Pages | 7.50 |
| | | | | Diskette(s) | 7.50 |
| | | | | Administrative Fees | 25.00 |

2

**Plaintiffs' Objections to Defendant's Exhibit "A"**
**(Depositions of Witness Testifying at Trial)**

| | | | | | |
|---|---|---|---|---|---|
| Audrey Hill & Associates | 85555 | 11/17/2003 | David Smith | Disk(s) | 10.00 |
| Audrey Hill & Associates | 81138 | 5/06/2002 | Rachel Rodriguez | Disk(s) | 10.00 |
| Audrey Hill & Associates | 81394 | 5/28/2002 | Xhue Yang | Disk(s) | 10.00 |
| | | | | Audio Tape Reproduction | 87.50 |
| Tri County Court Reporting | 8261 | 6/26/2002 | Roger Moitoso | Conference Call | 11.50 |
| | | | | Per Diem | 65.00 |
| Esquire Deposition Services | 81628EMI | 10/02/2003 | Malcomb Cohen | World Index Pages | 7.50 |
| | | | | Administrative Fee | 25.00 |
| Esquire Deposition Services | 93507EMI | 11/29/2004 | Malcomb Cohen | Word Index Pages | 7.50 |
| | | | | Diskette(s) | 12.50 |
| | | | | Min-U-Script | 12.50 |
| | | | | Administrative Fees | 25.00 |
| | | | | Shipping | 39.00 |
| Midwest Reporting, Inc | 20915-1 | 7/23/2002 | Martha Rivera | Federal Express COD | 42.50 |
| Mayer Media & Teleproductions | 15-05-01 | 5/15/2001 | Martha Rivera | Hours Videotape Deposition | 242.06 |
| Mayer Media & Teleproductions | 29-05-01 | 5/29/2001 | Martha Rivera | Videotape Deposition | 43.05 |
| Video/Audio Recording Services, Inc. | 10605 | 6/27/2001 | | | 234.00 |
| Legal Video Solutions | 2335 | 1/18/2002 | Connie Hitt | Videotape Copying | 210.00 |
| Legal Video Solutions | 2338 | 1/18/2002 | Doug Kieper | Videotape Copying | 260.00 |
| Mayer Media & Teleproductions | 02-02-11-SFJ | 2/11/2002 | Ofelia Rivera | Videotape Deposition | 647.25 |
| Mayer Media & Teleproductions | 02-02-02-SFJ | 2/06/2002 | Maria Navarro | Videotape Deposition | 728.16 |
| Mayer Media & Teleproductions | 02-02-02-SFJ | 2/02/2002 | Vath Rattanatay | Videotape Deposition | 869.74 |
| Mayer Media & Teleproductions | 02-02-19-SFJ | 2/19/2002 | Ofelia Rivera Day 2 | Videotape Deposition | 323.63 |

**Plaintiffs' Objections to Defendant's Exhibit "A"**
**(Depositions of Witness Testifying at Trial)**

| | | | | | |
|---|---|---|---|---|---|
| Mayer Media & Teleproductions | 02-02-25-SFJ | 2/28/2002 | Sy Vang | Videotape Deposition | 788.84 |
| Mayer Media & Teleproductions | 02-02-18-SFJ | 2/18/2002 | Isidra Murillo | Videotape Deposition | 566.34 |
| Mayer Media & Teleproductions | 02-02-28-SFJ | 2/28/2002 | Mao Her | Videotape Deposition | 586.57 |
| Mayer Media & Teleproductions | 02-03-12-SFJ | 3/12/2002 | Bao Moua | Videotape Deposition | 667.48 |
| Mayer Media & Teleproductions | 02-04-12-SFJ | 4/12/2002 | Ofelia Rivera | Videotape Deposition | 129.45 |
| Mayer Media & Teleproductions | 02-04-22-SFJ | 4/22/2002 | Youa Xiong | Videotape Deposition | 707.93 |
| Mayer Media & Teleproductions | 02-04-13-SFJ | 4/13/2002 | Vath Rattanatay Ofelia Rivera Bao Moua | Copy of Videotape Deposition | 415.32 |
| Mayer Media & Teleproductions | 02-05-02-SFJ | 5/2/2002 | Peuang Bounnhong Paula Martinez | Videotape Deposition | 1402.38 |
| Mayer Media & Teleproductions | 02-06-26-SFJ | 6/26/2002 | Mao her Isidra Murillo | Videotape Deposition | 748.38 |
| Mayer Media & Teleproductions | 02-05-20-SFJ | 5/20/2002 | Bee Lee | Videotape Deposition | 728.16 |
| **TOTAL:** | | | | | **$13014.24** |

4

# EXHIBIT AA
Declaration of Carole Vigne

**Plaintiffs' Objections to Defendant's Exhibit "B"**
**(Depositions of Witness Testimony Used in Connection with Motions For Summary Judgment\*)**

| Court Reporter | Deponent | Date | Amount |
|---|---|---|---|
| Cindy Lucas Reporting | Mike Farrell | 10/10/01 | 199.75 |
| Cindy Lucas Reporting | James Polian | 10/9/01 | 324.75 |
| Cindy Lucas Reporting | Craig Vilhauer | 11/02/01 | 331.00 |
| Cindy Lucas Reporting | Margaret Franchi | 10/23/01 | 116.75 |
| Cindy Lucas Reporting | Henry Medina | 10/22/01 | 231.00 |
| Cindy Lucas Reporting | Paul Penerian | 12/14/01 | 272.25 |
| Cindy Lucas Reporting | Eliseo Avitia | 12/13/01 | 253.50 |
| Cindy Lucas Reporting | Gary Ledbetter | 3/26/02 | 292.50 |
| Audrey Hill & Associates | Regina Bezold | 4/30/02 | 451.00 |
| Midwest Reporting | Dennis Parker | 5/21/02 | 350.65 |
| Midwest Reporting | Dennis Parker, Vol. 2 (depo not used) | 7/9/02 | 443.60 |
| Audrey Hill & Associates | David Smith | 11/25/03 | 147.50 |
| Cindy Lucas Reporting | Daniel Schueler | 7/12/02 | 231.50 |
| Wilson Reporting | Jay Finkelman | 5/14/04 | 485.05 |
| Cindy Lucas Reporting | Ruben Burnias | 10/14/03 | 429.75 |
| Cindy Lucas Reporting | Darcey Voyles | 4/8/02 | 283.75 |
| **TOTAL:** | | | **$4,844.30** |

\*Defendant's MSJ/Motion of Adjudication and Defendant's Supplemental Opposition to Plaintiffs' MSJ

1

# EXHIBIT BB
Declaration of Carole Vigne

**Plaintiffs' Objections to Defendant's Exhibit "C"**
**(Other Depositions in the Course of this Case)**

| Court Reporter | Deponent | Date | Amount |
|---|---|---|---|
| Cindy Lucas reporting | Michael Ranieri | 11/7/01 | 182.00 |
| Audrey Hill & Associates | Rachel Rodriguez | 4/30/02 | 636.50 |
| Audrey Hill & Associates | Xhue Yang (former plaintiff) | 5/13/02 | 596.75 |
| Maes & Associates | Phil Wyatt and Todd Loomis | 5/23/02 | 411.80 |
| Tri County Court reporting | Roger Moitoso | 5/24/02 | 423.85 |
| Molly Roberts Court Reporter | Craig Roth | 6/25/02 | 383.15 |
| Cindy Lucas Reporting | Rick Sarkissian (Defendant Expert) | 12/7/05 | 292.75 |
| Esquire Deposition | Joseph Penbera (Plaintiff expert) | 12/8/05 | 955.05 |
| Esquire Deposition | Francisco Gomez (Plaintiff expert) | 12/7/05 | 1348.30 |
| Esquire Deposition Services | Malcolm Cohen (Defendant expert) | 9/23/03 | 436.90 |
| Esquire Deposition Services | Malcolm Cohen (Defendant expert) | 9/24/04 | 345.45 |
| Esquire Deposition Services | Malcolm Cohen (Defendant expert) | 3/17/04 | 586.15 |
| Midwest Reporting | Joseph Gross & James Drexinger | 7/11/02 | 1031.00 |
| **TOTAL:** | | | **$7,629.65** |

# EXHIBIT CC
## Declaration of Carole Vigne

**Plaintiffs' Objections to Defendant's Exhibit "D"**
**(Videotape Recording of Depositions)**

| Vendor | Description | Amount |
|--------|-------------|--------|
| Mayer Media | Deposition, Martha Rivera | 242.16 |
| Mayer Media | Deposition, Martha Rivera | 43.05 |
| Video/Audio Recording Services | Deposition, Martha Rivera | 234.00 |
| Legal Video Solutions | Deposition, Connie Hitt | 210.00 |
| Legal Video Solutions | Deposition, Doug Kieper | 260.00 |
| Mayer Media | Deposition, Ofelia Rivera | 647.25 |
| Mayer Media | Deposition, Maria Navarro | 728.16 |
| Mayer Media | Deposition, Vath Rattanatay | 869.74 |
| Mayer Media | Deposition, Ofelia Rivera, Vol. 2 | 323.63 |
| Mayer Media | Deposition, Sy Vang | 788.84 |
| Mayer Media | Deposition, Isidra Murilla | 566.34 |
| Mayer Media | Deposition, Mao Her | 586.57 |
| Mayer Media | Deposition, Bao Nhia Moua | 667.48 |
| Mayer Media | Deposition, Ofelia Rivera | 129.45 |
| Mayer Media | Deposition, Youa Xiong | 707.93 |
| Mayer Media | Deposition, Rattanatay, B. Moua | 415.32 |
| Mayer Media | Deposition, Paula Martinez & Peuang Bounnhong | 1402.38 |
| Mayer Media | Deposition, Mao Her, Isidra Murillo | 748.38 |
| Mayer Media | Deposition, Bee Lee | 728.16 |
| **TOTAL:** | | **$10, 298.84** |

# EXHIBIT DD
## Declaration of Carole Vigne

**Plaintiffs' Objections to Defendant's Exhibit "E"**
**(Witness Fees: Testimony at Trial)**

| Witness Name | Witness Fee Paid | Disallowed Amount Based On Estimated Mileage |
|---|---|---|
| Steve Brunnengraeber | 69.00 | 29.00 |
| Vorleak Long | 69.00 | 29.00 |
| Ken Moreno | 69.00 | 29.00 |
| Greg Ceballos | 69.00 | 29.00 |
| Alicia Alvarez | 69.00 | 29.00 |
| Eve Arriola | 69.00 | 29.00 |
| Peuang Bounnhong | 69.00 | 29.00 |
| Chhom Chan | 69.00 | 29.00 |
| Mao Her | 69.00 | 29.00 |
| Bee Lee | 69.00 | 29.00 |
| Paula Martinez | 69.00 | 29.00 |
| Maria Medina | 69.00 | 29.00 |
| Margarita Mendoza | 69.00 | 29.00 |
| Bao Nhia Moua | 69.00 | 29.00 |
| Mai Mee Moua | 69.00 | 29.00 |
| Isidra Murillo | 69.00 | 29.00 |
| Maria Navarro | 69.00 | 29.00 |
| Vath Rattanatay | 69.00 | 29.00 |
| Martha Rivera | 69.00 | 29.00 |
| Ofelia Rivera | 69.00 | 29.00 |
| Sara Rivera | 69.00 | 29.00 |
| Maria Rodriguez | 69.00 | 29.00 |
| Maria Ruiz | 69.00 | 29.00 |
| Maria Valdivia | 69.00 | 29.00 |
| Sy Vang | 69.00 | 29.00 |
| Youa Xiong | 69.00 | 29.00 |
| See Yang | 69.00 | 29.00 |
| **TOTAL:** | **$1,863.00** | **$783.00** |

# EXHIBIT EE
Declaration of Carole Vigne

**Plaintiffs' Objections to Defendant's Exhibit "F"**
**(Witness Fees: Served but Not Called at Trial)**

| Witness Name | Objection to Entirety of Witness Fee Paid | Objection to Mileage Included in Witness Fee |
|---|---|---|
| Henry Medina | 91.04 | 51.04 |
| Doug Deffenbach | 69.00 | 29.00 |
| Mai Moua | 69.00 | 29.00 |
| Hortencia Rodriguez | 69.00 | 29.00 |
| Fermin Gasca | 69.00 | 29.00 |
| Albert Diaz | 69.00 | 29.00 |
| Dustin Cabral | 69.00 | 29.00 |
| Miguel Alvarez | 69.00 | 29.00 |
| Griselda Lopez | 69.00 | 29.00 |
| Paul Bergen | 69.00 | 29.00 |
| Jose Ruiz | 69.00 | 29.00 |
| Ryland Williams | 69.00 | 29.00 |
| Doug Bunting | 69.00 | 29.00 |
| Craig Vilhauer | 69.00 | 29.00 |
| Rosa Ceja | 69.00 | 29.00 |
| Rachel Rodriguez | 69.00 | 29.00 |
| Connie Williams | 150.08 | 110.08 |
| Mark Rein | 69.00 | 29.00 |
| Darcey Voyles | 69.00 | 29.00 |
| Long Thao | 69.00 | 29.00 |
| Chao Her | 69.00 | 29.00 |
| Jim Polian | 69.00 | 29.00 |
| Visal Long | 69.00 | 29.00 |
| Margaret Franchi | 69.00 | 29.00 |
| Michael Farrell | 69.00 | 29.00 |
| Robert Alvarez | 69.00 | 29.00 |
| Marcus Avalos | 69.00 | 29.00 |
| Kirsten Burrows | 69.00 | 29.00 |
| Aaron DeOcio | 69.00 | 29.00 |
| Eusebio Gamez | 69.00 | 29.00 |
| Mike Ranieri | 69.00 | 29.00 |
| Gustavo Rivera | 69.00 | 29.00 |
| Josue Alvarez | 69.00 | 29.00 |
| Regina Staiger Bezold | 69.00 | 29.00 |
| Southone Bounphonh | 69.00 | 29.00 |
| Chi Minh Dao | 69.00 | 29.00 |
| Rita Garcia | 69.00 | 29.00 |
| Stan Hawkins | 69.00 | 29.00 |
| Jose Villa | 69.00 | 29.00 |
| Kathy Westerman | 69.00 | 29.00 |

**Plaintiffs' Objections to Defendant's Exhibit "F"**
**(Witness Fees: Served but Not Called at Trial)**

| | | |
|---|---|---|
| Custodian of Records, Zee Medical | 69.00 | 29.00 |
| Anthony Malt | 69.00 | 29.00 |
| Violet Valdez | 69.00 | 29.00 |
| Anita Escamilla | 69.00 | 29.00 |
| Dean James | 69.00 | 29.00 |
| **TOTAL:** | **$3,208.12** | **$1,408.12** |

# EXHIBIT FF
## Declaration of Carole Vigne

**Plaintiffs' Objections to Defendant's Exhibit "G"**
**(Rough Transcript Fees)**

| Vendor | Description | Amount |
|--------|-------------|--------|
| Karen L. Lopez | Transcript – opening statements held on 10/9/08 | 34.20 |
| Karen L. Lopez | Transcripts – trial days 1-7 | 3199.45 |
| Karen L. Lopez | Transcripts – trial days 8-26 | 9073.75 |
| **TOTAL:** | | **$12,307.40** |

# EXHIBIT GG
Declaration of Carole Vigne

**Plaintiff's Objections to Defendant's Exhibit "H"**
**(Exemplification and Copies of Papers Necessarily Obtained For Use in this Case:**
**Trial Exhibits)**

**Plaintiffs' Objections to Defendant's Exhibit "H"**
**Total Copying Costs**

| Description | Invoice Date | Amount |
|---|---|---|
| Law Offices of William C. Hahesy | 10/15/2008-11/15/2008 | 6,066.55 |
| Valley Document Solutions | 08/05/2008 | 2,419.59 |
| Valley Document Solutions | 9/25/2008 | 15,713.39 |
| Valley Document Solutions | 10/27/2008 | 137.68 |
| Valley Document Solutions | 11/18/2008 | 794.61 |
| TOTAL: | | **$25,131.82** |

**Plaintiffs' Objections to Defendant's Exhibit "H"**
**Color Copying Costs**

| Description | Invoice Date | Quantity | Rate | Amount |
|---|---|---|---|---|
| Color Laser Copies | 9/25/2008 | 188 | .90 | 169.20 |
| TOTAL: | | | | **$169.20** |

**Plaintiffs' Objections to Defendant's Exhibit "H"**
**Office Supplies Costs**

| Description | Invoice Date | Quantity | Rate | Amount |
|---|---|---|---|---|
| Tabs inserted by Valley Document Solutions | 9/25/2008 | 112 | .25 | 28.00 |
| Blank Tabs Supplied by WH Office – Condensed Tab List Created by Valley Document Solutions using WH Office Index and inserted into binders | 9/25/2008 | 7,332 | .40 | 2,932.80 |
| Binders – 4 inch – Provided by Valley Document | 9/25/2008 | 44 | 9.00 | 396.00 |
| Trial Board | 11/18/2008 | 14 | 45.00 | 630.00 |
| TOTAL: | | | | **$3986.80** |

1

# EXHIBIT HH
## Declaration of Carole Vigne

**Plaintiffs' Objections to Defendant's Exhibit "T"**
**(Witness Travel)**

| Witness: John Hall | Amount of Expenses | Amount of Expenses Disallowed |
|---|---|---|
| Meals | 33.28 | 2.50 |
| Hotel | 414.56 | 224.56 |
| Rental Car | 132.80 | 0 |
| Parking, Gas | 24.34 | 0 |
| Misc. | 11.44 | 11.44 |
| Airfare | 2141.50 | 2141.50 |
| Mileage | 93.60 | 93.60 |
| Luggage | 30.00 | 0 |
| Stamp | 0.42 | 0 |
| **TOTAL:** | **$2,881.94** | **$2,473.60** |