Christopher Ho, SBC No. 129845
Christina N. Chung, SBC No. 194630
Carole Vigne, SBC No. 251829
The LEGAL AID SOCIETY --
    EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, California 94107
Telephone:  (415) 864-8848
Facsimile:  (415) 864-8199

William J. Smith, SBC No. 056116
Shelley G. Bryant, SBC No. 222925
W.J. SMITH & ASSOCIATES
2350 West Shaw Avenue, Suite 132
Fresno, California 93711
Telephone:  (559) 432-0986
Facsimile:  (559) 432-4871

Marielena Hincapié, SBC No. 188199
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 1850
Los Angeles, California 90010
Telephone:  (213) 639-3900
Facsimile:  (213) 639-3911

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NIBCO, INC., an Indiana corporation,<br><br>                    Defendant. | No. CIV F-99-6443 OWW SMS<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S BILL OF COSTS**<br><br>[Hon. Oliver W. Wanger]<br><br>Trial Date:  October 7, 2008 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

I.  AN AWARD OF COSTS IN THIS CASE WOULD BE INEQUITABLE AND COUNTER TO NINTH CIRCUIT PRECEDENT................................................ 1

    A.    The Issues Presented In This Case Are Of "Substantial Public Importance." ....................................................................................... 1

        1.  Language Discrimination Is A Civil Rights Concern of Well-Established Importance. ............................................................ 1

        2. The Issues Involved In Resisting Nibco's Immigration-Related Discovery Attempts Raised Significant Questions Of First Impression for Resolution By The Ninth Circuit. ............................................ 4

    B.    The Plaintiffs Have Limited Financial Resources, and the Economic Disparity Between The Parties is Severe. ............................................ 5

    C.    The Issues In This Case Were "Close And Difficult." .................................. 6

    D.    An Award Of Costs In This Case Would Have A Serious "Chilling Effect" On Future Civil Rights Litigants. ........................ 7

II.  THE MAJORITY OF THE COSTS CLAIMED BY DEFENDANT ARE NOT COMPENSABLE UNDER RULE 54(d). ........................................................ 8

    A.    At Most, Defendant Should Only Be Awarded The Deposition Costs Of Witnesses Who Actually Testified At Trial. ...................................... 8

        1. Deposition costs of witnesses who testified at trial. ...................... 9

        2.  Depositions "used in connection with motions for summary judgment." ................................................................................ 9

        3. Other depositions "taken in the course of this case." ................ 11

    B.    Videotaped Deposition Costs Should Not Be Allowed. ................................ 12

    C.    Witness Fees Should Only Be Awarded For Witnesses Who Actually Testified AtTrial. ................................................................................ 12

        1. Witnesses who testified at trial. ................................................ 14

**2. Witnesses who did not testify at trial.** ...........................................14

**D.** **Daily Trial Transcripts Should Not Be Recoverable As Costs.** ......................14

**E.** **Fees For Exemplification And Copying Of Papers Should Be Reduced.** ......16

**F.** **Travel And Lodging Expenses For John Hall.** ...................................................17

**1. Unreasonable Travel Expenses** ..................................................................18

**2. Unreasonable Subsistence Expenses** ..........................................................19

**CONCLUSION** ...............................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Admiral Theatre Corp. v. Douglas Theatre Corp.*, 585 F.2d 877 (8th Cir. 1978)........................15

*Alaniz v. Robert M. Peppercorn, M.D., Inc.*, No. 2:05-cv-02576-MCE-DAD, 2008 U.S. Dist. LEXIS 71107 (E.D. Cal. Aug. 8, 2008)..............................................................7, 15

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) ................................................................1

*American Key Corp. v. Cumberland Associates*, 102 F.R.D. 496 (N.D. Ga. 1984) ....................16

*Association of Mexican-American Educators v. State of California*, 231 F.3d 572 (9th Cir. 2000) ......................................................................................................................1, 5, 6, 7

*Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362 (5th Cir. 1983) ...........................15

*Cherry v. Champion International Corp.*, 186 F.3d 442 (4th Cir. 1999) .....................................12

*Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993) ......................................................13

*Committee Concerning Community Improvement v. City of Modesto*, No. CV-F-04-6121 LJO DLB, 2007 U.S. Dist. LEXIS 94328 (E.D. Cal. Dec. 11, 2007).........................................7

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) .....................................11, 13, 17

*Davis v. Puritan-Bennett Corp.,* 923 F. Supp.179 (D.Kan. 1996)................................................12

*English v. Colorado Department of Corrections*, 248 F.3d 1002 (10th Cir. 2001)...................7, 15

*Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86 ....................................................................2

*Evanow v. M/V Neptune*, 163 F.3d 1108 (9th Cir. 1998)................................................8, 9, 11, 13

*Ferreira v. M/V CCNI Antofagasta*, No. 2:04-cv-1916-MCE-DAD, 2007 U.S. Dist. LEXIS 76767 (E.D. Cal. Oct. 15, 2007) ........................................................................8, 15, 16

*Fragante v. City and County of Honolulu*, 888 F.2d 591 (9th Cir. 1989) ......................................2

*George R. Hall, Inc. v. Superior Trucking Co.*, 532 F. Supp. 985 (N.D.Ga. 1982) .......................9

*Hernandez v. New York*, 500 U.S. 352 (1991)...............................................................................2

*Hernandez v. Texas*, 347 U.S. 475 (1954) .....................................................................................2

*Hill v. BASF Wyandotte Corp.*, 547 F. Supp. 348 (E.D.Mich. 1982) ........................................8, 15

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) .................................................4

*Holmes v. Cessna Aircraft Co.*, 11 F.3d 63 (5th Cir. 1994) ............................................13, 14, 16

*Independent Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656 (9th Cir. 1963) .....................9, 11

*Javetz v. Board of Control, Grand Valley State University*, 164 F.R.D. 447 (W.D.Mi. 1996) .8, 10

*John G. v. Board of Ed. of Mount Vernon Public Schools*, 891 F. Supp.122 (S.D.N.Y. 1995) ....14

*Jones v. Unisys Corp.*, 54 F.3d 624 (10th Cir. 1995) ...................................................................13

*Kaimowitz v. Howard*, 547 F. Supp. 1345 (E.D.Mich. 1982) .......................................................10

*Lau v. Nichols*, 414 U.S. 563 (1974) .............................................................................................2

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178 (Fed. Cir. 1996) ........................14, 15

*McIlveen v. Stone Container Corp.*, 910 F.2d 1581 (7th Cir. 1990) ...............................14, 16, 17

*Mota v. University of Texas Houston Health Science Ctr.*, 261 F.3d 512 (5th Cir. 2001) ...........11

*In re Nissan Antitrust Litigation*, 577 F.2d 910 (5th Cir. 1978), *cert. denied*, 439 U.S. 1072 (1979) ....................................................................................................................................15

*Norton v. International Harvester Co.*, 89 F.R.D. 395 (E.D. Wis. 1981) ....................................14

*Pate v. General Motors Corp.*, 89 F.R.D. 342 (N.D.Miss. 1981) .................................................13

*Rivera v. NIBCO, Inc*, 364 F.3d 1057 (9th Cir.), *aff'd*, 384 F.3d 822 (2004), *cert. denied sub nom. NIBCO, Inc. v. Rivera*, 544 U.S. 1603 (2005) ..................................................................4

*Ryther v. KARE 11*, 864 F. Supp. 1525 (D.Minn. 1994) ...............................................................9

*Sandoval v. Hagan*, 7 F. Supp. 2d 1234 (M.D. Ala. 1998), *aff'd*, 197 F.3d 484 (11th Cir. 1999), *rev'd on other grounds sub nom. Alexander v. Sandoval*, 532 U.S. 275 (2001).......................2

*Servidone Constr. Corp. v United States*, 20 Cl Ct 725, 732 (Cl. Ct. 1990) ...............................17

*Stanley v. University of Southern California*, 178 F.3d 1069, 1079-80 (9th Cir. 1999).................5

*Sunrich Food Group, Inc. v. Pacific Food of Oregon, Inc.*, No. 05-35152, No. 05-36171, 207 Fed.Appx.745, 752 (9th Cir. Oct. 12, 2006) ............................................................................9

*Terry v. Allstate Insurance Co., No. Civ. S-05-2261 RRB DAD*, 2007 U.S. Dist. LEXIS 81051 (E.D. Cal. Oct. 31, 2007) ................................................................................................12

*Treaster v. Healthsouth Corp.*, 505 F. Supp. 2d 898 (D.C. Kan. 2007) ...............................17

*United California Bank v. THC Financial Corp.*, 557 F.2d 1351 (9th Cir. 1977) .................13

*Washington State Department of Transportation v. Washington Natural Gas Co., Pacificorp*, 59 F.3d 793 (9th Cir. 1995) ..............................................................................................9

*Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926 (7th Cir. 1997) ...............................8

*Yniguez v. Arizonans for Official English*, 69 F.3d 920 (9th Cir. 1995), *vacated on other grounds,* 520 U.S. 43 (1997) ............................................................................................2

## FEDERAL STATUTES

28 U.S.C. § 1821 ...................................................................................................................13

28 U.S.C. § 1821 (a)(1) .........................................................................................................13

28 U.S.C. § 1821 (c)(1) .............................................................................................13, 17, 18

28 U.S.C. § 1821 (c)(2) .........................................................................................................13

28 U.S.C. 1821(d) .................................................................................................................17

28 U.S.C. § 1821(2) ..............................................................................................................18

28 U.S.C. § 1920 ........................................................................................................11, 12, 16, 17

28 U.S.C. § 1920(2) .................................................................................................................8

28 U.S.C. § 1920(3) .........................................................................................................13, 17

28 U.S.C. § 1920(4) ..............................................................................................................16

## OTHER AUTHORITIES

Behm, Lisa L., *Protecting Linguistic Minorities Under Title VII: The Need for Judicial Deference to the EEOC Guidelines on Discrimination Because of National Origin,* 81 Marq. L. Rev. 569 (1998) .....................................................................................................2

Brooks, Carrasco, and Selmi, *Civil Rights Litigation: Cases and Perspectives* (3d ed., Carolina Academic Press, 2005) ...........................................................................................................4

**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S BILL OF COSTS**
**Case No. CIV F-99-6443 OWW SMS**

3

Cutler, Stephen M. A Trait-Based Approach to National Origin Claims Under Title VII, 94
    Yale L.J. 1164 (1985) ....................................................................................................3

Cornell,  Drucilla & William W. Bratton, *Deadweight Costs and Intrinsic Wrongs of Nativism:*
    *Economics, Freedom, and Legal Suppression of Spanish,* 84 Cornell L. Rev. 595 (1999).......2

Friedman, *The Law of Employment Discrimination:  Cases and Materials* (6th ed., Foundation
    Press, 2007/2008)..........................................................................................................4

Matsuda, Mari J., .*Voices in America: Accent, Antidiscrimination Law, and a Jurisprudence for*
    *the Last Reconstruction,* 100 Yale L.J. 1329 (1991) .................................................3

Perea, Juan F., *Buscando América: Why Integration And Equal Protection Fail To Protect*
    *Latinos,* 117 Harv. L. Rev. 1420 (2004) .................................................................2

Perea, Juan F.,  *Ethnicity and Prejudice: Reevaluating "National Origin" Discrimination Under*
    *Title VII,* 35 Wm. & Mary L. Rev. 805, 860 (1994) .................................................2

**INTRODUCTION**

Defendant Nibco, Inc. has submitted a bill of costs that not only endeavors to include an enormous amount of expenses that are plainly not compensable under Rule 54(d), but that, under well-established Ninth Circuit authority, simply should not be awarded in the interests of fairness and equity. Defendant's cost bill should, therefore, be denied in full for the reasons set forth below.

**I.      AN AWARD OF COSTS IN THIS CASE WOULD BE INEQUITABLE AND COUNTER TO NINTH CIRCUIT PRECEDENT.**

It is well established in this Circuit that district courts have the authority to deny an award of costs to prevailing defendants if such awards would be inequitable. Among other things, it is within the court's discretion to refuse to award costs where the case involves issues of substantial public importance; the losing party has limited financial resources; there is great economic disparity between the plaintiffs and the defendants; the issues in the case are close and difficult; and where there may be a "chilling effect" on future civil rights litigants of imposing high costs. *See, e.g., Association of Mexican-American Educators v. State of California*, 231 F.3d 572, 592 (9th Cir. 2000) ("*AMAE*").

Because each of those elements is present in this case, plaintiffs request that the Court deny Nibco's requested costs in their entirety.

**A.      The Issues Presented In This Case Are Of "Substantial Public Importance."**

**1.      Language Discrimination Is A Civil Rights Concern of Well-Established Importance.**

"In the Civil Rights Act of 1964, Congress indicated that it considered the policy against discrimination to be of the 'highest priority.'" *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974) (citations omitted). This case, which like all civil rights litigation was brought as a challenge to practices that unfairly burdened members of historically subordinated groups, sought to address an employment policy alleged to *exclusively* impact persons of Hispanic and Asian national origins without the mitigating benefit of any business necessity. As such, the importance of vindicating the civil rights of the plaintiffs in this matter cannot be gainsaid.

Moreover, this litigation sought to redress a particularly pernicious form of discrimination – language-based discrimination, which is typically more subtle than overt national origin discrimination

yet just as harmful in its effects, if not more so.  Although language discrimination in the workplace may in some cases have a veneer of legitimacy due to its asserted business rationales and because it does not *facially* single out protected individuals, its significance as a species of discrimination is beyond dispute.  Countless courts at every level of the federal judicial system have recognized both the close nexus between national origin and language,[1] and the concomitant need to closely scrutinize instances of language-based discrimination.  *See, e.g., Yniguez v. Arizonans for Official English*, 69 F.3d 920, 948 (9th Cir. 1995), *vacated on other grounds,* 520 U.S. 43 (1997) ("Since language is a close and meaningful proxy for national origin, restrictions on the use of languages may mask discrimination against specific national origin groups or, more generally, conceal nativist sentiment"); *Fragante v. City and County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989) ("Accent and national origin are obviously inextricably intertwined in many cases. It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem, but the candidate's inability to measure up to the communications skills demanded by the job.  We encourage a very searching look by the district courts at such a claim.").[2]

---

[1]     *See, e.g., Hernandez v. New York*, 500 U.S. 352, 371-72 (1991) ("It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis."); *Lau v. Nichols*, 414 U.S. 563, 568-69 (1974) (holding that failure to provide educational assistance to non-English-speaking students constituted national origin discrimination under Title VI of the Civil Rights Act); *Espinoza v. Farah Mfg. Co*., 414 U.S. 86, 92-93 and n.5 (1973) (finding no evidence of discrimination against persons of Mexican national origin, Court noted there was "no suggestion, for example, that the company refused to hire aliens of Mexican or Spanish-speaking background while hiring those of other national origins"); *Hernandez v. Texas*, 347 U.S. 475, 480 n.12 (1954) ("just as persons of a different race are distinguished by color, these Spanish names provide ready identification of the members of this class" of Mexican-Americans).  For an extensive discussion of other authorities affirming the link between language and national origin, *see Sandoval v. Hagan*, 7 F.Supp.2d 1234, 1278-82 (M.D. Ala. 1998), *aff'd*, 197 F.3d 484 (11th Cir. 1999), *rev'd on other grounds sub nom. Alexander v. Sandoval,* 532 U.S. 275 (2001).

[2]     Numerous commentators have argued for the specification of language-based discrimination as a category of discrimination coequal to those originally enumerated by Title VII.  *See, e.g.,* Juan F. Perea, Ethnicity and Prejudice: Reevaluating "National Origin" Discrimination Under Title VII, 35 Wm. & Mary L. Rev. 805, 860 (1994); Lisa L. Behm, Protecting Linguistic Minorities Under Title VII: The Need for Judicial Deference to the EEOC Guidelines on Discrimination Because of National Origin, 81 Marq. L. Rev. 569 (1998) (proposing that Congress facilitate judicial deference to the EEOC guidelines by amending Title VII to prohibit discrimination on the basis of language); Drucilla Cornell & William W. Bratton, Deadweight Costs and Intrinsic Wrongs of Nativism: Economics, Freedom, and Legal Suppression of Spanish, 84 Cornell L. Rev. 595 (1999)

Unsurprisingly, the U.S. Equal Employment Opportunity Commission, the agency charged by Congress with interpreting and enforcing Title VII, has long recognized the scope and seriousness of language discrimination in the workplace, and has assigned it great importance in its national enforcement plan.  For example, the EEOC has long prioritized efforts against workplace "speak-English only" policies, one common form of language discrimination.  *See, e.g.,* Sept. 1, 2000 EEOC press release announcing settlement of English-only case against a manufacturing plant (stating that "[c]ases involving language issues, accent discrimination, and restrictive language policies or practices are a strategic enforcement priority for the Commission")[3]; Sept. 19, 2000 EEOC press release announcing settlement of English-only case against a telephone operator service ("Cases involving English-only rules, restrictive language policies, and language or accent discrimination are litigation priorities for the Commission.  Employers must refrain from targeting workers for discrimination based on myths, fears, and stereotypes regarding their primary language and country of origin.")[4]; April 20, 2001 EEOC press release announcing settlement of class action against a private university concerning workplace English-only rule ("For more than 15 years, the EEOC has taken the firm position that English-only rules run afoul of Title VII . . . This settlement should put other employers on notice that the EEOC is committed to rooting out discrimination against low-wage earners, language minorities, and other groups most vulnerable to civil rights abuses", and also noting a nearly 500% increase in

---

(recommending expansion of Title VII protection).  *See also* Mari J. Matsuda, Voices in America: Accent, Antidiscrimination Law, and a Jurisprudence for the Last Reconstruction, 100 Yale L.J. 1329 (1991) (arguing for greater Title VII scrutiny of discrimination based on accent); Stephen M. Cutler, A Trait-Based Approach to National Origin Claims Under Title VII, 94 Yale L.J. 1164 (1985) (arguing that national origin discrimination is manifested more through its focus on the characteristics of national origin groups, notably their linguistic characteristics, than upon the fact of the national origin itself); Juan F. Perea, Buscando América: Why Integration And Equal Protection Fail To Protect Latinos, 117 Harv. L.Rev. 1420 (2004) (discussing linguistic discrimination against Spanish speakers and inadequacy of existing legal framework in remedying it).

[3]    Press Release, EEOC, September 1, 2000, *available at*, http://www.eeoc.gov/press/9-1-00.html, attached as Exhibit A to Declaration of Christopher Ho in Support of Plaintiffs' Oppositions to Defendant's Cost Bill ("Ho Decl."), filed herewith.

[4]    Press Release, EEOC, September 19, 2000, *available at*, http://www.eeoc.gov/press/9-19-00.html, attached as Exhibit B to Ho Decl.

1   English-only charges during 1996-2000 period).[5]  Moreover, the EEOC has followed the progress of

2   this litigation since its inception at its Washington headquarters and San Francisco district office, and

3   has sent its attorneys to observe the trial proceedings.  *See* Declaration of Christopher Ho in Support of

4   Plaintiffs' Oppositions to Defendant's Cost Bill ("Ho Decl."), ¶ 5, filed herewith.

5         Due not only to its being a civil rights case, but also because of its focus on the widely-

6   recognized problem of language-based discrimination in the workplace, this litigation is clearly of

7   "substantial public importance."  Particularly at a time when instances of this subtler, yet equally

8   harmful form of workplace bias are steeply rising in number as the demographics of this nation

9   continue to change, this case addressed an issue that is sure to become an even more prominent concern

10  in the coming years.

11         **2.**      **The Issues Involved In Resisting Nibco's Immigration-Related**

12                 **Discovery Attempts Raised Significant Questions Of First**
                   **Impression For Resolution By The Ninth Circuit.**

13         Nearly four years of this case were devoted almost exclusively to litigating against Nibco's

14  persistent and vigorous efforts to discover the immigration status of the plaintiffs.  Although the

15  determination of that question was plainly not among the reasons this case was initially brought, the

16  fact remains that this case, by force of events, also became one about the rights of undocumented

17  workers.  Indeed, it led to the issuance in 2004 of a decision by the Ninth Circuit, beneficial to the

18  plaintiffs, that was the first by any U.S. Court of Appeals to interpret *Hoffman Plastic Compounds, Inc.*

19  *v. NLRB*, 535 U.S. 137 (2002), a decision that had raised substantial debate and ambiguity with respect

20  to the continued right and practical ability of undocumented workers to assert longstanding statutory

21  protections against workplace discrimination.  *See Rivera v. NIBCO, Inc*, 364 F.3d 1057 (9th Cir.),

22  *aff'd*, 384 F.3d 822 (2004), *cert. denied sub nom. NIBCO, Inc. v. Rivera*, 544 U.S. 1603 (2005).

23  According to Westlaw, as of today's date the Ninth Circuit's opinion has been cited by nearly 60

24

25

26

27       [5]    Press Release, EEOC, April 20, 2001, *available at*, http://www.eeoc.gov/press/4-20-01.html, attached as
    Exhibit C to Ho Decl.

28  **PLAINTIFFS' OBJECTIONS TO DEFENDANT'S BILL OF COSTS**            4
    **Case No. CIV F-99-6443 OWW SMS**

federal courts as well as 150 law review articles, practice guides, and other secondary sources; in addition, it appears or is otherwise referred to in several casebooks.[6]

Because of the significance of the Ninth Circuit's opinion to the evolving decisional law concerning the rights of immigrant workers, this litigation is of "substantial public importance" for that reason as well.

**B.    The Plaintiffs Have Limited Financial Resources, and the Economic Disparity Between The Parties is Severe.**

It is well established that district courts should take the losing party's financial resources into account when deciding whether to award costs to a prevailing defendant.  *See, e.g., AMAE* at 592-93 (upholding district court's decision to not award costs in Title VII case, court noted that "[t]he record demonstrates that [the plaintiffs'] resources are limited."); *Stanley v. University of Southern California*, 178 F.3d 1069, 1079-80 (9th Cir. 1999) ("[d]istrict courts should consider the financial resources of the plaintiff and the amount of costs in civil rights cases.").  In particular, it is not necessary to find that the plaintiffs in question are *currently* indigent; rather, the proper inquiry is whether an award of costs might *make* them so.  *Stanley*, 178 F.3d at 1079-80 (referring to the possibility that the plaintiff "would be rendered indigent should she be forced to pay" the amount assessed against her).  A district court in this District has, accordingly, held in a Title IX case against the University of California that costs should not be awarded, citing to their "limited financial resources" and noting that they were students who were barely able to cover their monthly living expenses.  *Mansourian v. Board of Regents of the Univ. of California at Davis*, 566 F.Supp.2d 1168, 1171 (E.D.Cal. 2008).

In the same connection, the courts have looked to the financial disparity between the parties in considering whether an award of costs in civil rights cases would be just and equitable.  *See, e.g., AMAE*, 231 F.3d at 592 (denial of costs appropriate where there exists *inter alia* a great economic disparity between the plaintiffs, who were individuals and small nonprofit educational organizations,

---

[6]    *See, e.g.,* Brooks, Carrasco, and Selmi, Civil Rights Litigation:  Cases and Perspectives (3d ed., Carolina Academic Press, 2005); Friedman, The Law of Employment Discrimination:  Cases and Materials (6th ed., Foundation Press, 2007/2008).

and the defendants); *Mansourian*, 566 F.Supp. at 1171 (denying costs where there is "a significant economic disparity between plaintiffs and defendants.").

The plaintiffs in this case are, and have long been, low wage workers, employed in hourly jobs, who do not have the substantial financial resources to pay the requested cost bill.  *See* Declaration of Carole Vigne In Support of Plaintiffs' Oppositions to Defendant's Bill of Costs ("Vigne Decl."), ¶¶ 5-30.  By way of illustration, in the Fresno metropolitan statistical area ("Fresno MSA"), it is probable that the plaintiffs' average incomes for the past several years would place them in the "low income," if not the "very low income," classifications used by the U.S. Department of Housing and Urban Development ("HUD").[7]  An award of costs against them, let alone the full amount sought by Nibco, would not only be unjust and inequitable but, indeed, punitive in nature and effect.

This is particularly so given the immense difference in the plaintiffs' economic resources as compared to those of defendant Nibco.  Among other things, Nibco is a multinational corporation that operates 12 manufacturing plants, and additional "global distribution and plant shipping facilities," in both the United States as well as in Mexico and Poland.[8]  In 1999, the last year for which Nibco's annual reports were produced in discovery,[9] its net income surpassed $22 million.  Vigne Decl., ¶¶ 31-32.  This is precisely the type of  economic disparity that the courts have found to militate against an award of costs in civil rights cases.  *See, e.g., AMAE*, 231 F.3d at 592; *Mansourian*, 566 F.Supp.2d at 1171 (contrasting the resources of the student-plaintiffs with the "substantial budget" of the defendant).  Under such circumstances, this Court should decline to award Nibco's requested costs.

**C.    The Issues In This Case Were "Close And Difficult."**

As should be apparent from the longevity of this litigation, the plaintiffs' claims presented serious issues worthy of close consideration.  No pretrial motion to dismiss was brought, and the Court found the key factual issues to be so disputed as to deny both parties' motions for summary judgment.

---

[7]    2008 Adjusted Home Income Limits, State: California, U.S. Department of HUD, Feb. 2008, *available at*, http://www.hud.gov/offices/cpd/affordablehousing/programs/home/limits/income/2008/ca.pdf.

[8]    FAQs, NIBCO, Inc., *available at*, http://www.nibco.com/cms.do?id=124.

[9]    Because Nibco is not a publicly traded company, more recent financial information is not available to the plaintiffs.

And as this Court is well aware, the legal issues – notably including those presented via motions in limine, as well as those requiring decision due to the novel questions posed by a jury trial of an FEHA adverse impact claim -- necessitated extensive argument and the interpretation of often disputed and arguably ambiguous authorities.  Far from being a case that lacked for legal or factual merit, this case presented extremely difficult issues, many of apparent first impression, that made clear that the matters presented herein fully warranted the vigorous litigation that followed its filing in 1999.

> **D.    An Award Of Costs In This Case Would Have A Serious "Chilling Effect"
> On Future Civil Rights Litigants.**

Finally among the *AMAE* factors, were Nibco to be granted its cost bill, the message that would (even if unintentionally) be sent to potential plaintiffs in future cases, particularly those involving low-wage immigrant plaintiffs, would be that it would simply be too risky, from a personal and familial standpoint, to participate in a case seeking to vindicate individuals' civil rights.  Because the plaintiffs in this case are far from being able to afford paying any cost award, such an award would send the signal that as a practical matter, meaningful access to the legal system would be uncertain and the consequences of failure potentially devastating.  A decision to impose costs upon the plaintiffs would, therefore, have unfortunate ramifications going far beyond this case itself.  *AMAE*, 231 F.3d at 593; *Mansourian*, 566 F.Supp.2d at 1171-72 (cost award "would lead to a harsh result that could chill student litigants from vindicating important rights under Title IX.").  In fact, inasmuch as the plaintiffs' liability for the costs may be joint and several, it would likely be the case that those plaintiffs believed to have more attachable assets would be the targets of selective cost bill enforcement efforts, such that as a practical matter they would be at disproportionately far greater financial risk than their fellow plaintiffs.  Any notion of an "average" cost assessment per plaintiff – even though such a hypothetical "average" figure would be a substantial burden for each plaintiff in any case --  would bear no relationship to the reality of actual enforcement efforts.

For the above reasons, each one of the *AMAE* factors counseling against an award of costs are present.  For that reason, as well as for reasons of fairness and equity, Nibco's requested costs should be denied in their entirety.

## II. THE MAJORITY OF THE COSTS CLAIMED BY DEFENDANT ARE NOT COMPENSABLE UNDER RULE 54(d).

Should the Court nonetheless determine that Defendant is entitled to an award of costs, Defendant's cost bill should be reduced by the amounts improperly taxable under Rule 54(d), as set forth below. Defendant has the burden of proof on costs. *See English v. Colorado Dept. of Corrections*, 248 F.3d 1002, 1013 (10th Cir. 2001); *Comm. Concerning Cmty. Improvement v. City of Modesto*, No. CV-F-04-6121 LJO DLB, 2007 U.S. Dist. LEXIS 94328, *12-13 (E.D. Cal. Dec. 11, 2007); *Alaniz v. Robert M. Peppercorn, M.D., Inc*., No. 2:05-cv-02576-MCE-DAD, 2008 U.S. Dist. LEXIS 71107 (E.D. Cal. Aug. 8, 2008). Defendant has claimed various categories of costs that should be denied in their entirety.

### A. At Most, Defendant Should Only Be Awarded The Deposition Costs Of Witnesses Who Actually Testified At Trial.

The costs of deposition transcripts may be recoverable only upon a showing by the party seeking costs that they were "necessarily obtained for use in the case." *See* 28 U.S.C. § 1920(2). The Ninth Circuit has held that deposition costs are taxable if they are "*reasonably necessary for trial.*" *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998) (emphasis added); *see also Ferreira v. M/V CCNI Antofagasta*, No. 2:04-cv-1916-MCE-DAD, 2007 U.S. Dist. LEXIS 76767, *4-7 (E.D. Cal. Oct. 15, 2007) (citing *Evanow*).

Defendant's deposition costs relating to witnesses who testified at trial improperly include categories of non-compensable expenses incurred merely for Defendant's own convenience. Moreover, Defendant has failed to demonstrate that deposition costs other than those of witnesses who testified at trial were reasonably necessary. Therefore, this Court should exercise its discretion to disallow these costs.

### 1. Deposition costs of witnesses who testified at trial.

Although Defendant may seek the deposition costs of witnesses who actually testified at trial, Defendant's invoices in this regard reveal numerous instances of costs inappropriately assessed by Defendant. *See* Plaintiffs' Objections to Defendant's Exhibit "A" (Depositions of Witnesses Testifying

at Trial), Exhibit Z, attached to Vigne Decl., filed in support of Plaintiffs' Objections to Defendant's

Bill of Costs.  As enumerated by Plaintiffs, the following costs should be disallowed:

- Deposition costs of **Randy Cates**, who did not in fact testify at trial;

- Deposition costs that were not necessary but were for the mere convenience of the Defendant, including but not limited to condensed transcripts, index pages, expedited preparation and delivery of deposition transcripts, and costs occurred in obtaining disks such as ASCII disks;[10]

- Costs associated with audiotaping or videographing the deposition (*see infra,* Section II.B).

*See* Exh. Z, attached to Vigne Decl.

Defendant cannot demonstrate why such costs, over and beyond the costs of the transcription itself, were reasonably necessary for trial, as required by the law of this Circuit.  *See Evanow,* 163 F.3d at 1118, *supra*.  Therefore, Defendant's bill of costs should be reduced by the amount of **$13,014.24**. *See* Exh Z, attached to Vigne Decl.

### 2.     Depositions "used in connection with motions for summary judgment."

The Ninth Circuit has declared that trial courts have the discretion to disallow the costs of

depositions not used at trial.  *Washington State Dep't of Transportation v. Washington Natural Gas*

*Co., Pacificorp,* 59 F.3d 793, 806 (9th Cir. 1995) (affirming district court's denial of a portion of

defendants' bill of costs requesting costs of depositions not used at trial and holding that such

disallowance was within the district court's discretion).[11]

---

[10]   *See, e.g., Hill v. BASF Wyandotte Corp.*, 547 F.Supp. 348, 352 (E.D.Mich. 1982) (no showing of need for expedited deposition transcript); *Javetz v. Board of Control, Grand Valley State Univ.*, 164 F.R.D. 447, 448 (W.D.Mi. 1996) (cost of expedited preparation of transcripts, albeit helpful to counsel, was not reasonably necessary); *Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926, 946 n. 11 (7th Cir. 1997) (noting that party seeking costs had acknowledged it was not entitled to costs incurred in obtaining ASCII disks of the deposition transcripts, the expense of which was disallowed by the district court).

[11]   A more recent but unpublished Ninth Circuit case reaffirms this principle.  *See Sunrich Food Group, Inc. v. Pacific Food of Oregon, Inc.,* No. 05-35152, No. 05-36171, 207 Fed.Appx.745, 752 (9th Cir. Oct. 12, 2006) (upholding district court's ruling that disallowed costs associated with discovery depositions not used at trial).

Depositions that are merely useful for discovery but not used at trial are not properly taxable and therefore constitute expenses that should be borne by the party taking the deposition, as incidental to normal preparation for trial. *Independent Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656, 678 (9th Cir. 1963) (stating that "[i]f the depositions were merely useful for discovery then they were not taxable items" but noting that defendants had used deposition transcripts at trial for impeachment purposes).

Indeed, numerous district courts have found that the actual use of the deposition transcript at trial is the most direct evidence that it was reasonably necessary. *See, e.g., Ryther v. KARE 11*, 864 F.Supp. 1525, 1534 (D.Minn. 1994); *George R. Hall, Inc. v. Superior Trucking Co.*, 532 F.Supp. 985, 994 (N.D.Ga. 1982) ("costs incurred for the convenience of a party, for the purposes of investigation, or simply to aid a party in a more thorough preparation of the case, are not recoverable").

Here, Defendant relies on the motions for summary judgment to seek the costs of depositions not actually used at trial. Defendant's reliance is misplaced. The cases to which Defendant cites, *Javetz v. Board of Control, Grand Valley State Univ.*, and *Kaimowitz v. Howard*, are distinguishable on both procedural and factual grounds. In *Javetz,* the court found that defendants had "explained why each" of the depositions was deemed "reasonably necessary." 164 F.R.D. 447, 448 (W.D.Mich. 1996). Similarly, *Kaimowitz* only stands for the proposition that depositions "*may* be reasonably necessary" if they are used in connection with a *successful* summary judgment motion. 547 F.Supp. 1345, 1353 (E.D.Mich. 1982). In the case at bar, Defendant has made no such individual showing of why *each* deposition was "reasonably necessary." Furthermore, in *Javetz* and *Kaimowitz*, because the successful summary judgment motions – like a jury verdict – disposed of claims, it would have been nonsensical for the courts to put form over substance by allowing costs only if the depositions were used at a trial that was moot. Consequently, both cases have no real bearing on a situation like the one here, where the cross-motions for summary judgment were *denied* and the case proceeded to trial – and where this Court may thus view the fact that the deposition transcripts were not used by Defendant *at trial* as the most direct evidence that they were not reasonably necessary.

1    As Defendant acknowledges, all depositions – except for one – in this category were noticed by

2    Plaintiffs, and not Defendant.  At best, Defendant can only establish that these depositions were useful

3    for *Plaintiffs'* fact discovery in this case – an insufficient basis to award costs to Defendant under the

4    law of this Circuit.

5    Therefore, Defendant should not be awarded any deposition costs in connection with the

6    unsuccessful motions for summary judgment.  Defendant's bill of costs in this regard should be reduced

7    by the amount of **$4,844.30**.[12]  *See* Plaintiffs' Objections to Defendant's Exhibit "B" (Depositions of

8    Witness Testimony Used in Connection with Motions for Summary Judgment), Exh. AA, attached to

9    Vigne Decl.

10    ### 3.    Other depositions "taken in the course of this case."

11    Defendant also attempts to slip through the back door the costs for other depositions that were

12    not actually used at trial, through the catch-all phrase, depositions "taken in the course of this case."

13    Defendant similarly fails to establish that such depositions were reasonably necessary for trial.  *See*

14    *Evanow*, 163 F.3d at 1118, *supra*. Indeed, Defendant readily admits that many of the individuals whose

15    depositions fall under this category of costs were deposed because they "may have had knowledge

16    related to issues in the case."  Defendant Nibco, Inc.'s Memorandum of Points and Authorities in

17    Support of Cost Bill ("Memo in Support of Cost Bill"), at 4:2-4.  Such depositions used merely for the

18    purposes of discovery are not properly taxable.  *See Independent Iron Works,* 322 F.2d at 678, *supra.*

19    Therefore, Defendant should not recover any costs for other depositions "taken in the course of

20    this case."  Defendant's bill of costs in this regard should be reduced by the amount of **$7,629.65**.[13]

21

22

23    [12]    Should the Court decide to award this category of deposition costs, certain itemized costs from these
invoices should nevertheless be disallowed to the extent they include miscellaneous expenses that were not
reasonably necessary, including but not limited to itemizations such as laser reproduction, expedited handling or

24    delivery charges, diskettes, or condensed transcripts.  *See* section II.A.1., *supra*.

25    [13]    Should the Court decide to award this category of deposition costs, certain itemized costs from these

26    invoices should nevertheless be disallowed to the extent they include miscellaneous expenses that were not
reasonably necessary, including but not limited to itemizations such as audio tape reproduction, expedited

27    handling or delivery charges, diskettes, condensed transcripts, "min-u-scripts," word index pages, and CCP Sec.
2025 fees.

28

1    *See* Plaintiffs' Objections to Defendant's Exhibit "C" (Other Depositions in the Course of this Case)

2    Exh.BB, attached to Vigne Decl.

3         **B.**    <u>**Videotaped Deposition Costs Should Not Be Allowed**</u>.

4         The types of costs allowable under Rule 54(d) are limited to those enumerated in 28 U.S.C. §

5    1920.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441-442 (1987).  Costs not listed in §

6    1920 may not be taxed to the non-prevailing party unless they are specifically authorized by some other

7    statute or by contract.  *Id.* at 440.  Although the Ninth Circuit has not ruled on the issue of recovering

8    the cost of videotaped depositions in addition to stenographic transcription, the Fifth Circuit has held

9    that videotaped depositions are not enumerated as allowable costs in § 1920 and are therefore not

10   taxable.  *See Mota v. University of Texas Houston Health Science Ctr.*, 261 F.3d 512, 529-530 (5th Cir.

11   2001) (finding trial court abused discretion in taxing cost of videotaped deposition).

12        Moreover, under 28 U.S.C. § 1920, the costs of videotaped depositions are only recoverable

13   upon a showing that they were "necessary."  The Fourth Circuit has held that only the cost of the

14   deposition transcript was taxable where there was no showing that videotaping was "necessary."

15   *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 449 (4th Cir. 1999).  Similarly, courts in the Eastern

16   District have found that a party may not recover costs incurred for *both* videotaping a deposition and

17   obtaining a stenographic transcript, but may only recover costs for the stenographic transcript itself.

18   *See, e.g., Terry v. Allstate Ins. Co.*, No. Civ. S-05-2261 RRB DAD, 2007 U.S. Dist. LEXIS 81051 *9-

19   10 (E.D. Cal. Oct. 31, 2007) (party seeking costs failed to provide a rationale justifying why deposition

20   videotape and stenography were both "necessary," which requires a showing beyond convenience or

21   duplication to ensure alternative methods of presenting materials at trial).

22        *Davis v. Puritan-Bennett Corp.*, the sole case on which Defendant relies, is distinguishable.  In

23   *Davis*, the district court's own deposition guidelines *required* that videotaped depositions be

24   simultaneously recorded through stenographic means.  923 F.Supp.179, 180 (D.Kan. 1996).  The

25   district court in *Davis* further acknowledged that its own guidelines also explicitly allowed subsequent

26   taxation of videotaped depositions.  *Id.* at 181.  In contrast, here, Defendant was not required to take

27   depositions *both* by videotape and stenography; and although Defendant is required to show why it was

28

necessary in addition to the stenographic transcript to videotape depositions (of Plaintiffs, Doug Kieper, and Connie Hitt, who all appeared at trial and for whom not a single video deposition clip was shown), Defendant has not so demonstrated.  Defendant's choice to videotape the depositions for reasons of strategy or convenience does not meet the standard of reasonable necessity allowing the recovery of costs.

Thus, this Court should deny the award of costs for any of the videotaped depositions. Defendant's bill of costs should be reduced by the total amount claimed for this expense, **$10,298.84.** *See* Plaintiffs' Objections to Defendant's Exhibit "D" (Videotape Recording of Depositions), Exh.CC, attached to Vigne Decl.

C.    **Witness Fees Should Only Be Awarded For Witnesses Who Actually Testified At Trial.**

Witness fees are allowable under 28 U.S.C. § 1920(3), but must be read in conjunction with section 1821, which defines the taxable fees associated with witnesses.  *See Holmes*, 11 F.3d at 64. Witness fees may be recovered for costs incurred by a witness "*in attendance at* any court of the United States…"  28 U.S.C. § 1821 (a)(1) (emphasis added).  Accordingly, courts have found that for witness fees to be properly taxable as costs, witnesses must actually *appear and testify*.  *See, e.g., Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995) (finding that fees for witnesses who do not appear in court are not an allowable cost under 28 U.S.C. § 1920); *Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 891 (5th Cir. 1993) (affirming district court's refusal to award witness fee for expert who attended trial but did not testify); *Pate v. General Motors Corp.*, 89 F.R.D. 342, 346 (N.D.Miss. 1981) (a presumption exists that "when a witness is subpoenaed to the trial, but is not called to the witness stand, he is not a necessary witness").

Indeed, the Ninth Circuit has held that for witness fees to be taxable as costs, the testimony of the witness must be material to an issue tried and reasonably necessary to its disposition.  *United California Bank v. THC Financial Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977) (affirming disallowance of witness fees).

Furthermore, witness fees are limited by the statutory cap defined in 28 U.S.C. § 1821 (c)(2), currently $40 per diem.  *See* 28 U.S.C. § 1831 (c)(2); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 442 (1987); *Evanow*, 163 F.3d at 1118.

### 1.    Witnesses who testified at trial.

For witnesses who testified at trial, the witness fee must be reduced to $40 per witness. Defendant's invoices charge amounts in excess of $40, as attributable to reimbursement for *estimated* travel.  This is improper under 28 U.S.C. § 1821, which only allows recovery for travel costs actually incurred, and requires receipts of such costs to be attached.  28 U.S.C. § 1821 (c)(1) ("[a] receipt or other evidence of actual cost [of traveling on a common carrier] shall be furnished").   Therefore, Defendant's bill of costs **as to witnesses who testified at trial** should be reduced by the amount in excess of $40 per witness, for a total reduction of **$783.00.** *See* Plaintiffs' Objections to Defendant's Exhibit "E" (Witness Fees: Testimony at Trial), Exh. DD, attached to Vigne Decl.

### 2.    Witnesses who did not testify at trial.

Particularly in light of the limited resources of Plaintiffs, this Court should utilize its discretion to disallow all witness fees for those who did not actually appear and testify at trial.  Accordingly, Defendant's bill of costs **as to witnesses who did not testify at trial** should be reduced by the total amount of such costs claimed, **$3,208.12.** *See* Plaintiffs' Objections to Defendant's Exhibit "F" (Witness Fees: Served but Not Called at Trial), Exh. EE, attached to Vigne Decl.

In the alternative, witness fees must at least be limited to the statutory cap of $40 per diem. Defendant's invoices improperly charge amounts in excess of $40 as attributable to reimbursement for *estimated* travel.  Therefore, Defendant's bill of costs should be reduced by the amount in excess of $40 per witness, for a total reduction of **$1,408.12.** *See* Exh. EE, attached to Vigne Decl.

### D.    Daily Trial Transcripts Should Not Be Recoverable As Costs.

Daily copies of trial transcripts must be indispensable to both counsel *and* the Court, rather than merely for the attorney's convenience, in order to be recoverable as costs.  *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994) (per curiam); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir. 1996).  As Defendant itself has acknowledged [Memo in Support of Cost

Bill, at 4], the cost of daily trial transcripts is ordinarily *not* recoverable without court approval obtained prior to trial. *Manildra,* 76 F.3d at 1184. The lack of prior approval may only be overcome by a showing that the case was complex and the daily trial transcripts were invaluable to *both* counsel and the court. *Id.* (finding daily transcripts were invaluable to both the court and parties where transcripts helped to focus the issues, avoid repetitive testimony, and expedite the trial).

Moreover, counsel's use of the trial transcript alone is not sufficient to demonstrate it was invaluable to both counsel and the court. *See, e.g., McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990) (affirming trial court's refusal to allow costs even when counsel utilized trial transcript to verify witness credibility at trial); *John G. v. Board of Ed. of Mount Vernon Pub. Schools*, 891 F.Supp.122, 123 (S.D.N.Y. 1995) (daily trial transcripts were not taxable where prior testimony could have been adequately referenced without the use of the transcripts and there was no need to refer to precise language of witnesses); *Norton v. International Harvester Co.*, 89 F.R.D. 395 (E.D. Wis. 1981) (daily transcripts were "helpful" but a "relative luxury" not necessary for trial). *See also Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362, 1363 (5th Cir. 1983) (affirming disallowance of daily transcript for convenience of counsel); *In re Nissan Antitrust Litigation*, 577 F.2d 910 (5th Cir. 1978) (abuse of discretion to award costs for daily transcript), *cert. denied*, 439 U.S. 1072 (1979); *Admiral Theatre Corp. v. Douglas Theatre Corp.*, 585 F.2d 877 (8th Cir. 1978) (finding abuse of discretion where district court allowed costs for daily transcript); *Ferreira*, 2007 U.S. Dist. LEXIS 76767 at *4-5 (the party seeking costs failed to provide appropriate justification for the expense of daily transcripts); *Hill v. BASF Wyandotte Corp.*, 547 F. Supp. 348, 353 (E.D.Mich.1982) (daily transcript disallowed because no prior court approval).

Here, Defendant makes the generalized assertion that "a number of the daily transcripts" were used in the closing argument and "in connection with" its Rule 50 motion, which this Court denied. However, Defendant has failed to make the requisite showing of why the cost of each daily trial transcript was *necessary* and therefore "invaluable" to both the Court *and* counsel. Indeed, Defendant has submitted an invoice enumerating the daily transcript fees for every single day of trial, even when all transcripts were not cited to in either the Rule 50 motion or closing argument. Unlike the situation

in *Manildra*, *supra*, the use of the daily transcripts in this case did not help to focus the issues, avoid repetitive testimony, or expedite the trial, but were merely used for defense counsel's own convenience to emphasize arguments *at the close of trial*.[14]

Thus, Defendant's costs for daily trial transcripts should be denied.  Accordingly, Defendant's bill of costs should be reduced by the total amount claimed for this expense, **$12,307.40.**  *See* Plaintiffs' Objections to Defendant's Exhibit "G" (Rough Transcript Fees), Exh. FF, attached to Vigne Decl.

### E.    Fees For Exemplification And Copying Of Papers Should Be Reduced.

Recovery of exemplification and copying costs is limited to those that are "necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  Copies made solely for counsel's convenience are not recoverable.  *See, e.g., McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990).  The party seeking such costs is required to provide sufficient information to show that the expense was necessary.  *See, e.g., Holmes*, 11 F.3d at 64 ("the party seeking such costs must offer some proof of the necessity"); *Ferreira*, 2007 U.S. Dist. LEXIS 76767 at *6-7 (stating that "[t]he mere recitation of the phrase 'necessarily incurred'…is not sufficient to meet the requirements of Section 1920" and finding party seeking copying costs was required to provide specific basis for costs); *American Key Corp. v. Cumberland Assocs.*, 102 F.R.D. 496, 499 (N.D. Ga. 1984) ("The mere recitation with talismanic regularity of the phrase 'necessarily obtained for use in the case' is not sufficient… Some further showing is necessary.").

### 1.    Copying Costs

Defendant seeks copying costs for trial documents and exhibits.  Although Defendant is not necessarily limited to copies of exhibits it actually used at trial, it has not demonstrated the necessity of copying, with unfettered discretion, the tens of thousands of pages of documents that it identified as

---

[14]    Should the Court decide to award this category of costs, the award should at minimum be reduced by the cost of daily trial transcripts that were not cited to by Defendant in its Rule 50 motion or at closing argument. Defendant has failed to specifically identify which transcripts were used in this capacity, although the burden of proof on costs and proper documentation of such fall on Defendant. *See English*, 248 F.3d at 1013, *supra*; *Alaniz*, 2008 U.S. Dist. LEXIS 71107, *supra*.

1  "trial exhibits" despite efforts by Plaintiffs' counsel to stipulate to a more manageable universe of joint

2  documents to be utilized at trial.  *See* Ho Decl., ¶¶ 3-4.

3        Given the sheer volume of documents unnecessarily copied by Defendant, Defendant should be

4  limited to costs incurred for those exhibits it actually used at trial.  Plaintiffs therefore object to this

5  entire category of costs, in the total amount of **$25,131.82**. *See* Plaintiffs' Objections to Defendants

6  Exhibit "H" (Exemplification and Copies of Papers Necessarily Obtained for Use in this Case: Trial

7  Exhibits), Exh. GG, attached to Vigne Decl.  Without more specificity in the form of Defendant's

8  invoices, it is not possible to determine which copies of certain documents were unnecessarily made.

9        At minimum, should the Court determine that an award of copying costs is appropriate, the

10  color laser copies in the amount of **$169.20** should not be recoverable, as Defendant has not

11  demonstrated the necessity – nor could it – of this expense.  *See* Exh. GG, attached to Vigne Decl.

12  ### 2.    Office Supply Costs

13        Furthermore, Defendant seek to recover the costs of office supplies, including binders, tabs,

14  etc., used in conjunction with the trial exhibits, and include these costs among those for the

15  exemplification and copies of papers.  Such costs not enumerated in 28 U.S.C. § 1920 may not be taxed

16  and thus, should not be recovered. *See Crawford Fitting Co.,* 482 U.S. at 440-442. Indeed, various

17  courts have found that recovery of such expenses is disallowed. *See, e.g., Treaster v. Healthsouth*

18  *Corp.*, 505 F.Supp.2d 898, 905 (D.C. Kan. 2007) ("binders are not 'printing' or 'copies' as allowed by

19  § 1920(3)"); *Servidone Constr. Corp. v United States*, 20 Cl. Ct 725, 732 (Cl. Ct. 1990) (binders would

20  be disallowed since they were not explicitly allowed under statute).  Plaintiffs object to such costs, in

21  the total amount of **$3,986.80.** *See* Exh. GG, attached to Vigne Decl.

22  ### F.    Travel And Lodging Expenses For John Hall.

23        Under 28 U.S.C. § 1920(3) and 1821, taxable costs for witnesses are limited to witness fees,

24  travel expenses, and a subsistence allowance for overnight stays.  Any award of travel expenses should

25  be limited to situations where the district court finds both the testimony and the expenses themselves to

26  have been necessary.  *See McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990).

27

28

Defendant seeks witness travel expenses for John Hall – a former NIBCO, Inc. employee, who after 1996 had limited to no contact with the Fresno plant – without elucidating why this witness' testimony was in fact necessary to its defense of employment actions taken in 1997 and 1998. Plaintiffs therefore object to this entire category of costs, in the total amount of **$2,881.94**. *See* Plaintiffs' Objections to Defendants Exhibit "I" (Witness Travel), Exh. HH, attached to Vigne Decl.

At minimum, should the Court determine that an award of travel costs is appropriate, the Court should carefully review which travel and lodging expenses were in fact unreasonable and reduce the amount awarded accordingly. Indeed, despite Defendant's unsupported characterization of "reasonable travel and lodging expenses," many of Mr. Hall's travel and subsistence expenses were anything but.

### 1.  Unreasonable Travel Expenses

Pursuant to 28 U.S.C. § 1821 (c)(1), a witness shall be paid for the actual travel expenses "on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished."

Defendant seeks an unreasonable amount—$2,141.50—for Mr. Hall's airfare between South Bend, Indiana and Fresno, California. In addition, Defendant also failed to provide complete documentation of Mr. Hall's travel expenses: although Defendant provided the itinerary for Mr. Hall's trip to Fresno, they failed to provide the proper documentation for his return trip. In the absence of such documentation, it is impossible to discern the reason for the exorbitant price of the ticket, or even know to where Mr. Hall traveled. Therefore, Defendant should not be awarded **$2,141.50** for Mr. Hall's airfare. *See* Exh. HH, attached to Vigne Decl.

28 U.S.C. § 1821(2) provides that witnesses who travel by privately owned vehicle should be paid an allowance based on mileage traveled. The computation of this mileage shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services. Defendant

provided no documentation of Mr. Hall's place of origin or destination. Therefore, Defendant should not be awarded **$93.60** for Mr. Hall's mileage.[15] *See* Exh. HH, attached to Vigne Decl.

Thus, Defendant should not be awarded costs for Mr. Hall's airfare or his mileage. Defendant's bill of costs in this regard should be reduced by the amount of $2,235.10. *See* Exh. HH, attached to Vigne Decl.

### 2.    Unreasonable Subsistence Expenses

28 U.S.C. 1821(d) limits the taxable cost of a witness's subsistence allowance to the maximum per diem allowance prescribed by the Administrator of General Services for official travel in the area of attendance by employees of the Federal Government. At the time of Mr. Hall's travel to Fresno, the maximum lodging rate per night was $95.00. *See* Per Diem Rates, California FY-09, U.S. General Services Administration, *available at* http://www.gsa.gov/Portal/gsa/ep/contentView.do?queryYear=2009&contentType=GSA_BASIC&contentId=17943&queryState=California&noc=T.

Defendant billed a total of $414.56 for Mr. Hall's lodging for the two nights he spent in Fresno. According to the guidelines set forth by the Administrator of General Services, Defendant is only permitted to bill a maximum total of $190 for two nights of lodging. Therefore, **$224.56** of the total cost Defendant requested for Mr. Hall's lodging is disallowed. *See* Exh. HH, attached to Vigne Decl.

Defendant also billed $33.28 for Mr. Hall's meals and $11.44 for his miscellaneous expenses; however, these expenses should be disallowed in part because Defendant failed to provide proper documentation of these charges. Defendant provided four receipts for food, the total cost of which was

---

[15]    28 U.S.C. § 1821 (c)(1) allows costs for the actual travel expenses for the distance necessarily traveled to and from the witness's residence by the shortest practical route in going to and returning from the place of attendance. Although Defendant does not proffer an explanation for the mileage, presumably the provided number of miles traveled (80 on Wednesday and 80 on Friday) represents the mileage between Mr. Hall's residence and the airport. However, a simple search on GoogleMaps shows that the distance between Mr. Hall's house and the airport is 34.7, or 69.45 miles roundtrip. Therefore, in the case that the Court allows a portion of the undocumented mileage costs, the Court should only allow costs for a total of 69.45 miles. The remaining mileage billed, 90.55 miles at a rate of 0.585, or $52.97, is disallowed. For mileage between Mr. Hall's residence and South Bend Airport, *see* http://maps.google.com/maps?f=d&saddr=823+Foxbriar+Ln,+Goshen,+Elkhart,+Indiana+46526&daddr=south+bend+airport&hl=en&geocode=&mra=pe&mrcr=0&sll=41.648288,-86.099854&sspn=0.434069,0.884399&ie=UTF8&ll=41.641105,-86.101227&spn=0.434117,0.884399&z=10

$30.78.  Therefore, Defendant failed to account for **$2.50** and **$11.44**, in total $13.90, of the costs billed for Mr. Hall's meals and miscellaneous expenses, and these costs, too, should be disallowed.  *See* Exh. HH, attached to Vigne Decl.

Thus, Defendant should not be awarded the total cost billed for Mr. Hall's lodging, or the total cost billed for Mr. Hall's meals and miscellaneous expenses.  Defendant's bill of costs in this regard should be reduced by the amount of $238.46. *See* Exh. HH, attached to Vigne Decl.

For the above reasons, Defendant's costs for witness travel should be denied, at least in substantial part.  Accordingly, Defendant's bill of costs should be reduced by the total amount claimed for the aforementioned disallowed expenses, **$2,473.60.**  *See* Exh. HH, attached to Vigne Decl.

## CONCLUSION

For the foregoing reasons, defendant's bill of costs should be denied in its entirety.

Dated:  December 22, 2008                          Christopher Ho
                                                   Christina N. Chung
                                                   Carole Vigne
                                                   The LEGAL AID SOCIETY –
                                                     EMPLOYMENT LAW CENTER

                                                   William J. Smith
                                                   Shelley G. Bryant
                                                   W.J. SMITH & ASSOCIATES


                                                   Marielena Hincapié
                                                   NATIONAL IMMIGRATION LAW CENTER


                                   By:     //s// Christopher Ho_____
                                                   CHRISTOPHER HO

                                           Attorneys for Plaintiffs