1
2
Christopher Ho, SBC No. 129845
The LEGAL AID SOCIETY --
    EMPLOYMENT LAW CENTER
3
600 Harrison Street, Suite 120
San Francisco, California 94107
4
Telephone: (415) 864-8848
Facsimile: (415) 864-8199

5
6
7
8
9
William J. Smith, SBC No. 056116          Marielena Hincapié, SBC No. 188199
Shelley G. Bryant, SBC No. 222925         NATIONAL IMMIGRATION LAW CENTER
W.J. SMITH & ASSOCIATES                   3435 Wilshire Blvd., Suite 1850
2350 West Shaw Avenue, Suite 132          Los Angeles, California 90010
Fresno, California 93711                  Telephone: (213) 639-3900
Telephone: (559) 432-0986                 Facsimile: (213) 639-3911
Facsimile: (559) 432-4871

10
11
Attorneys for Plaintiffs
MARTHA RIVERA, et al.

12

### IN THE UNITED STATES DISTRICT COURT

13

### FOR THE EASTERN DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21
22
23
24
25
26

| | |
|---|---|
| MARTHA RIVERA, MAO HER, ALICIA ALVAREZ, EVA ARRIOLA, PEUANG BOUNNHONG, CHHOM CHAN, BEE LEE, PAULA MARTINEZ, MARIA MEDINA, MAI MEEMOUA, MARGARITA MENDOZA, BAO NHIA MOUA, ISIDRA MURILLO, MARIA NAVARRO, VATH RATTANATAY, OFELIA RIVERA, SARA RIVERA, MARIA RODRIGUEZ, MARIA RUIZ, MARIA VALDIVIA, SY VANG, YOUA XIONG, and SEE YANG, <br><br> Plaintiffs, <br><br> v. <br><br> NIBCO, INC., an Indiana corporation, <br><br> Defendant. | ) No. CIV F-99-6443 OWW SMS <br> ) <br> ) **PLAINTIFFS' MOTION FOR REVIEW** <br> ) **OF CLERK'S TAXATION OF COSTS** <br> ) <br> ) **[Fed.R.Civ.P. 54(d)(1); Civ. L.R. 54-292(e)]** <br> ) <br> ) Date:  December 14, 2009 <br> ) Time:  10 a.m. <br> ) Ctrm:  3 <br> ) <br> ) [Hon. Oliver W. Wanger] <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

27
28

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................iii

**INTRODUCTION** ................................................................................................ 1

**I.   AN AWARD OF COSTS IN THIS CASE WOULD BE INEQUITABLE AND COUNTER TO NINTH CIRCUIT PRECEDENT.**....................................................... 2

   **A. The Issues Presented In This Case Are Of "Substantial Public Importance."**.................................................................................... 3

     1.   Language Discrimination Is A Civil Rights Concern of Well-Established Importance.................................................................. 3

     2.   The Issues Involved In Resisting Nibco's Immigration-Related Discovery Attempts Raised Significant Questions Of First Impression For Resolution By The Ninth Circuit.............................. 5

   **B. The Plaintiffs Have Limited Financial Resources, and the Economic Disparity Between The Parties is Severe.**.................................... 6

   **C. The Issues In This Case Were "Close And Difficult."**........................... 7

   **D. An Award Of Costs In This Case Would Have A Serious "Chilling Effect" On Future Civil Rights Litigants.**............................ 8

**II.   THE MAJORITY OF THE COSTS CLAIMED BY DEFENDANT ARE NOT COMPENSABLE UNDER RULE 54(d).**....................................................... 9

   **A. At Most, Defendant Should Only Be Awarded The Deposition Costs Of Witnesses Who Actually Testified At Trial.**................................. 9

     1.   Deposition costs of witnesses who testified at trial....................... 10

     2.   Depositions "used in connection with motions for summary judgment." ............................................................................... 10

     3.   Other depositions "taken in the course of this case." .................. 12

   **B. Videotaped Deposition Costs Should Not Be Allowed.** .................. 13

   **C. Witness Fees Are Presumptively Capped at $40 Per Day, and Defendants Have Not Submitted Receipts Showing Greater Travel Costs Actually Incurred.** ............................................................... 14

i

**D. <u>Daily Trial Transcripts Should Not Be Recoverable As Costs</u>.** ..................... 15

**E. <u>Fees For Exemplification And Copying Of Papers Should Be Reduced</u>.**....... 16

    **1.** **Copying Costs.**......................................................................... 17

    **2.** **Office Supply Costs.**................................................................. 17

**F. <u>Travel And Lodging Expenses For John Hall</u>.** ................................................ 18

    **1.** **Unreasonable Travel Expenses.**.................................................. 18

    **2.** **Unreasonable Subsistence Expenses.** ......................................... 19

**<u>CONCLUSION</u>** ............................................................................................. 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Admiral Theatre Corp. v. Douglas Theatre Corp.*, 585 F.2d 877 (8th Cir. 1978)........................15

*Alaniz v. Robert M. Peppercorn, M.D., Inc.*, No. 2:05-cv-02576-MCE-DAD, 2008 U.S. Dist. LEXIS 71107 (E.D. Cal. Aug. 8, 2008) ....................................................................9, 16

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) .................................................................2

*American Key Corp. v. Cumberland Associates*, 102 F.R.D. 496 (N.D. Ga. 1984) .....................16

*America Infra-Red Radiant Co. v Lambert Industrial, Inc.*, 41 F.R.D. 161 (D. Minn. 1966)........ 1

*ASIS Internet Services v. Optin Global, Inc.*, 2008 WL. 5245931 (N.D. Cal. 2008) .....................1

*Association of Mexican-American Educators v. State of California*, 231 F.3d 572 (9th Cir. 2000) ..........................................................................................................2, 6, 7, 8, 9

*Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362 (5th Cir. 1983) ............................15

*Cherry v. Champion International Corp.*, 186 F.3d 442 (4th Cir. 1999) ......................................13

*Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993) ........................................................13

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) .....................................13, 14, 17

*Davis v. Puritan-Bennett Corp.,* 923 F. Supp.179 (D.Kan. 1996)................................................14

*English v. Colorado Department of Corrections*, 248 F.3d 1002 (10th Cir. 2001)..................9, 16

*Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86 ......................................................................2

*Evanow v. M/V Neptune*, 163 F.3d 1108 (9th Cir. 1998)........................................................9, 12, 14

*Ferreira v. M/V CCNI Antofagasta*, No. 2:04-cv-1916-MCE-DAD, 2007 U.S. Dist. LEXIS 76767 (E.D. Cal. Oct. 15, 2007)...........................................................................9, 15, 16

*Fragante v. City and County of Honolulu*, 888 F.2d 591 (9th Cir. 1989) ......................................3

*George R. Hall, Inc. v. Superior Trucking Co.*, 532 F. Supp. 985 (N.D.Ga. 1982) .....................11

*Hernandez v. New York*, 500 U.S. 352 (1991)................................................................................2

*Hernandez v. Texas*, 347 U.S. 475 (1954) .....................................................................................2

*Hill v. BASF Wyandotte Corp.*, 547 F. Supp. 348 (E.D.Mich. 1982) ......................................10, 16

*Hiller v. United States*, 2008 WL 449846 (N.D. Cal. 2008) ...........................................................1

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) .................................................5

*Holmes v. Cessna Aircraft Co.*, 11 F.3d 63 (5th Cir. 1994) ....................................................15, 16

*Independent Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656 (9th Cir. 1963).................11, 123

*Javetz v. Board of Control, Grand Valley State University*, 164 F.R.D. 447 (W.D.Mi. 1996) ..................................................................................................................................10, 11

*John G. v. Board of Ed. of Mount Vernon Public Schools*, 891 F. Supp.122 (S.D.N.Y. 1995) ..............................................................................................................................................15

*Kaimowitz v. Howard*, 547 F. Supp. 1345 (E.D.Mich. 1982)......................................................11

*Lau v. Nichols*, 414 U.S. 563 (1974)............................................................................................2

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178 (Fed. Cir. 1996).......................15, 16

*Mansourian v. Board of Regents of the University of California at Davis*, 566 F. Supp. 2d 1168 (E.D.Cal. 2008) ....................................................................................................6, 7, 8

*McIlveen v. Stone Container Corp.*, 910 F.2d 1581 (7th Cir. 1990) .................................15, 16, 18

*Mota v. University of Texas Houston Health Science Ctr.*, 261 F.3d 512 (5th Cir. 2001) ............13

*In re Nissan Antitrust Litigation*, 577 F.2d 910 (5th Cir. 1978), *cert. denied*, 439 U.S. 1072 (1979)...............................................................................................................................15

*Norton v. International Harvester Co.*, 89 F.R.D. 395 (E.D. Wis. 1981) ....................................15

*In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449 (3d Cir. 2000) .............................................1

*Rivera v. NIBCO, Inc*, 364 F.3d 1057 (9th Cir.), *aff'd*, 384 F.3d 822 (2004), *cert. denied sub nom. NIBCO, Inc. v. Rivera*, 544 U.S. 1603 (2005)...........................................................5

*Ryther v. KARE 11*, 864 F. Supp. 1525 (D.Minn. 1994) .............................................................11

*Sandoval v. Hagan*, 7 F. Supp. 2d 1234 (M.D. Ala. 1998), *aff'd*, 197 F.3d 484 (11th Cir. 1999), *rev'd on other grounds sub nom. Alexander v. Sandoval,* 532 U.S. 275 (2001) ...........3

*Servidone Constr. Corp. v United States*, 20 Cl Ct 725, 732 (Cl. Ct. 1990) ...............................17

iv

*Singleton v. Department of Correctional Education*, 2003 WL. 22299039
    (W.D. Va. Oct. 3, 2003)...................................................................................1

*Stanley v. University of Southern California*, 178 F.3d 1069, 1079-80 (9th Cir. 1999)...................6

*Sunrich Food Group, Inc. v. Pacific Food of Oregon, Inc.*, No. 05-35152, No. 05-36171,
    207 Fed.Appx.745, 752 (9th Cir. Oct. 12, 2006) ...........................................11

*Terry v. Allstate Insurance Co.*, No. Civ. S-05-2261 RRB DAD, 2007 U.S. Dist. LEXIS
    81051 (E.D. Cal. Oct. 31, 2007) ...................................................................13

*Treaster v. Healthsouth Corp.*, 505 F. Supp. 2d 898 (D.C. Kan. 2007) .......................................17

*Washington State Department of Transportation v. Washington Natural Gas Co.*,
    *Pacificorp*, 59 F.3d 793 (9th Cir. 1995)........................................................10

*Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926 (7th Cir. 1997) .......................................10

*Yniguez v. Arizonans for Official English*, 69 F.3d 920 (9th Cir. 1995), *vacated on other
    grounds,* 520 U.S. 43 (1997).........................................................................3

## FEDERAL STATUTES

28 U.S.C. § 1821 ...........................................................................................................................18

28 U.S.C. § 1821 (c)(1)........................................................................................................14, 18, 19

28 U.S.C. § 1821 (c)(2)..............................................................................................................14

28 U.S.C. 1821(d) ......................................................................................................................19

28 U.S.C. § 1821(2) ....................................................................................................................19

28 U.S.C. § 1920..............................................................................................................13, 16, 17

28 U.S.C. § 1920(2) ......................................................................................................................9

28 U.S.C. § 1920(3) ...............................................................................................................17, 18

28 U.S.C. § 1920(4) .....................................................................................................................16

Fed.R.Civ.P. 54(d)(1).............................................................................................................1, 9, 13

## OTHER AUTHORITIES

Behm, Lisa L., *Protecting Linguistic Minorities Under Title VII: The Need for Judicial Deference to the EEOC Guidelines on Discrimination Because of National Origin,* 81 Marq. L. Rev. 569 (1998) ....................................................................3

Brooks, Carrasco, and Selmi, *Civil Rights Litigation:  Cases and Perspectives* (3d ed., Carolina Academic Press, 2005).................................................................5

Cutler, Stephen M. A Trait-Based Approach to National Origin Claims Under Title VII, 94 Yale L.J. 1164 (1985) ........................................................................3

Cornell,  Drucilla & William W. Bratton, *Deadweight Costs and Intrinsic Wrongs of Nativism: Economics, Freedom, and Legal Suppression of Spanish,* 84 Cornell L. Rev. 595 (1999) ......................................................................................3

Friedman, *The Law of Employment Discrimination:  Cases and Materials* (6th ed., Foundation Press, 2007/2008) .....................................................................5

Matsuda, Mari J., .*Voices in America: Accent, Antidiscrimination Law, and a Jurisprudence for the Last Reconstruction,* 100 Yale L.J. 1329 (1991)..................3

Perea, Juan F., *Buscando América: Why Integration And Equal Protection Fail To Protect Latinos,* 117 Harv. L. Rev. 1420 (2004) .......................................3

Perea, Juan F.,  *Ethnicity and Prejudice: Reevaluating "National Origin" Discrimination Under Title VII,* 35 Wm. & Mary L. Rev. 805, 860 (1994).......................................3

**INTRODUCTION**

On December 5, 2008, defendant Nibco, Inc. submitted a bill of costs in this matter. Docket No. 700.  Plaintiffs submitted their opposition thereto and supporting papers on December 22, 2008 (Docket Nos. 704-15).  On October 7, 2009, during the pendency of plaintiffs' appeal from the judgment herein, the Clerk of the Court acted on Nibco's cost bill, taxing a total of $84,434.40 to the plaintiffs.  Docket No 739.[1]

As plaintiffs pointed out in their opposition to the cost bill, Nibco sought payment for expenses that are plainly not compensable under Rule 54(d) and that, under well-established Ninth Circuit authority, simply should not be awarded in any event in the interests of fairness and equity, given the nature of this case.  Accordingly, plaintiffs respectfully request that this Court revisit the Clerk's determination and deny Nibco's cost bill in full for the reasons set forth below.

The district court reviews the clerk's taxation of costs *de novo;* the Clerk's calculations are entitled to no deference.  *In re Paoli R.R. Yard PCB Litigation,* 221 F.3d 449, 461 (3d Cir. 2000); *ASIS Internet Services v. Optin Global, Inc.,* 2008 WL 5245931, *3 (N.D. Cal. 2008); *Hiller v. United States*, 2008 WL 449846, *3 (N.D. Cal. 2008).

## I.     AN AWARD OF COSTS IN THIS CASE WOULD BE INEQUITABLE AND COUNTER TO NINTH CIRCUIT PRECEDENT.

It is well established in this Circuit that district courts have the authority to deny an award of costs to prevailing defendants if such awards would be inequitable.  Among other things, it is within the court's discretion to refuse to award costs where the case involves issues of substantial public importance; the losing party has limited financial resources; there is great economic disparity between the plaintiffs and the defendants; the issues in the case are close and difficult;

---

[1]     Because of the pendency of the appeal in this matter, Docket No. 724, the decision to proceed with taxation of costs or to defer such taxation pending that appeal is at the discretion of the district court. *See, e.g., Am. Infra-Red Radiant Co. v Lambert Indus., Inc.*, 41 F.R.D. 161, 163-64 (D. Minn. 1966), *Singleton v. Dept. of Correctional Education,*2003 WL 22299039, *1 (W.D. Va. Oct. 3, 2003).  In the interests of judicial economy, therefore, this Court may choose to defer the adjudication of this motion until the Ninth Circuit has decided whether the retrial sought by the plaintiffs will be granted.

1    and where there may be a "chilling effect" on future civil rights litigants of imposing high costs.

2    *See, e.g., Association of Mexican-American Educators v. State of California*, 231 F.3d 572, 592

3    (9th Cir. 2000) ("*AMAE*").

4        Because each of those elements is present in this case, plaintiffs request that the Court

5    deny Nibco's requested costs in their entirety.

6    **A.    The Issues Presented In This Case Are Of "Substantial Public Importance."**

7        **1.    Language Discrimination Is A Civil Rights Concern of
            Well-Established Importance.**

9        "In the Civil Rights Act of 1964, Congress indicated that it considered the policy against

10   discrimination to be of the 'highest priority." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47

11   (1974) (citations omitted).  This case, which like all civil rights litigation was brought as a

12   challenge to practices that unfairly burdened members of historically subordinated groups,

13   sought to address an employment policy alleged to *exclusively* impact persons of Hispanic and

14   Asian national origins without the mitigating benefit of any business necessity.  As such, the

15   importance of vindicating the civil rights of the plaintiffs in this matter cannot be gainsaid.

16       Moreover, this litigation sought to redress a particularly pernicious form of

17   discrimination – language-based discrimination, which is typically more subtle than overt

18   national origin discrimination yet just as harmful in its effects, if not more so.  Although

19   language discrimination in the workplace may in some cases have a veneer of legitimacy due to

20   its asserted business rationales and because it does not *facially* single out protected individuals,

21   its significance as a species of discrimination is beyond dispute.  Countless courts at every level

22   of the federal judicial system have recognized both the close nexus between national origin and

23   language,[2] and the concomitant need to closely scrutinize instances of language-based

24       [2]    *See, e.g., Hernandez v. New York*, 500 U.S. 352, 371-72 (1991) ("It may well be, for certain
25   ethnic groups and in some communities, that proficiency in a particular language, like skin color, should
     be treated as a surrogate for race under an equal protection analysis."); *Lau v. Nichols*, 414 U.S. 563, 568-
26   69 (1974) (holding that failure to provide educational assistance to non-English-speaking students
     constituted national origin discrimination under Title VI of the Civil Rights Act); *Espinoza v. Farah Mfg.*
27   *Co.*, 414 U.S. 86, 92-93 and n.5 (1973) (finding no evidence of discrimination against persons of Mexican
     national origin, Court noted there was "no suggestion, for example, that the company refused to hire
28   aliens of Mexican or Spanish-speaking background while hiring those of other national origins");
     *Hernandez v. Texas*, 347 U.S. 475, 480 n.12 (1954) ("just as persons of a different race are distinguished

discrimination.  *See, e.g., Yniguez v. Arizonans for Official English*, 69 F.3d 920, 948 (9th Cir. 1995), *vacated on other grounds,* 520 U.S. 43 (1997) ("Since language is a close and meaningful proxy for national origin, restrictions on the use of languages may mask discrimination against specific national origin groups or, more generally, conceal nativist sentiment"); *Fragante v. City and County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989) ("Accent and national origin are obviously inextricably intertwined in many cases. It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem, but the candidate's inability to measure up to the communications skills demanded by the job.  We encourage a very searching look by the district courts at such a claim.").[3]

Unsurprisingly, the U.S. Equal Employment Opportunity Commission, the agency charged by Congress with interpreting and enforcing Title VII, has long recognized the scope and seriousness of language discrimination in the workplace, and has assigned it great importance in its national enforcement plan.  For example, the EEOC has long prioritized efforts

---

by color, these Spanish names provide ready identification of the members of this class" of Mexican-Americans).  For an extensive discussion of other authorities affirming the link between language and national origin, *see Sandoval v. Hagan*, 7 F.Supp.2d 1234, 1278-82 (M.D. Ala. 1998), *aff'd*, 197 F.3d 484 (11th Cir. 1999), *rev'd on other grounds sub nom. Alexander v. Sandoval*, 532 U.S. 275 (2001).

[3]     Numerous commentators have argued for the specification of language-based discrimination as a category of discrimination coequal to those originally enumerated by Title VII.  *See, e.g.,* Juan F. Perea, Ethnicity and Prejudice: Reevaluating "National Origin" Discrimination Under Title VII, 35 Wm. & Mary L. Rev. 805, 860 (1994); Lisa L. Behm, Protecting Linguistic Minorities Under Title VII: The Need for Judicial Deference to the EEOC Guidelines on Discrimination Because of National Origin, 81 Marq. L. Rev. 569 (1998) (proposing that Congress facilitate judicial deference to the EEOC guidelines by amending Title VII to prohibit discrimination on the basis of language); Drucilla Cornell & William W. Bratton, Deadweight Costs and Intrinsic Wrongs of Nativism: Economics, Freedom, and Legal Suppression of Spanish, 84 Cornell L. Rev. 595 (1999) (recommending expansion of Title VII protection).  *See also* Mari J. Matsuda, Voices in America: Accent, Antidiscrimination Law, and a Jurisprudence for the Last Reconstruction, 100 Yale L.J. 1329 (1991) (arguing for greater Title VII scrutiny of discrimination based on accent); Stephen M. Cutler, A Trait-Based Approach to National Origin Claims Under Title VII, 94 Yale L.J. 1164 (1985) (arguing that national origin discrimination is manifested more through its focus on the characteristics of national origin groups, notably their linguistic characteristics, than upon the fact of the national origin itself); Juan F. Perea, Buscando América: Why Integration And Equal Protection Fail To Protect Latinos, 117 Harv. L.Rev. 1420 (2004) (discussing linguistic discrimination against Spanish speakers and inadequacy of existing legal framework in remedying it).

against workplace "speak-English only" policies, one common form of language discrimination. *See, e.g.,* Sept. 1, 2000 EEOC press release announcing settlement of English-only case against a manufacturing plant (stating that "[c]ases involving language issues, accent discrimination, and restrictive language policies or practices are a strategic enforcement priority for the Commission")[4]; Sept. 19, 2000 EEOC press release announcing settlement of English-only case against a telephone operator service ("Cases involving English-only rules, restrictive language policies, and language or accent discrimination are litigation priorities for the Commission. Employers must refrain from targeting workers for discrimination based on myths, fears, and stereotypes regarding their primary language and country of origin.")[5]; April 20, 2001 EEOC press release announcing settlement of class action against a private university concerning workplace English-only rule ("For more than 15 years, the EEOC has taken the firm position that English-only rules run afoul of Title VII . . . This settlement should put other employers on notice that the EEOC is committed to rooting out discrimination against low-wage earners, language minorities, and other groups most vulnerable to civil rights abuses", and also noting a nearly 500% increase in English-only charges during 1996-2000 period).[6]  Moreover, the EEOC has followed the progress of this litigation since its inception at its Washington headquarters and San Francisco district office, and sent its attorneys to observe the trial proceedings.  *See*

---

[4]    Press Release, EEOC, September 1, 2000, *available at*, http://www.eeoc.gov/press/9-1-00.html, attached as Exhibit A to Declaration of Christopher Ho in Support of Plaintiffs' Oppositions to Defendant's Cost Bill ("Ho Decl."), previously filed (Docket No. 710).

[5]    Press Release, EEOC, September 19, 2000, *available at*, http://www.eeoc.gov/press/9-19-00.html, appended as Exhibit B to Ho Decl.

[6]    Press Release, EEOC, April 20, 2001, *available at*, http://www.eeoc.gov/press/4-20-01.html, appended as Exhibit C to Ho Decl.

Other, more recent EEOC statements concerning its language discrimination litigation and its significance can be found online at http://www.eeoc.gov/press/9-30-02-c.html ("[English-only] policy and its implementation is a form of national origin discrimination, which violates Title VII"); http://www.eeoc.gov/press/7-18-03a.html ("The settlement [of English-only case] should send a strong message to employers in Colorado and across the country that we expect companies to think long and hard before implementing rules that may discriminate against those who speak languages other than English"); and http://www.eeoc.gov/press/4-14-09.html ("[a]s our country's workforce becomes increasingly diverse, employers must be vigilant in ensuring that if English-only rules are necessary, they are not discriminatory...National origin discrimination is an abomination to our country, which was founded by immigrants and has prospered from welcoming immigrants.").

Declaration of Christopher Ho in Support of Plaintiffs' Oppositions to Defendant's Cost Bill ("Ho Decl."), ¶ 5, previously filed (Docket No. 710).

Due not only to its being a civil rights case, but also because of its focus on the widely-recognized problem of language-based discrimination in the workplace, this litigation is clearly of "substantial public importance."  Particularly at a time when instances of this subtler, yet equally harmful form of workplace bias are steeply rising in number as the demographics of this nation continue to change, this case addressed an issue that is sure to become an even more prominent concern in the coming years.

**2.    The Issues Involved In Resisting Nibco's Immigration-Related Discovery Attempts Raised Significant Questions Of First Impression For Resolution By The Ninth Circuit.**

Nearly four years of this case were devoted almost exclusively to litigating against Nibco's persistent and vigorous efforts to discover the immigration status of the plaintiffs. Although the determination of that question was plainly not among the reasons this case was initially brought, the fact remains that this case, by force of events, also became one about the rights of undocumented workers.  Indeed, it led to the issuance in 2004 of a decision by the Ninth Circuit, beneficial to the plaintiffs, that was the first by any U.S. Court of Appeals to interpret *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), a decision that had raised substantial debate and ambiguity with respect to the continued right and practical ability of undocumented workers to assert longstanding statutory protections against workplace discrimination.  *See Rivera v. NIBCO, Inc*, 364 F.3d 1057 (9th Cir.), *aff'd*, 384 F.3d 822 (2004), *cert. denied sub nom. NIBCO, Inc. v. Rivera*, 544 U.S. 1603 (2005).  According to Westlaw, as of today's date the Ninth Circuit's opinion has been cited by over 70 federal courts and in excess of 160 law review articles, practice guides, and other secondary sources; in addition, it appears or is otherwise referred to in several casebooks.[7]

---

[7]    *See, e.g.,* Brooks, Carrasco, and Selmi, Civil Rights Litigation:  Cases and Perspectives (3d ed., Carolina Academic Press, 2005); Friedman, The Law of Employment Discrimination:  Cases and Materials (6th ed., Foundation Press, 2007/2008).

Because of the significance of the Ninth Circuit's opinion to the evolving decisional law concerning the rights of immigrant workers, this litigation is of "substantial public importance" for that reason as well.

### B.    The Plaintiffs Have Limited Financial Resources, and the Economic Disparity Between The Parties is Severe.

It is well established that district courts should take the losing party's financial resources into account when deciding whether to award costs to a prevailing defendant.  *See, e.g., AMAE* at 592-93 (upholding district court's decision to not award costs in Title VII case, court noted that "[t]he record demonstrates that [the plaintiffs'] resources are limited."); *Stanley v. University of Southern California*, 178 F.3d 1069, 1079-80 (9th Cir. 1999) ("[d]istrict courts should consider the financial resources of the plaintiff and the amount of costs in civil rights cases.").  In particular, it is not necessary to find that the plaintiffs in question are *currently* indigent; rather, the proper inquiry is whether an award of costs might *make* them so.  *Stanley*, 178 F.3d at 1079-80 (referring to the possibility that the plaintiff "would be rendered indigent should she be forced to pay" the amount assessed against her).  A district court in this District has, accordingly, held in a Title IX case against the University of California that costs should not be awarded, citing to their "limited financial resources" and noting that they were students who were barely able to cover their monthly living expenses.  *Mansourian v. Board of Regents of the Univ. of California at Davis*, 566 F.Supp.2d 1168, 1171 (E.D.Cal. 2008).

In the same connection, the courts have looked to the financial disparity between the parties in considering whether an award of costs in civil rights cases would be just and equitable. *See, e.g., AMAE*, 231 F.3d at 592 (denial of costs appropriate where there exists *inter alia* a great economic disparity between the plaintiffs, who were individuals and small nonprofit educational organizations, and the defendants); *Mansourian*, 566 F.Supp. at 1171 (denying costs where there is "a significant economic disparity between plaintiffs and defendants.").

The plaintiffs in this case are, and have long been, low wage workers, employed in hourly jobs, who do not have the substantial financial resources to pay the requested cost bill.  *See* Declaration of Carole Vigne In Support of Plaintiffs' Opposition to Defendant's Bill of Costs

("Vigne Decl."), previously filed (Docket Nos. 705, 707-10), ¶¶ 5-30.  By way of illustration, in the Fresno metropolitan statistical area ("Fresno MSA"), it is probable that the plaintiffs' average incomes for the past several years would place them in the "low income," if not the "very low income," classifications used by the U.S. Department of Housing and Urban Development ("HUD").[8]  An award of costs against them, let alone the full amount sought by Nibco, would not only be unjust and inequitable but, indeed, punitive in nature and effect.

This is particularly so given the immense difference in the plaintiffs' economic resources as compared to those of defendant Nibco.  Among other things, Nibco is a multinational corporation that operates 12 manufacturing plants, and additional "global distribution and plant shipping facilities," in both the United States as well as in Mexico and Poland.[9]  In 1999, the last year for which Nibco's annual reports were produced in discovery,[10] its net income surpassed $22 million.  Vigne Decl., ¶¶ 31-32.  And, in fiscal year 2008, Nibco reported sales of $590.2 million.  Nibco Inc. company profile, Hoover's, Inc., 2008, available online at http://www.answers.com/topic/nibco-inc. (accessed October 14, 2009).

This is precisely the type of economic disparity that the courts have found to militate against an award of costs in civil rights cases.  *See, e.g., AMAE*, 231 F.3d at 592; *Mansourian*, 566 F.Supp.2d at 1171 (contrasting the resources of the student-plaintiffs with the "substantial budget" of the defendant).  Under such circumstances, this Court should decline to award Nibco's requested costs.

**C.**    **The Issues In This Case Were "Close And Difficult."**

As should be apparent from the sheer length of this litigation, the plaintiffs' claims presented serious issues worthy of close consideration.  No pretrial motion to dismiss was brought, and the Court found the key factual issues to be so disputed as to deny both parties'

---

[8]    2008 Adjusted Home Income Limits, State: California, U.S. Department of HUD, Feb. 2008, *available at*, http://www.hud.gov/offices/cpd/affordablehousing/programs/home/limits/income/2008/ca.pdf.

[9]    FAQs, NIBCO, Inc., *available at*, http://www.nibco.com/cms.do?id=124.

[10]    Because Nibco is not a publicly traded company, more recent financial information is not available to the plaintiffs.

motions for summary judgment.  And as this Court is well aware, the legal issues – notably

including those presented via motions in limine, as well as those requiring decision due to the

novel questions posed by a jury trial of an FEHA adverse impact claim -- necessitated extensive

argument and the interpretation of often disputed and arguably ambiguous authorities.  Far from

lacking legal or factual merit, this case presented extremely substantial and difficult issues, many

of evident first impression, making clear that the matters presented herein fully warranted the

vigorous litigation that followed its filing in 1999.

> **D.     An Award Of Costs In This Case Would Have A Serious "Chilling Effect" On Future Civil Rights Litigants.**

Finally among the *AMAE* factors, were Nibco to be granted its cost bill, the message that

would be sent to potential plaintiffs in future cases, particularly those involving low-wage

immigrant plaintiffs, would be that it would simply be too risky to participate in a case seeking to

vindicate their civil rights.  Because the plaintiffs in this case are far from being able to afford

paying any cost award, such an award would send the signal that as a practical matter,

meaningful access to the legal system would be uncertain and the consequences of failure

potentially devastating.  A decision to impose costs upon the plaintiffs would, therefore, have

unfortunate ramifications going far beyond this case itself.  *AMAE*, 231 F.3d at 593; *Mansourian*,

566 F.Supp.2d at 1171-72 (cost award "would lead to a harsh result that could chill student

litigants from vindicating important rights under Title IX.").  In fact, inasmuch as the plaintiffs'

liability for the costs may be joint and several, it would likely be the case that those plaintiffs

believed to have more attachable assets would be the targets of selective cost bill enforcement

efforts, such that as a practical matter they would be at disproportionately far greater financial

risk than their fellow plaintiffs.  Any notion of an "average" cost assessment per plaintiff – even

though such a hypothetical "average" figure would be a substantial burden for each plaintiff in

any case --  would bear no relationship to the reality of actual enforcement efforts.

1  For the above reasons, each one of the *AMAE* factors counseling against an award of

2  costs are present.  For that reason, as well as for reasons of fairness and equity, Nibco's

3  requested costs should be denied in their entirety.

4

5  ## II.    THE MAJORITY OF THE COSTS CLAIMED BY DEFENDANT ARE NOT COMPENSABLE UNDER RULE 54(d).

6      Should the Court nonetheless determine that Nibco is entitled to an award of costs,

7  Defendant's cost bill should be reduced by the amounts not properly taxable under Rule 54(d), as

8  set forth below.  Defendant has the burden of proof on costs.  *See English v. Colorado Dept. of*

9  *Corrections*, 248 F.3d 1002, 1013 (10th Cir. 2001); *Alaniz v. Robert M. Peppercorn, M.D., Inc.*,

10  No. 2:05-cv-02576-MCE-DAD, 2008 U.S. Dist. LEXIS 71107 (E.D. Cal. Aug. 8, 2008).  Nibco

11  has claimed various categories of costs that should be denied in their entirety.

12      With one exception, it is not reasonably possible to discern from the Clerk's annotated

13  bill of costs the specific cost items for which it made its downward adjustments to Nibco's

14  submitted costs.[11]  For that reason, plaintiffs resubmit their arguments with respect to all other

15  areas of costs that they initially opposed in their December 22, 2008 submission.

16

17  ### B.    At Most, Defendant Should Only Be Awarded The Deposition Costs Of Witnesses Who Actually Testified At Trial.

18      The costs of deposition transcripts may be recoverable only upon a showing by the party

19  seeking costs that they were "necessarily obtained for use in the case."  *See* 28 U.S.C. § 1920(2).

20  The Ninth Circuit has held that deposition costs are taxable if they are "*reasonably necessary for*

21  *trial*."  *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998) (emphasis added); *see also*

22  *Ferreira v. M/V CCNI Antofagasta*, No. 2:04-cv-1916-MCE-DAD, 2007 U.S. Dist. LEXIS

23  76767, *4-7 (E.D. Cal. Oct. 15, 2007) (citing *Evanow*).

24      Nibco's deposition costs relating to witnesses who testified at trial improperly include

25  categories of non-compensable expenses incurred merely for its own convenience.  Moreover,

26

27  [11]   Plaintiffs believe that the Clerk's reduction of $3208.12 in the category of "Fees for witnesses"
may correspond to witnesses who did not testify at trial, *see* Docket No. 706 ("Plaintiffs' Objections to
28  Defendant's Bill of Costs"), 14:13-22.  Based upon that assumption, plaintiffs do not dispute the Clerk's
determination in that regard.

Nibco has failed to demonstrate that deposition costs other than those of witnesses who testified at trial were reasonably necessary.  Therefore, this Court should exercise its discretion to disallow these costs.

### 1.   Deposition costs of witnesses who testified at trial.

Although Nibco may seek the deposition costs of witnesses who actually testified at trial, its invoices in this regard reveal numerous instances of costs that are inappropriately sought.  *See* Plaintiffs' Objections to Defendant's Exhibit "A" (Depositions of Witnesses Testifying at Trial), Exhibit Z to Vigne Decl..  As enumerated by plaintiffs, the following costs should be disallowed:

- Deposition costs of **Randy Cates**, who did not in fact testify at trial;
- Deposition costs that were not necessary but were for Nibco's mere convenience, including but not limited to condensed transcripts, index pages, expedited preparation and delivery of deposition transcripts, and costs occurred in obtaining disks such as ASCII disks;[12]
- Costs associated with audiotaping or videographing the deposition (*see infra*, Section II.B).

*See* Exh. Z, Vigne Decl.

Nibco cannot demonstrate why such costs, over and beyond the costs of the transcription itself, were reasonably necessary for trial, as required by the law of this Circuit.  *See Evanow,* 163 F.3d at 1118, *supra*.  Therefore, Nibco's bill of costs should be reduced by the amount of **$13,014.24**.  *See* Exh. Z, Vigne Decl.

### 2.   Depositions "used in connection with motions for summary judgment."

The Ninth Circuit has held that trial courts have the discretion to disallow the costs of depositions not used at trial.  *Washington State Dep't of Transportation v. Washington Natural*

---

[12]   *See, e.g., Hill v. BASF Wyandotte Corp.*, 547 F.Supp. 348, 352 (E.D.Mich. 1982) (no showing of need for expedited deposition transcript); *Javetz v. Board of Control, Grand Valley State Univ.*, 164 F.R.D. 447, 448 (W.D.Mi. 1996) (cost of expedited preparation of transcripts, albeit helpful to counsel, was not reasonably necessary); *Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926, 946 n. 11 (7th Cir. 1997) (noting that party seeking costs had acknowledged it was not entitled to costs incurred in obtaining ASCII disks of the deposition transcripts, the expense of which was disallowed by the district court).

1  *Gas Co., Pacificorp,* 59 F.3d 793, 806 (9th Cir. 1995) (affirming district court's denial of a

2  portion of defendants' bill of costs requesting costs of depositions not used at trial and holding

3  that such disallowance was within the district court's discretion).[13]

4      Depositions that are merely useful for discovery but not used at trial are not properly

5  taxable and therefore constitute expenses that should be borne by the party taking the deposition,

6  as incidental to normal preparation for trial.  *Independent Iron Works, Inc. v. U.S. Steel Corp.*,

7  322 F.2d 656, 678 (9th Cir. 1963) (stating that "[i]f the depositions were merely useful for

8  discovery then they were not taxable items" but noting that defendants had used deposition

9  transcripts at trial for impeachment purposes).

10      Indeed, numerous district courts have found that the actual use of the deposition

11  transcript at trial is the most direct evidence that it was reasonably necessary.  *See, e.g., Ryther v.*

12  *KARE 11*, 864 F.Supp. 1525, 1534 (D.Minn. 1994); *George R. Hall, Inc. v. Superior Trucking*

13  *Co.*, 532 F.Supp. 985, 994 (N.D.Ga. 1982) ("costs incurred for the convenience of a party, for

14  the purposes of investigation, or simply to aid a party in a more thorough preparation of the case,

15  are not recoverable").

16      Here, Nibco relies on the motions for summary judgment to seek the costs of depositions

17  not actually used at trial.  Its reliance, however, is misplaced.  The cases Nibco relies upon,

18  *Javetz v. Board of Control, Grand Valley State Univ.*, and *Kaimowitz v. Howard*, are

19  distinguishable on both procedural and factual grounds.  In *Javetz,* the court found that

20  defendants had "explained why each" of the depositions was deemed "reasonably necessary."

21  164 F.R.D. 447, 448 (W.D.Mich. 1996).  Similarly, *Kaimowitz* only stands for the proposition

22  that depositions "*may* be reasonably necessary" if they are used in connection with a *successful*

23  summary judgment motion.  547 F.Supp. 1345, 1353 (E.D.Mich. 1982).  In the case at bar,

24  Nibco has made no such individual showing of why *each* deposition was "reasonably necessary."

25  Furthermore, in *Javetz* and *Kaimowitz*, because the successful summary judgment motions – like

26      [13]  A more recent but unpublished Ninth Circuit case reaffirms this principle.  *See Sunrich Food*

27  *Group, Inc. v. Pacific Food of Oregon, Inc.*, No. 05-35152, No. 05-36171, 207 Fed.Appx.745, 752 (9th
Cir. Oct. 12, 2006) (upholding district court's ruling that disallowed costs associated with discovery

28  depositions not used at trial).

a jury verdict – disposed of claims, it would have been nonsensical for the courts to put form over substance by allowing costs only if the depositions were used at a trial that was moot. Consequently, both cases have no real bearing on a situation like the one here, where the cross-motions for summary judgment were *denied* and the case proceeded to trial – and where this Court may thus view the fact that the deposition transcripts were not used by Nibco *at trial* as the most direct evidence that they were not reasonably necessary.

As Nibco acknowledges, all depositions – except for one – in this category were noticed by plaintiffs, and not by itself.  At best, Nibco can only establish that these depositions were useful for *plaintiffs'* fact discovery in this case – an insufficient basis to award it costs under the law of this Circuit.

Therefore, Nibco should be awarded no deposition costs in connection with the unsuccessful motions for summary judgment.  Nibco's bill of costs in this regard should be reduced by the amount of **$4,844.30**.[14]  *See* Plaintiffs' Objections to Defendant's Exhibit "B" (Depositions of Witness Testimony Used in Connection with Motions for Summary Judgment), Exh. AA, Vigne Decl.

### 4.    Other depositions "taken in the course of this case."

Nibco also attempts to slip through the back door the costs for other depositions that were not actually used at trial, through the catchall phrase, depositions "taken in the course of this case."  It  similarly fails to establish that such depositions were reasonably necessary for trial. *See Evanow*, 163 F.3d at 1118, *supra*.  Indeed, Nibco readily admits that many of the individuals whose depositions fall under this category of costs were deposed because they "may have had knowledge related to issues in the case."  Defendant Nibco, Inc.'s Memorandum of Points and Authorities in Support of Cost Bill ("Memo in Support of Cost Bill"), Docket No. 701, at 4:2-4. Such depositions used merely for the purposes of discovery are not properly taxable.  *See Independent Iron Works,* 322 F.2d at 678, *supra*.

---

[14]    Should the Court decide to award this category of deposition costs, certain itemized costs from these invoices should nevertheless be disallowed to the extent they include miscellaneous expenses that were not reasonably necessary, including but not limited to itemizations such as laser reproduction, expedited handling or delivery charges, diskettes, or condensed transcripts.  *See* section II.A.1., *supra*.

Therefore, Nibco should not recover any costs for other depositions "taken in the course of this case." Nibco's bill of costs in this regard should be reduced by the amount of **$7,629.65**.[15] *See* Plaintiffs' Objections to Defendant's Exhibit "C" (Other Depositions in the Course of this Case), Exh. BB to Vigne Decl.

### C.    Videotaped Deposition Costs Should Not Be Allowed.

The types of costs allowable under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441-442 (1987). Costs not listed in § 1920 may not be taxed to the non-prevailing party unless they are specifically authorized by some other statute or by contract. *Id.* at 440. Although the Ninth Circuit has not ruled on the issue of recovering the cost of videotaped depositions in addition to stenographic transcription, the Fifth Circuit has held that videotaped depositions are not enumerated as allowable costs in § 1920 and are therefore not taxable. *See Mota v. University of Texas Houston Health Science Ctr.*, 261 F.3d 512, 529-530 (5th Cir. 2001) (finding trial court abused discretion in taxing cost of videotaped deposition).

Moreover, under 28 U.S.C. § 1920, the costs of videotaped depositions are only recoverable upon a showing that they were "necessary." The Fourth Circuit has held that only the cost of the deposition transcript was taxable where there was no showing that videotaping was "necessary." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 449 (4th Cir. 1999). Similarly, courts in the Eastern District have found that a party may not recover costs incurred for *both* videotaping a deposition and obtaining a stenographic transcript, but may only recover costs for the stenographic transcript itself. *See, e.g., Terry v. Allstate Ins. Co.*, No. Civ. S-05-2261 RRB DAD, 2007 U.S. Dist. LEXIS 81051 *9-10 (E.D. Cal. Oct. 31, 2007) (party seeking costs failed to provide a rationale justifying why deposition videotape and stenography were both "necessary," which requires a showing beyond convenience or duplication to ensure alternative

---

[15]    Should the Court decide to award this category of deposition costs, certain itemized costs from these invoices should nevertheless be disallowed to the extent they include miscellaneous expenses that were not reasonably necessary, including but not limited to itemizations such as audio tape reproduction, expedited handling or delivery charges, diskettes, condensed transcripts, "min-u-scripts," word index pages, and CCP Sec. 2025 fees.

methods of presenting materials at trial).

*Davis v. Puritan-Bennett Corp.*, the sole case on which Nibco relies, is distinguishable. In *Davis*, the district court's own deposition guidelines *required* that videotaped depositions be simultaneously recorded through stenographic means.  923 F.Supp.179, 180 (D.Kan. 1996).  The district court in *Davis* further acknowledged that its own guidelines also explicitly allowed subsequent taxation of videotaped depositions.  *Id.* at 181.  In contrast, here, Nibco was not required to take depositions *both* by videotape and stenography; and although it is required to show why it was necessary in addition to the stenographic transcript to videotape depositions (of plaintiffs, Doug Kieper, and Connie Hitt, who all appeared at trial and for whom not a single video deposition clip was shown), it has not so demonstrated.  Nibco's choice to videotape the depositions for reasons of strategy or convenience does not meet the standard of reasonable necessity allowing the recovery of costs.

Thus, this Court should deny the award of costs for any of the videotaped depositions. Nibco's bill of costs should be reduced by the total amount claimed for this expense, **$10,298.84.** *See* Plaintiffs' Objections to Defendant's Exhibit "D" (Videotape Recording of Depositions), Exh.CC, Vigne Decl.

### D.    <u>Witness Fees Are Presumptively Capped at $40 Per Day, and Defendants Have Not Submitted Receipts Showing Greater Travel Costs Actually Incurred.</u>

Witness fees are limited by the statutory cap defined in 28 U.S.C. § 1821 (c)(2), currently $40 per diem.  *See* 28 U.S.C. § 1831 (c)(2); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 442 (1987); *Evanow*, 163 F.3d at 1118.  Nibco's invoices, however, charge amounts in excess of $40, as attributable to reimbursement for *estimated* travel.  This is improper under 28 U.S.C. § 1821, which only allows recovery for travel costs actually incurred, and requires receipts of such costs to be attached.  28 U.S.C. § 1821 (c)(1) ("[a] receipt or other evidence of actual cost [of traveling on a common carrier] shall be furnished").

Therefore, Nibco's bill of costs as to witnesses who testified at trial should be reduced by the amount in excess of $40 per witness, for a total reduction of **$783.00.**  *See* Plaintiffs'

Objections to Defendant's Exhibit "E" (Witness Fees: Testimony at Trial), Exh. DD, Vigne

Decl.

### E.    Daily Trial Transcripts Should Not Be Recoverable As Costs.

Daily copies of trial transcripts must be indispensable to both counsel *and* the Court,

rather than merely for the attorney's convenience, in order to be recoverable as costs. *See*

*Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994) (per curiam); *Manildra Milling*

*Corp. v. Ogilvie Mills, Inc.,* 76 F.3d 1178, 1184 (Fed. Cir. 1996).  As Nibco itself has

acknowledged [Memo in Support of Cost Bill, at 4], the cost of daily trial transcripts is ordinarily

*not* recoverable without court approval obtained prior to trial.  *Manildra,* 76 F.3d at 1184.  The

lack of prior approval may only be overcome by a showing that the case was complex and the

daily trial transcripts were invaluable to *both* counsel and the court.  *Id.* (finding daily transcripts

were invaluable to both the court and parties where transcripts helped to focus the issues, avoid

repetitive testimony, and expedite the trial).

Moreover, counsel's use of the trial transcript alone is not sufficient to demonstrate it was

invaluable to both counsel and the court.  *See, e.g., McIlveen v. Stone Container Corp.*, 910 F.2d

1581, 1584 (7th Cir. 1990) (affirming trial court's refusal to allow costs even when counsel

utilized trial transcript to verify witness credibility at trial); *John G. v. Board of Ed. of Mount*

*Vernon Pub. Schools*, 891 F.Supp.122, 123 (S.D.N.Y. 1995) (daily trial transcripts were not

taxable where prior testimony could have been adequately referenced without the use of the

transcripts and there was no need to refer to precise language of witnesses); *Norton v.*

*International Harvester Co.*, 89 F.R.D. 395 (E.D. Wis. 1981) (daily transcripts were "helpful"

but a "relative luxury" not necessary for trial).  *See also Brumley Estate v. Iowa Beef Processors,*

*Inc.*, 704 F.2d 1362, 1363 (5th Cir. 1983) (affirming disallowance of daily transcript for

convenience of counsel); *In re Nissan Antitrust Litigation*, 577 F.2d 910 (5th Cir. 1978) (abuse

of discretion to award costs for daily transcript), *cert. denied*, 439 U.S. 1072 (1979); *Admiral*

*Theatre Corp. v. Douglas Theatre Corp.*, 585 F.2d 877 (8th Cir. 1978) (finding abuse of

discretion where district court allowed costs for daily transcript); *Ferreira*, 2007 U.S. Dist.

LEXIS 76767 at *4-5 (the party seeking costs failed to provide appropriate justification for the

1  expense of daily transcripts);  *Hill v. BASF Wyandotte Corp.*, 547 F. Supp. 348, 353

2  (E.D.Mich.1982) (daily transcript disallowed because no prior court approval).

3         Here, Nibco makes the generalized assertion that "a number of the daily transcripts" were

4  used in the closing argument and "in connection with" its Rule 50 motion, which this Court

5  denied.  However, it has failed to make the requisite showing of why the cost of each daily trial

6  transcript was *necessary* and therefore "invaluable" to both the Court *and* counsel.  Indeed,

7  Nibco has submitted an invoice enumerating the daily transcript fees for every single day of trial,

8  even when all transcripts were not cited to in either the Rule 50 motion or closing argument.

9  Unlike the situation in *Manildra*, *supra*, the use of the daily transcripts in this case did not help to

10  focus the issues, avoid repetitive testimony, or expedite the trial, but were merely used for

11  defense counsel's own convenience to emphasize arguments *at the close of trial*.[16]

12         Nibco's costs for daily trial transcripts should thus be denied.  Accordingly, its bill of

13  costs should be reduced by the total amount claimed for this expense, **$12,307.40.**   *See*

14  Plaintiffs' Objections to Defendant's Exhibit "G" (Rough Transcript Fees), Exh. FF, Vigne Decl.

15       **F.**    **Fees For Exemplification And Copying Of Papers Should Be Reduced.**

16         Recovery of exemplification and copying costs is limited to those that are "necessarily

17  obtained for use in the case."  28 U.S.C. § 1920(4).  Copies made solely for counsel's

18  convenience are not recoverable.  *See, e.g., McIlveen v. Stone Container Corp.*, 910 F.2d 1581,

19  1584 (7th Cir. 1990).  The party seeking such costs is required to provide sufficient information

20  to show that the expense was necessary.  *See, e.g., Holmes*, 11 F.3d at 64 ("the party seeking

21  such costs must offer some proof of the necessity"); *Ferreira*, 2007 U.S. Dist. LEXIS 76767 at

22  *6-7 (stating that "[t]he mere recitation of the phrase 'necessarily incurred'…is not sufficient to

23  meet the requirements of Section 1920" and finding party seeking copying costs was required to

24  provide specific basis for costs); *American Key Corp. v. Cumberland Assocs.*, 102 F.R.D. 496,

25

26      [16]   Should the Court decide to award this category of costs, the award should at minimum be reduced
by the cost of daily trial transcripts that were not cited to by Defendant in its Rule 50 motion or at closing

27  argument.  Defendant has failed to specifically identify which transcripts were used in this capacity,
although the burden of proof on costs and proper documentation of such fall on Defendant.  *See English*,

28  248 F.3d at 1013, *supra*; *Alaniz*, 2008 U.S. Dist. LEXIS 71107, *supra*.

499 (N.D. Ga. 1984) ("The mere recitation with talismanic regularity of the phrase 'necessarily obtained for use in the case' is not sufficient… Some further showing is necessary.").

### 1.    Copying Costs.

Defendant seeks copying costs for trial documents and exhibits.  Although it is not necessarily limited to copies of exhibits it actually used at trial, it has not demonstrated the necessity of copying, with unfettered discretion, the tens of thousands of pages of documents that it identified as "trial exhibits" despite efforts by plaintiffs' counsel to stipulate to a more manageable universe of joint documents to be utilized at trial.  *See* Ho Decl., ¶¶ 3-4.

Given the sheer volume of documents unnecessarily copied by Nibco, it should be limited to costs incurred for those exhibits it actually used at trial.  Plaintiffs therefore object to this entire category of costs, in the total amount of **$25,131.82**.  *See* Plaintiffs' Objections to Defendants Exhibit "H" (Exemplification and Copies of Papers Necessarily Obtained for Use in this Case: Trial Exhibits), Exh. GG, Vigne Decl.  Without greater specificity in Nibco's invoices, it is impossible to determine which copies of certain documents were unnecessarily made.

At minimum, should the Court determine that an award of copying costs is appropriate, the color laser copies in the amount of **$169.20** should not be recoverable, as Nibco has not demonstrated the necessity of this expense, nor could it.  *See* Exh. GG, Vigne Decl.

### 2.    Office Supply Costs.

Furthermore, Nibco seeks to recover the costs of office supplies, including binders, tabs, etc., used in conjunction with the trial exhibits, and include these costs among those for the exemplification and copies of papers.  Such costs not enumerated in 28 U.S.C. § 1920 may not be taxed and thus should not be recovered.  *See Crawford Fitting Co.,* 482 U.S. at 440-442. Indeed, various courts have found that recovery of such expenses is disallowed.  *See, e.g., Treaster v. Healthsouth Corp.*, 505 F.Supp.2d 898, 905 (D.C. Kan. 2007) ("binders are not 'printing' or 'copies' as allowed by § 1920(3)"); *Servidone Constr. Corp. v United States*, 20 Cl. Ct 725, 732 (Cl. Ct. 1990) (binders would be disallowed since they were not explicitly allowed under statute).  Plaintiffs object to such costs, in the total amount of **$3,986.80.**  *See* Exh. GG, Vigne Decl.

### G.    Travel And Lodging Expenses For John Hall.

Under 28 U.S.C. § 1920(3) and 1821, taxable costs for witnesses are limited to witness fees, travel expenses, and a subsistence allowance for overnight stays.  Any award of travel expenses should be limited to situations where the district court finds both the testimony and the expenses themselves to have been necessary.  *See McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990).

Defendant seeks witness travel expenses for John Hall – a former Nibco employee, who after 1996 had limited to no contact with the Fresno plant – without eluciding why this witness' testimony was in fact necessary to its defense of employment actions taken in 1997 and 1998. Plaintiffs accordingly object to this entire category of costs, in the total amount of **$2,881.94**. *See* Plaintiffs' Objections to Defendant's Exhibit "I" (Witness Travel), Exh. HH, Vigne Decl.

At minimum, should the Court determine that an award of travel costs is appropriate, the Court should carefully review which travel and lodging expenses were in fact unreasonable and reduce the amount awarded accordingly.  Indeed, despite Nibco's unsupported characterization of "reasonable travel and lodging expenses," many of Mr. Hall's travel and subsistence expenses were anything but.

### 3.    Unreasonable Travel Expenses.

Pursuant to 28 U.S.C. § 1821(c)(1), a witness shall be paid for the actual travel expenses "on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance.  Such a witness shall utilize a common carrier at the most economical rate reasonably available.  A receipt or other evidence of actual cost shall be furnished."

Defendant seeks an unreasonable amount—$2,141.50—for Mr. Hall's airfare between South Bend, Indiana and Fresno, California.  In addition, Nibco also failed to provide complete documentation of Mr. Hall's travel expenses: although it provided the itinerary for Mr. Hall's trip to Fresno, they failed to provide the proper documentation for his return trip.  In the absence

of such documentation, it is impossible to discern the reason for the exorbitant price of the ticket, or even know to where Mr. Hall traveled.  Therefore, Nibco should not be awarded **$2,141.50** for Mr. Hall's airfare.  *See* Exh. HH, Vigne Decl.

28 U.S.C. § 1821(2) provides that witnesses who travel by privately owned vehicle should be paid an allowance based on mileage traveled.  The computation of this mileage shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.  Defendant provided no documentation of Mr. Hall's place of origin or destination.  Therefore, it should not be awarded **$93.60** for Mr. Hall's mileage.[17]  *See* Exh. HH, Vigne Decl.

Thus, Nibco should not be awarded costs for Mr. Hall's airfare or his mileage.  Defendant's bill of costs in this regard should be reduced by the amount of $2,235.10.  *See* Exh. HH, Vigne Decl.

### 4.    Unreasonable Subsistence Expenses.

28 U.S.C. § 1821(d) limits the taxable cost of a witness's subsistence allowance to the maximum per diem allowance prescribed by the Administrator of General Services for official travel by employees of the federal government.  At the time of Mr. Hall's travel to Fresno, the maximum lodging rate per night was $95.00.  *See* Per Diem Rates, California FY-09, U.S. General Services Administration, *available at*

http://www.gsa.gov/Portal/gsa/ep/contentView.do?queryYear=2009&contentType=GSA_BASIC&contentId=17943&queryState=California&noc=T.

---

[17]    28 U.S.C. § 1821(c)(1) allows costs for the actual travel expenses for the distance necessarily traveled to and from the witness's residence by the shortest practical route in going to and returning from the place of attendance.  Although Nibco does not proffer an explanation for the mileage, presumably the provided number of miles traveled (80 on Wednesday and 80 on Friday) represents the mileage between Mr. Hall's residence and the airport.  However, a simple search on GoogleMaps shows that the distance between Mr. Hall's house and the airport is 34.7, or 69.45 miles roundtrip.  Therefore, in the case that the Court allows a portion of the undocumented mileage costs, the Court should only allow costs for a total of 69.45 miles.  The remaining mileage billed, 90.55 miles at a rate of 0.585, or $52.97, is disallowed.  For mileage between Mr. Hall's residence and South Bend Airport, *see*
http://maps.google.com/maps?f=d&saddr=823+Foxbriar+Ln,+Goshen,+Elkhart,+Indiana+46526&daddr=south+bend+airport&hl=en&geocode=&mra=pe&mrcr=0&sll=41.648288,-86.099854&sspn=0.434069,0.884399&ie=UTF8&ll=41.641105,-86.101227&spn=0.434117,0.884399&z=10

Nibco billed a total of $414.56 for Mr. Hall's lodging for the two nights he spent in Fresno. According to the guidelines set forth by the Administrator of General Services, Nibco is only permitted to bill a maximum total of $190 for two nights of lodging. Therefore, **$224.56** of the total cost Defendant requested for Mr. Hall's lodging is disallowed. *See* Exh. HH, Vigne Decl.

Nibco also billed $33.28 for Mr. Hall's meals and $11.44 for his miscellaneous expenses; however, these expenses should be disallowed in part because Defendant failed to provide proper documentation of these charges. Nibco provided four receipts for food, the total cost of which was $30.78. Therefore, it failed to account for **$2.50** and **$11.44**, in total $13.90, of the costs billed for Mr. Hall's meals and miscellaneous expenses, and these costs, too, should be disallowed. *See* Exh. HH, Vigne Decl.

Thus, Nibco should not be awarded the total cost billed for Mr. Hall's lodging, or the total cost billed for Mr. Hall's meals and miscellaneous expenses. The bill of costs should be reduced by the amount of $238.46. *See* Exh. HH, Vigne Decl.

For the above reasons, Nibco's costs for witness travel should be denied, at least in substantial part. Accordingly, the cost bill should be reduced by the total amount claimed for the aforementioned disallowed expenses, **$2,473.60.** *See* Exh. HH, Vigne Decl.

## **CONCLUSION**

As argued above, the Clerk erred in allowing Nibco to claim a wide array of costs that it is not entitled to recover, either as a legal matter or based on its failure to support its claims with the required evidence. More importantly, however, the Clerk's determination does not comport with the strong public policy against cost awards in cases, such as this one, that implicate issues of substantial public importance, where there is a enormous economic disparity between the parties, and where an award of costs would have a serious chilling effect upon the willingness of other civil rights plaintiffs to seek redress through the courts.

Accordingly, for the foregoing reasons, plaintiffs request that the Court reconsider the costs taxed by the Clerk in this matter, and deny defendant's bill of costs in its entirety.

1
2   Dated:  October 15, 2009                    Respectfully submitted,

3                                               Christopher Ho
                                                The LEGAL AID SOCIETY –
4                                                 EMPLOYMENT LAW CENTER

5                                               William J. Smith
                                                Shelley G. Bryant
6                                               W.J. SMITH & ASSOCIATES

7
                                                Marielena Hincapié
8                                               NATIONAL IMMIGRATION LAW CENTER

9

10                                  By:    //s// Christopher Ho_____
11                                                  CHRISTOPHER HO

12                                          Attorneys for Plaintiffs
13                                          MARTHA RIVERA, et al.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28