Christopher Ho, SBC No. 129845
The LEGAL AID SOCIETY --
    EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, California 94107
Telephone: (415) 864-8848
Facsimile: (415) 864-8199

William J. Smith, SBC No. 056116          Marielena Hincapié, SBC No. 188199
Shelley G. Bryant, SBC No. 222925         NATIONAL IMMIGRATION LAW CENTER
W.J. SMITH & ASSOCIATES                   3435 Wilshire Blvd., Suite 1850
2350 West Shaw Avenue, Suite 132          Los Angeles, California 90010
Fresno, California 93711                  Telephone: (213) 639-3900
Telephone: (559) 432-0986                 Facsimile: (213) 639-3911
Facsimile: (559) 432-4871

Attorneys for Plaintiffs
MARTHA RIVERA, et al.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

MARTHA RIVERA, MAO HER, ALICIA          ) No. CIV F-99-6443 OWW SMS
ALVAREZ, EVA ARRIOLA, PEUANG            )
BOUNNHONG, CHHOM CHAN, BEE LEE,         ) **REPLY BRIEF IN SUPPORT OF**
PAULA MARTINEZ, MARIA MEDINA, MAI       ) **PLAINTIFFS' MOTION FOR REVIEW**
MEEMOUA, MARGARITA MENDOZA, BAO         ) **OF CLERK'S TAXATION OF COSTS**
NHIA MOUA, ISIDRA MURILLO, MARIA        )
NAVARRO, VATH RATTANATAY, OFELIA        ) **[Fed.R.Civ.P. 54(d)(1); Civ. L.R. 54-292(e)]**
RIVERA, SARA RIVERA, MARIA              )
RODRIGUEZ, MARIA RUIZ, MARIA            ) Date:  December 14, 2009
VALDIVIA, SY VANG, YOUA XIONG, and      ) Time:  10:00 a.m.
SEE YANG,                               ) Ctrm:  3
                                        )
            Plaintiffs,                 )
                                        )
                                        ) [Hon. Oliver W. Wanger]
      v.                                )
                                        )
NIBCO, INC., an Indiana corporation,    )
                                        )
            Defendant.                  )
                                        )
                                        )
_____)

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................... iii

**INTRODUCTION** ...........................................................................................1

**ARGUMENT** ................................................................................................1

   **I.**    **Nibco Ignores *AMAE*'s Central Holding.** ................................1

   **II.**   **This Case Was One Of "Substantial Public Importance."** ...................2

       **A**. **Nibco's Suggestion That This Case Is A 'Less Important' Civil Rights Case Than *AMAE* Misses The Point.** ........................3

       **B**. **Class Action Status Per Se Has Little Bearing On "Substantial Public Importance."** ....................................4

       **C**. **The Litigation Of The Important Issues Surrounding The Protective Order Was Part And Parcel Of This Case And Essential To Its Prosecution.** ..........................................4

   **III.**  **By Any Measure, This Was A "Close Case."** ..........................6

   **IV.**  **Nibco's Effort To Distract From The Immense Economic Disparity Between The Parties Rests On An Incorrect Reading of *AMAE*.** .............7

   **V.**   **Taxing The Costs At Issue Would Undeniably Chill Future Civil Rights Litigation And Frustrate The Public Policy Against Discrimination.** ..................................................9

   **VI.**  **Nibco's Arguments For Its Specific Cost Items Remain Unpersuasive.** ...........11

       **A**. **Deposition Costs** ...................................................11

          **1.**  **Costs of Copying Plaintiffs' Audiotapes of Depositions Are Not Recoverable.** ..................................12

          **2.**  **Videotaped Deposition Costs Should Not Be Allowed.** ................12

          **3.**  **Costs Of Depositions "Used In Connection With Motions For Summary Judgment" Are Unrecoverable.** ................13

          **4.**  **Depositions Merely "Taken In The Course Of This Case" Should Not Be Allowed.** ....................................14

i

**B.  Daily Trial Transcripts Should Not Be Recoverable As Costs.** .......................14

**C.  All Travel and Lodging Expenses for John Hall Are Not Recoverable.** ...........................................................................................15

**D.   Fees for Exemplification and Copying of Papers Should Not Be Allowed.** ..............................................................................................15

**CONCLUSION** ..................................................................................................15

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alaniz v. Robert M. Peppercorn, M.D., Inc.*, No. 2:05-cv-02576-MCE-DAD, 2008 U.S.
    Dist. LEXIS 71107 (E.D. Cal. Aug. 8, 2008) ...................................................12

*Arakaki v. Lingle*, 477 F.3d 1048 (9th Cir. 2007)...................................................10

*Arcadian Fertilizer, L.P. v. MPW Industrial Services, Inc.*, 249 F.3d 1293
    (11th Cir. 2001)...............................................................................13

*ASIS Internet Services v. Optin Global, Inc.*, No. C-05-5124 JCS,
    2008 WL 5245931 (N.D. Cal. Dec. 17, 2008) ...................................................11

*Association of Mexican-American Educators v. State of California*, 231 F.3d 572 (9th Cir.
    2000) ......................................................................................... *passim*

*BDT Products, Inc. v. Lexmark International, Inc.*, 405 F.3d 415 (6th Cir. 2005) .................13

*Beamon v. Marshall & Ilsey Trust Co.*, 411 F.3d 854 (7th Cir. 2005) ...................................13

*Boas Box Co. v. Proper Folding Box Corp.*, 55 F.R.D. 79, 81 (E.D.N.Y. 1971)....................10

*Brown v. General Services Administration*, 425 U.S. 820 (1976)..............................................3

*Champion Produce, Inc., v. Ruby Robinson Co., Inc.*, 342 F.3d 1016 (9th Cir. 2003) .........2, 7

*Cherry v. Champion International Corp.*, 186 F.3d 442 (4th Cir. 1999) ..........................12, 14

*Coulter v. Newmont Gold Co.*, 873 F. Supp. 394 (D. Nev. 1994) ...........................................10

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)11Supp auths letter to 9C by 2.16, 12

*Davis v. Puritan-Bennet Corp.*, 923 F. Supp. 179 (D. Kan. 1996).........................................13

*Evanow v. M/V Neptune*, 163 F.3d 1108 (9th Cir. 1998)......................................................14

*Farmer v. Arabian American Oil Co.*, 379 U.S. 227 (1964) ....................................................10

*Goldberg v. Pacific Indemn. Co.*, No. CV-05-2670-PHX-JAT, 2009 WL. 1804861 (D.
    Ariz. June 24, 2009)........................................................................12

*Hiller v. United States,* No. C 05-01620 SBA, 2008 WL.
    449846 (N.D. Cal. Feb. 15, 2008)........................................................11

*Homes v. Cessna Aircraft Co.*, 11 F.3d 63 (5th Cir. 1994)....................................................14

*Independent Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656 (9th Cir. 1963)....................14

*Little v. Mitsubishi Motors North America*, 514 F.3d 699 (7th Cir. 2008).............................13

*Lyons v. Baughman,* No. CIV. S-01-412 LKK/KJM P, 2009 WL. 2591260 (E.D. Cal. Aug. 21, 2009) ........................................................................................................................10

*Morrison v. Reichold Chemicals, Inc.*, 97 F.3d 460 (11th Cir. 1996) .....................................13

*Mota v. University of Texas Houston Health Science Ctr.*, 261 F.3d 512 (5th Cir. 2001) ......12

*Newman v. Piggie Park Enterprises*, 390 U.S. 400 (1968) .......................................................3

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir.), *aff'd*, 384 F.3d 822 (2004)*, cert. denied sub nom. NIBCO, Inc. v. Rivera*, 544 U.S. 1603 (2005)........................................... *passim*

*Save Our Valley v. Sound Transit*, 335 F.3d 932 (9th Cir. 2003)........................................2, 10

*Schaulis v. CTB/McGraw-Hill, Inc.*, 496 F. Supp. 666 (N.D. Cal. 1980) ..............................10

*Stanley v. University of Southern California*, 178 F.3d 1069 (9th Cir. 1999) ..........................7

*Subscription Television, Inc. v. Southern Cal. Theatre Owners Association*, 576 F.2d 230 (9th Cir. 1978)........................................................................................................................2

*Terry v. Allstate Insurance Co.,* No. Civ. S-05-2261 RRB DAD, 2007 U.S. Dist. LEXIS 81051 (E.D. Cal. Oct. 31, 2007) ....................................................................................12

*Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471 (10th Cir. 1997).......................................13

*Tubbs v. Sacramento County Jail*, 258 F.R.D. 657, 661 (E.D. Cal. 2009) .............................10

*Washington State Department of Transportation v. Washington Natural Gas Co., Pacificorp*, 59 F.3d 793 (9th Cir. 1995)....................................................................................13

*White v. White*, 786 F.2d 728 (6th Cir. 1986) ...........................................................................6

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 1821 .......................................................................................................................14

28 U.S.C. § 1920(2) .............................................................................................................11, 12

28 U.S.C. § 1920(3) .............................................................................................................14, 15

28 U.S.C. § 1920(4) ...................................................................................................................15

iv

Fed.R.Civ.P. 50..................................................................................................14

Fed.R.Civ.P. 54....................................................................................................7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Nowhere in its opposition does Nibco dispute that the Ninth Circuit's *en banc* decision in *Association of Mexican-American Educators v. State of California*, 231 F.3d 572 (9th Cir. 2000) ("*AMAE*"), is the controlling law that applies to this motion. Indeed, Nibco itself purports to rely on *AMAE* and its progeny for its argument that Nibco, a large and successful multinational corporation, should be able to shift its sizable cost bill in this civil rights action onto 23 low-wage (some now retired) immigrant workers.

As explained below, *AMAE* hardly supports the inequitable result Nibco seeks. To the contrary, *AMAE* makes clear that this Court has discretion under Fed.R.Civ.P. 54 to decline to tax costs against unsuccessful plaintiffs in cases exactly such as this one. Nibco's heavy reliance on out-of-circuit cases plainly at odds with *AMAE* only points up this disconnect between Nibco's assertions and the law of this Circuit. Coupled with the continued lack of substance behind Nibco's requests for specific cost items, none of defendant's authorities call for this Court to deny the relief plaintiffs seek.

**ARGUMENT**

**I.  Nibco Ignores *AMAE*'s Central Holding.**

Nibco argues, in effect, that Rule 54 establishes a presumption against denying costs to a prevailing defendant so steep and restrictive that a district court departs from that presumption at its peril. Nibco asserts that only certain designated indicia, such as class action status or voluntary interim remedies provided by a defendant, can render a case "important", Oppn. Brief, ¶¶ 11-16; that only dollar amounts above some unstated threshold can possibly have a chilling effect on future civil rights plaintiffs, Oppn. Brief, ¶¶ 22-25; or that self-evident economic disparities between plaintiffs and defendants must be proven up through discovery that probes into every conceivable corner of the lives of the unsuccessful litigants and their families, Oppn. Brief, ¶¶ 17-21.

Each of those claims will be separately addressed below. But more fundamentally, Nibco's insistence upon its own arbitrarily chosen criteria for the denial of costs runs squarely into *AMAE*'s simple and clear holding that district courts have the discretion to decline to tax costs when doing so would lead to an unjust result. In *AMAE*, the State of California similarly argued that the only grounds

for a departure from the Rule 54 presumption would be a showing of "misconduct" on its part.  The

Ninth Circuit, looking to the plain language of the Rule, rejected the State's narrow reading:

> [W]e see no basis for limiting the district courts' discretion in the manner that Defendants suggest.  The rule itself contains to such limitation; it provides simply that costs shall be allowed to the prevailing party unless the district "otherwise directs." . . .
> Our requirement that a district court give reasons for denying costs is, in essence, a requirement that the court explain why a case is not "ordinary" and why, in the circumstances, it would be inappropriate or inequitable to award costs. . . . [D]ivesting courts of the discretion to limit or refuse such overwhelming costs in important, close, but ultimately unsuccessful civil rights cases like this one might have the regrettable effect of discouraging potential plaintiffs from bringing such cases at all.

*AMAE*, 231 F.3d at 593.  Notably, and consistent with its concern for the district courts' flexibility, the

Ninth Circuit emphasized that "we [are not] attempting to create an exhaustive list of 'good reasons'

for declining to award costs." *Id.*

Nonetheless, Nibco would still persuade this Court that it cannot exercise its discretion to avoid

an "inappropriate or inequitable" result in this case.  It would also have the Court believe that a case

must be a virtual carbon copy of *AMAE* in order to justify not taxing costs.  But these unreasonable

propositions could hardly be more at odds with *AMAE*'s clear teaching: this Court may exercise its

discretion to rule as it sees fit on Nibco's cost bill, provided that it "specify reasons" why it is doing

so.  *Id.*; *see also Subscription Television, Inc. v. Southern Cal. Theatre Owners Assn.*, 576 F.2d 230,

234 (9th Cir. 1978); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003); *Champion*

*Produce, Inc., v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) ("the district court may

refuse to award costs within its discretion.").  The assorted out-of-circuit cases cited by Nibco for a

contrary conclusion are of no moment.

## II.     This Case Was One Of "Substantial Public Importance."

Nibco contends that this case was not one of "substantial public importance," and purports to

meaningfully distinguish it from *AMAE* in various ways in an effort to portray the case at bar as an

"ordinary" one.  Even leaving aside that *AMAE* itself expressly declines to limit its core holding to its

own facts, as noted above, Nibco simply points out distinctions without any differences.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## A.     Nibco's Suggestion That This Case Is A 'Less Important' Civil Rights Case Than *AMAE* Misses The Point.

Nibco attempts to portray *AMAE* as being a "more important" civil rights case than the one at bar.  Oppn. Brief at ¶ 6.  But even leaving aside Nibco's fatuous presumption that it is qualified to sit in judgment as a guardian of civil rights, this argument more fundamentally fails to take seriously the role of civil rights cases generally as an important means of enforcing the strong Federal and state public policies against discrimination – policies of overriding public importance.

In enacting the Civil Rights Act of 1964, "Congress indicated that it considered the policy against discrimination to be of the 'highest priority.'"  *Brown v. General Services Administration*, 425 U.S. 820, 836 n.3 (1976), citing *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968).  But as this Court is well aware, civil rights cases are extremely difficult to win and, for that matter, difficult to bring in the first place -- particularly where, as here, the persons aggrieved are indigent or of modest financial means who cannot afford counsel.  Accordingly, as an example, Congress provided for fee-shifting statutes as a means of reducing the economic obstacles to their litigation faced by "private attorneys general."  The fact that civil rights litigation is thus given a special status as a matter of public policy cannot be cavalierly dismissed in the Ninth Circuit after *AMAE*, whose holding on costs was of course animated largely by the fact that it *was* a civil rights case.  *Id.*, 231 F.3d at 593 ("divesting courts of the discretion to limit or refuse such overwhelming costs in important, close, but ultimately unsuccessful *civil rights cases* like this one might have the regrettable effect of discouraging potential plaintiffs from bringing *such cases* at all.") (emphasis added).

Nibco's curious characterization of the instant case as a *less* worthy civil rights case than *AMAE*, even if taken seriously, therefore misses the point that civil rights cases *generally* are deserving of closer consideration when costs may be taxed against unsuccessful plaintiffs, even though the ultimate decision on whether to tax will obviously differ from case to case.  It hyperbolically warns that "a losing Plaintiff conceivably could seek to avoid payment of costs in every employment discrimination. [sic]", Oppn. Brief, ¶ 15.[1]  But as *AMAE* makes clear, district courts are entrusted with

---

[1]     In this connection, Nibco can only point to two Tenth Circuit cases which hold -- directly contrary to *AMAE* and its progeny -- that the fact that a case seeks to vindicate civil rights is of no moment whatever in the

the discretion to decide the cost issue in each case on its own merits and equities, not by exclusive reference to any automatic rule or ironclad presumption, let alone ones of Nibco's imagining.

### B.     Class Action Status *Per Se* Has Little Bearing on "Substantial Public Importance."

Nibco further asserts that because this case, unlike *AMAE*, was not maintained as a class action (although it was initially brought as such) -- and that therefore it did not directly affect "tens of thousands of California [sic]" – this case was thus not one of "substantial public importance."  Oppn. Brief, ¶ 14.  This simplistic reasoning is fallacious.  Countless indisputably important civil rights cases have not been formally brought as class actions but, instead, as individual actions or, indeed, even on behalf of a *single* plaintiff.  Because the jurisprudence of language-based discrimination is still evolving, had the plaintiffs herein prevailed the outcome would have been inherently precedential in nature, particularly if (as might be expected) Nibco chose to appeal the result to the Ninth Circuit, entirely irrespective of the presence of a certified class.[2]

### C.     The Litigation Of The Important Issues Surrounding The Protective Order Was Part And Parcel Of This Case And Essential To Its Prosecution.

Nibco *did*, of course, appeal this Court's protective order barring it from making irrelevant and intimidating inquiries into the immigration status of the plaintiffs.  And as pointed out in plaintiffs' opening papers, that appeal *did* result in a precedential decision of substantial importance to civil rights litigation, certainly on par with the partial success of the *AMAE* litigation.  The significance of the Ninth Circuit opinion in *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir.), *aff'd*, 384 F.3d 822 (2004), *cert. denied sub nom. NIBCO, Inc. v. Rivera*, 544 U.S. 1603 (2005), has been previously

---

assessment of costs.  For the reasons already noted, *AMAE* stands against the notion that the taxation of costs in civil rights cases ought to be handled in the same way as, for example, costs in private commercial litigation.

[2]     Nibco's extended discussion of the obvious fact that this action did not challenge Nibco's "speak-English-only" policy, ¶ 16, is simply another distinction without a difference.  As explained in plaintiffs' opening brief, such cases, which have been prioritized by the EEOC in its national litigation, strongly illustrate its concern over the rise of language-based discrimination generally, one manifestation of which is the imposition of discriminatory English proficiency requirements such as that alleged here.  The seriousness with which the EEOC takes discriminatory language practices, including of the sort challenged here, is described in the Declaration of William R. Tamayo, filed concurrently herewith.

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**                                                                              4
**FOR REVIEW OF CLERK'S TAXATION OF COSTS**
**Case No. CIV F-99-6443 OWW SMS**

1    discussed, Pltfs.' Opening Brief at 5-6, and plaintiffs will not revisit that point here.  Suffice it to say,

2    however, that in addition to the importance of the issues decided for the first time in that opinion, the

3    U.S. Equal Employment Opportunity Commission ("EEOC") is of the view that "[t]he precedent

4    established by *Rivera* has forestalled prolonged discovery battles over ancillary and unrelated

5    immigration issues and, in so doing, has been of substantial benefit to our litigation efforts."

6    Declaration of William R. Tamayo ("Tamayo Decl."), ¶ 14, filed concurrently herewith.  As also

7    stated therein, the EEOC has relied on *Rivera* on numerous occasions in its own litigation on behalf of

8    immigrant workers, resulting in some of the numerous published decisions that have followed *Rivera's*

9    reasoning to bar similar immigration-related discovery in other cases.  Tamayo Decl., ¶ 13.

10        Nibco's studied cursory effort to minimize the importance and necessity of the *Rivera* appeal

11   and the resulting opinion is at best disingenuous.  It contends that the opinion of the Ninth Circuit is of

12   no significance because seeking protection from irrelevant discovery was not a purpose of the

13   plaintiffs in filing this case, Oppn. Brief, ¶ 14 n.4 – an absurd argument, as if any plaintiff would have

14   chosen to subject herself to such discovery as a motivation for embarking upon litigation.  Indeed,

15   Nibco appears to suggest that because the appeal was not on the substantive merits of the case, its

16   importance should not be considered in the cost analysis, as if it had never taken place.  This bizarre

17   rationale for wishing away four entire years of this case, among other things, incomprehensibly

18   ignores the fact that the litigation over the protective order, including securing an affirmance from the

19   Ninth Circuit and a denial of certiorari by the Supreme Court, was necessitated by Nibco's own

20   conduct in the taking of the plaintiffs' depositions and its meritless insistence that discovery into the

21   plaintiffs' immigration status was indispensable to its defense of the case.[3]

22        Far from being an unrelated tangent that plaintiffs somehow pursued on their own whim, the

23   interlocutory appeal – highly unusual on a discovery issue, and obviously sought by Nibco itself – had

24   to be defended by the plaintiffs if, as a practical matter, they were to be able to continue litigating the

---

25        [3]    *See, e.g.*, Docket No. 47 (defendant's June 21, 2001 request for reconsideration by the district court of
26   the magistrate judge's ruling on the protective order) ("The grave effect of that bar [on immigration-related
     discovery] is to prevent Defendants from conducting discovery to gather information that may be used to defeat
27   a portion of one of the claims raised here and to ascertain or limit the scope of their potential remedies
     liability.").

28   **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**                                                          5
     **FOR REVIEW OF CLERK'S TAXATION OF COSTS**
     **Case No. CIV F-99-6443 OWW SMS**

1    case. It would strain credulity to think that Nibco has failed to understand, either then or now, that its

2    irrelevant and oppressive inquiries into the plaintiffs' immigration status had the potential to lead to

3    precisely the chilling effect upon civil rights plaintiffs decried by the Ninth Circuit in *AMAE*, 237 F.3d

4    at 593, and four years later in *Rivera* itself. *Id.*, 364 F.3d at 1064-66. Most assuredly, Nibco cannot

5    now be heard to complain that the vigorous litigation of this discovery issue – initiated and

6    singlemindedly litigated to the Supreme Court by Nibco itself, while the district court proceedings

7    ground to a halt for years due to Nibco's motion for a stay – was not absolutely essential to the

8    prosecution of this case, or was nothing short of critical to the ability of future immigrant plaintiffs to

9    bring civil rights actions such as this one.[4] As such, this case, and the appeal it gave rise to, are plainly

10    of "substantial public importance." *See also* Tamayo Decl., ¶¶ 9-13.

11    ### III.    By Any Measure, This Was A "Close Case."

12         Nibco suggests that this case was not "close" within the meaning of *AMAE,* 231 F.3d at 592.

13    Oppn. Brief, ¶ 9. This Court, of course, is ideally situated to assess whether plaintiffs presented legal

14    or factual issues that were in any way insubstantial or required anything other than careful scrutiny and

15    vigorous litigation. In any event, query why a so-called "close case" would have been intensely

16    litigated for more than nine years; why Judge Ishii's consideration of the parties' complex cross

17    motions for summary judgment took over a year and a half and resulted in a 96-page order,[5] Docket

18    No. 436 (denying Nibco's motion as well as the plaintiffs' motion); why Nibco found it necessary to

19

20    [4]    Nibco's conclusory representation that "none of the costs being sought by Defendant relate to that
21    discovery issue," Oppn. Brief, ¶ 14 n.4, even if it were true, is irrelevant. As noted above, the litigation of that
       issue was essential to maintaining the case as a whole, and it is not possible to divorce that issue from the
22    litigation of the case as a whole. In any case, Nibco's assumption that the propriety of including a specific item
       in the cost bill depends on the precise nature or outcome of the matter from which that expenditure arose is as
23    groundless as it would be impossible to satisfy. Taken to its logical extension, this assumption would require
       that Nibco's cost bill be *reduced* to the extent that it sought payment for expenditures made in the course of
24    unsuccessful arguments – for example, all costs it incurred in the course of litigating the *in limine* motions that
       it ultimately lost. Finally, even leaving that aside, cost items concerning the discovery issue *are* in fact included
25    in the cost bill – *e.g.,* the costs of taking and videographing the deposition of Martha Rivera at which the
       protective order was sought.

26    [5]    On this *see White v. White*, 786 F.2d 728, 732-33 (6th Cir. 1986) ("The closeness of a case is judged not
27    only by whether one party clearly prevails over another, but by the refinement of perception required to
       recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case.").
28

1   retain *six* different law firms to defend this case; and why the plaintiffs prevailed on numerous key *in*

2   *limine* motions involving important legal and factual issues critical to the trial. Nibco points only to

3   the jury's truncated deliberations, but that jury's presumably powerful desire to finish its work by the

4   day before Thanksgiving is hardly a substitute for the record of this case, which speaks for itself.

5   
6   **IV.    Nibco's Effort To Distract From The Immense Economic Disparity**
        **Between The Parties Rests On An Incorrect Reading of *AMAE*.**

7        Nibco nowhere bothers to dispute that there exists, for purposes of the *AMAE* analysis, a "great

8   economic disparity," 231 F.3d at 592, between itself, a highly-resourced multinational corporation,

9   and the plaintiffs. Instead, in an apparent effort to change the question, Nibco reads into *AMAE's*

10  consideration of "limited financial resources" not only an "indigency" requirement that is not to be

11  found in *AMAE*, but also a mandate that the plaintiffs produce reams of evidence of that indigency,

12  including their assets and liabilities, "income, wages, assets, debts, or employment from September

13  2008 through the present," their monthly expenses, their *spouses'* incomes, and even "their inability to

14  pay in the future."[6] Oppn. Brief, ¶¶ 17-21.

15       First, however, *AMAE* nowhere makes "indigency" a prerequisite for relief from costs.

16  Instead, as already noted, the opinion's primary focus is upon the *economic disparity* between the

17  parties; in that discussion, *AMAE* alludes only to the fact that the *AMAE* plaintiffs' "resources are

18  *limited*." 231 F.3d at 593 (emphasis added); *see also Champion Produce, Inc. v. Ruby Robinson, Co.,*

19  *Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2005) (same). Indeed, the word "indigency" is used nowhere in

20  the majority opinion; it only appears in a footnote in a dissenting opinion. 231 F.3d at 599 n.3

21  (dissenting opinion of Fernandez, J.). For Nibco to refer to "[p]laintiffs' . . . indigent claim," Oppn.

22  Brief at ¶ 20, therefore, compounds one misrepresentation with another.

23       Second, and even more importantly, *AMAE* nowhere suggests that plaintiffs' self-evident

24  inability to pay an enormous cost bill must be proven up through an assuredly limitless list of

25       [6]    Even leaving aside the arguments that follow, plaintiffs' future financial status would not only be
26  impossible to testify to, but irrelevant. *Stanley v. Univ. of Southern California*, 178 F.3d 1069, 1080 (9th Cir.
    1999) ("The pertinent time [to examine the finances of the taxed party], of course, is the time the costs were
27  initially taxed; whatever may have occurred since that time is of no consequence.").

28  **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**                                                    7
    **FOR REVIEW OF CLERK'S TAXATION OF COSTS**
    **Case No. CIV F-99-6443 OWW SMS**

imaginable inquiries of the sort that Nibco posits. Indeed, the record of the district court proceedings in *AMAE* shows that when the district court issued its order denying those costs in their entirety, it had <u>no</u> evidence before it regarding the plaintiffs' ability to pay those costs.[7] Likewise, as would be expected, a review of the appellate record reveals the Ninth Circuit had before it <u>no</u> evidence of the *AMAE* plaintiffs' inability to pay costs when it declined to tax those costs against them.[8] In short, the specifics of their inability to pay were insignificant to the *AMAE* court in its analysis and result. The suggestion that *AMAE* supports Nibco's insistence on scorched-earth discovery into every imaginable nook and cranny of the *Rivera* plaintiffs' financial lives is, therefore, baseless and incorrect, and its exclusive reliance on two Seventh Circuit cases for its extreme claim is grievously misplaced.

In any event, there is far *more* evidence before this Court of plaintiffs' inability to pay the cost bill than there was in *AMAE*. Indeed, Nibco acknowledges that documents filed by plaintiffs provided complete information about the employment and wages of the plaintiffs through September of 2008. It further acknowledges that part of this information was provided in the declarations of five plaintiffs, while the bulk of the information for all 23 plaintiffs was provided in exhibits attached to the

---

[7]    Declaration of John T. Affeldt ("Affeldt Decl."), filed concurrently herewith, Exh. A (*AMAE* defendants' cost bill, excluding exhibits); Exh. B (defendants' brief in support of cost bill); Exh. C (*AMAE* plaintiffs' opposition to cost bill) (mentioning only "the huge disparity in resources between Plaintiffs and Defendants", 2:13-14); Exh. D (defendants' reply brief) (noting that "[w]hen Defendants sought to pursue discovery into Plaintiffs' ability to make payment of Defendants' costs, Plaintiffs successfully opposed such efforts", 4:19-20); Exh. E (February 12, 1997 order of the district court denying costs) (noting only that "the disparity of resources between the parties appears obvious," citing cases involving other plaintiffs' "limited budgets," and observing that "plaintiffs would be hard pressed to foot a $216,000 bill.", 3:6-18); Exh. F (December 7, 2009 printout of district court PACER docket); ¶ 13 ("the district court had no specific financial information before it regarding the *AMAE* plaintiffs' ability to satisfy the State's cost bill when it issued its order denying that cost bill in its entirety.").

[8]    Affeldt Decl., Exh. G (State's opening brief on cross-appeal of denial of costs) (noting "Plaintiffs' failure to submit <u>any</u> record evidence of their collective or individual ability to pay costs.", 2:18-19) (emphasis in original); Exh. H (*AMAE* plaintiffs' brief on cross-appeal) (noting only amount of dues paid by members of organizational plaintiffs, individual plaintiffs' employment as educators and flight attendant, and general references to the expenses of one plaintiff, 4-5); Exh. I (reply brief of State) ("Notably, the district court's denial of costs was not based on a finding that the Plaintiffs had limited resources and collectively could not foot the bill. . . . Plaintiffs did not argue, much less present evidence of, limited resources.", 11:20-23); Exh. J. (December 7, 2009 printout of appellate PACER docket); ¶ 15 ("the only information contained in the record on appeal that even remotely bore in any manner on the *AMAE* plaintiffs' economic status was that set forth at pages 4-5 of the plaintiffs' opposition brief on the cross-appeal.").

1    Declaration of Carole Vigne, previously filed (Docket Nos. 705, 707-709) ("Vigne Decl."). Those

2    exhibits included discovery responses from each plaintiff as well as a chart further detailing

3    employment and wages for each. *See, e.g.,* Vigne Decl. (containing detailed information about

4    plaintiffs' current wages and prior annual income, and referencing October 2, 2008 supplemental

5    interrogatory responses concerning post-termination employment and mitigation efforts); Docket Nos.

6    711-15 (declarations of plaintiffs Arriola, Murillo, Mendoza, O. Rivera, and Bounnhong

7    supplementing prior information).[9]

8         As this Court is aware, plaintiffs in this case were low wage, low-skilled workers of limited

9    education and English language skills. For the most part, they were paid by Nibco at levels barely

10   exceeding the minimum wage. Many worked more than one job to make ends meet. Had their

11   finances been so comfortable that they could pay anything approaching the costs now sought from

12   them, they would certainly have chosen to work elsewhere. And though Nibco makes much of the fact

13   that some of the plaintiffs own their homes, this hardly amounts to evidence that any of them could

14   assume Nibco's costs without substantial hardship, particularly given the current state of the economy

15   and the extent of the home foreclosure crisis.

16        In sum, the patent economic disparity between the parties far more than satisfies the *AMAE*

17   analysis. Much as Nibco contends otherwise, a level playing field does not exist here.

18   **V.    Taxing The Costs At Issue Would Undeniably Chill Future Civil**
19        **Rights Litigation And Frustrate The Public Policy Against**
          **Discrimination.**

20        Finally, Nibco argues that its costs are so purportedly "modest" that irrespective of the

21   plaintiffs' financial situation, there could not possibly be a "chilling effect" upon future civil rights

22   plaintiffs. Oppn. Brief at ¶¶ 22-25. This remarkable claim not only displays a total lack of sensitivity

23   to the fact that even the posited pro rata figure of $3,671.06 would be a princely sum to low-wage

24   _____

25        [9]    The responses and chart showed that four plaintiffs had no employment income for certain years, and
     those four filed short declarations explaining why three (plaintiffs Mendoza, Murillo, and O. Rivera) had
26   retired, while one (plaintiff Bounnhong) had been unable to find employment. Because the discovery responses
     of the fifth declarant (plaintiff Arriola) included information only until 2005, her declaration updated her
27   information through September 2008.

28   **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**                                    9
     **FOR REVIEW OF CLERK'S TAXATION OF COSTS**
     **Case No. CIV F-99-6443 OWW SMS**

worker (and even middle-class) families; it also studiously overlooks the additional fact that in all

probability, any cost bill would not be apportioned so cleanly in any event, due to its joint and several

nature.  Pltfs.' Opening Brief, 8:20-27.

Moreover, the cases Nibco cites for the "affordability" of its enormous cost bill and its

allegedly inconsequential impact are readily distinguishable.  While not mentioned by Nibco, the

*entire* cost bill in *Arakaki v. Lingle*, 477 F.3d 1048, 1069 (9th Cir. 2007), was $5,300, to be

apportioned among fourteen plaintiffs as to whom no claim of inability to pay appears to have been

made.  And in *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945-46 (9th Cir. 2003), the Ninth

Circuit, noting that the district court was not required to state any reasons for *awarding* costs (which

totaled $5,310.55 against an organizational plaintiff), had little choice but to affirm due to the "abuse

of discretion" standard on review.  Indeed, the weight of authority in the Ninth Circuit counsels

against cost awards of similar magnitude where there are indications that plaintiffs may be unable to

pay.  *See, e.g., Schaulis v. CTB/McGraw-Hill, Inc.*, 496 F.Supp. 666, 680 (N.D. Cal. 1980) ("To

approve the cost bill [of approximately $1,400] would lead to a harsh result when plaintiff is an

individual litigant and defendant is a large corporation. . . . To do so in this context could only chill

individual litigants of modest means seeking to vindicate their individual and class rights under the

civil rights laws."); *Coulter v. Newmont Gold Co.*, 873 F.Supp. 394, 397 (D. Nev. 1994) (declining to

assess costs of $7,000, noting that "it is also proper, given the importance of the values implicit in

Title VII, that plaintiffs with meritorious cases not be unduly intimidated by the threat of imposition of

massive costs."); *Lyons v. Baughman*, No. CIV. S-01-412 LKK/KJM P, 2009 WL 2591260, *2 (E.D.

Cal. Aug. 21, 2009) (refusing to tax costs of $3.353.82 and noting that "imposing costs on losing civil

rights plaintiffs of modest means may chill civil rights litigation that is important to the legal system,

citing *Stanley*, *supra*); *Tubbs v. Sacramento County Jail*, 258 F.R.D. 657, 661 (E.D. Cal. 2009)

(refusing to tax costs of $3.798.09 on same grounds).  *See also Boas Box Co. v. Proper Folding Box

Corp.*, 55 F.R.D. 79, 81 (E.D.N.Y. 1971) (declining to tax costs of $1,572.32 against "a very small

business trying to stay alive.").  To tax costs here would plainly run afoul of the concern expressed by

the Supreme Court in *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235 (1964), *overruled on*

1    *other grounds, Crawford Fitting Co. v. J. T. Gibbons, Inc*. 482 U.S. 437 (1987), that Rule 54 should be

2    applied to avoid situations where costs are "so high as to discourage litigants from bringing lawsuits,

3    no matter how meritorious they might in good faith believe their claims to be."

4          Where, as here, an undisputedly large and highly profitable multinational corporation seeks to

5    impose its substantial costs upon plaintiffs of limited resources, its decision to seek those costs and to

6    expend considerable attorney time to do so is – to say the least – not easily explicable by reference to

7    rational economic motives.[10]  Indeed, in these circumstances, Nibco's cost bill arguably appears

8    nothing other than punitive in nature.  Under these conditions, the implicit message that would be sent

9    to potential civil rights plaintiffs would be chilling indeed.  *See also* Tamayo Decl., ¶¶ 5-8 (taxing

10   costs against plaintiffs in this case "would only serve to further discourage civil rights plaintiffs from

11   coming forward to litigate their cases.  As a result, the goal of vigorous private enforcement of Title

12   VII and other civil rights statutes would be significantly frustrated.").

13         In sum, controlling Ninth Circuit precedent and sound public policy plainly militate against

14   taxing Nibco's costs against the plaintiffs.  This Court, accordingly, should deny those costs in full.

15         **VI.    <u>Nibco's Arguments For Its Specific Cost Items Remain Unpersuasive</u>.**

16         Finally, Nibco continues to urge this Court to tax costs for specific expenditures for which any

17   legal or factual basis is lacking.

18              **A.    Deposition Costs**

19         Nibco persists in seeking recovery for deposition costs that are non-taxable.  As a threshold

20   matter, unlike the standard of review used in the cases it cites, this Court reviews the clerk's taxation

21   of costs *de novo*.  The clerk's decision is not entitled to deference.  *See, e.g., ASIS Internet Services v.*

22   *Optin Global, Inc.*, No. C-05-5124 JCS, 2008 WL 5245931, *3 (N.D. Cal. Dec. 17, 2008); *Hiller v.*

23   *United States*, No. C 05-01620 SBA, 2008 WL 449846, *3 (N.D. Cal. Feb. 15, 2008).  Further, Nibco

24   cannot show why the deposition costs in question were necessary to its defense of the case.  *See* 28

---

25   <sup>10</sup>    Nibco's patently absurd complaint that corporations such as itself would themselves somehow be

26   "chilled" from implementing desired personnel policies if Nibco is not granted its costs in this case, Oppn. Brief
     at ¶ 10, fails to recognize that, unlike the public policy manifested in *AMAE* and countless other cases in support

27   of "private attorneys general" litigation to enforce civil rights statutes, there is no similar public policy in
     support of parties who are called upon to defend colorably discriminatory policies in court.

28   **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION                                                          11**
     **FOR REVIEW OF CLERK'S TAXATION OF COSTS**
     **Case No. CIV F-99-6443 OWW SMS**

1  U.S.C. § 1920(2); *Alaniz v. Robert M. Peppercorn, M.D., Inc.*, No. 2:05-cv-02576-MCE-DAD, 2008

2  U.S. Dist. LEXIS 71107 (E.D. Cal. Aug. 8, 2008).

3  **1.      Costs of Copying Plaintiffs' Audiotapes Of Depositions Are Not Recoverable.**

4  Nibco fails to explain why copies of plaintiffs' audiotapes of certain depositions were

5  "necessary." *See* 28 U.S.C. § 1920(2). Plaintiffs made those audiotapes solely to create a backup

6  record in case of a dispute about the accuracy of the court interpreter's interpretation. In such a case,

7  Nibco would naturally have been given access to plaintiffs' tapes; making its own set of copies

8  unnecessary.

9  **2.      Videotaped Deposition Costs Should Not Be Allowed.** Nibco seeks to recover *both*

10 the cost of stenographic transcription *and* videotaped depositions. Courts in this District, however,

11 have held that a party may not recover costs incurred for *both*. *See, e.g., Terry v. Allstate Ins. Co.*, No.

12 Civ. S-05-2261 RRB DAD, 2007 U.S. Dist. LEXIS 81051, *9-10 (E.D. Cal. Oct. 31, 2007). More

13 importantly, however, since videotaped depositions are not enumerated as allowable costs in § 1920,

14 they are *per se* not taxable. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987)

15 (costs may not be taxed unless specifically authorized by some other statute or by contract); *Mota v.*

16 *Univ. of Texas Houston Health Science Ctr.*, 261 F.3d 512, 529-30 (5th Cir. 2001) (since videotaped

17 depositions are not enumerated as allowable costs in § 1920, they are not taxable.).

18 Nibco's citations to various other cases are unhelpful. *Cherry v. Champion Int'l Corp.*, 186

19 F.3d 442 (4th Cir. 1999), held that the defendant could not recover costs of both the transcribing and

20 videotaping of a deposition; both costs must have been "necessarily obtained for use in the case." *Id.*

21 at 449 (citing 28 U.S.C. § 1920(2)). The court explained that 'necessity' connotes something more

22 than the enhanced chance to effectively impeach a witness, and "something more than convenience or

23 duplication to ensure alternative methods for presenting materials at trial." *Id.* Here, Nibco argues

24 nothing of the sort, stating only that the video recordings were necessary in case certain plaintiffs

25 failed to appear at trial. However, a district court in this circuit has found that very reason to fall short

26 of constituting a "necessity." *Goldberg v. Pacific Indemn. Co.*, No. CV-05-2670-PHX-JAT, 2009 WL

27 1804861, *2 (D. Ariz. June 24, 2009) (citing *Cherry*, 186 F.3d at 449). In any event, had any plaintiff

28 **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**                                    12
   **FOR REVIEW OF CLERK'S TAXATION OF COSTS**
   **Case No. CIV F-99-6443 OWW SMS**

1    failed to appear at trial, Nibco could have read the stenographic transcripts into the record, as plaintiffs

2    did for numerous absent witnesses.  Not only does Nibco ignore this fact, it also readily admits that the

3    plaintiffs "all intended to and did testify live," further indicating that the videotapes were unnecessary.

4          Nibco's reliance on *Little v. Mitsubishi Motors North America*, 514 F.3d 699 (7th Cir. 2008),

5    and *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471 (10th Cir. 1997), for the same proposition is

6    likewise misplaced.  *Little* concluded that the cost of transcripts can be recovered, in addition to video

7    recordings, *provided that* "a legitimate use independent from or in addition to the videotape . . .  would

8    justify its inclusion in an award of costs."  Again, as noted, Nibco points to no such necessity.  *BDT*

9    *Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415 (6th Cir. 2005), is of no avail for the same reason.

10         Further, *Davis v. Puritan-Bennet Corp.*, 923 F. Supp. 179 (D. Kan. 1996) is distinguishable in

11   that the district court's own guidelines specifically allowed taxation of videotaped depositions.  *Id.* at

12   180-81.  No such rule exists in this District.  *See* Local Rules of the United States District Court,

13   Eastern District of California, Costs, Items Taxable, Rule 54-292(f)(1)-(11).  Additionally*,* Nibco's

14   reliance in *Beamon v. Marshall & Ilsey Trust Co.*, 411 F.3d 854 (7th Cir. 2005), is misplaced; in that

15   case, the plaintiff provided <u>no</u> legal basis for excluding videotaped deposition costs from the cost bill.

16   *Id.* at 864.  The only argument of any sort proffered by the plaintiff for objecting to the videotaped

17   deposition was judged to be "hyperbole" and not a legal argument.  *Id.*

18         Finally, *Arcadian Fertilizer, L.P. v. MPW Industrial Services, Inc.*, 249 F.3d 1293 (11th Cir.

19   2001) (citing *Morrison v. Reichold Chemicals, Inc.*, 97 F.3d 460 (11th Cir. 1996)), is of no avail; it

20   simply applies the Eleventh Circuit's rule that if a party notices a deposition to be recorded by non-

21   stenographic means, and no objection is raised at the time by the other party to the method of

22   recordation, it is appropriate to award the cost of conducting the deposition in the manner noticed.

23   *Morrison*, 97 F.3d at 464-65.  Such is not the rule in this Circuit.

24         **3.      Costs Of Depositions "Used In Connection With Motions For Summary**

25   **Judgment" Are Unrecoverable.**  As previously noted, trial courts have discretion to disallow costs of

26   depositions not used at trial.  *Washington State Dep't of Transportation v. Washington Natural Gas*

27   *Co., Pacificorp*, 59 F.3d 793, 806 (9th Cir. 1995).  The authorities Nibco cites for this category of

28   **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**                                    13
     **FOR REVIEW OF CLERK'S TAXATION OF COSTS**
     **Case No. CIV F-99-6443 OWW SMS**

1    costs hold only that the cost of depositions used in *successful* summary judgment motions may be

2    taxed. Here, of course, Nibco did not prevail on summary judgment. To the extent that these

3    depositions were not necessary for use at trial, *see supra*, therefore, their costs are not recoverable.

4         **4.      Depositions Merely "Taken In The Course Of This Case" Should Not Be Allowed.**

5         Nibco seeks to include a host of other depositions "taken in the course of the case" as part of

6    costs to be taxed. Among these depositions are five taken by Nibco that were *not* used in trial. But

7    depositions that are merely useful for discovery but not used at trial are not taxable. *Independent Iron*

8    *Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656, 678 (9th Cir. 1963). While Nibco alleges that the

9    individuals it deposed knew about supposed product problems, customer complaints, or issues within

10   the plant, the fact that their depositions were not used at trial undermines any contention that they were

11   "reasonably necessary." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998). For this

12   reason, Nibco's claimed costs for depositions not used in trial are not recoverable.

13        **B.      Daily Trial Transcripts Should Not Be Recoverable As Costs.**

14        Nibco concedes that the cost of daily transcripts is not ordinarily recoverable without prior

15   court approval. Since this Court did not provide such authorization, these costs are recoverable only if

16   the daily copies were invaluable and indispensable for both counsel *and the court*. *Id.; see also Homes*

17   *v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994) (per curiam). But Nibco does not bother to

18   detail which transcripts were actually used in the Rule 50 motion and closing argument, and were thus

19   allegedly "indispensable" to the Court. It also does not bother to explain how the use of "a number" of

20   daily transcripts containing witness testimony establishes a need beyond mere convenience. And

21   while Nibco may claim that actual testimony is "an extremely powerful means to present points" to the

22   jury, this does not demonstrate that daily transcripts were "invaluable and indispensable." *See, e.g.,*

23   *Cherry*, 186 F.3d at 449 (necessity connotes something more than the enhanced chance to effectively

24   impeach a witness, and "something more than convenience or duplication to ensure alternative

25   methods for presenting materials at trial."). Accordingly, there is no basis for recovering these costs.

26

27

28   **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**                              14
     **FOR REVIEW OF CLERK'S TAXATION OF COSTS**
     **Case No. CIV F-99-6443 OWW SMS**

**C.    All Travel and Lodging Expenses for John Hall Are Not Recoverable.**

Nibco offers no evidence that all of the costs sought for John Hall were reasonable pursuant to 28 U.S.C. § 1920(3) and 1821.  As stated previously, many of Mr. Hall's expenses were anything but "reasonable."  For example, Nibco billed $414.56 for two nights of lodging.  The maximum lodging rate per night according to California's per diem rates, however, is $95.00 a night.[11]  Therefore, $224.56 of the requested costs must be disallowed.  *See* Exh. HH, Vigne Decl.  Because Nibco also fails to substantiate $13.90 in claimed "food and miscellaneous" costs, those should be disallowed as well.  *Id.*  Accordingly, at least $238.46 of Mr. Hall's costs are not taxable.

**D.    Fees for Exemplification and Copying of Papers Should Not Be Allowed.**

Nibco's conclusory statement that the copies for which it seeks costs were "necessary" fails to satisfy the requirements of 28 U.S.C. § 1920(4).  In this case, Nibco's error was not in providing the required sets of exhibits to all parties and the court, but, instead, in refusing to agree on the far smaller universe of fewer than 4,000 documents proposed by plaintiffs prior to trial.  Defendant fails to explain its claim that each and every one of the over 80,000 pages of the materials that it included on its exhibit list was in fact "necessary" for trial, given the plaintiffs' willingness to stipulate to a much smaller, more selective core of documents truly central to the action.  *See* Pltfs.' Opening Brief, 17:3-17.  As this Court will recall, only a tiny fraction of the massive sets of exhibits were in fact used at trial.  These costs, therefore, should be reduced by $25,131.82, as previously set forth.  *Id.*

## CONCLUSION

For the foregoing reasons, this Court should vacate the Clerk's taxation of costs in its entirety.

Dated:  December 7, 2009                    Respectfully submitted,

                                            Christopher Ho
                                            The LEGAL AID SOCIETY –
                                               EMPLOYMENT LAW CENTER

                                            William J. Smith
                                            Shelley G. Bryant

---

[11]    *See* Per Diem Rates, California FY-09, U.S. General Services Administration, *available at* http://www.gsa.gov/Portal/gsa/ep/contentView.do?queryYear+2009&contentType=GSA_BASIC&contentId=17943&queryState=California&noc=T.

1

2       W.J. SMITH & ASSOCIATES

3       Marielena Hincapié
        NATIONAL IMMIGRATION LAW CENTER

4

5       By:     //s// Christopher Ho_____
                        CHRISTOPHER HO

6

7       Attorneys for Plaintiffs
        MARTHA RIVERA, et al.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28      **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**                            16
        **FOR REVIEW OF CLERK'S TAXATION OF COSTS**
        **Case No. CIV F-99-6443 OWW SMS**